UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRONTPOINT ASIAN EVENT DRIVEN FUND, L.P., AND SONTERRA CAPITAL MASTER FUND, LTD., on behalf of themselves and all others similarly situated,

Plaintiffs,

- against –

CITIBANK, N.A., CITIGROUP INC., BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, THE ROYAL BANK OF SCOTLAND GROUP PLC, RBS SECURITIES JAPAN LIMITED, UBS AG, UBS SECURITIES JAPAN CO. LTD., ING GROEP N.V., ING BANK N.V., ING CAPITAL MARKETS LLC, BNP PARIBAS, S.A., BNP PARIBAS NORTH AMERICA, INC., BNP PARIBAS SECURITIES CORP., BNP PARIBAS PRIME BROKERAGE, INC., OVERSEA-CHINESE BANKING CORPORATION LTD., BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK AG, CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, CREDIT AGRICOLE S.A., CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, DBS BANK LTD., DBS GROUP HOLDINGS LTD., DBS VICKERS SECURITIES (USA) INC., UNITED OVERSEAS BANK LIMITED, UOB GLOBAL CAPITAL, LLC, AUSTRALIA AND NEW ZEALAND BANKING GROUP, LTD., ANZ SECURITIES, INC., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, HSBC BANK USA, N.A., HSBC HOLDINGS PLC, HSBC NORTH AMERICA HOLDINGS INC., HSBC USA INC., MACQUARIE BANK LTD., MACQUARIE GROUP LTD., COMMERZBANK AG, AND JOHN DOE NOS. 1-50,

Defendants.

Docket No. 16-cv-05263 (AKH)

**JOINT MEMORANDUM OF LAW IN SUPPORT OF FOREIGN DEFENDANTS' MOTION TO DISMISS ALL CLAIMS FOR LACK OF PERSONAL JURISDICTION AND VENUE**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

FACTUAL BACKGROUND ........ 3

A. Foreign Defendants ........ 3

B. Jurisdictional Allegations ........ 3

ARGUMENT ........ 4

I. Plaintiffs Cannot Demonstrate General Jurisdiction over any of the Foreign Defendants ........ 5

II. Foreign Defendants Did Not Consent to General Jurisdiction ........ 9

A. Foreign Defendants Did Not Consent to General Jurisdiction in New York ........ 9

B. Barclays Bank PLC, The Royal Bank of Scotland Group plc, and UBS AG Did Not Consent to Jurisdiction in New York by Registering in Pennsylvania ........ 13

III. Foreign Defendants Are Not Subject to Specific Jurisdiction ........ 14

A. The Alleged Wrongful Conduct Occurred Outside the United States ........ 15

B. Plaintiffs' Specific Jurisdiction Allegations Are Insufficient to Demonstrate Personal Jurisdiction ........ 17

1. Plaintiffs' Allegations Do Not Establish the Purposeful Availment of the Forum or the Necessary Causal Nexus to Support Personal Jurisdiction ........ 18

2. Thomson Reuters' Publication of SIBOR and SOR Rates in the United States Is Insufficient to Establish Specific Jurisdiction ........ 23

3. Allegedly Foreseeable Harm Is Insufficient to Establish Specific Jurisdiction ........ 25

IV. Plaintiffs' Conspiracy Allegations are Insufficient to Establish Jurisdiction Over Foreign Defendants ........ 27

A. To Comport with Due Process, Jurisdiction Must Be Based on a Defendant's Efforts to Connect Itself to the Forum ........ 28

B. A Co-Conspirator's Forum Contacts Can Be Attributed to a Defendant Only Where They Were Directed and Controlled by the Defendant and the Defendant Knew of and Benefited from that Conduct ..... 30

C. Plaintiffs' Conspiracy Allegations Are Deficient Under the Applicable Jurisdictional Rules and Statutes ..... 32

1. Plaintiffs' Conspiracy Allegations Are Insufficient Under New York's Long-Arm Statute ..... 33

2. Plaintiffs Cannot Establish Conspiracy Jurisdiction Under Federal Rules of Civil Procedure 4(k)(2) or 4(k)(1)(C) ..... 34

V. Federal Statutes Providing for Nationwide Service of Process Do Not Establish Personal Jurisdiction ..... 35

A. The Foreign Defendants Are Not "At Home" and There Are No Suit Related Contacts in the United States ..... 36

B. Federal Statutes Are Constrained by Due Process ..... 37

C. Personal Jurisdiction Is Examined on a Claim-by-Claim Basis ..... 39

VI. Because There Is No Venue, There Cannot Be Personal Jurisdiction Under the Clayton Act Over Foreign Defendants Who Are Not Found and Do Not Transact Substantial Business in this District ..... 39

VII. Considerations of Fair Play, Substantial Justice, and International Comity Support Dismissal ..... 40

VIII. Plaintiffs' Alleged Forum Selection Clause Does Not Confer Jurisdiction as to Deutsche Bank ..... 42

IX. Jurisdictional Discovery Is Inappropriate ..... 44

CONCLUSION ..... 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co.* v. *Citigroup, Inc.*,
2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ........ *passim*

*Advanced Tactical Ordnance Systs., LLC* v. *Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ........ 26n

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015) ........ *passim*

*AM Tr.* v. *UBS AG*,
78 F. Supp. 3d 977 (N.D. Cal. 2015) ........ 21n

*Arma* v. *Buyseasons, Inc.*,
591 F. Supp. 2d 637 (S.D.N.Y. 2008) ........ 42n, 43

*Arnold* v. *Goldstar Fin. Sys., Inc.*,
2002 WL 1941546 (N.D. Ill. Aug. 22, 2002) ........ 42n

*Arrowsmith* v. *United Press Int'l*,
320 F.2d 219 (2d Cir. 1963) (*en banc*) ........ 32n

*Asahi Metal Indus. Co.* v. *Superior Court*,
480 U.S. 102 (1987) ........ 28n, 36n, 41

*AstraZeneca AB* v. *Mylan Pharms., Inc.*,
72 F. Supp. 3d 549 (D. Del. 2014) ........ 13n

*In re Auto. Parts Antitrust Litig.*,
2015 WL 4508938 (E.D. Mich. July 24, 2015) ........ 29n, 31

*AVRA Surgical Robotics, Inc.* v. *Gombert*,
41 F. Supp. 3d 350 (S.D.N.Y. 2014) ........ 25, 43n

*B & M Kingstone, LLC* v. *Mega Int'l Commercial Bank Co.*,
131 A.D.3d 259 (1st Dep't 2015) ........ 11, 11n

*Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999) ........ 32n

*Bankers Life & Cas. Co.* v. *Holland*,
346 U.S. 379 (1953)....................29, 35

*Beach* v. *Citigroup Alt. Invs. LLC*,
2014 WL 904650 (S.D.N.Y. Mar. 7, 2014)....................21n

*Bensmiller* v. *E.I Dupont de Nemours & Co.*,
47 F.3d 79 (2d Cir. 1995)....................13n

*Bertha Bldg. Corp.* v. *Nat'l Theatres Corp.*,
248 F.2d 833 (2d Cir. 1957), *cert. denied*, 356 U.S. 936 (1958)....................29, 35

*Bors* v. *Johnson & Johnson*,
2016 WL 5172816 (E.D. Pa. Sept. 20, 2016)....................13n

*Brown* v. *Kerkhoff*,
504 F. Supp. 2d 464 (S.D. Iowa 2007)....................29-30, 32

*Brown* v. *Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016)....................*passim*

*Calder* v. *Jones*,
465 U.S. 783 (1984)....................14

*Chew* v. *Dietrich*,
143 F.3d 24 (2d Cir. 1998)....................13n, 43

*Clopay Plastic Prods. Co.* v. *Excelsior Packaging Grp.*,
2014 WL 4473352 (S.D.N.Y. Sept. 11, 2014)....................14

*Cold Spring Harbor Lab.* v. *Ropes & Gray LLP*,
762 F. Supp. 2d 543 (E.D.N.Y. 2011)....................40n

*Courtesy Sandwich Shop, Inc.* v. *Port of N.Y. Auth.*,
12 N.Y.2d 379 (1963)....................13n

*Daimler AG* v. *Bauman*,
134 S. Ct. 746 (2014)....................*passim*

*Daniel* v. *Am. Bd. of Emergency Med.*,
428 F.3d 408 (2d Cir. 2005)....................35, 39-40

*Davis* v. *A & J Elec.*,
792 F.2d 74 (7th Cir. 1986)....................34n

*Diamond Chem. Co.* v. *Atofina Chems., Inc.*,
268 F. Supp. 2d 1 (D.D.C. 2003)....................34n

*Expoconsul Int'l, Inc.* v. *A/E Sys., Inc.*,
711 F. Supp. 730 (S.D.N.Y. 1989)....39n

*First Capital Asset Mgmt., Inc.* v. *Brickellbush, Inc.*,
218 F. Supp. 2d 369 (S.D.N.Y. 2002)....39

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) .... 9-11

*Galope* v. *Deutsche Bank Nat'l Tr. Co.*,
2014 WL 8662645 (C.D. Cal. Nov. 14, 2014)....17

*Gates* v. *Wilkinson*,
2003 WL 21297296 (S.D.N.Y. June 4, 2003) ....40, 40n

*Gem Corrugated Box Corp*. v. *Mead Corp*.,
189 F. Supp. 584 (S.D.N.Y. 1960)....40n

*Giordano* v. *UBS, AG*,
134 F. Supp. 3d 697 (S.D.N.Y. 2015)....20, 20n

*Gliklad* v. *Bank Hapoalim B.M,*
2014 WL 3899209 (Sup. Ct. N.Y. Co. Aug. 4, 2014) (Trial Order)....11n

*Grove Press, Inc.* v. *Angleton*,
649 F.2d 121 (2d Cir. 1981)....30n, 33

*Gucci Am., Inc.* v. *Weixing Li*,
768 F.3d 122 (2d Cir. 2014).... *passim*

*Hanna* v. *Blanchette*,
2014 WL 4185816 (S.D. Tex. Aug. 21, 2014) ....29n

*Hanson* v. *Denckla*,
357 U.S. 235 (1958)....28

*Heinfling* v. *Colapinto*,
946 F. Supp. 260 (S.D.N.Y. 1996)....33

*Indosuez Int'l Fin. B.V.* v. *Nat'l Reserve Bank*,
98 N.Y.2d 238 (2002) ....9, 43

*Ins. Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)....28

*International Shoe Co.* v. *Washington*,
326 U.S. 310 (1945)....28n

*J. McIntyre Mach., Ltd.* v. *Nicastro*,
564 U.S. 873 (2011)....................................................................................14, 18

*Jazini* v. *Nissan Motor Co.*,
148 F.3d 181 (2d Cir. 1998)....................................................................................24

*Kamen* v. *Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986)....................................................................................4

*Keeton* v. *Hustler Magazine, Inc.*,
465 U.S. 770 (1984)....................................................................................28

*Kipperman* v. *McCone*,
422 F. Supp. 860 (N.D. Cal. 1976) ....................................................................................29

*Koehler* v. *Bank of Bermuda Ltd.*,
101 F.3d 863 (2d Cir. 1996)....................................................................................44

*Koontz* v. *St. Johns River Water Mgmt. Dist.*,
133 S. Ct. 2586 (2013) ....................................................................................12

*L.H. Carbide Corp.* v. *Piece Maker Co.*,
852 F. Supp. 1425 (N.D. Ind. 1994) ....................................................................................33n

*Laydon* v. *Mizuho Bank, Ltd.*,
2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) .................................................................... *passim*

*Legal Servs. Corp.* v. *Velazquez,*
531 U.S. 533 (2001)....................................................................................13

*Levitin* v. *Sony Music Entm't*,
2015 WL 1849900 (S.D.N.Y. Apr. 22, 2015)....................................................................................20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016).................................................................... 11-12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) .................................................................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR V")*,
2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ....................................................................................2

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11-md-2262 (NRB) (S.D.N.Y. Dec. 23, 2015) (Dkt. No. 1267) ........................................44

*Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*,
673 F.3d 50 (2d Cir. 2012)....................................................................................33n, 41

*Marvel Characters, Inc.* v. *Kirby*,
726 F.3d 119 (2d Cir. 2013)....................................................................................32

*Menowitz* v. *Brown*,
991 F.2d 36 (2d Cir. 1993)....................................................................................13n

*Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)....................................................................................42

*Motorola Credit Corp.* v. *Uzan,*
132 F. Supp. 3d 518 (S.D.N.Y. 2015)....................................................................12

*In re New Motor Vehicles Canadian Export Antitrust Litg.*,
307 F. Supp. 2d 145 (D. Me. 2004) ......................................................................34n

*NewLead Holdings Ltd.* v. *Ironridge Global IV Ltd.*,
2014 WL 2619588 (S.D.N.Y. June 11, 2014) .........................................................7n

*NovelAire Techs., L.L.C.* v. *Munters AB*,
2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013)........................................................44

*In re Oil Spill by Amoco Cadiz off the Coast of France on Mar. 16, 1978*, 954 F.2d 1279 (7th Cir. 1992) ........................................................................................................37

*Omni Capital Int'l, Ltd.* v. *Rudolf Wolff & Co.*,
484 U.S. 97 (1987)...............................................................................................36n

*Ony, Inc.* v. *Cornerstone Therapeutics, Inc.*,
2012 WL 1835671 (W.D.N.Y. May 18, 2012), *aff'd*, 720 F.3d 490 (2d Cir. 2013) ...............25

*Penguin Grp. (USA) Inc.* v. *Am. Buddha*,
609 F.3d 30 (2d Cir. 2010)................................................................................... 4-5

*Pennoyer* v. *Neff*,
95 U.S. 714 (1877)...............................................................................................28n

*Perkins* v. *Benguet Consolidated Mining Co.*,
342 U.S. 437 (1952)............................................................................................. 6-7

*Picot* v. *Weston*,
780 F.3d 1206 (9th Cir. 2015) ..............................................................................26n

*Pincione* v. *D'Alfonso*,
506 F. App'x 22 (2d Cir. 2012) ...............................................................................40

*Precision Assocs., Inc.* v. *Panalpina World Transp. (Holding) Ltd.*,
2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), *adopted by* 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) .........................................................................................................34n

*Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*,
119 F.3d 935 (11th Cir. 1997) ....................................................................................38

*Robinson* v. *Overseas Military Sales Corp.*,
21 F.3d 502 (2d Cir. 1994)..........................................................................................4

*Romak USA, Inc.* v. *Rich*,
384 F.3d 979 (8th Cir. 2004) ......................................................................................31

*In re Roman Catholic Diocese, Inc.*,
745 F.3d 30 (2d Cir. 2014)...................................................................................5, 14

*Rush* v. *Savchuk*,
444 U.S. 320 (1980)...................................................................................................28

*Sealed Appellant 1* v. *Sealed Appellee 1*,
625 F. App'x 628, 1995 WL 450209 (5th Cir. 2015) ................................................4n

*SEC* v. *Softpoint, Inc.*,
2001 WL 43611 (S.D.N.Y. Jan. 18, 2001) ........................................................ 37-38

*In re Shulman Transp. Enters., Inc.*,
744 F.2d 293 (2d Cir. 1984)......................................................................................30n

*Sonera Holding B.V.* v. *Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir.), *cert. denied*, 134 S. Ct. 2888 (2014) ......................................... *passim*

*Spivak* v. *Law Firm of Tripp Scott, P.A.*,
2015 WL 1084856 (N.D. Ohio Mar. 10, 2015) .........................................................29n

*SPV OSUS Ltd.* v. *UBS AG*,
114 F. Supp. 3d 161 (S.D.N.Y. 2015).................................................................4, 18

*Sunward Elecs., Inc.* v. *McDonald*,
362 F.3d 17 (2d Cir. 2004).........................................................................................39

*In re Terrorist Attacks on Sept. 11, 2001*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005)...............................................................33, 33n

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013).........................................................................................5

*Tymoshenko* v. *Firtash*,
2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ...........................................................34n

*United States* v. *Smithfield Foods, Inc.*,
332 F. Supp. 2d 55 (D.D.C. 2004) ............................................................................34n

*Varga* v. *Credit Suisse*,
155 N.Y.S.2d 655 (Sup. Ct. N.Y. Co. Spec. T. 1956), *aff'd,* 2 A.D.2d 596 (1st Dep't 1956) ....11n

*Vera* v. *Republic of Cuba*,
91 F. Supp. 3d 561 (S.D.N.Y. 2015)....11, 11n

*Walden* v. *Fiore*,
134 S. Ct. 1115 (2014).... *passim*

*Waldman* v. *Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016).... *passim*

*World Skating Fed'n* v. *Int'l Skating Union*,
357 F. Supp. 2d 661 (S.D.N.Y. 2005)....33n

**Law Reviews**

Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234 (1983) ....30n

Janet Cooper Alexander, *Unlimited Shareholder Liability Through A Procedural Lens,* 106 Harv. L. Rev. 387 (1992) ....32n

Stuart M. Riback, Note, *The Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction*, 84 Colum. L. Rev. 506 (1984)....30, 32n

**Rules**

Federal Rule of Civil Procedure 4(k)(1)(A)....32, 32n

Federal Rule of Civil Procedure 4(k)(1)(C)....33, 34, 34n, 35

Federal Rule of Civil Procedure 4(k)(2) ....33, 34, 34n

Federal Rule of Civil Procedure 4(k)(2)(A)....34n

Federal Rule of Civil Procedure 12(b)(2) ....1, 44

Federal Rule of Civil Procedure 12(b)(3). ....1, 44

N.Y. CPLR § 302....32n

N.Y. CPLR § 302(a)(1)....32n

N.Y. CPLR § 302(a)(2)....32n

N.Y. CPLR § 302(a)(3)....32n

**Statutes**

15 U.S.C. § 22 (Clayton Act) ........ *passim*

18 U.S.C. § 1965(a) (RICO Act) ........ 35n, 38n

New York Banking Law
§ 200 ........ 9n, 12
§ 200(3) ........ *passim*
§ 200-b ........ 9-10, 12

15 Pa. Stat. and Cons. Stat. Ann. § 4124 ........ 13

42 Pa. Stat. and Cons. Stat. Ann. § 5301 ........ 13n

**Treatises**

4A Charles Alan Wright et al., *Federal Practice and Procedure* § 1069.7 (4th ed. 2015) ........ 39

CONFLICT OF LAWS § 10.2 (5th ed. 2010) ........ 36n

**Other Authorities**

Corrected Brief and Special Appendix for Defendants-Appellants, *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317 (No. 15-3135) (2d Cir. 2016) (Dkt. No. 137) ........ 37n

Foreign Defendants[1] respectfully submit this joint memorandum of law in support of their motion to dismiss the Amended Complaint for lack of personal jurisdiction and venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).

## PRELIMINARY STATEMENT

This action concerns the alleged manipulation of three financial benchmarks — U.S. Dollar Singapore Interbank Offered Rate ("USD SIBOR"), Singapore Dollar Singapore Interbank Offered Rate ("SGD SIBOR") (together, "SIBOR") and Singapore Swap Offer Rate ("SOR") — that were at all relevant times administered in Singapore by a Singapore trade association, were calculated in and published from Singapore, and were based on panel banks' submissions originating from outside the United States. Any alleged manipulation of USD SIBOR, SGD SIBOR, or SOR occurred entirely outside of the United States. Moreover, each of the Foreign Defendants has its place of incorporation and principal place of business outside of the United States. Because the Foreign Defendants are not "at home" in the United States and the alleged misconduct took place outside the United States, this Court does not have jurisdiction over these Defendants and all claims against them should be dismissed.

At bottom, Plaintiffs seek to compel Foreign Defendants to litigate these issues in New York based on allegations that it was "foreseeable" that their conduct abroad could impact the United States, but under established precedent, knowledge of a potential United States effect is not enough. To support a claim of specific jurisdiction, Plaintiffs must plausibly allege that For-

[1] Foreign Defendants are: Australia and New Zealand Banking Group, Ltd.; Barclays plc; Barclays Bank plc; BNP Paribas, S.A.; Crédit Agricole Corporate and Investment Bank; Crédit Agricole S.A.; Credit Suisse Group AG; Credit Suisse AG; Credit Suisse International; Commerzbank AG; DBS Bank Ltd.; DBS Group Holdings Ltd; Deutsche Bank AG; HSBC Holdings plc; ING Groep N.V.; ING Bank N.V.; Macquarie Bank Ltd.; Macquarie Group Ltd.; The Royal Bank of Scotland plc; The Royal Bank of Scotland Group plc; RBS Securities Japan Limited; Standard Chartered Bank; Standard Chartered PLC; The Bank of Tokyo-Mitsubishi UFJ, Ltd.; The Hong Kong and Shanghai Banking Corporation Limited; The Oversea-Chinese Banking Corporation Ltd.; UBS AG, UBS Securities Japan Co. Ltd.; and United Overseas Bank Limited.

eign Defendants "expressly aimed to cause" an effect in the United States — a standard that has not been (and cannot be) met here.

This Court lacks personal jurisdiction over the Foreign Defendants. First, under the Supreme Court's holding in *Daimler AG* v. *Bauman*, 134 S. Ct. 746 (2014), the Foreign Defendants are not subject to general jurisdiction because they are not "at home" in New York or the United States. Second, the Foreign Defendants have not consented to jurisdiction in New York or the United States as to Plaintiffs' claims merely by complying with the business registration statutes of New York or Pennsylvania. Third, the Amended Complaint alleges no "suit-related" contacts with New York or the United States that would support specific jurisdiction under the Supreme Court's decision in *Walden* v. *Fiore*, 134 S. Ct. 1115 (2014). In addition, with respect to their antitrust claims, Plaintiffs have failed to allege proper venue under the Clayton Act as to certain Foreign Defendants.

Addressing similar allegations of misconduct (i.e., alleged manipulation of various interest rate benchmarks) and similar theories of liability, three judges in this District have held that foreign banks — including many of the Foreign Defendants here — were not subject to jurisdiction in New York. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) (USD LIBOR); *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR V")*, 2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) (USD LIBOR); *7 W. 57th St. Realty Co.* v. *Citigroup, Inc.*, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) (USD LIBOR); *Laydon* v. *Mizuho Bank, Ltd.*, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) (Yen LIBOR/Euroyen TIBOR). This Court should do the same.

## FACTUAL BACKGROUND

### A. Foreign Defendants

All of the Foreign Defendants are headquartered in and organized under the laws of a foreign country — in Europe, Asia, or Australia. For each of the Foreign Defendants, their contacts with the United States and New York (if any) represent a comparatively small portion of their global business operations. *See* Appendix 1. Certain of the Foreign Defendants do not conduct business in or direct business at the United States at all. Each Foreign Defendant seeks dismissal of all claims on personal jurisdiction grounds and certain Foreign Defendants (the "Venue Defendants")[2] challenge venue in New York with respect to Plaintiffs' antitrust claim (Claim 1) and, therefore, personal jurisdiction over this claim on this additional ground (together the "Challenged Claims").

### B. Jurisdictional Allegations

Plaintiffs assert that this Court has personal jurisdiction over Foreign Defendants based on allegations that: (i) Foreign Defendants transacted business throughout the United States, including trading in allegedly manipulated SIBOR- and SOR-based derivatives for their own profit (AC ¶ 13)[3]; (ii) Foreign Defendants transmitted or caused Thomson Reuters to electronically transmit false SIBOR and SOR rates to United States market participants through Defendants' alleged daily electronic transmission of false SIBOR submissions and confirmations for collusive transactions intended to impact SIBOR and SOR (*id.* ¶ 15); (iii) Foreign Defendants knew that SIBOR and SOR were published throughout the United States (*id.* ¶ 16); and (iv) certain Foreign

[2] The Venue Defendants are: Barclays PLC, Crédit Agricole S.A.; Credit Suisse Group AG; Credit Suisse International; DBS Group Holdings; The Hongkong and Shanghai Banking Corporation Limited; HSBC Holdings plc; ING Groep N.V.; ING Bank, N.V.; The Royal Bank of Scotland plc, The Royal Bank of Scotland Group plc, RBS Securities Japan Limited; Standard Chartered PLC; UBS Securities Japan Co. Ltd.; Macquarie Group Ltd.

[3] Citations to the First Amended Class Action Complaint (Dkt. # 119) shall be in the form "(AC ¶__)."

Defendants consented to personal jurisdiction by registering a New York branch or representative office with the New York State Department of Financial Services or by registering to do business in Pennsylvania (*id.* ¶ 18). As to Deutsche Bank AG, Plaintiffs also allege personal jurisdiction in New York based upon a non-exclusive forum selection clause in a contract (*id.* ¶ 19). Under well-established precedent, however, none of these allegations confers personal jurisdiction or venue over the Foreign Defendants in New York as to the Challenged Claims as a matter of law.

## ARGUMENT

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc.* v. *Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).[4] "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Id.* at 34-35. The Court need not "draw argumentative inferences in the plaintiff's favor," *Robinson* v. *Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994), and "conclusory non-fact-specific jurisdictional allegations . . . will not establish a *prima facie* showing of jurisdiction." *SPV OSUS Ltd.* v. *UBS AG*, 114 F. Supp. 3d 161, 167 (S.D.N.Y. 2015). For purposes of a 12(b)(2) motion, the Court may consider information outside the pleadings, if that evidence is "competent," e.g., the evidence is from individuals with personal knowledge and is not hearsay. *Kamen* v. *Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).[5]

[4] Unless otherwise noted, all internal citations and quotation marks are omitted.

[5] *See also Sealed Appellant 1* v. *Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015) ("To the extent the plaintiffs' evidence is hearsay and is 'directly contradicted by defendant[s'] affidavit[s],' hearsay evidence 'will not defeat a motion for dismissal under Rule 12(b)(2)") (quoting *Cooper* v. *McDermott Int'l Inc.*, 62 F.3d 395, 1995 WL 450209, at *5 (5th Cir. 1995) and citing *Kamen*, 791 F.2d at 1011).

Personal jurisdiction can be general (all-purpose) or specific (conduct-linked). *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673-74 (2d Cir. 2013). "A court with general jurisdiction over a corporation may adjudicate *all* claims against that corporation — even those entirely unrelated to the defendant's contacts with the state." *Sonera Holding B.V.* v. *Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir.), *cert. denied*, 134 S. Ct. 2888 (2014) (emphasis in original). "Because general jurisdiction is not related to the events giving rise to the suit . . . courts impose a more stringent minimum contacts test." *In re Roman Catholic Diocese, Inc.*, 745 F.3d 30, 38 (2d Cir. 2014). Specific jurisdiction "'depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the State's regulation.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 131 S. Ct. 2846, 2851 (2011)). Generally, the relevant forum contacts are with the state where suit was filed and not with the entire United States. *Penguin Grp. (USA) Inc.*, 609 F.3d at 35; *see also infra* Part V.B.

## I. PLAINTIFFS CANNOT DEMONSTRATE GENERAL JURISDICTION OVER ANY OF THE FOREIGN DEFENDANTS

Plaintiffs do not allege that there is general jurisdiction over the Foreign Defendants (*see* AC ¶¶ 12-19), and with good reason. Under *Daimler AG* v. *Bauman*, "a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]', only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" 134 S. Ct. at 751 (quoting *Goodyear*, 131 S. Ct. at 2851). "*Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business — the 'paradigm' cases." *Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016). None of the Foreign Defendants is incorporated or has its principal place of

business in New York or even in the United States. As Plaintiffs acknowledge in their Amended Complaint (¶¶ 22-98), and as set forth in the declarations submitted by each Foreign Defendant (summarized in Appendix 1), each Foreign Defendant has its respective place of incorporation and principal place of business in Europe, Asia, or Australia. The Foreign Defendants thus fall far outside *Daimler*'s "paradigm case" for general jurisdiction.

Nor is this the type of "exceptional case" that would justify the exercise of personal jurisdiction outside of any Foreign Defendant's place of incorporation or principal place of business. The Supreme Court has clarified that an "exceptional case" would require contacts that are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 134 S. Ct. at 761 n.19. The Court cited *Perkins* v. *Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as an example of the type of "exceptional case" it had in mind. *Daimler*, 134 S. Ct. at 761 n.19. That case demonstrates just how narrow the exception is. In *Perkins*, the defendant company had been incorporated in the Philippines, where it operated gold and silver mines. *Id.* During World War II, it was forced to close its mining operations and move its president to Ohio, "where he kept an office, maintained the company's files, and oversaw the company's activities" during the War. *Daimler*, 134 S. Ct. at 756. The Court held the company was subject to general jurisdiction in Ohio because "Ohio was the corporation's principal, if temporary, place of business." *Id*. The Second Circuit's application of *Daimler* has confirmed that the exception is a narrow one. *See, e.g.*, *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 333 (2d Cir. 2016) (corporations subject to general jurisdiction only in states "where the entities [are] centered" and not where they engage in a "substantial, continuous, and systematic course of business"); *Sonera*, 750 F.3d at 226 ("'[E]ngage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render [a company] at home in a forum."); *Gucci Am., Inc.* v. *Weix-*

*ing Li*, 768 F.3d 122, 135 (2d Cir. 2014) (foreign bank not subject to general jurisdiction in New York, even though the bank had a New York branch, because it was "incorporated and headquartered elsewhere"). The factors justifying jurisdiction over the defendant in *Perkins* are not present here against any Foreign Defendant.

Perhaps in an attempt to fit this case into the narrow exception noted in *Daimler*, Plaintiffs point to non-suit related activities of certain United States subsidiaries or affiliates of several Foreign Defendants. (*E.g.*, AC ¶¶ 42, 55, 73) Plaintiffs have not alleged a basis on which the contacts of a Foreign Defendant's subsidiaries or affiliates could be imputed to that Defendant.[6] Yet, even if such imputations were warranted here, the relevant inquiry following *Daimler* is whether the subsidiary's contacts with the forum would "shift the [parent] company's primary place of business (or place of incorporation) away from" its home country. *Sonera*, 750 F.3d at 226 ("Even assuming [the subsidiaries'] New York contacts should be imputed to [the parent], they do not shift the company's primary place of business (or place of incorporation) away from Turkey.").[7] The test is comparative, and Plaintiffs fall far short of meeting it here. See Appendix 1; *Brown*, 814 F.3d at 629 (courts "must assess [a] company's local activity not in isolation, but *in the context of the company's overall activity*: the general jurisdiction inquiry 'does not focus solely on the magnitude of the defendant's in-state contacts,' but 'calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.") (quoting *Daimler*, 134 S.

[6] Plaintiffs improperly make allegations in the aggregate against the corporate families of certain Defendants, offer no allegations connecting domestic subsidiaries to any regulatory investigations into USD SIBOR, SGD SIBOR, and SOR or other alleged misconduct, and offer no allegation that corporate formalities have been ignored by any Defendant. *See* Merits Brief at II.B.

[7] Following *Daimler*'s critical view toward an agency analysis of personal jurisdiction, courts have noted that such an analysis is no longer applicable in the context of general jurisdiction. *See Sonera*, 750 F.3d at 226; *NewLead Holdings Ltd.* v. *Ironridge Global IV Ltd.*, 2014 WL 2619588, at *4 (S.D.N.Y. June 11, 2014). In *Sonera*, the Second Circuit noted that "we need not consider whether the agency principles announced in *Wiwa* survive in light of *Daimler*." 750 F.3d at 226. This Court likewise need not reach that issue, however, because, even if the contacts of Foreign Defendants' subsidiaries' were imputed to Foreign Defendants, still none of the Foreign Defendants would be "at home" in New York.

Ct. at 762 n.20); *Gucci*, 768 F.3d at 135 (the "at home" test means that "a corporation may nonetheless be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state") (quoting *Daimler*, 134 S. Ct. at 761-62). Based on that comparative analysis, a court considers a company's place of incorporation and what single location is the company's *de facto* primary place of business.

In *LIBOR IV*, Judge Buchwald, applying *Daimler* and *Gucci*, found that global banks such as Barclays Bank PLC, Credit Suisse AG, Deutsche Bank AG, Royal Bank of Canada, and The Royal Bank of Scotland Group plc — many of which are movants here — were not subject to general jurisdiction in New York. *See* 2015 WL 6243526, at *27. Addressing similar allegations to those in the Amended Complaint, the court held:

> We conclude ***without hesitation*** that none of these contacts with New York and Virginia comprises an "exceptional case where [the defendant's] contacts with [those states] are so substantial as to render it 'at home' in that state." The defendant in *Daimler*, like the defendants here, had continuous and systematic contacts, which were both substantial in an absolute financial sense, and significant to the defendant's business. Notwithstanding the defendant's "sizable" operations, general personal jurisdiction was nonetheless inappropriate. Here, even if the defendants' contacts with New York and Virginia happen to have been somewhat greater as an absolute or relative matter than were *Daimler*'s contacts with California, the difference is not so marked as to present a case where, as in *Perkins*, the defendant could truly be called at home in those states.

*Id.* (emphasis added) (quoting *Sonera*, 750 F.3d at 223).

None of the Foreign Defendants presents an "exceptional case" within the meaning of *Daimler* because none has a *de facto* principal place of business in New York or the United States that would render it "'essentially at home in the forum.'" *Gucci*, 768 F.3d at 135 (quoting *Daimler*, 134 S. Ct. at 761 & n.19). Plaintiffs fail to meet their burden to show that any Foreign Defendant is subject to general personal jurisdiction in New York or even in the United States.

## II. FOREIGN DEFENDANTS DID NOT CONSENT TO GENERAL JURISDICTION

### A. Foreign Defendants Did Not Consent to General Jurisdiction in New York

Plaintiffs argue that certain Foreign Defendants[8] consented to personal jurisdiction in New York by registering branches or agencies with the New York Department of Financial Services under New York Banking Law § 200-b, regardless of whether the conduct at issue in the action has any connection to New York and regardless of whether the claims at issue have any connection to those New York branches.[9] That argument is contrary to the language of the statute and the case law interpreting it, and, if accepted, would be unconstitutional as applied in this case. Such registration does not subject these Defendants to personal jurisdiction in this action.

New York Banking Law § 200-b — which merely provides that a New York resident may maintain an action against a foreign banking corporation — does not confer general personal jurisdiction over Foreign Defendants. Indeed, that provision relates to subject matter jurisdiction, not personal jurisdiction. *See Indosuez Int'l Fin. B.V.* v. *Nat'l Reserve Bank*, 98 N.Y.2d 238, 248 (2002) (referring to "[s]ubject matter jurisdiction under Banking Law § 200-b" and considering personal jurisdiction without reference to that provision); *In re Foreign Exch. Benchmark Rates Antitrust Litig.* ("*FX*"), 2016 WL 1268267, at *2 (S.D.N.Y. Mar. 31, 2016)

---

[8] Plaintiffs allege that those Foreign Defendants are: The Bank of Tokyo-Mitsubishi UFJ, Ltd. (AC ¶ 84), Barclays Bank PLC (AC ¶ 54), BNP Paribas, S.A. (AC ¶ 45), Commerzbank AG (AC ¶ 97), Crédit Agricole Corporate and Investment Bank (AC ¶ 60), Credit Suisse AG (AC ¶ 63), Deutsche Bank AG (AC ¶ 58), ING Bank, N.V. (AC ¶ 41), Macquarie Bank Ltd. (AC ¶ 94), The Oversea-Chinese Banking Corporation Ltd. (AC ¶ 18), Standard Chartered Bank (AC¶ 70), United Overseas Bank Limited (AC ¶ 74), and The Royal Bank of Scotland plc (AC ¶ 33). As to the other Foreign Defendants who are not alleged to have registered a branch in New York, the allegation is irrelevant.

[9] Plaintiffs assert that certain Foreign Defendants purposefully availed themselves of the benefits of transacting business in New York by registering with the New York Department of Financial Services and, therefore, subject themselves to specific jurisdiction. AC ¶ 18. Because Plaintiffs fail to allege how registration under New York Banking Law § 200 relates in any way to Foreign Defendants' suit-related conduct, they have failed to allege that Foreign Defendants purposely availed themselves of the forum by registering with the New York Department of Financial Services. *See Walden*, 134 S. Ct. at 1121 ("[T]he defendant's *suit-related conduct* must create a substantial connection with the forum State.") (emphasis added); *see also 7 W. 57th St.*, 2015 WL 1514539, at *10 ("Plaintiff must demonstrate that the Foreign Bank's *suit-related* conduct creates minimum contacts with New York, however, not simply that the Foreign Banks have a presence here or conduct business activities here in general.").

(explicitly concluding that "the New York Court of Appeals has interpreted § 200-b to confer subject matter jurisdiction and *not personal jurisdiction*") (emphasis added); *see also Brown*, 814 F.3d at 640 (consent under registration statutes rarely confers general jurisdiction). Even if § 200-b established consent to personal jurisdiction (contrary to its text and the case law), it would not benefit Plaintiffs here. As in *FX*, "the statute [also] is inapplicable, as none of the plaintiffs in this case is alleged to be a resident of *New York*." 2016 WL 1268267, at *2 (emphasis added). Under the plain language of the statute, "resident[s] of this state" are limited to "corporation[s] formed under any law of this state," N.Y. Banking Law § 200-b(1), and neither Plaintiff alleges that it was incorporated in New York. (AC ¶¶ 20-21)

To the extent Plaintiffs rely on Section 200(3) of the New York Banking Law (AC ¶ 18 n.15), that provision also does not confer personal jurisdiction here. Section 200(3) requires banks operating in New York to "appoint[] the superintendent and his or her successors its true and lawful attorney, upon whom all process in any action or proceeding against it on a cause of action *arising out of a transaction with its New York agency or agencies or branch or branches*, may be served with the same force and effect as if it were a domestic corporation and had been lawfully served with process within the state." N.Y. Banking Law § 200(3) (emphasis added). Thus, on its face, the statute expressly limits any consent to those suits "arising out of a transaction" with the Foreign Bank's New York agency or branch.[10] *Id.* § 200(3); *see also Brown*, 814 F.3d at 640 (a statute, like the one at issue here, that merely requires a foreign corporation to register and accept service in the forum does not amount to an implied consent to general jurisdic-

[10] This limitation is buttressed by the statute's historical evolution. The 1938 version of Banking Law § 200(3) provided *unlimited* consent for service of process in "any action or proceeding" brought by a resident of New York. N.Y. Banking Law § 200(3) (1938). The scope of the consent was limited in 1951, when the Legislature amended that service of process provision to limit it to "cause[s] of action arising out of a transaction with its New York agency or agencies." N.Y. Banking Law § 200(3) (1951).

tion because, otherwise, "every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief").

As courts in this District have repeatedly held, "the most natural reading of [§ 200(3)] *does not* provide general jurisdiction." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016) (emphasis in original); *FX*, 2016 WL 1268267, at *2 (registering under § 200(3) does not subject registrants to "general jurisdiction over all claims, but instead is limited to claims arising out of transactions with the . . . [d]efendants' New York agencies or branches"); *7 W. 57th St.*, 2015 WL 1514539, at *11 ("The plain language of this provision [i.e., § 200] limits any consent to personal jurisdiction by registered banks to *specific* personal jurisdiction.").[11] A contrary interpretation "would 'risk unravelling the jurisdictional structure envisioned [by the Supreme Court] based only on a slender inference of consent pulled from routine bureaucratic measures that were largely designed for another purpose entirely.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (quoting *Brown*, 814 F.3d at 639). Plaintiffs have not alleged a cause of action arising out of a transaction with any Foreign Defendant's New York branch or agency, as required to obtain jurisdiction under § 200(3).

Neither this Court's decision in *Vera* v. *Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015), cited in the Amended Complaint, nor *B & M Kingstone, LLC* v. *Mega Int'l Commercial Bank Co.*, 131 A.D.3d 259 (1st Dep't 2015), apply here for at least two reasons.[12]

---

[11] *See also Gliklad* v. *Bank Hapoalim B.M,* 2014 WL 3899209, at *1 (Sup. Ct. N.Y. Co. Aug. 4, 2014) (Trial Order) (same); *Varga* v. *Credit Suisse,* 155 N.Y.S.2d 655, 658 (Sup. Ct. N.Y. Co. Spec. T. 1956) ("Clearly, the instant action [arising out of the bank's alleged conduct in Europe] does not come within the scope of that section" [i.e., § 200(3)].), *aff'd,* 2 A.D.2d 596 (1st Dep't 1956).

[12] While *Vera* and *B & M Kingstone* held that registration under Section 200(3) can be read as consent to personal jurisdiction, the Second Circuit has since issued *Brown* which clarified that provisions such as Section 200(3) are

First, the question in those cases was whether "'foreign banks operating local branches in New York . . . [have] obligations to participate as third-parties in lawsuits which involve assets under their management,' *not* [whether] such banks have consented to general jurisdiction in New York." *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (alterations and emphasis in original). Second, those cases preceded the Second Circuit's decision in *Brown*, which rejects the notion that a registration statute can confer general jurisdiction over a corporate defendant without "plainly advis[ing] the registrant that enrolling in the state as a foreign corporation and transacting business will vest the local courts with general jurisdiction over the corporation." 814 F.3d at 640.

In any event, accepting Plaintiffs' counter-textual reading of §§ 200-b and 200(3) would violate the U.S. Constitution. First, Plaintiffs' reading would violate the Foreign Defendants' due process rights, as the Second Circuit held in *Gucci*, that the mere presence of a local branch in the forum does not subject that foreign bank to general jurisdiction. 768 F.3d at 135; *see also Motorola Credit Corp.* v. *Uzan,* 132 F. Supp. 3d 518, 521 (S.D.N.Y. 2015) ("*Gucci* stands for the proposition that mere operation of a branch office in a forum — and satisfaction of any attendant licensing requirements — is not constitutionally sufficient to establish general jurisdiction."). Second, Plaintiffs' interpretation of § 200 would also violate the unconstitutional conditions doctrine by requiring Defendants to surrender their constitutional rights (i.e., the due process rights guaranteed under *Daimler* and *Gucci*) to receive a government benefit (i.e., the privilege of registering a bank branch in New York). *See Koontz* v. *St. Johns River Water Mgmt. Dist.,* 133 S. Ct. 2586, 2594 (2013). Even if Plaintiffs' construction of § 200 were a "reasona-

not consent to jurisdiction statutes at all as the text says nothing about consent to personal jurisdiction and merely provides for the Superintendent of Banking to be appointed as agent for service for a limited category of cases. *See Brown*, 814 F.3d at 640 (holding that a statute, like the one at issue here, that merely requires a foreign corporation to register and accept service in the forum does not amount to an implied consent to general jurisdiction).

ble" one, which it is not, it should be rejected in order to "avoid[] the constitutional issue." *Legal Servs. Corp.* v. *Velazquez,* 531 U.S. 533, 545 (2001).[13]

### B. Barclays Bank PLC, The Royal Bank of Scotland Group plc, and UBS AG Did Not Consent to Jurisdiction in New York by Registering in Pennsylvania

Plaintiffs also allege that Barclays Bank PLC, The Royal Bank of Scotland Group plc, and UBS AG consented to jurisdiction in New York because they registered to do business in Pennsylvania under 15 Pa. Stat. and Cons. Stat. Ann. § 4124. Plaintiffs' claim is deficient for two reasons. First, even if it were true that registration under the Pennsylvania Statute amounted to consent to general jurisdiction *in Pennsylvania*, that would not subject any Defendant to jurisdiction in *New York*. *See Brown*, 814, F.3d at 629-30 (defendants' amenability to general jurisdiction in Maryland was irrelevant to whether Defendant was amenable to jurisdiction in Connecticut). Second, for the reasons described above in Part II.A, such an interpretation of the Pennsylvania Statute would violate these Foreign Defendants' rights under the due process clause and would constitute an unconstitutional condition.[14]

[13] *See also Courtesy Sandwich Shop, Inc.* v. *Port of N.Y. Auth.,* 12 N.Y.2d 379, 389 (1963) ("[W]here there are two possible interpretations [of a New York statute] the court will accept that which avoids constitutional doubts."); *cf. Bensmiller* v. *E.I Dupont de Nemours & Co.,* 47 F.3d 79, 84 (2d Cir. 1995) (construing Connecticut long-arm statute narrowly because, *inter alia,* "the construction asserted by plaintiffs . . . arguably offends the Due Process Clause of the Fourteenth Amendment").

[14] While a court in the Eastern District of Pennsylvania recently held that a foreign corporation does consent to general personal jurisdiction by registering in the state under 42 Pa. Stat. and Cons. Stat. Ann. § 5301 because Pennsylvania's registration statute specifically advises the registrant that registering to do business in the state "will subject a corporation to general personal jurisdiction," *Bors* v. *Johnson & Johnson*, 2016 WL 5172816, at *4 (E.D. Pa. Sept. 20, 2016), that decision has no bearing on the constitutional question here. *Bors* relied on a Third Circuit decision that has been called into question by *Daimler*, *see AstraZeneca AB* v. *Mylan Pharms., Inc.*, 72 F. Supp. 3d 549 (D. Del. 2014), and, in any event, is contrary to *Brown*, the controlling precedent here. *See Menowitz* v. *Brown*, 991 F.2d 36, 40 (2d Cir. 1993) ("[T]he federal circuit courts are under duties to arrive at their own determinations of the merits of federal questions presented to them; '[i]f a federal court simply accepts the interpretation of another circuit without [independently] addressing the merits, it is not doing its job.'" (quoting *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)); *see also Chew* v. *Dietrich*, 143 F.3d 24, 30 (2d Cir. 1998) ("[W]e are at liberty to decide for ourselves what the Due Process Clause requires to sustain personal jurisdiction.") In *Brown*, the Second Circuit expressly reserved judgment as to whether a registration statute that includes express language requiring a corporation to consent to general jurisdiction would be consistent with due process. *Brown*, 814 F.3d at 639. For the reasons described in Part II.A, the Pennsylvania registration statute is not.

## III. FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION

"[S]pecific jurisdiction cases are limited to those involving issues deriving from, or connected with, the very controversy that establishes jurisdiction." *In re Roman Catholic Diocese, Inc.*, 745 F.3d at 38. In *Walden* v. *Fiore*, the Supreme Court explained that in cases such as this one, involving alleged intentional wrongdoing, specific jurisdiction requires that "the defendant's suit-related conduct must create a substantial connection with the forum State," "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," and the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." 134 S. Ct. at 1121-22 (emphasis in original). Where, as here, the alleged conduct at issue took place outside the forum, Plaintiffs must demonstrate that (i) Defendants' allegedly wrongful actions were "expressly aimed" at the forum and (ii) that Plaintiffs' claims arise out of those actions. *Calder* v. *Jones*, 465 U.S. 783, 788-89 (1984); *see also J. McIntyre Mach., Ltd.* v. *Nicastro*, 564 U.S. 873, 887-90 (2011).

On the second point, "[t]he exercise of specific jurisdiction depends on in-state activity that '*gave rise to the episode-in-suit*.'" *Waldman*, 835 F.3d at 331 (quoting *Goodyear*, 564 U.S. at 923) (emphasis added). To be sufficient for personal jurisdiction, "'there must be a "substantial nexus" between the [contacts] and the cause of action.'" *Clopay Plastic Prods. Co.* v. *Excelsior Packaging Grp.*, 2014 WL 4473352, at *4 (S.D.N.Y. Sept. 11, 2014). The Second Circuit requires, at a minimum, a "'but for' connection between the defendant's forum-directed activities and the claim," *LIBOR IV*, 2015 WL 6243526, at *28, and requires proximate cause "[w]here, [as here, each of the Foreign Defendants] has only limited contacts with the state." *Id.* (citing *Chew* v. *Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998)). Plaintiffs fail to meet this test.

### A. The Alleged Wrongful Conduct Occurred Outside the United States

There are no contacts in the forum that provide a basis for specific jurisdiction here. USD SIBOR, SGD SIBOR, and SOR were all administered by the Association of Banks in Singapore (AC ¶ 1), were intended to reflect the cost of borrowing funds *in Singapore*, and, as the declarations submitted with this motion demonstrate,[15] the panel bank Defendants' submissions

[15] Decl. of W. Gougherty ¶¶ 18-19 ("During all times relevant to the allegations in this lawsuit, all submissions by an RBS entity of rates to the Association of Banks in Singapore for use in the calculation of SIBOR [and SOR] were both determined and transmitted from offices outside of the United States."); Decl. of J. Connors ¶¶ 9-10 ("For the period 2004-2012, no UBS branch, office, agency, or employee in the United States was responsible for the determination or submission of rates to rates to the ABS for use in the calculation of Singapore Dollar ("SGD") SIBOR [and SGD Swap Offer Rate ("SGD SOR")]. During this period, employees who were responsible for the determination and submission of rates to the ABS for use in the calculation of SGD SIBOR [and SGD SOR] were located in Singapore."); Decl. of B.M. Stoelinga & W.A. Brouwer for ING Groep ¶¶ 5-6 ("None of ING Groep's direct or indirect subsidiaries in the United States during the putative class period made rate submissions to the Association of Banks in Singapore for U.S. Dollar Singapore Interbank Offered Rate ("USD SIBOR"), Singapore Dollar Singapore Interbank Offered Rate ("SGD SIBOR") or Singapore Swap Offer Rate ("SOR"). . . . Any rate submissions to the Association of Banks in Singapore for SOR during the putative class period were made from ING Bank's Singapore branch, and none were made from the United States."); Decl. of B.M. Stoelinga & W.A. Brouwer for ING Bank ¶¶ 5-6 ("None of ING Bank's direct or indirect subsidiaries in the United States during the putative class period made rate submissions to the Association of Banks in Singapore for U.S. Dollar Singapore Interbank Offered Rate ("USD SIBOR"), Singapore Dollar Singapore Interbank Offered Rate ("SGD SIBOR") or Singapore Swap Offer Rate ("SOR"). . . . Any rate submissions to the Association of Banks in Singapore for SOR during the putative class period were made from the Singapore branch, and none were made from the United States."); Decl. of W. Hennessey ¶¶ 6-7 ("During the time period relevant to this litigation, BNPP's Singapore branch was the branch responsible for SIBOR- [and SOR-]related submissions, and all of the employees who made the submissions were located outside the United States. Neither the New York branch of BNPP nor any other U.S.-based office, branch, agency, representative office, or entity that is or was a direct or indirect subsidiary of BNPP have, or at any relevant time had, any responsibility for determining or making SIBOR- [or SOR-]related submissions."); Decl. of F. Shen ¶ 8 ("From January 1, 2007 through the present, all of OCBC's employees who were responsible for submissions or made submissions for SIBOR or SOR were located in Singapore, and those submissions were made from Singapore."); Decl. of P. Gonsalves ¶¶ 21-23 ("At no time between January 1, 2007 and December 31, 2011 (the Relevant Period") did BBPLC or any of its subsidiaries submit rates to the Association of Banks in Singapore ("ABS") for use in the calculation of either the U.S. dollar Singapore Interbank offered rate or the Singapore dollar Singapore Interbank offered rate. During the Relevant Period, Singapore-based employees of BBPLC submitted forward point rates and U.S. dollar/Singapore dollar spot rates to the ABS for use in the calculation of the Singapore dollar Swap Offered Rate ("SOR"). BBPLC submissions regarding components of SOR were determined exclusively by BBPLC employees located in Singapore and transmitted exclusively to ABS from Singapore"); Decl. of J. Randazzo ¶¶ 3-4 ("During the time period relevant to this litigation, Deutsche Bank AG's Singapore Dollar Singapore Interbank Offered Rate ("SGD SIBOR") [and Singapore Swap Offered Rate ("SOR")] submissions were not calculated or submitted in New York or the United States. No employees responsible for Deutsche Bank AG's SGD SIBOR [or SOR] submissions were located in New York or the United States."); Decl. of O. Chazareix ¶ 10 ("CACIB did not begin contributing to the Association of Banks in Singapore's SIBOR and SOR benchmark rates until July 19, 2010. CACIB's contributions used in the calculation of SIBOR and SOR were determined and submitted in Singapore. The employees who were responsible for and involved in determining CACIB's contributions used in the calculation of SIBOR and SOR were employed in Singapore. None of these employees were either employed or located in the United States."); Decl. of D. Kläy for CSAG ¶ 8 ("From January 1, 2007 to December 31, 2011 (the "Class Period"), CSAG Singapore Branch was the Credit Suisse entity that made submissions for use in the calculation of the

used in setting those benchmarks were made from locations outside the United States.[16] None of the alleged misconduct by Foreign Defendants occurred within New York or the United States.

U.S. Dollar Singapore Interbank Offered Rate ("USD SIBOR"), Singapore Dollar Singapore Interbank Offered Rate ("SGD SIBOR"), and Singapore Swap Offered Rate ("SOR"). No other Credit Suisse entity was involved in the submissions for use in the calculation of SIBOR and SOR."); Decl. of D. Koh ¶ 5 ("Throughout the Class Period, all of the SCB employees who made, or had input into the making of, SCB Singapore branch's submissions in relation to (1) SIBOR in respect of either USD or SGD, (2) the USD/SGD FX spot rate that was a component of SOR in respect of SGD, and (3) the implied USD/SGD FX forward rates that were also a component of SOR in respect of SGD, were based in Singapore, and all of those submissions were made from SCB's Singapore branch to Thomson Reuters, as agent for the ABS, in Singapore. At no time did any U.S.-based employees of SCB or of any of SCB's affiliates make or have any input into the making of these submissions. Neither the New York branch of SCB nor any other U.S.-based office of any entity that is or was a direct or indirect subsidiary of SCPLC has, or at any time had, any responsibility for determining or making any of SCB Singapore branch's submissions to Thomson Reuters as agent for ABS in relation to SIBOR in respect of either USD or SGD, the USD/SGD FX spot rate, or the USD/SGD FX forward rates as a component of SGD SOR."); Decl. of B. Lim ¶ 6 ("During the alleged Class Period, UOB's United States agency offices were not involved in the SIBOR or SOR submission and calculation process, and, as set forth in documents cited in the FAC, see FAC ¶ 74 nn.65-66, those offices engage in "very limited derivatives activity in the U.S." UOB's United States agency offices do not engage in any derivatives-related trading in the United States which involves financial instruments priced, benchmarked, and/or settled based on SIBOR or SOR."); Decl. of D. Meng ¶ 6 ("All DBS Bank employees and supervisors responsible for determining or transmitting DBS Bank's SIBOR or SOR component submissions to the Association of Banks in Singapore during the relevant time period were located in Singapore."); Decl. of G. Gaudion ¶¶ 11, 13 ("Specifically, to the extent ANZBGL may have contributed to SIBOR [or SOR] during the Alleged Class Period, ANZBGL's SIBOR [and/or SOR] submissions: a. were formulated and submitted by traders in ANZ Singapore's Markets division who were physically located in Singapore; b. were not formulated or submitted by any employees of ANZBGL's New York branch or U.S. subsidiaries, including ANZ Securities, Inc.; and c. were not submitted from any ANZBGL office in the United States."); Decl. of T. Goulart ¶ 8 ("During the time period relevant to this legal action, the BTMU employees responsible for or involved with the determination or submission of rates to the Association of Banks in Singapore for use in the calculation of USD SIBOR, SGD SIBOR, or SOR all were located in Singapore and made submissions from there. Neither BTMU's New York branches or its other U.S. branches or other offices performed those services for BTMU."); Decl. of C.M. Ng ¶ 18 ("At all relevant times HBAP was the only HSBC Group entity that determined and submitted USD Singapore Interbank Offered Rate ("SIBOR"), SGD SIBOR, and Swap Offer Rate ("SOR") benchmark rate contributions. HBAP determined and submitted its USD SIBOR, SGD SIBOR, and SOR benchmark rate contributions from offices of its Singapore branch in Singapore. HBAP did not make submissions to either the SIBOR or SOR benchmarks from within the United States."); Decl. of M. Grummer for MGL ¶ 7 ("Neither MGL nor any of its subsidiaries was ever a member of the USD SIBOR, SGD SIBOR, or SOR panels, and none has ever been responsible for or submitted rates for use in the calculation of USD SIBOR, SGD SIBOR, or SOR."); Decl. of M. Grummer for MBL ¶ 7 ("Neither MBL nor any of its subsidiaries was ever a member of the USD SIBOR, SGD SIBOR, or SOR panels, and has never been responsible for or submitted rates for use in the calculation of USD SIBOR, SGD SIBOR, or SOR."); Decl. of M. Woldter ¶¶ 8-9 ("Commerzbank has never served as a panel bank with respect to SIBOR. . . . All Commerzbank personnel that had any involvement in determining or submitting Commerzbank's contributions with respect to SOR were located in Commerzbank's Singapore branch office. None was located in the United States. Moreover, neither the New York branch of Commerzbank nor any of Commerzbank's subsidiaries in the United States had any involvement in determining or submitting Commerzbank's contributions with respect to SOR.").

[16] The Amended Complaint asserts — without any factual support — that Foreign Defendants manipulated SIBOR and SOR through some vaguely described "collusive transactions" at some unspecified time. (*See, e.g.*, AC ¶¶ 15, 143). Even setting aside the fact that Plaintiffs' formulaic pleadings are facially deficient, Plaintiffs allege no facts that any of these supposed transactions had any United States nexus. *See* Merits Brief at Parts II.D & III.B. Similarly, as made clear in the Merits Brief, during the relevant time period Foreign Defendants' trading activity had no effect on the setting of SOR, which was set based on submissions by panel banks. *See* Merits Brief at Background,

Courts have dismissed suits alleging manipulation of other interest rate benchmarks against many of the same Foreign Defendants here for lack of personal jurisdiction where there was not a sufficient connection between the alleged wrongful conduct and the forum. *See 7 W. 57th St.*, 2015 WL 1514539, at *10-11 (USD LIBOR); *Laydon*, 2015 WL 1515358, at *2-6 (Yen LIBOR/Euroyen TIBOR); *Galope* v. *Deutsche Bank Nat'l Tr. Co.*, 2014 WL 8662645, at *3-4 (C.D. Cal. Nov. 14, 2014) (USD LIBOR). This case is no different, making the exercise of jurisdiction inappropriate.[17]

### B. Plaintiffs' Specific Jurisdiction Allegations Are Insufficient to Demonstrate Personal Jurisdiction

Because Plaintiffs can identify no in-forum contacts connected with the allegedly wrongful conduct, they search for *any contacts* Foreign Defendants have with New York and the United States. This is unavailing, as these other alleged contacts are both inadequately pleaded and not "suit-related," as required to confer specific jurisdiction. *7 W. 57th St.*, 2015 WL 1514539, at *10; *see also LIBOR IV*, 2015 WL 6243526, at *28-32 ("[A]llowing a defendant's non-suit-related conduct to substitute, for personal jurisdiction purposes, for suit-related conduct" would "confuse or blend general and specific jurisdiction inquiries.").

The Amended Complaint alleges that Foreign Defendants: (1) transacted in manipulated SIBOR- and SOR-based instruments within the United States and with United States counterparties (AC ¶¶ 13-17) (though it alleges no detail about any particular transaction, provides no specifics as to whether Foreign Defendants allegedly profited from any such transaction, alleges no misconduct with respect to such transactions, and — except for certain swaps with Deutsche

Part A.

[17] Neither do any of the potential exceptions to this general rule identified in *LIBOR IV* apply here. *LIBOR IV*, 2015 WL 6243526, at *27-33 (no specific jurisdiction except for defendants contracting within the forum, defendants alleged to have made manipulated LIBOR submissions from within the forum, or defendants whose traders were alleged to have made requests for manipulated LIBOR submissions from within the forum).

Bank AG (AC ¶ 142) — never alleges that the Foreign Defendants transacted in any SIBOR- and SOR-based instruments with any Plaintiff); (2) transmitted electronic messages within the United States to United States investors (AC ¶ 15) (though it provides no detail of the content, frequency, or timing of those messages); and (3) like every other sophisticated financial entity, knew that SIBOR and SOR were published throughout the United States (AC ¶ 16). These allegations, even if accepted, do not show the purposeful availment required to confer personal jurisdiction.

#### 1. *Plaintiffs' Allegations Do Not Establish the Purposeful Availment of the Forum or the Necessary Causal Nexus to Support Personal Jurisdiction*

Plaintiffs conclusorily allege that Foreign Defendants "purposefully availed themselves" of the forum by "intentionally" transacting in SIBOR- and SOR-based instruments within the United States and with United States counterparties to benefit their trading positions. (AC ¶¶ 3, 13-17)[18] But such "conclusory non-fact-specific jurisdictional allegations" are not enough to establish specific jurisdiction. *SPV OSUS Ltd.,* 114 F. Supp. 3d at 167. Rather, Plaintiffs must provide a *plausible* factual basis for their jurisdictional allegations. *See id*. Plaintiffs have failed to adequately allege that Foreign Defendants aimed their alleged manipulation of SIBOR and SOR to impact the United States or that their claims otherwise "aris[e] out of or relate[] to the [Defendants'] contacts with the forum." *Nicastro*, 564 U.S. at 881.

First, except for certain transactions with Deutsche Bank,[19] Plaintiffs' transactions were in Singapore Dollar foreign exchange forwards, which did not even involve interest rate products and were not based on the interest rate benchmarks represented by USD SIBOR, SGD SIBOR, or SOR. *See* Merits Brief at Part II.C.1. While Plaintiffs allege that market participants may

[18] Plaintiffs repeatedly and incorrectly lump both USD SIBOR and SGD SIBOR together as "SIBOR." They are different rates and allegations concerning one do not necessarily concern the other.

[19] Even as to alleged transactions with Deutsche Bank AG, the allegations are insufficient as Plaintiffs do not provide any details regarding the date on which any transaction was entered, the date it was settled, the notional amount, or the applicable interest rate. *See* Merits Brief at Background, Part D.

take SIBOR or SOR into account when pricing a foreign exchange forward (*see* AC ¶ 119), it does not follow (and Plaintiffs do not allege) that Plaintiffs' actual foreign exchange forward transactions were affected by any alleged USD SIBOR, SGD SIBOR, or SOR manipulation. Nor does it follow that any Foreign Defendant *purposely* sought to induce such an effect on Plaintiffs' foreign-exchange forward transactions, as would be required to satisfy the test for specific jurisdiction.[20]

Second, Plaintiffs fail to plead facts demonstrating that any of the Foreign Defendants (other than Deutsche Bank AG) transacted in SIBOR- and SOR-based instruments in the United States. In fact, as to several Foreign Defendants,[21] Plaintiffs do not make even conclusory allegations that they transacted in SIBOR- or SOR-based instruments in the United States at all. Plaintiffs cite two Federal Reserve Bank of New York surveys of foreign exchange and interest rate derivatives dealers to allege that certain Foreign Defendants listed in those surveys transacted in SIBOR- and SOR-based instruments within the United States.[22] (*See* AC ¶¶ 13-14) But the

---

[20] The chart relied upon by Plaintiffs to allege a connection between their transactions and SIBOR and SOR (*see* AC ¶ 119) does nothing to show that any Foreign Defendant purposely sought to influence the foreign exchange forward market in which Plaintiffs allegedly transacted. That chart — which unambiguously calculates a "*derived* 6 month SGD SOR" based on known values for the present markets for spot and forward exchanges of USD and SGD ("USD/SGD Forward Rate" and "USD/SGD Spot Rate") — demonstrates how market forces (i.e., pricing in the spot and forward foreign-exchange markets) can influence the value of SOR, including, as in the chart, by turning SOR into a negative interest rate. But nothing in that chart suggests that "[USD] SIBOR and SOR rates are used to adjust the spot price of the USD-SGD currency pair to account for interest earned." (AC ¶ 119) *See* Merits Brief at Part II.C.1. In fact, the article shows how SOR can be determined once FX forwards and spot rates have already been set, not the other way around. The deficiency applies not just to the foreign exchange forwards Sonterra allegedly purchased, but also to the swaps FrontPoint alleges it purchased, as Plaintiffs fail to explain how the purported swaps were priced or how SGD SIBOR might have affected that pricing. *See Id.*

[21] These Foreign Defendants are: Crédit Agricole S.A., DBS Bank Ltd., DBS Group Holdings Ltd, ING Group N.V., ING Bank N.V., United Overseas Bank Limited, The Hong Kong and Shanghai Banking Corporation Limited, Macquarie Bank Ltd., Macquarie Group Ltd., and Standard Chartered PLC. While some of these Foreign Defendants are alleged to have traded in unspecified derivatives and other financial instruments in the United States (*see, e.g.*, AC ¶¶ 74, 94) none are alleged to have traded in SIBOR- or SOR-based derivatives, the financial instruments at issue here.

[22] Plaintiffs do not allege that Foreign Defendants Australia and New Zealand Banking Group, Ltd., Crédit Agricole Corporate and Investment Bank, Crédit Agricole S.A., DBS Bank Ltd., DBS Group Holdings LTD, DBS Vickers Securities (USA) Inc., ING Groep N.V., ING Bank N.V., Macquarie Bank Ltd., Macquarie Group Ltd., Oversea-Chinese Banking Corporation Ltd., Standard Chartered PLC, The Hong Kong and Shanghai Banking Corporation

surveys do not say what Plaintiffs claim they do: the surveys refer only to interest rate derivatives in certain currencies; they do not show that these interest rate derivatives were linked to the USD SIBOR, SGD SIBOR, and SOR benchmarks, as opposed to some other reference rate.[23] Plaintiffs' allegations are therefore irrelevant.

Moreover, even if it were true that some of the transactions were linked to USD SIBOR, SGD SIBOR, and SOR, the survey does not specify which of the dozens of banks that participated in the survey engaged in the SIBOR- and SOR-based transactions or which affiliate of that bank entered into those transactions. Federal Reserve Bank of New York 2007 Survey at 16-17; Federal Reserve Bank of New York 2010 Survey at 17-18. Absent specific allegations akin to those required to pierce the corporate veil (which Plaintiffs do not make), the Court cannot consider forum contacts of a *defendant's affiliates* in assessing whether a *defendant* is subject to personal jurisdiction. *Giordano* v. *UBS, AG*, 134 F. Supp. 3d 697, 707 (S.D.N.Y. 2015) ("Plaintiff cannot aggregate all of the forum contacts of the entire UBS family of entities and attribute them all to UBS AG . . . ."); *see also Levitin* v. *Sony Music Entm't*, 2015 WL 1849900, at *7 (S.D.N.Y. Apr. 22, 2015).

Plaintiffs' allegations that certain Foreign Defendants or their affiliates[24] offer SIBOR- and SOR-based derivatives in the United States on the Bloomberg Terminal are also deficient. (*See* AC ¶ 113) First, Plaintiffs refer to offers on the Bloomberg Terminal made *today*, not years

Limited, United Overseas Bank Limited, participated in the Federal Reserve Bank of New York surveys.

[23] *See* The Foreign Exchange and Interest Rate Derivatives Markets: Turnover in the United States, The Federal Reserve Bank of New York (Apr. 2007) at 25-26 ("Federal Reserve Bank of New York 2007 Survey"); The Foreign Exchange and Interest Rate Derivatives Markets: Turnover in the United States, April 2010, The Federal Reserve Bank of New York (Apr. 2010) at 26-27 ("Federal Reserve Bank of New York 2010 Survey").

[24] Plaintiffs allege these Foreign Defendants include: Australia and New Zealand Banking Group, Ltd., Barclays, BNP Paribas, Crédit Agricole Corporate and Investment Bank, Credit Suisse, Commerzbank AG, Deutsche Bank, HSBC, Standard Chartered Bank, OCBC, and UBS. Plaintiffs engage in improper group pleading and fail to specify which of these global banks' affiliates offered these instruments. *See Giordano*, 134 F. Supp. 3d at 707.

ago during the Class Period. Second, Plaintiffs allege only that offers were made on the Bloomberg Terminal, not that Foreign Defendants entered actual derivative transactions. Third, Plaintiffs do not allege that these Foreign Defendants targeted United States counterparties, as opposed to offering pricing to what Plaintiffs term the Bloomberg Terminal's "worldwide" subscribers. Fourth, Plaintiffs fail to allege that the entities offering SIBOR- or SOR-based derivatives were actually the Foreign Defendants (as opposed to their United States-based affiliates).[25]

Third, Plaintiffs fail to adequately allege that Foreign Defendants manipulated the price of *any* SIBOR- and SOR-based instruments they are alleged to have traded in the United States or with United States counterparties. Rather, Plaintiffs generally allege that Foreign Defendants manipulated USD SIBOR, SGD SIBOR, and SOR over a five year period to benefit their trading positions but offer no specifics — such as the identities of the supposed manipulators, the days on which a particular Foreign Defendant attempted to manipulate SIBOR or SOR, whether their submissions resulted in SIBOR or SOR being manipulated, or even whether it was SGD SIBOR or USD SIBOR — to indicate that any Foreign Defendant affected SIBOR and SOR instruments offered in the United States. *See* Merits Brief at Part I.A. Plaintiffs' reliance on various regulatory findings lends them no support. For example, the Monetary Authority of Singapore ("MAS") announcement found only that certain traders in "the trading community in Singapore"[26] "engaged in several *attempts* to inappropriately influence" SIBOR and SOR. The MAS Statement made "no conclusive finding" that SIBOR or SOR "were successfully manipulated."

---

[25] Any allegations that Foreign Defendants transacted in New York with absent class members or other non-parties are irrelevant. *See Beach* v. *Citigroup Alt. Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) ("Contacts with unnamed class members may not be used as a jurisdictional basis[.]"); *accord AM Tr.* v. *UBS AG*, 78 F. Supp. 3d 977, 986 (N.D. Cal. 2015).

[26] *MAS Proposes Regulatory Framework for Financial Benchmarks*, MONETARY AUTHORITY OF SINGAPORE, ¶ 7 (June 14, 2013), *available at* http://www.mas.gov.sg/news-and-publications/media-releases/2013/mas-proposes-regulatory-framework-for-financial-benchmarks.aspx ("MAS Statement") (emphasis added). Nothing in the MAS Statement suggests that traders "in the trading community of Singapore" were in any location other than Singapore, let alone New York or the United States, and any suggestion is implausible.

MAS Statement ¶ 7. And the statement makes no finding that any such instruments were offered in the United States, let alone during the relevant time period.

Similarly, Plaintiffs point to CFTC orders concerning only three banks (Deutsche Bank, RBS, and UBS) (the "CFTC Orders"), but the only reference each of the orders makes to SIBOR or SOR is a single footnote observing that conduct "similar" to the conduct that occurred concerning other interest rate benchmarks addressed in those orders also occurred at these specific entities in connection with SIBOR or SOR, but not that the CFTC found actual manipulation.[27] Critically, nowhere do the CFTC Orders provide anything to suggest that any alleged manipulation occurred in New York or the United States, affected any transactions in New York or the United States, or whether other entities were involved in any alleged manipulation.

Furthermore, even if Plaintiffs had adequately alleged that Foreign Defendants transacted in manipulated SIBOR- and SOR-based instruments in the United States or with counterparties in the United States (and they have not), such allegations would still be insufficient for this Court's exercise of personal jurisdiction. "Due process requires that a defendant be haled into court in a forum State based on [its] own affiliation with the State, not based on the random, for-

[27] CFTC Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act Making Findings and Imposing Remedial Sanctions against UBS AG and UBS Securities Japan Co., Ltd., CFTC Docket No. 13-09 (Dec. 19, 2012) ("UBS CFTC Order") at 38 n.21 ("Through its internal investigation, UBS identified evidence of similar misconduct involving submissions for at least the Hong Kong Interbank Offered Rate ("HIBOR"), the Singapore Interbank Offered Rate ("SIBOR"), the Singapore Swap Offer Rate ("SOR") and the Australian Bank Bill Swap Rate ("BBSW")."); CFTC Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions against Deutsche Bank AG, CFTC Docket No. 15-20 (Apr. 23, 2015) ("Deutsche CFTC Order") at 3 n.3 ("Deutsche Bank's misconduct extended beyond the LIBOR and Euribor benchmarks. Through its internal investigation, Deutsche Bank identified evidence of similar misconduct with respect to attempts to influence, and at times attempts to manipulate, other interest rate benchmarks, including, but not limited to, Singapore Interbank Offered Rate, Singapore Swap Offer Rate, and Torn/Next Indexed Swaps for the Swiss Franc."); CFTC Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings and Imposing Remedial Sanctions against The Royal Bank of Scotland plc and RBS Securities Japan Limited, CFTC Docket No. 13-14 (Feb. 6, 2013) ("RBS CFTC Order") at 4 n.3 ("RBS traders engaged in similar misconduct in connection with the Singapore Interbank Offered Rate ("SIBOR") and the Singapore Swap Offered Rate ("SOR"). Some SIBOR and SOR-related misconduct took place from May 2010 through August 2011, even as RBS was conducting its internal investigation.").

tuitous, or attenuated contacts [the defendant] makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123. To comport with due process, Plaintiffs must allege the purpose of the Foreign Defendants entering these transactions was as part of a scheme to manipulate USD SIBOR, SGD SIBOR, and SOR. The Amended Complaint is devoid of any such allegations. Indeed, addressing similar allegations (concerning alleged manipulation of USD LIBOR), Judge Buchwald found defendants' alleged transactions in USD LIBOR-based instruments in the United States were insufficient to confer specific jurisdiction. *LIBOR IV*, 2015 WL 6243526, at *32. Accordingly, Judge Buchwald held that due process was not satisfied by alleging that manipulated financial instruments were sold in the forum. *Id.* Rather, jurisdiction was only proper in the locations where plaintiffs adequately alleged the misconduct occurred (i.e., the jurisdictions where defendants allegedly made false submissions or requested them). *Id.* Here, Plaintiffs fail to plausibly allege that: (i) Foreign Defendants entered into transactions in furtherance of their alleged efforts to manipulate SIBOR and SOR; (ii) Foreign Defendants' alleged requests to manipulate SIBOR or SOR were made in New York or the United States, *see* Part III.A above; and (iii) panel bank Foreign Defendants' allegedly false SIBOR and SOR submissions were made in New York or the United States. S*ee id.* Plaintiffs have, therefore, failed to allege that Foreign Defendants purposely availed themselves of New York or the United States or to have plausibly alleged any causal nexus between alleged conduct outside the United States and effects within the United States.

*2. Thomson Reuters' Publication of SIBOR and SOR Rates in the United States Is Insufficient To Establish Specific Jurisdiction*

Plaintiffs allege that Defendants that were SIBOR panel banks transmitted false SIBOR rates from abroad to Thomson Reuters in the United States for further dissemination and that artificial SIBOR quotes were transmitted by electronic servers in the United States or while cross-

ing United States borders. (AC ¶¶ 15-17) Plaintiffs' conclusory allegations, which identify no specific transmissions — or any specific Defendant — are facially insufficient to justify personal jurisdiction even as to those banks that Plaintiffs alleged were SIBOR panel banks. *See Jazini* v. *Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) ("conclusory non-fact-specific jurisdictional allegations" cannot establish a *prima facie* showing of jurisdiction). Even if the Court were to credit Plaintiffs' illogical assertion that Defendants that were SIBOR panel banks transmitted SIBOR submissions to Thomson Reuters in the United States, as opposed to an office in Asia that was actually open during Singapore trading hours,[28] that allegation would still not be enough to provide an adequate basis for personal jurisdiction. The mere transmission of SIBOR submissions across United States wires (if it even occurred) does not create a "substantial connection" with any domestic forum and, thus, would not give rise to personal jurisdiction. *See Walden*, 134 S. Ct. at 1121.

Plaintiffs also allege that the daily SIBOR and SOR rates are electronically published, distributed, and disseminated throughout the United States by non-party Thomson Reuters and other non-parties. (AC ¶¶ 14-15) To the extent Plaintiffs allege that the publication of SIBOR or SOR in the United States by non-parties gives rise to jurisdiction, such allegations fail under *Walden*, which made clear that the defendant's relationship with the forum must "arise out of contacts that the 'defendant *himself*' creates with the forum State," 134 S. Ct. at 1122, and the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* The alleged publication by a non-party across United States wires is the kind of "highly attenuated connection" that courts in other interest rate benchmark actions have rejected

[28] The panel banks submitted rates to Reuters at around 11 a.m. Singapore time. (*See, e.g.*, AC ¶¶ 101, 102, 107) *See also* Merits Brief at Background, Part A. It is implausible that Thomson Reuters asked panel banks to provide submissions to its staff in New York, where it would be 10:00 p.m. or 11:00 p.m., rather than its staff in Singapore, where it would be 11:00 a.m. and where staff was responsible for review of panel bank submissions.

as insufficient to support the exercise of personal jurisdiction. *See Laydon*, 2015 WL 1515358, at *3 ("Communications that passed through and/or were stored within the United States are insufficient to assert personal jurisdiction over a defendant."); *LIBOR IV*, 2015 WL 6243526, at *30 (alleged dissemination of USD LIBOR in the United States is insufficient to confer personal jurisdiction over foreign banks because it is not "link[ed] . . . to the allegedly tortious activity"). Indeed, Plaintiffs do not even allege that such third parties' publication of SIBOR was purposefully directed at New York, which is fatal to any claim of specific jurisdiction. *See AVRA Surgical Robotics, Inc.* v. *Gombert*, 41 F. Supp. 3d 350, 359 (S.D.N.Y. 2014) ("[A]ll the relevant alleged conduct occurred thousands of miles away in Germany" and "[t]o the extent that [defendant] did transact business in New York . . . the complaint does not establish how, if at all, these activities relate – much less substantially relate – to the causes of action pled."); *Ony, Inc.* v. *Cornerstone Therapeutics, Inc.*, 2012 WL 1835671, at *5 (W.D.N.Y. May 18, 2012) (personal jurisdiction lacking where defendants merely entered into license agreement with New York-based publisher to publish an article in a journal whose circulation was not limited to New York), *aff'd*, 720 F.3d 490 (2d Cir. 2013).

#### 3. *Allegedly Foreseeable Harm Is Insufficient to Establish Specific Jurisdiction*

Plaintiffs at most allege only that Foreign Defendants should have known their alleged manipulation of SIBOR and SOR would have had an impact on the United States — and, apparently, virtually every other country in the world — because they, like every other sophisticated financial party in these markets, knew SIBOR- and SOR-based instruments were traded internationally, including in the United States. (*See* AC ¶ 17) But *Walden* makes plain that foreseeability of harm to the plaintiff in its home jurisdiction is insufficient to satisfy due process: "The proper question" for specific jurisdiction "is not where the plaintiff experienced a particular inju-

ry or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 134 S. Ct. at 1125. The Second Circuit recently emphasized this point in *Waldman*, clarifying that under *Walden*, "a defendant's mere knowledge that a plaintiff resides in a specific jurisdiction [is] insufficient to subject a defendant to specific jurisdiction in that jurisdiction *if the defendant does nothing in connection with the tort in that jurisdiction*."[29] *Waldman*, 835 F.3d at 338 (emphasis added). Following *Walden*, Plaintiffs must "plead facts demonstrating that the [SIBOR and SOR] manipulation was done with the *express* aim of causing an effect in New York." *7 W. 57 St.*, 2015 WL 1514539, at *10-11 (effects test not satisfied even assuming negative effect in New York "was a foreseeable result of the Foreign Banks' alleged LIBOR manipulation") (emphasis added); *Laydon*, 2015 WL 1515358, at *3 (relying on *Walden* and finding allegations of manipulation of Yen LIBOR insufficient under the effects test).

Plaintiffs' allegations here — merely that the alleged manipulation of SIBOR and SOR would have a "reasonably foreseeable effect on [the] United States" (AC ¶ 17) — fail to demonstrate that any of the Foreign Defendants' own "conduct connects [them] to the forum" in any way, much less in "a meaningful way," as required by *Walden*. 134 S. Ct. at 1125. In *Waldman*, the Second Circuit emphasized this point, clarifying that due process was not satisfied when plaintiffs alleged that wrongful acts occurred outside the United States and appeared to target "people from all over the world," because even though the alleged misconduct "continuously hit Americans," it could not be said that "the United States [was] the focal point of the torts alleged." 835 F.3d at 337-40. Here, as in *Waldman*, the alleged wrongful acts occurred outside

[29] Other Circuits have reached the same conclusion. *See, e.g.*, *Picot* v. *Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (no specific jurisdiction where "injury is entirely personal to [the plaintiff] and would follow him wherever he might choose to live or travel"); *Advanced Tactical Ordnance Sys., LLC* v. *Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("[A]fter *Walden* there can be no doubt that the plaintiff cannot be the only link between the defendant and the forum.").

the United States, and Plaintiffs concede, as they must, that the SIBOR and SOR instruments are traded "worldwide" (AC ¶ 14), negating any inference that the United States was "the focal point" of any alleged manipulation. If there was a "focal point" of the alleged conduct, it was clearly Singapore, for the reasons described above. Indeed, when addressing allegations of USD LIBOR manipulation in *LIBOR IV*, Judge Buchwald rejected the same arguments Plaintiffs make here, noting that "it does not stand to reason[] that foreign defendants aimed their [allegedly] manipulative conduct at the United States or any particular forum state." 2015 WL 6243526, at *32. And if that conclusion applies as to USD LIBOR, it likewise applies to other foreign reference rates like USD SIBOR, SGD SIBOR, and SOR.

## IV. PLAINTIFFS' CONSPIRACY ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH JURISDICTION OVER FOREIGN DEFENDANTS

Plaintiffs' reliance on allegations of a conspiracy to impute contacts from in-forum Defendants to Foreign Defendants is unsupported by both fact and law. As an initial matter, Plaintiffs have failed to plausibly allege a conspiracy, which alone is dispositive of "conspiracy" jurisdiction. *See* Merits Brief at II.A. Even if Plaintiffs had plausibly alleged a conspiracy, both federal due process (after *Walden*) and the applicable jurisdictional statutes preclude the imputation of all contacts from an in-forum conspirator to a foreign defendant (a theory of jurisdiction we term "vicarious conspiracy jurisdiction"). Rather, an in-forum conspirator's contacts can be imputed only where there are plausible allegations that the in-forum co-conspirator was acting at the direction and control of the out-of-forum defendant, i.e., that there was a principal-agent relationship. Plaintiffs have made no such allegations.

### A. To Comport with Due Process, Jurisdiction Must Be Based on a Defendant's Efforts to Connect Itself to the Forum

The due process component of the personal jurisdiction analysis "recognizes and protects an individual liberty interest."[30] *Ins. Corp. of Ireland, Ltd.* v. *Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). For this reason, jurisdiction must be established based on "[e]ach defendant's contacts with the forum State," and those contacts "must be assessed individually." *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson* v. *Denckla*, 357 U.S. 235, 253 (1958). Rather, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*; *see also Rush* v. *Savchuk*, 444 U.S. 320, 332-33 (1980) (jurisdiction not established over non-resident defendant by attributing insurer's forum contacts).

The Supreme Court's unanimous decision in *Walden* crystalized these principles. There, the Court held that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant." 134 S. Ct. at 1122. For this reason, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State. . . . [A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123, 1126. In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State," not based on "con-

[30] Prior to *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945), the notion that "every [s]tate possesses exclusive jurisdiction and sovereignty over persons and property within its territory" was the guiding principle for courts' adjudicatory authority. *Pennoyer* v. *Neff*, 95 U.S. 714, 722 (1877). Under modern jurisprudence, the due process analysis focuses on the defendant's expectations, rather than the power of the sovereignty, and thus the relevant question is whether the defendant "purposefully directed [conduct] toward the forum State." *Asahi Metal Indus. Co.* v. *Superior Court*, 480 U.S. 102, 112 (1987).

tacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123. Vicarious conspiracy jurisdiction is inconsistent with due process, as *Walden* makes clear.

Courts considering the viability of vicarious conspiracy jurisdiction post-*Walden* have therefore rejected it, holding that participation in a conspiracy cannot "provide a standalone basis for jurisdiction." *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting conspiracy jurisdiction as inconsistent with due process).[31] Rather, these courts have found that allegations of conspiracy should not change the jurisdictional analysis: only if a defendant itself "has in fact engaged in some affirmative act directed at the forum" — through actions for itself or in service of a conspiracy, but in either case, through its own affirmative acts — may that defendant potentially be subject to jurisdiction. Otherwise, as is the case here, it may not. *Id*.

For similar reasons, both the Supreme Court and Second Circuit have rejected the analogous theory of vicarious "conspiracy venue," under which a defendant may be sued in any venue in which an alleged co-conspirator is subject to venue. *See Bankers Life & Cas. Co.* v. *Holland*, 346 U.S. 379, 384 (1953); *Bertha Bldg. Corp.* v. *Nat'l Theatres Corp.*, 248 F.2d 833, 836 (2d Cir. 1957), *cert. denied*, 356 U.S. 936 (1958). If venue, a creature of statute, cannot be based solely on a co-conspirator's conduct, neither can "personal jurisdiction, the exercise of which is governed by strict constitutional standards." *Kipperman* v. *McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976); *accord Brown* v. *Kerkhoff*, 504 F. Supp. 2d 464, 517 (S.D. Iowa 2007).

[31] *See also In re Auto. Parts Antitrust Litig.*, 2015 WL 4508938, at *4 (E.D. Mich. July 24, 2015) (rejecting conspiracy jurisdiction and noting "[t]he Court has no basis for imputing the actions of one defendant to another in analyzing jurisdiction"); *Spivak* v. *Law Firm of Tripp Scott, P.A.*, 2015 WL 1084856, at *5 (N.D. Ohio Mar. 10, 2015) (rejecting theory that "contacts of one alleged member of a civil conspiracy with the forum state may be attributed to other members of that conspiracy who have no such personal contacts"); *Hanna* v. *Blanchette*, 2014 WL 4185816, at *5 (S.D. Tex. Aug. 21, 2014) (same).

**B. A Co-Conspirator's Forum Contacts Can Be Attributed to a Defendant Only Where They Were Directed and Controlled by the Defendant and the Defendant Knew of and Benefited from that Conduct**

A co-conspirator's conduct accordingly may be imputed to a defendant only if, consistent with traditional agency principles, the defendant directed and controlled the agent's in-forum tortious conduct and knew about and benefitted from such contacts.[32] In such a case, the defendant purposefully avails itself of the forum by directing and controlling its agent's actions there under the law of agency. *See Daimler*, 134 S. Ct. at 759 n.13 ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there.").[33] Without such direction and control, however, the alleged agent's actions are "mere unilateral activity of third persons" insufficient to confer personal jurisdiction over the defendant. Stuart M. Riback, Note, *The Long Arm and Multiple Defendants: The Conspiracy Theory of In Personam Jurisdiction*, 84 Colum. L. Rev. 506, 524 (1984); *see also Brown*, 504 F. Supp. 2d at 517 ("The Supreme Court has repeatedly emphasized actions of third parties not controlled by a nonresident are not sufficient to satisfy due process considerations unless the nonresident defendant also purposely avails himself of the privilege of conducting activities within the forum.").

Requiring a showing that each defendant engaged in suit-related conduct in the forum — whether personally or through an agent under its control — sufficient to purposefully avail itself of the forum is the only approach consistent with *Walden* and the due process case law holding that it is the "contacts that the 'defendant *himself*' creates with the forum State" that matter, not

[32] *See In re Shulman Transp. Enters., Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) ("An essential characteristic of an agency relationship is that the agent acts subject to the principal's direction and control."); *cf. Grove Press, Inc.* v. *Angleton*, 649 F.2d 121, 122 (2d Cir. 1981) (under New York law, agent's actions count for personal jurisdiction only if "the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident [defendant]").

[33] *See also* Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234, 234 (1983) ("If a non-resident defendant has directed another person to act for his benefit and under his control in the forum state, the other party's act may supply the minimum contact needed to support jurisdiction over the non-resident in an action arising out of the act.").

those "between the plaintiff (or third parties) and the forum State." *Walden*, 134 S. Ct. at 1122 (emphasis in original) (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985)).[34] For jurisdiction to attach, *the defendant* must direct suit-related activity toward a forum in a manner sufficient to purposefully avail itself of the forum. *Id.* at 1122-23. In the context of an alleged conspiracy, therefore, at irreducible minimum, the plaintiff must allege that the conspirator acting in the forum was doing so at the direction and control of its co-conspirators and the act committed in the forum was in furtherance of the conspiracy. This is nothing more than application of general due process principles. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d at 227 ("[I]f an entity has in fact engaged in some affirmative act directed at the forum, it may be subject to jurisdiction for that reason. The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine."); *see also In re Auto. Parts Antitrust Litig.*, 2015 WL 4508938, at *4.

Plaintiffs have not met this standard. Plaintiffs do not allege that *any* Defendant directed or controlled any other Defendant's submissions, communications, or statements or that *any* Defendant knew of such contacts and benefitted from them or furthered the alleged conspiracy — a conspiracy, purportedly, with respect to the setting of SIBOR and SOR, not the marketing of derivatives products in the United States. Absent any allegations of control, attributing to Defendants their alleged co-conspirators' purported suit-related in-forum activities (had Plaintiffs alleged any) would violate due process. *See Romak USA, Inc.* v. *Rich*, 384 F.3d 979, 985 (8th Cir.

[34] While the Court in *Walden* made clear that conduct "either by the defendant in person *or through an agent*, goods, mail, or some other means," may be "relevant contact," nowhere did it suggest that unrelated conduct by a third party not acting as an agent could satisfy the jurisdictional test. 134 S. Ct. at 1122 (emphasis added).

2004); *Brown*, 504 F. Supp. 2d at 517.[35] Moreover, even if Plaintiffs could allege the requisite direction and control (and they have not), they have still failed to allege jurisdiction as they have not alleged any wrongful acts in the forum.

### C. Plaintiffs' Conspiracy Allegations Are Deficient Under the Applicable Jurisdictional Rules and Statutes

Even if Plaintiffs' conspiracy allegations could satisfy due process — and they do not — the Court would still lack personal jurisdiction over the Foreign Defendants, because Plaintiffs cannot show that the "district court [has] a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). Plaintiffs may attempt to rely on New York's long-arm statute[36] under Federal Rule of Civil Procedure 4(k)(1)(A)[37] as a

[35] Janet Cooper Alexander, *Unlimited Shareholder Liability Through A Procedural Lens,* 106 Harv. L. Rev. 387, 401 n.66 (1992) ("[Vicarious conspiracy jurisdiction] goes well beyond agency law because the co-conspirator's acts need not be within the defendant's contemplation. Such an attribution of contacts should violate due process. . . ."); Riback, 84 Colum. L. Rev. at 524 ("[T]he agency created by a conspiracy cannot be thought of in the same way as an ordinary agency. In conventional agency, the focus is on the principal's control or authorization. In conspiracy . . . a conspirator can be held [liable for] acts he did not know about by persons he did not know about. Thus, treating an act of an agent as the act of his principal for jurisdictional purposes makes little sense if the relationship between the actors is only joint participation in a conspiracy.").

[36] Plaintiffs also fail to establish a non-conspiracy basis for personal jurisdiction under New York's long-arm statute as to the Venue Defendants. Under N.Y. CPLR § 302(a)(1), Plaintiffs fail to allege that the Venue Defendants "transact[] any business within the state or contract[] anywhere to supply goods or services in the state," much less that Plaintiffs' claim arises out of that transaction of business or contract. Likewise, Plaintiffs cannot show that Venue Defendants have committed "a tortious act within the state," as is required under N.Y. CPLR § 302(a)(2). *See infra* at Part IV.C.1. Finally, under N.Y. CPLR § 302(a)(3) Plaintiffs have failed to show that Venue Defendants have committed a "tortious act without the state causing injury to person or property within the state." *See supra* Part III. And Plaintiffs also fail to show that Venue Defendants "(i) regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expect[] or should reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce . . . ." *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 790-91 (2d Cir. 1999) (quoting N.Y. CPLR § 302(a)(3)); *see supra* Part III. In any event, Plaintiffs' failure to satisfy due process requirements is equally fatal to any attempt to assert jurisdiction under N.Y. CPLR § 302. *See Bank Brussels*, 117 F.3d at 784 (holding due process requirements must be met in addition to New York long-arm requirements).

[37] Rule 4(k)(1)(A) provides: "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A). "[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith* v. *United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (*en banc*); *see also Brown*, 814 F.3d at 624 (same).

basis for jurisdiction for each of their five claims. In addition, for their federal claims, Plaintiffs may attempt to rely on Federal Rules of Civil Procedure 4(k)(1)(C) or 4(k)(2). Plaintiffs' conspiracy allegations fail under each of the applicable jurisdictional statutes.

#### 1. *Plaintiffs' Conspiracy Allegations Are Insufficient Under New York's Long-Arm Statute*

In New York, to impute a co-conspirator's forum contacts, the plaintiff must demonstrate that "(a) the defendant had an awareness of the effects in New York of [the co-conspirator's] activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request of or on behalf of the out-of-state defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005); *see also Grove Press, Inc.* v. *Angleton,* 649 F.2d 121, 122 (2d Cir. 1981); *Heinfling* v. *Colapinto*, 946 F. Supp. 260, 265 (S.D.N.Y. 1996). Plaintiffs' allegations are deficient under New York's long arm statute for two reasons. First, New York requires, at a minimum, an allegation that an overt act occurred in the forum.[38] Because Plaintiffs have failed to plausibly allege that the purported conspiracy had any presence in New York[39] or the United States, as discussed in Part III above, Plaintiffs' conspiracy allega-

[38] "To plead a valid cause of action for conspiracy under New York law, a plaintiff must allege the primary tort and four elements: (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d at 805. A "bland assertion" of a conspiracy is insufficient to establish personal jurisdiction under New York's long-arm statute. *World Skating Fed'n* v. *Int'l Skating Union*, 357 F. Supp. 2d 661, 665 (S.D.N.Y. 2005) (quoting *Lehigh Valley Indus., Inc.* v. *Lehigh Colonial Corp.*, 527 F.2d 87, 93-94 (2d Cir. 1975)).

[39] To the extent that Plaintiffs rely on the New York long-arm statute to establish personal jurisdiction (even where the cause of action is a federal statute such as the Clayton Act), the relevant contacts are those that Defendants had with that state. *See LIBOR IV*, 2015 WL 6243526, at *22; *see also Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (relying on New York law to interpret New York's long-arm statute in a case involving claims brought under the Anti-Terrorism Act, 18 U.S.C. § 233(a) and the Alien Tort Statute, 28 U.S.C. § 1350); *L.H. Carbide Corp.* v. *Piece Maker Co.*, 852 F. Supp. 1425, 1431 (N.D. Ind. 1994) ("[I]mplicit in the newly amended Rule, is the notion that a federal district court is still to look to the long-arm statute of the state in which it sits, pursuant to Rule 4, in order to assert personal jurisdiction over a non-resident defendant in cases that arise under federal law, i.e., non-diversity cases, where Congress has not enacted a personal jurisdiction statute specifically for the federally created cause of action."). In any event, regardless of whether a state or nationwide contacts approach

tions fail. Second, Plaintiffs must allege that the Foreign Defendants exercised direction or control over an in-forum co-conspirator. Because Plaintiffs have made no such allegations, as discussed above in Part IV.B, Plaintiffs' conspiracy allegations fail for this additional reason.

### 2. *Plaintiffs Cannot Establish Conspiracy Jurisdiction Under Federal Rules of Civil Procedure 4(k)(2) or 4(k)(1)(C)*

Several courts that have examined whether conspiracy jurisdiction can be exercised under Rule 4(k)(2)[40] or 4(k)(1)(C)[41] have held there is no conspiracy jurisdiction under federal common law. *See, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d at 227 (rejecting conspiracy theory of jurisdiction under 4(k)(1)(C) and 4(k)(2)).[42] As to Rule 4(k)(2), these courts have rejected the "certainly nebulous 'conspiracy jurisdiction' doctrine" under federal common law for two reasons.[43] *Id.* First, extending the reach of these statutes "could potentially

applies, Plaintiffs have failed to plausibly allege personal jurisdiction over the Foreign Defendants.

[40] Rule 4(k)(2) provides: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).

[41] Fed. R. Civ. P. 4(k)(1)(C) provides: "Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . (C) when authorized by a federal statute."

[42] *See also Davis* v. *A & J Elec.*, 792 F.2d 74, 76 (7th Cir. 1986) (interpreting former Rule 4(e), the predecessor to Rule 4(k), and finding "there is not . . . an independent federal 'civil co-conspirator' theory of personal jurisdiction"); *Tymoshenko* v. *Firtash*, 2013 WL 1234943, at *4-5 (S.D.N.Y. Mar. 27, 2013) (rejecting conspiracy jurisdiction under Rule 4(k)(2)); *see also In re New Motor Vehicles Canadian Export Antitrust Litg.*, 307 F. Supp. 2d 145, 158 (D. Me. 2004) ("I do not believe that the First Circuit would recognize a conspiracy theory of personal jurisdiction, whereby jurisdiction can be obtained over nonresident defendants based upon the jurisdictional contacts of co-conspirators."). *Cf. Diamond Chem. Co.* v. *Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 11-12 (D.D.C. 2003) ("[T]he essential element required before a court can find that one corporate entity was transacting business through an alter ego is control *over the conduct that allegedly violated the antitrust laws.*"); *United States* v. *Smithfield Foods, Inc.* 332 F. Supp. 2d 55, 62 (D.D.C. 2004) (same).

[43] In any event, Plaintiffs cannot avail themselves of Rule 4(k)(2) because they have not satisfied the plain terms of this rule. For claims arising under federal law, Rule 4(k)(2) contemplates a potential basis for personal jurisdiction over a defendant *only* when "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A). District courts within this circuit have imposed on plaintiffs the initial burden to certify that the defendants over which personal jurisdiction purportedly exists pursuant to Rule 4(k)(2) are not subject to jurisdiction in any particular state forum. *See, e.g.*, *7 W. 57th St.*, 2015 WL 1514539, at *13; *Precision Assocs., Inc.* v. *Panalpina World Transp. (Holding) Ltd.*, 2011 WL 7053807, at *44 (E.D.N.Y. Jan. 4, 2011), *adopted by* 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012). Plaintiffs have made no such certification here — and, in fact, allege that Defendants *are* subject to personal jurisdiction in New York — and therefore have failed to satisfy a prerequisite for personal jurisdiction under Rule 4(k)(2).

extend jurisdiction beyond that which Congress intended[,]" and "[i]f Congress had wanted such a general exception, it could have so legislated." *Id.* Second, "[i]n cases in which plaintiffs allege the existence of a conspiracy, a court's assertion of jurisdiction based on the potential existence of that conspiracy (as found by a preponderance of the evidence as required by Rule 12(b)(1)) would in effect require the court to rule on the merits of the dispute, which would be inappropriate." *Id.* This reasoning applies with equal force to Rule 4(k)(1)(C).

Finally, Plaintiffs' conspiracy allegations are also insufficient under Rule 4(k)(1)(C) because conspiracy jurisdiction is not recognized under Section 12 of the Clayton Act. The Clayton Act requires a plaintiff to satisfy the venue requirement in order to establish jurisdiction. *See Daniel* v. *Am. Bd. of Emergency Med.,* 428 F.3d 408, 423-25 (2d Cir. 2005). And both the Supreme Court and Second Circuit have rejected the "frivolous albeit ingenious" argument of vicarious "conspiracy venue" under the Clayton Act, whereby a defendant may be sued in any venue in which an alleged co-conspirator is subject to venue. *Bankers Life & Cas. Co.*, 346 U.S. at 384; *accord Bertha Bldg. Corp.*, 248 F.2d at 836.

## V. FEDERAL STATUTES PROVIDING FOR NATIONWIDE SERVICE OF PROCESS DO NOT ESTABLISH PERSONAL JURISDICTION

The Amended Complaint alleges personal jurisdiction based on the Foreign Defendants' contacts with the United States, rather than New York specifically (*see, e.g.,* AC ¶¶ 15-17), presumably relying upon nationwide service of process provisions in the federal antitrust laws and the federal RICO statute.[44] It is an open question in the Second Circuit, as the Court itself recently acknowledged in *Gucci*, 768 F.3d at 142 n.21, whether personal jurisdiction under federal

[44] Section 12 of the Clayton Act provides: "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found." 15 U.S.C. § 22. The RICO statute provides: "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a).

statutes authorizing nationwide service of process should be analyzed based upon contacts with the United States as a whole — a so-called "nationwide contacts" analysis under the Fifth Amendment — or based on contacts with the specific forum, here New York.[45] Even if the correct analysis were based on "nationwide contacts," none of the Foreign Defendants is "at home" in the United States to establish general jurisdiction, nor are there any suit-related contacts with the United States to support specific jurisdiction. Second, these federal statutes are constrained by due process, which requires Plaintiffs to demonstrate personal jurisdiction in the suit's forum, New York. Third, none of the federal statutes provides a basis for exercising personal jurisdiction for Plaintiffs' state law claims.

### A. The Foreign Defendants Are Not "At Home" and There Are No Suit Related Contacts in the United States

There is no general jurisdiction over the Foreign Defendants, regardless of whether the national contacts test applies, because the Foreign Defendants are all incorporated and have their principal places of business outside the United States, are not "essentially at home" in the United States, and did not consent to jurisdiction in the United States. *See supra* Parts I-II. Specific jurisdiction is also lacking because none of the suit-related conduct — including, importantly, alleged manipulation of submissions for USD SIBOR, SGD SIBOR, and SOR — is alleged to have occurred in the United States. Plaintiffs' other allegations that there is specific jurisdiction in the United States thus fail for the same reasons that there are insufficient suit-related contacts with New York. *See supra* Parts III-IV. Because Plaintiffs have not alleged suit-related conduct

---

[45] The Supreme Court has not yet addressed the issue. *See Omni Capital Int'l, Ltd.* v. *Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987) (noting that the court need not address national contacts theory); *Asahi Metal Indus. Co.* v. *Superior Ct.*, 480 U.S. 102, 113 n.* (1987) (same); *see also* Peter Hay et al., CONFLICT OF LAWS § 10.2, at 480 (5th ed. 2010) ("The Supreme Court has thrice brushed by the question of Fifth Amendment limitations . . . .").

within the United States, they cannot establish specific jurisdiction even if their national contacts theory of jurisdiction were accepted at face value.

**B. Federal Statutes Are Constrained by Due Process**

The Second Circuit has observed that there is an open question whether to examine a defendant's contacts with a particular forum or the United States as a whole, i.e., nationwide contacts.[46] *See Gucci*, 768 F.3d at 142 n.21. As explained above, Plaintiffs have failed to allege sufficient contacts with the United States, even under a nationwide contacts approach. But to the extent the Court reaches this issue, *Daimler*'s focus on due process as a matter of fundamental fairness and reasonableness to the defendant compels the rejection of the national contacts approach and militates in favor of analyzing contacts with the specific forum.

Decisions applying a "national contacts" due process test apply an antiquated, sovereignty-based approach. *See supra* n.47. These cases typically reason that where a federal statute authorizes nationwide service: (i) the relevant sovereign enacting the statute is the United States, (ii) the relevant forum is therefore the United States as a whole, and (iii) as a matter of sovereignty, due process can be satisfied by contacts with the United States as a whole. *See, e.g.*, *SEC* v. *Softpoint, Inc.*, 2001 WL 43611, at *5 (S.D.N.Y. Jan. 18, 2001); *In re Oil Spill by Amoco Cadiz off the Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1294 (7th Cir. 1992) ("The requirement of minimum contacts is intended to ensure that the sovereign possesses a legitimate claim to assert power over the defendant."). *Daimler* rejects that reasoning, holding that cases analyzing due process as a matter of sovereignty are no longer good law. *See Daimler*, 134 S.

---

[46] Although the Second Circuit in *Waldman* applied a national contacts test, 835 F.3d at 330, defendants made no arguments to the contrary. The Court was not asked to resolve the issue of whether a national contacts test is consistent with a modern due process analysis. *See* Corrected Brief and Special Appendix for Defendants-Appellants, *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317 (No. 15-3135) (2d Cir. 2016) (Dkt. No. 137).

Ct. at 753-58. Indeed, *Daimler* recognizes that due process does not focus on the sovereign's authority — be it a state or federal government — and *Softpoint* (and decisions like it) cannot be reconciled with *Daimler*. Modern due process instead focuses on fundamental fairness to defendants, as evidenced by the Supreme Court's concern in *Daimler* that "exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 761-62 (quoting *Burger King Corp.*, 471 U.S. at 472); *see also Walden*, 134 S. Ct. at 1125 n.9 ("minimum contacts" inquiry exists principally to protect "the liberty of the nonresident defendant").

There is no logical basis to conclude that defendants' liberty interests are less important under the Fifth Amendment than the Fourteenth. *Waldman*, 835 F.3d at 331 ("[W]e conclude that the minimum contacts and fairness analysis is the same under the Fifth Amendment and the Fourteenth Amendment in civil cases . . . ."). The due process analysis consistent with the Supreme Court's most recent cases permits the assertion of personal jurisdiction only when defendants have sufficient contacts, either general or specific, with the forum where suit was brought — here, New York.[47] *See Republic of Panama* v. *BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997) ("We discern no reason why these constitutional notions of 'fairness' and 'reasonableness' should be discarded completely when jurisdiction is asserted under a federal statute rather than a state long-arm statute.").

[47] For example, under Plaintiffs' "national contacts" personal jurisdiction approach, a plaintiff could bring a RICO claim (or another federal claim with a nationwide service of process provision) in California (or any other federal forum) against a company with its principal place of business and incorporated in New York, even if *all* of the suit-related conduct occurred outside of the United States. Defendants submit that *Daimler* does not permit such an "exorbitant" exercise of personal jurisdiction.

### C. Personal Jurisdiction Is Examined on a Claim-by-Claim Basis

Finally, Plaintiffs cannot bootstrap personal jurisdiction for state law claims based on any federal statute's jurisdiction provisions. "A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted." *Sunward Elecs., Inc.* v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004); *see also LIBOR IV*, 2015 WL 6243526, at *27; *First Capital Asset Mgmt., Inc.* v. *Brickellbush, Inc.*, 218 F. Supp. 2d 369, 397 (S.D.N.Y. 2002) (plaintiff must secure personal jurisdiction over a defendant with respect to each claim asserted); 4A Charles Alan Wright et al., *Federal Practice and Procedure* § 1069.7, at 341 (4th ed. 2015) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts."). Thus, personal jurisdiction for each claim should be analyzed separately for each Defendant, and Plaintiffs' state law claims must be analyzed based upon contacts with New York alone, even if Plaintiffs' national contacts test is used for their federal claims.

## VI. BECAUSE THERE IS NO VENUE, THERE CANNOT BE PERSONAL JURISDICTION UNDER THE CLAYTON ACT OVER FOREIGN DEFENDANTS WHO ARE NOT FOUND AND DO NOT TRANSACT SUBSTANTIAL BUSINESS IN THIS DISTRICT

A plaintiff that asserts personal jurisdiction based on the nationwide service provision of the Clayton Act, 15 U.S.C. § 22, must also satisfy the Act's venue provision. *Daniel*, 428 F.3d at 424-25. Plaintiffs fail to plausibly allege venue under that provision with respect to the Venue Defendants. Because Plaintiffs fail to allege venue is proper in New York under the Clayton Act, they fail to allege that personal jurisdiction is proper as to Venue Defendants as well. Want of venue provides an independent basis for dismissal of these claims.

For venue to be proper under the Clayton Act in a district where a defendant is not "an inhabitant,"[48] the defendant must "be found or transact[] business" there. 15 U.S.C. § 22. Only

[48] For a corporation, this means its place of incorporation. *See, e.g.*, *Expoconsul Int'l, Inc.* v. *A/E Sys., Inc.*, 711 F.

contacts with the specific district in which suit was brought are relevant for purposes of venue under the Clayton Act. *Daniel*, 428 F.3d at 430. Plaintiffs have not met their burden to allege that Venue Defendants are "found" or "transact[] business" in the Southern District of New York.[49] The phrase "transacts business" refers to "business of any substantial character," meaning "some amount of business continuity and certainly more than a few isolated and peripheral contacts." *Gates* v. *Wilkinson*, 2003 WL 21297296, at *1 (S.D.N.Y. June 4, 2003); *see also Pincione* v. *D'Alfonso*, 506 F. App'x 22, 24 (2d Cir. 2012). Plaintiffs fail to allege these Venue Defendants conduct any substantial business in the Southern District of New York, a point confirmed by the Venue Defendants' declarations.[50] Therefore, venue is improper under Section 12 of the Clayton Act in this action. And because venue is improper, so too is personal jurisdiction. *See Daniel*, 428 F.3d at 423. Plaintiffs' allegations of conspiracy do not affect that conclusion. *See* Part IV above.

## VII. CONSIDERATIONS OF FAIR PLAY, SUBSTANTIAL JUSTICE, AND INTERNATIONAL COMITY SUPPORT DISMISSAL

In both general and specific jurisdiction cases, the court must also assess whether exercising jurisdiction "would comport with fair play and substantial justice." *Gucci*, 768 F.3d at 137. "Relevant factors at this second step of the analysis may include: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating

---

Supp. 730, 732-33 (S.D.N.Y. 1989).

[49] "[T]he plaintiff bears the burden of establishing that venue is proper," *Cold Spring Harbor Lab.* v. *Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011), which is determined at the time suit is filed. *See Gates* v. *Wilkinson*, 2003 WL 21297296, at *2 (S.D.N.Y. June 4, 2003); *Gem Corrugated Box Corp*. v. *Mead Corp*., 189 F. Supp. 584, 586 (S.D.N.Y. 1960).

[50] Decl. of W. Gougherty ¶ 5 (RBS Group), ¶ 11 (RBS plc), ¶ 17 (RBSSJ); Decl. of J. Connors ¶ 7 (UBS Japan); Decl. of B.M. Stoelinga & W.A. Brouwer ¶ 3 (ING Groep); Decl. of B.M. Stoelinga & W.A. Brouwer ¶ 3 (ING Bank); Decl. of P. Gonsalves ¶¶ 5-8 (Barclays PLC); Decl. of P. Minor ¶¶ 5-11 (Credit Agricole S.A.); Decl. of D. Kläy ¶ 5 (Credit Suisse Group AG); Decl. of D. Bisseker ¶¶ 3-5 (Credit Suisse International); Decl. of M. Amey ¶ 4 (Standard Chartered PLC); Decl. of G. Fong ¶ 4 (DBS Holdings); Decl. of C.M. Ng ¶¶ 5-10 (Hongkong and Shanghai Banking Corp. Ltd.); Decl. of M. Chambers ¶¶ 4-5 (HSBC Holdings plc); Decl. of M. Gummer ¶ 3 (Macquarie Group Ltd.).

the case; [and] (3) the plaintiff's interest in obtaining convenient and effective relief." *Licci*, 732 F.3d at 170. Due process is also not satisfied where exercising jurisdiction threatens "international rapport." *Daimler*, 134 S. Ct. at 763.

The Supreme Court has held that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi*, 480 U.S. at 115. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over our national borders." *Id.* at 114. Reflecting similar concerns, the Supreme Court in *Daimler* emphasized the importance of international comity in assessing whether personal jurisdiction may be exercised over a foreign defendant and expressly warned of "the risks to international comity" that might result from an expansive view of general jurisdiction inconsistent with due process. *Daimler*, 134 S. Ct. at 762-63; *see also Gucci*, 768 F.3d at 135.

Here, Plaintiffs seek to exercise jurisdiction over the Foreign Defendants in New York based on an alleged conspiracy to manipulate Singapore-based benchmarks. Foreign Defendants' declarations conclusively refute the presence of the alleged conspiracy in New York or the United States. Accordingly, it is unreasonable to assert jurisdiction over the Foreign Defendants, which had no suit-related connections with New York or the United States. Exercising jurisdiction over Foreign Defendants would be unreasonably burdensome and threaten international comity, given Singapore's much stronger interest in regulating SIBOR and SOR.

Even if Plaintiffs could allege that one or more co-conspirators committed an overt act in New York or the United States (and they have not), exercising jurisdiction over Foreign Defendants based on a theory of vicarious conspiracy jurisdiction, unlinked to any conduct directed by each Defendant toward the forum, would be unreasonably burdensome and threaten due pro-

cess.[51] Subjecting the Foreign Defendants to jurisdiction in the United States based on such attenuated contacts would not "merely be inconvenient," it "would violate our basic sense of fair play and substantial justice — and deprive the defendants of the due process guaranteed by the Constitution." *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996).

## VIII. PLAINTIFFS' ALLEGED FORUM SELECTION CLAUSE DOES NOT CONFER JURISDICTION AS TO DEUTSCHE BANK

Although Plaintiffs allege that Deutsche Bank AG consented to jurisdiction in New York as to FrontPoint's contract-related claims by entering into an ISDA Master Agreement with FrontPoint that contains a forum selection clause (AC ¶¶ 19, 20, 142), Plaintiffs do not allege that any of the alleged transactions between FrontPoint and Deutsche Bank were made pursuant to that ISDA Master Agreement.[52] This failure is dispositive because a forum selection clause in an ISDA Master Agreement does not provide consent to jurisdiction in any and all disputes between the contracting parties. *See LIBOR IV*, 2015 WL 6243526, at *34 (holding that ISDA forum selection clauses provide consent to "claims brought against counterparties in their capacity as counterparties" when the claim "relate[s] to the particular contractual relationship"). Moreover, Deutsche Bank would be subject to jurisdiction for claims relating to the ISDA Master Agreement only if the "the language in [trade] confirmations" pertaining to the transaction at issue actually referenced the governing ISDA Master Agreement, and the relevant trade confirma-

[51] *See Brown*, 814 F.3d at 625 ("[C]onstitutional due process principles generally restrict the power of a state to endow its courts with personal jurisdiction over foreign corporate parties . . . with regard to matters not arising within the state."); *see also Laydon*, 2015 WL 1515358, at *6 ("personal jurisdiction . . . would not comport with notions of fair play and substantial justice" in Euroyen TIBOR conspiracy case where foreign defendant's TIBOR submitters were located outside the United States).

[52] Because Sonterra's and the other putative class members' claims also do not stem from the ISDA Master Agreement with FrontPoint, Deutsche Bank AG has not consented to jurisdiction as to those claims. *Arma* v. *Buyseasons, Inc.*, 591 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) (forum selection clause does not apply where "the rights being asserted do not originate from the contract containing the forum selection clause"); *Arnold* v. *Goldstar Fin. Sys., Inc.*, 2002 WL 1941546, at *3 (N.D. Ill. Aug. 22, 2002) ("The personal jurisdiction analysis therefore must be plaintiff-specific.").

tions could contain their own overriding forum selection provisions that are at odds with the New York forum selection provision in the alleged ISDA Master Agreement. *Indosuez Int'l Fin. B.V.*, 98 N.Y.2d at 242-43, 247. Plaintiffs' failure to make any allegations concerning the trade confirmations relating to the transactions FrontPoint allegedly entered into with Deutsche Bank is therefore fatal to their assertion of personal jurisdiction pursuant to the ISDA Master Agreement.

Even if Plaintiffs had alleged adequately that the forum selection clause applies here, Deutsche Bank AG's consent to personal jurisdiction by virtue of a forum selection clause is limited to claims stemming from the contract alleged and does not extend to Plaintiffs' federal claims or their unjust enrichment claim. *See Arma*, 591 F. Supp. 2d at 645 ("Where, as in the present action, the rights being asserted do not originate from the contract containing the forum selection clause, the clause does not apply.").

Moreover, FrontPoint has not alleged any connection at all (causal or otherwise) between the alleged manipulation of SIBOR or SOR and the alleged transactions with Deutsche Bank, such that Deutsche Bank is not subject to jurisdiction here. *See Chew*, 143 F.3d at 29 (defendants "will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts").[53] That is because FrontPoint does not allege adequately that the transactions it entered into with Deutsche Bank AG were affected by any alleged manipulation by Deutsche Bank (or any other Defendant).

[53] *AVRA Surgical Robotics, Inc.*, 41 F. Supp. 3d at 359 ("[A]ll the relevant alleged conduct occurred thousands of miles away in Germany" and "[t]o the extent that [defendant] did transact business in New York . . . the complaint does not establish how, if at all, these activities relate — much less substantially relate — to the causes of action pled."); *LIBOR IV*, 2015 WL 6243526, at *34 (finding that forum selection clauses conferred jurisdiction over only those claims that "depend upon the existence of a contractual relationship between the parties").

## IX. JURISDICTIONAL DISCOVERY IS INAPPROPRIATE

As demonstrated above, Plaintiffs have not met and, indeed, cannot meet their burden to demonstrate the threshold showing of personal jurisdiction required to attain jurisdictional discovery. *Koehler* v. *Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996); *Laydon*, 2015 WL 1515358, at *7 (denying jurisdictional discovery where plaintiff failed to establish *prima facie* case and defendant declarations suggested discovery would not alter analysis). None of the Foreign Defendants is "at home" in New York and no amount of discovery will change that fact. *Daimler*, 134 S. Ct. at 762 n.20 ("[I]t is hard to see why much in the way of discovery would be needed to determine where a corporation is at home."). And even with the information Plaintiffs already possess from a variety of public sources and regulatory investigations, they provide no plausible allegations supporting specific jurisdiction. *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d at 239-40 (no jurisdictional discovery where plaintiffs had the benefit of extensive information from government entities). Discovery under these circumstances would be an inappropriate "fishing expedition." *NovelAire Techs., L.L.C.* v. *Munters AB*, 2013 WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013) *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB) (S.D.N.Y. Dec. 23, 2015) (Dkt. No. 1267) (denying jurisdictional discovery where defendants provided declarations addressing the geographic location of the relevant benchmark rate submitter(s)).

## CONCLUSION

For the foregoing reasons, the Challenged Claims should be dismissed under Rule 12(b)(2) and/or (b)(3).

Dated: New York, New York
November 18, 2016

RESPECTFULLY SUBMITTED,

/s/ Penny Shane
Penny Shane
Corey Omer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
shanep@sullcrom.com
omerc@sullcrom.com

*Attorneys for Defendant Australia and New Zealand Banking Group, Ltd.*

/s/ Matthew J. Porpora
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

Jonathan D. Schiller
Leigh M. Nathanson
Amos E. Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2388
Fax: (212) 446-2350
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
Melissa Felder Zappala
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 274-9608
Fax: (202) 237-6131
mbrille@bsfllp.com
mfelder@bsfllp.com

*Attorneys for Defendants Barclays plc and Barclays Bank plc*

/s/ Stephen J. Obie
Jayant W. Tambe
Stephen J. Obie
Kelly A. Carrero
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
jtambe@jonesday.com
sobie@jonesday.com
kacarrero@jonesday.com

*Attorneys for Defendants BNP Paribas, S.A.*

/s/ Andrew W. Hammond
Andrew W. Hammond
Kimberly A. Haviv
WHITE & CASE
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Fax: (212) 354-8113
ahammond@whitecase.com
khaviv@whitecase.com

Darryl S. Lew
701 Thirteenth Street, NW
Washington, D.C. 20005
Telephone: (202) 626-3600
Fax: (202) 639-9355
dlew@whitecase.com

*Attorneys for Defendants Crédit Agricole Corporate and Investment Bank and Crédit Agricole S.A.*

/s/ David R. Gelfand
David R. Gelfand
Mark D. Villaverde
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5000
dgelfand@milbank.com
mvillaverde@milbank.com

*Attorneys for Defendant Commerzbank AG*

/s/ Joel Kurtzberg
Herbert S. Washer
Elai Katz
Joel Kurtzberg
Jason M. Hall
Adam S. Mintz
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com
jhall@cahill.com
amintz@cahill.com

*Attorneys for Defendants Credit Suisse Group AG, Credit Suisse AG and Credit Suisse International*

/s/ Gary W. Kubek
Gary W. Kubek
Erica S. Weisgerber
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836
gwkubek@debevoise.com
eweisgerber@debevoise.com

*Attorneys for Defendants DBS Bank Ltd. and DBS Group Holdings Ltd.*

/s/ Moses Silverman
Moses Silverman
Andrew C. Finch
Matthew J. Weiser
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
msilverman@paulweiss.com
afinch@paulweiss.com
mweiser@paulweiss.com

*Attorneys for Defendant Deutsche Bank AG*

/s/ Lewis J. Liman
Lewis J. Liman
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999
lliman@cgsh.com

Nowell D. Bamberger
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 974-1752
Fax: (202)-974-1999
nbamberger@cgsh.com

*Attorneys for Defendants The Hongkong and Shanghai Banking Corporation Limited and HSBC Holdings plc*

/s/ Karen P. Seymour
Karen P. Seymour
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
seymourk@sullcrom.com

Amanda F. Davidoff
1700 New York Avenue, NW, Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Fax: (202) 293-6330
davidoffa@sullcrom.com

*Attorneys for Defendants ING Groep N.V. and ING Bank, N.V.*

/s/ Christopher M. Paparella
Christopher M. Paparella
Marc A. Weinstein
Justin Ben-Asher
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
chris.paparella@hugheshubbard.com
marc.weinstein@hugheshubbard.com
justin.ben-asher@hugheshubbard.com

*Attorneys for Defendants Macquarie Bank Ltd. and Macquarie Group Ltd.*

/s/ Nicholas C. Adams
Nicholas C. Adams
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Fax: (212) 872-1002
nadams@akingump.com

C. Fairley Spillman
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4409
Fax: (202) 887-4288
fspillman@akingump.com

*Attorneys for Defendant Oversea-Chinese Banking Corporation Ltd.*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Jamie S. Dycus
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendants The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, and RBS Securities Japan Limited*

/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Benjamin A. Fleming
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Defendants Standard Chartered Bank and Standard Chartered PLC*

/s/ Daryl A. Libow
Daryl A. Libow
Christopher M. Viapiano
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Fax: (202) 956-6330
libowd@sullcrom.com
viapianoc@sullcrom.com
cassadye@sullcrom.com

*Attorneys for Defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

/s/ Peter Sullivan
Peter Sullivan
Eric J. Stock
Jefferson E. Bell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
psullivan@gibsondunn.com
estock@gibsondunn.com
jbell@gibsondunn.com

Joel S. Sanders (admitted pro hac vice)
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8268
Fax: (415) 393-8268
jsanders@gibsondunn.com

*Attorneys for Defendants UBS AG and UBS Securities Japan Co. Ltd.*

/s/ Dale C. Christensen, Jr.
Dale C. Christensen, Jr.
Michael B. Weitman
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Fax: (212) 480-8421
christensen@sewkis.com
weitman@sewkis.com

*Attorneys for Defendant United Overseas Bank Limited*