**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FRONTPOINT ASIAN EVENT DRIVEN FUND, L.P., AND SONTERRA CAPITAL MASTER FUND, LTD., on behalf of themselves and all others similarly situated,

Plaintiffs,

- against –

CITIBANK, N.A., CITIGROUP INC., BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, THE ROYAL BANK OF SCOTLAND GROUP PLC, RBS SECURITIES JAPAN LIMITED, UBS AG, UBS SECURITIES JAPAN CO. LTD., ING GROEP N.V., ING BANK N.V., ING CAPITAL MARKETS LLC, BNP PARIBAS, S.A., BNP PARIBAS NORTH AMERICA, INC., BNP PARIBAS SECURITIES CORP., BNP PARIBAS PRIME BROKERAGE, INC., OVERSEA-CHINESE BANKING CORPORATION LTD., BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK AG, CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, CREDIT AGRICOLE S.A., CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, DBS BANK LTD., DBS GROUP HOLDINGS LTD., DBS VICKERS SECURITIES (USA) INC., UNITED OVERSEAS BANK LIMITED, UOB GLOBAL CAPITAL, LLC, AUSTRALIA AND NEW ZEALAND BANKING GROUP, LTD., ANZ SECURITIES, INC., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, HSBC BANK USA, N.A., HSBC HOLDINGS PLC, HSBC NORTH AMERICA HOLDINGS INC., HSBC USA INC., MACQUARIE BANK LTD., MACQUARIE GROUP LTD., COMMERZBANK AG, AND JOHN DOE NOS. 1-50,

Defendants.

Docket No. 16-cv-05263 (AKH)

**JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FOREIGN DEFENDANTS' MOTION TO DISMISS ALL CLAIMS FOR LACK OF PERSONAL JURISDICTION AND VENUE**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS


**Page**

**TABLE OF CONTENTS ........ i**

**TABLE OF AUTHORITIES ........ iii**

**PRELIMINARY STATEMENT ........ 1**

**I. FOREIGN DEFENDANTS HAVE NOT CONSENTED TO GENERAL JURISDICTION IN NEW YORK ........ 2**

**II. PLAINTIFFS DO NOT ADEQUATELY PLEAD SPECIFIC JURISDICTION OVER FOREIGN DEFENDANTS ........ 7**

A. PLAINTIFFS FAIL TO ALLEGE THAT FOREIGN DEFENDANTS MANIPULATED SGD SIBOR, USD SIBOR, AND SOR IN NEW YORK OR THE UNITED STATES ........ 8

B. PLAINTIFFS' CONCLUSORY ALLEGATIONS THAT CERTAIN FOREIGN DEFENDANTS TRADED IN SIBOR- OR SOR-BASED INSTRUMENTS IN NEW YORK OR THE UNITED STATES DO NOT CONFER JURISDICTION ........ 10

C. PLAINTIFFS FAIL TO ALLEGE A SUFFICIENT RELATIONSHIP BETWEEN THE ALLEGED OVERSEAS MANIPULATION OF SGD SIBOR, USD SIBOR, AND SOR AND NEW YORK OR THE UNITED STATES ........ 15

1. Plaintiffs fail to allege that their claims arise out of Foreign Defendants' alleged suit-related contacts with New York or the United States ........ 16

2. Plaintiffs fail to allege that Foreign Defendants intended to cause harm in or expressly aimed their alleged misconduct at New York or the United States ........ 17

3. The cases to which Plaintiffs cite are not to the contrary ........ 19

**III. PLAINTIFFS' CONSPIRACY ALLEGATIONS DO NOT GIVE RISE TO SPECIFIC JURISDICTION OVER FOREIGN DEFENDANTS ........ 21**

A. PLAINTIFFS' CONSPIRACY ALLEGATIONS DO NOT COMPORT WITH DUE PROCESS ........ 21

B. THE APPLICABLE JURISDICTIONAL STATUTES BAR PLAINTIFFS' CONSPIRACY THEORY ........ 23

C. FAIR PLAY AND SUBSTANTIAL JUSTICE PRECLUDE THE EXERCISE OF CONSPIRACY JURISDICTION ........ 25

**IV. PLAINTIFFS FAIL TO ALLEGE JURISDICTION AND VENUE UNDER THE CLAYTON ACT AS TO THE VENUE DEFENDANTS ........ 25**

**V. DEUTSCHE BANK DID NOT CONSENT TO THIS COURT'S JURISDICTION ..... 26**

**VI. PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY ..... 27**

**VII. THIS COURT SHOULD DENY PLAINTIFFS' REQUEST FOR TRANSFER TO THE EASTERN DISTRICT OF PENNSYLVANIA ..... 27**

**CONCLUSION ..... 29**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 West 57th Street Realty Co.* v. *Citigroup, Inc.*,
2015 WL 1514539, (S.D.N.Y. Mar. 31, 2015) ........ *passim*

*A.W.L.I. Grp., Inc.* v. *Amber Freight Shipping Lines*,
828 F. Supp. 2d 557 (E.D.N.Y. 2011) ........ 27

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015) ........ 25

*AM Trust* v. *UBS AG*,
78 F. Supp. 3d 977 (N.D. Cal. 2015) ........ 11n

*Ambriz* v. *Coca Cola Co.*,
2014 WL 296159 (N.D. Cal. Jan. 27, 2014) ........ 11n

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ........ 10

*Avila* v. *Lease Fin. Grp., LLC*,
2012 WL 1948777 (S.D.N.Y. May 30, 2012) ........ 10n

*B & M Kingstone, LLC* v. *Mega Int'l Commercial Bank Co.*,
131 A.D.3d 259 (1st Dep't 2015) ........ 4n

*Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*,
305 F.3d 120 (2d Cir. 2002) ........ 18n

*Beach* v. *Citigroup Alt. Invs. LLC*,
2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) ........ 11n

*Best Van Lines, Inc.* v. *Walker*,
490 F.3d 239 (2d Cir. 2007) ........ 27

*Bonkowski* v. *HP Hood LLC*,
2016 WL 4536868 (E.D.N.Y. Aug. 30, 2016) ........ 4n, 6n

*Brown* v. *Kerkhoff*,
504 F. Supp. 2d 464 (S.D. Iowa 2007) ........ 23n

*Brown* v. *Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) ........ *passim*

*Cheung Yin Sun* v. *Mashantucket Pequot Gaming Enter.*,
2016 WL 5820487 (2d Cir. Oct. 5, 2016)....................10n

*Chevron Corp.* v. *Naranjo*,
667 F.3d 232 (2d Cir. 2012)....................27n

*Chew* v. *Dietrich*,
143 F.3d 24 (2d Cir. 1998)....................16

*Daimler AG* v. *Bauman*,
134 S. Ct. 746 (2014).................... *passim*

*Dale* v. *Banque SCS All. S.A.*,
2004 WL 2389894 (S.D.N.Y. Oct. 22, 2004)....................15n

*Daniel* v. *Am. Bd. of Emergency Med.*,
428 F.3d 408 (2d Cir. 2005)....................25

*Davis* v. *Farmers' Co-op. Equity Co.*,
262 U.S. 312 (1923)....................7n

*Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*,
722 F.3d 81 (2d Cir. 2013)....................10, 13n

*First Palm Beach Int'l Bank* v. *Banco de Descuento, S.A.*,
1989 WL 38122 (S.D.N.Y. Apr. 7, 1989)....................5n

*United States ex rel. Fisher* v. *Bank of America, N.A.*,
2016 WL 4543879 (S.D.N.Y. Aug. 31, 2016).................... 28-29

*Flag Co.* v. *Maynard*,
376 F. Supp. 2d 849 (N.D. Ill. 2005)....................24n

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016)....................3n, 5, 15n

*Gelboim* v. *Bank of America Corp.*,
823 F.3d 759 (2d Cir. 2016)....................19

*Genuine Parts Co.* v. *Cepec*,
137 A.3d 123 (Del. 2016)....................6

*Greene* v. *Mizuho Bank, Ltd.*,
169 F. Supp. 3d 855 (N.D. Ill. 2016)....................11n

*Gucci Am. Inc.* v. *Weixing Li*,
135 F. Supp. 3d 87 (S.D.N.Y. 2015)....................16, 16n

*Havlish* v. *Royal Dutch Shell PLC*,
2014 WL 4828654 (S.D.N.Y. Sept. 24, 2014) (Daniels, J.) ....................14n

*Hirsch* v. *Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995)....................10

*Jazini* v. *Nissan Motor Co.*,
148 F.3d 181 (2d Cir. 1998)....................27

*King Cty.* v. *IKB Deutsche Industriebank AG*,
712 F. Supp. 2d 104 (S.D.N.Y. 2010)....................5n

*LaChapelle* v. *Torres*,
1 F. Supp. 3d 163 (S.D.N.Y. 2014) ....................22n

*Laydon* v. *Mizuho Bank, Ltd.*,
2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ....................17, 21, 27n

*Leasco Data Processing Equip. Corp.* v. *Maxwell*,
468 F.2d 1326 (2d Cir. 1972) (Friendly, J.)....................22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2014 WL 6488219 (S.D.N.Y. Nov. 18, 2014)....................19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ("*LIBOR IV*") .................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2015 WL 6696407 (S.D.N.Y. Nov. 3, 2015) ("*LIBOR V*") .................... *passim*

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2016 WL 1558504 (S.D.N.Y. Apr. 15, 2016)....................4n, 18n, 19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016) ("*LIBOR VI*") .................... *passim*

*In re M/V MSC Flaminia*,
107 F. Supp. 3d 313 (S.D.N.Y. 2015) (Scheindlin, J.) ....................14n

*In re Magnetic Audiotape Antitrust Litig.*,
171 F. Supp. 2d 179 (S.D.N.Y. 2001), *vacated*, 334 F.3d 204 (2d Cir. 2003) ....................20

*In re Magnetic Audiotape Antitrust Litigation*,
334 F.3d 204 (2d Cir. 2003)....................19, 20n, 20

*Martin* v. *Eide Bailly LLP*,
2016 WL 4496570 (S.D. Ind. Aug 26, 2016) ....................24n

*Miller* v. *Holzmann*,
2007 WL 39371 (D.D.C. Jan. 8, 2007) ........ 22n

*Miller* v. *Holzmann*,
2007 WL 778568 (D.D.C. Mar. 6, 2007) ........ 22n

*Minholz* v. *Lockheed Martin Corp*.,
2016 WL 7496129 (N.D.N.Y. Dec. 30, 2016) ........ 4n, 6n

*Newsome* v. *Gallacher*,
722 F.3d 1257 (10th Cir. 2013) ........ 22

*Sabal Ltd. LP* v. *Deutsche Bank AG*,
2016 WL 5080385 (W.D. Tex. Sept. 19, 2016) ........ 26n

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013) ........ 22n

*Sevast* v. *Kakouras*,
915 A.2d 1147 (Pa. 2007) ........ 28n

*Sher* v. *Johnson*,
911 F.2d 1357 (9th Cir. 1990) ........ 23

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2001*,
257 F. Supp. 2d 648 (S.D.N.Y. 2003) ........ 28

*Sonera Holding B.V.* v. *Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014) ........ 14n

*Sonterra Capital Master Fund, Ltd.* v. *Credit Suisse Grp. AG*,
No. 1:15-cv-00871 (S.D.N.Y. Sept. 22, 2015) (Stein, J.) ........ 27n

*Spar, Inc.* v. *Info. Res., Inc.*,
956 F.2d 392 (2d Cir. 1992) ........ 29

*Strauss* v. *Crédit Lyonnais, S.A.*,
175 F. Supp. 3d 3 (E.D.N.Y. 2016) ........ 3n

*In re Sumitomo Copper Litig.*,
120 F. Supp. 2d 328 (S.D.N.Y. 2000) ........ 22n

*In re Syngenta AG MIR 162 Corn Litigation*,
2016 WL 2866166 (D. Kan. May 17, 2016) ........ 6, 7n

*Taormina* v. *Thrifty Car Rental*,
2016 WL 7392214 (S.D.N.Y. Dec. 21, 2016) ........ 4n, 6n

*In re Terrorist Attacks on Sept. 11, 2001*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005)....................24

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013)....................14

*United States* v. *Hayes*,
99 F. Supp. 3d 409 (S.D.N.Y. Mar. 20, 2015)....................18n

*United Teamster Fund* v. *MagnaCare Admin. Servs., LLC*,
39 F. Supp. 3d 461 (S.D.N.Y. 2014)....................28n

*Varga* v. *Credit Suisse*,
155 N.Y.S.2d 655 (N.Y. Sup. Ct. 1956), *aff'd*, 2 A.D.2d 596 (1st Dep't 1956)....................6n

*Vera* v. *Republic of Cuba*,
91 F. Supp. 3d 561 (S.D.N.Y. 2015).................... *passim*

*Walden* v. *Fiore*,
134 S. Ct. 1115 (2014).................... *passim*

*Waldman* v. *Palestine Liberation Organization*,
835 F.3d 317 (2d Cir. 2016)....................11, 18, 18n

*Weiss* v. *Nat'l Westminster Bank PLC*,
176 F. Supp. 3d 264 (E.D.N.Y. 2016)....................3n

*Wilder* v. *News Corp.*,
2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015)....................20

*Wiwa* v. *Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir. 2000)....................14n

**Law Reviews**

Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*,
36 Cardozo L. Rev. 1343 (2015)....................6n

**Rules**

Federal Rule of Civil Procedure 4(k)(1)(C)....................24

Federal Rule of Civil Procedure 4(k)(2)....................24

Federal Rule of Civil Procedure 12(b)(2)....................1, 29

Federal Rule of Civil Procedure 12(b)(3)....................1, 29

N.Y. C.P.L.R. § 213 ....... 28n

N.Y. C.P.L.R. § 302(a)(1) ....... 16

**Statutes**

15 U.S. C. § 12 (Clayton Act) ....... 25

28 U.S.C. § 1391 ....... 25

New York Banking Law § 200(3) ....... 1, 3, 3n, 6

New York Banking Law § 200-b ....... 5

New York Business Corporation Law § 1314 ....... 5

42 Pa. Stat. and Cons. Stat. Ann. § 5525 ....... 28n

**Other Authorities**

Brief for Plaintiffs-Appellants and Plaintiff-Counter-Defendant-Appellant, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003) (No. 02-7687) ....... 20

Plaintiff's Opposition to Motions for Reconsideration of the Order of September 10, 2014 Compelling Full and Complete Answers to Information Subpoenas, *Vera* v. *Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015) (No. 12-cv-1596), ECF No. 715 ....... 5

Foreign Defendants[1] submit this joint reply memorandum of law in further support of their motion to dismiss the Amended Complaint for lack of personal jurisdiction and venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).

**PRELIMINARY STATEMENT**

Plaintiffs concede that none of the Foreign Defendants is "at home" in the forum and subject to general jurisdiction on that basis. *See* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction & Venue ("Pls.' PJ Opp. Br.") at Part I. Instead, Plaintiffs make three principal arguments in support of jurisdiction over the Foreign Defendants. Each of those arguments fails.

*First*, citing this Court's decision in *Vera* v. *Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015), Plaintiffs argue that, by registering with the New York Department of Financial Services, certain Foreign Defendants consented to be sued in New York in "any action." That argument ignores the plain language of the statute in question, controlling Second Circuit authority, and the holding of *Vera* itself. Plaintiffs' reading cannot be reconciled with the language of the statute itself, which applies only to claims "arising out of a transaction with [the registered bank's] New York agency or agencies or branch or branches" — not to all claims against the bank. *See* N.Y. Banking Law § 200(3) (McKinney 2006). Moreover, under *Brown* v. *Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016), registration does not constitute consent to "general jurisdiction" over any action brought in this state unless, unlike here, the statute expressly so authorizes. *Vera* — which involved an assertion of jurisdiction over a non-party to the case that was resisting discovery of documents that could be accessed from the non-party bank's New York branch — does not hold otherwise.

[1] Unless otherwise noted, defined terms are the same as those used in Foreign Defendants' opening brief and all internal citations and quotation marks are omitted.

*Second*, Plaintiffs argue that Foreign Defendants had sufficient suit-related contacts with the forum to support specific jurisdiction. None of the allegations to which Plaintiffs cite, however (which are inadequately pleaded in any case), gives rise to personal jurisdiction over the Foreign Defendants. For example, Plaintiffs do not plead that the alleged manipulation of SGD SIBOR, USD SIBOR, or SOR occurred anywhere in the United States or that any Foreign Defendant purposefully aimed at the United States any conduct out of which Plaintiffs' claims are alleged to arise. At most, Plaintiffs' allegations relate to supposedly foreseeable effects of Foreign Defendants' alleged misconduct, which the Supreme Court explicitly rejected as insufficient in *Walden* v. *Fiore*, 134 S. Ct. 1115, 1122 (2014).

*Third*, Plaintiffs allege that Foreign Defendants are subject to jurisdiction based on a theory of vicarious conspiracy jurisdiction. This, too, fails because Plaintiffs have not: (i) adequately alleged a conspiracy to manipulate SGD SIBOR, USD SIBOR, or SOR; (ii) adequately alleged that conspiratorial acts occurred in New York or the United States; (iii) offered allegations sufficient to support the exercise of personal jurisdiction over alleged co-conspirators consistent with due process; or (iv) made allegations sufficient to establish personal jurisdiction over alleged co-conspirators under the applicable jurisdictional statutes.

Because Plaintiffs concede that there is no "at home" general jurisdiction, and Plaintiffs do not carry their burden to establish any other bases for exercising jurisdiction over any of the Foreign Defendants, the Amended Complaint should be dismissed.

## I. FOREIGN DEFENDANTS HAVE NOT CONSENTED TO GENERAL JURISDICTION IN NEW YORK

Plaintiffs' argument that Foreign Defendants registered under Section 200(3) of the New York Banking Law have consented to general jurisdiction is fundamentally inconsistent with the

plain language of that statute, which unequivocally states only that a branch of a foreign bank must file a written instrument with the office of the superintendent:

> appointing the superintendent and his or her successors its true and lawful attorney, upon whom all process in any action or proceeding against it *on a cause of action arising out of a transaction with* its New York agency or agencies or branch or branches . . . may be served.

N.Y. Banking Law § 200(3) (emphasis added). Plaintiffs make no effort to reconcile their erroneous reading of the statute with its plain language. Nor can they. Section 200(3) repeatedly has been interpreted *not* to confer general jurisdiction. *See* Joint Mem. of Law in Supp. of Foreign Defs.' Mot. to Dismiss All Claims for Lack of Personal Jurisdiction & Venue ("Defs.' PJ Br."). at 11.[2] Because Plaintiffs' claims do not arise out of a transaction with a New York agency or branch of any Foreign Defendant, they do not fall within the ambit of § 200(3), which disposes of this argument.

Even if § 200(3) were unclear, the Second Circuit held last year in *Brown* v. *Lockheed Martin Corp.* that business registration pursuant to statutes requiring the designation of a local agent for acceptance of service of process does not amount to consent to general jurisdiction absent an explicit statutory provision to the contrary. 814 F.3d at 640.[3] Otherwise, "every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler*'s ruling would be robbed of meaning by a back-door thief." *Id.* For that reason, every federal case

[2] *See, e.g.*, *Strauss* v. *Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 17 n.7 (E.D.N.Y. 2016) (declining to find that Defendant consented to general jurisdiction in New York by virtue of registration under § 200 of the Banking Law); *Weiss* v. *Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 277 n.7 (E.D.N.Y. 2016) (same); *In re Foreign Exch. Benchmark Rates Antitrust Litig.* ("*FX*"), 2016 WL 1268267, at *2 (S.D.N.Y. Mar. 31, 2016) ("By the terms of the statute, any consent to jurisdiction by virtue of . . . registration with the NYDFS is not general jurisdiction over all claims . . . .").

[3] Plaintiffs' argument that *Brown* interpreted a Connecticut business registration statute and not the New York Banking Law further undermines Plaintiffs' jurisdictional claim. The Court in *Brown* noted that the Connecticut registration statute "does not expressly limit the matters as to which an authorized agent may accept service of process." 814 F.3d at 636. By contrast, Section 200(3) contains an express limitation.

applying *Brown* in New York confirms that registration does not amount to consent to jurisdiction for any case brought in the forum.[4] Indeed, accepting Plaintiffs' argument would mean a court could exercise general jurisdiction over a corporation "in a state in which the corporation had done *no business at all*, so long as it had registered" — a proposition flatly inconsistent with *Daimler* and rejected by the Second Circuit in *Brown*. 814 F.3d at 640. Such an expansive view does not comport with due process.

Lastly, Plaintiffs misread *Vera*, which held only that a post-judgment information subpoena served on a non-party foreign bank's New York branch required the production of information *that could be accessed in New York by the bank's registered branch*.[5] 91 F. Supp. 3d at 571 ("The information requested by the Information Subpoena can be found via electronic searches performed in [the foreign bank's] New York office, and are within this jurisdiction."). *Vera* did not hold that registration under the New York Banking Law was consent to general jurisdiction in the forum. *Vera* is not even a general jurisdiction case: the plaintiff there argued only that registration gave rise to *specific* jurisdiction over the registrant under the circumstances.

[4] *See, e.g.*, *Minholz* v. *Lockheed Martin Corp*., 2016 WL 7496129, at *9 (N.D.N.Y. Dec. 30, 2016) (discussing *Brown* and finding that "absent an explicit indication that registration subjects a registrant to general jurisdiction in New York, an exercise of general personal jurisdiction based on registration alone would be counter to the principles of due process articulated in *Daimler*"); *Taormina* v. *Thrifty Car Rental*, 2016 WL 7392214, at *7 (S.D.N.Y. Dec. 21, 2016) ("New York's business registration statutes do not expressly require consent to general jurisdiction, and in the absence of any clearer legislative authority or any post-*Daimler* authority on the issue, this Court declines to conclude that [defendant]'s registration to do business and appointment of an agent for service of process constitute consent to general jurisdiction."); *Bonkowski* v. *HP Hood LLC*, 2016 WL 4536868, at *3 & n.2 (E.D.N.Y. Aug. 30, 2016) (citing *Brown* and declining to construe New York's registration statute as embodying actual consent to general jurisdiction); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016) ("Interpreting this statute [New York Banking Law § 200(3)] as one that provides general jurisdiction in the absence of express consent — where the most natural reading of the provision *does not* provide general jurisdiction — would 'risk unravelling the jurisdictional structure envisioned [by the Supreme Court] based only on a slender inference of consent pulled from routine bureaucratic measures . . . .'" (alterations in original) (quoting *Brown*, 814 F.3d at 639)).

[5] Plaintiffs also cite *B & M Kingstone, LLC* v. *Mega Int'l Commercial Bank Co.*, 131 A.D.3d 259 (1st Dep't 2015), to argue the New York Banking Law amounts to consent to general jurisdiction. But, as with *Vera*, *B&M Kingstone* did not hold that registration under the New York Banking Law amounts to consent to general jurisdiction. Rather, it only held that by registering, a foreign bank had consented to comply with a non-party, post-judgment, information subpoena served in New York. 131 A.D.3d at 264-65.

*See* Pl.'s Opp'n to Mots. for Recons. of the Order of Sept. 10, 2014 Compelling Full & Complete Answers to Info. Subpoenas at 4-5, *Vera* v. *Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015) (No. 12-cv-1596), ECF No. 715. *Vera* thus holds only that, having registered a branch in New York, a non-party foreign bank cannot refuse to produce information accessible from that New York branch.[6] *Vera* is therefore inapposite here.

Equally baseless is Plaintiffs' reliance on New York Banking Law § 200-b as a basis for conferring personal jurisdiction. Pls.' PJ Opp. Br. at 10. As federal courts have recognized, "the New York Court of Appeals has interpreted § 200-b to confer subject matter jurisdiction and not personal jurisdiction." *FX*, 2016 WL 1268267, at *2.[7] Section 200-b thus has no application to this case.

Plaintiffs' other arguments concerning the New York Banking Law are equally unavailing. Plaintiffs argue, without a single supporting citation, that because a separate statute, New York Business Corporation Law § 1314, has been interpreted to confer general jurisdiction, the New York Banking Law should also be interpreted as conferring general jurisdiction. *See* Pls.' PJ Opp. Br. at 9 n.10. As an initial matter, it is far from clear after *Daimler* and *Brown* that registration as a foreign corporation under New York Business Corporation Law § 1314 actually can confer general jurisdiction.[8] But even if it did, the New York Business Corporation Law is not

[6] Moreover, as the Court explicitly stated in *Vera*, "[i]t is well-recognized that broad post-judgment discovery in aid of execution is the norm in federal and New York state courts." 91 F. Supp. 3d at 569. The question here is not whether a foreign bank would have to provide discovery in judgment-enforcement proceedings to which it is not a party, but rather whether a Foreign Defendant may be haled into this forum under general or "all-purpose jurisdiction," *Brown*, 814 F.3d at 640 (quoting *Daimler AG* v. *Bauman*, 134 S. Ct. 746, 761 (2014)) to defend any and all actions against it, merely because it registered a branch in New York.

[7] *See also King Cty.* v. *IKB Deutsche Industriebank AG*, 712 F. Supp. 2d 104, 114 (S.D.N.Y. 2010) (analyzing "Standing and Subject Matter Jurisdiction" and finding that the Court has subject matter jurisdiction under § 200-b); *First Palm Beach Int'l Bank* v. *Banco de Descuento, S.A.*, 1989 WL 38122, at *2 & n.1 (S.D.N.Y. Apr. 7, 1989) (analyzing "Subject Matter Jurisdiction Under § 200-b" and finding that "subject matter jurisdiction exists under § 200-b(2)(c), because the cause of action arose within New York").

[8] While the Second Circuit noted in *dicta* that some courts had interpreted registration under New York Business

instructive here because it does not contain the language found in New York Banking Law § 200(3), which expressly limits its application to proceedings that "aris[e] out of a transaction with [the bank's] New York agency . . . or branch." That express limitation governs here.[9]

Premising general jurisdiction on the New York Banking Law also would violate the unconstitutional conditions doctrine by requiring Defendants to surrender their constitutional rights to due process in exchange for a government benefit. Defs.' PJ Br. at 12; *Genuine Parts Co.* v. *Cepec*, 137 A.3d 123, 139 (Del. 2016) (applying *Daimler* to hold that Delaware's longstanding rule that registration under its general business statute constitutes consent to general jurisdiction amounted to an unconstitutional condition). Plaintiffs cite a Kansas district court decision, *In re Syngenta AG MIR 162 Corn Litigation*, 2016 WL 2866166 (D. Kan. May 17, 2016), for the proposition that consent to general jurisdiction through a registration statute is not an unconstitutional condition (*see* Pls.' PJ Opp. Br. at 11), but that case cannot be reconciled with the Second Circuit's controlling decision in *Brown*. Indeed, *In re Syngenta* was premised on Supreme Court precedents that the Second Circuit has held did not survive *Daimler*. 2016 WL 2866166, at *1 (citing *Pa. Fire Ins. Co.* v. *Gold Issue Mining & Milling Co*., 243 U.S. 93, 96 (1917), among others). Plaintiffs rely on those same cases. *See* Pls.' PJ Opp. Br. at 8, 12. In *Brown*, however,

---

Corporation Law to constitute consent to general personal jurisdiction, *Brown*, 814 F.3d at 640, the law review article relied upon by the Court for this proposition (Tanya J. Monestier, *Registration Statutes, General Jurisdiction, and the Fallacy of Consent*, 36 Cardozo L. Rev. 1343, 1344 n.2, 1345 n.4 (2015)) rejected this interpretation and pointed out that "lawmakers in New York have proposed bill S. 7078 . . . , which would plainly provide that '[a] foreign corporation's application for authority to do business in this state, whenever filed, constitutes consent to the jurisdiction of the courts of this state for all actions against such corporations.' If [New York Business Corporation Law] section 1314 explicitly conferred general jurisdiction over corporations registered to do business in New York, the proposed bill would be redundant." Monestier, *supra*, at 1367 n.118; *see also Minholz*, 2016 WL 7496129, at *9; *Taormina*, 2016 WL 7392214, at *7; *Bonkowski*, 2016 WL 4536868, at *3 & n.2.

[9] Plaintiffs' citation to *Varga* v. *Credit Suisse* is inapposite. 155 N.Y.S.2d 655 (N.Y. Sup. Ct. 1956), *aff'd*, 2 A.D.2d 596 (1st Dep't 1956). *Varga* did not hold that registration under the New York Banking Law confers jurisdiction over a foreign bank. The court recognized that the underlying cause of action, which concerned a dispute over funds deposited in Switzerland, "[c]learly . . . does not come within the scope of [§ 200(3) of the Banking Law]" because it did not "aris[e] out of a transaction with [defendants'] New York agency." *Id.* at 658. Instead, the court found defendants consented to general jurisdiction based on the court's interpretation of the former Civil Practice Act § 229, which Plaintiffs do not and cannot invoke here. *Id.*

the Second Circuit resoundingly concluded that pre-*Daimler* decisions such as "*Pennsylvania Fire* cannot be divorced from the outdated jurisprudential assumptions of its era. The sweeping interpretation that a state court gave to a routine registration statute and an accompanying power of attorney that *Pennsylvania Fire* credits as a general 'consent' has yielded to the doctrinal refinement reflected in *Goodyear* and *Daimler* and the Court's 21st century approach to general and specific jurisdiction in light of expectations created by the continuing expansion of interstate and global business." *Brown*, 814 F.3d at 639.[10]

## II. PLAINTIFFS DO NOT ADEQUATELY PLEAD SPECIFIC JURISDICTION OVER FOREIGN DEFENDANTS

The Amended Complaint does not allege that the Foreign Defendants' purported manipulation of SGD SIBOR, USD SIBOR, and SOR occurred in or had any jurisdictionally significant connection to New York or the United States, or that Plaintiffs' alleged injuries arise out of such purported manipulation. Defs.' PJ Br. at Part III. Courts in this jurisdiction have identified what must be alleged to confer specific jurisdiction where claims are based on manipulation of a benchmark rate. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VI*"), 2016 WL 7378980, at *2-3 (S.D.N.Y. Dec. 20, 2016); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR V*"), 2015 WL 6696407, at *6, *8-9, *13-14, *18-20 (S.D.N.Y. Nov. 3, 2015); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), 2015 WL 6243526, at *27-28 (S.D.N.Y. Oct. 20, 2015). Under these cases, manipulative conduct occurring *in the forum* could be sufficient to confer specific jurisdiction. *LIBOR VI*, 2016 WL 7378980, at *9;

[10] *In re Syngenta* ultimately held that Kansas' consent-based registration was unconstitutional because it violated the Dormant Commerce Clause. 2016 WL 2866166, at *6. That reasoning, based upon Supreme Court precedent, applies equally here because a statute that "compels every foreign interstate carrier to submit to suit there as a condition of maintaining a soliciting agent within the state" would "impose[] upon interstate commerce a serious and unreasonable burden" and therefore violate the Commerce Clause. *Davis* v. *Farmers' Co-op. Equity Co.*, 262 U.S. 312, 315 (1923). Plaintiffs' interpretation of the New York Banking Law similarly would violate the Commerce Clause, a possibility recognized in *Brown*. *See* 814 F.3d at 626.

*LIBOR V*, 2015 WL 6696407, at *8; *LIBOR IV*, 2015 WL 6243526, at *27. But Plaintiffs do not allege that any of the Foreign Defendants' misconduct out of which their claims supposedly arose occurred in the United States. Manipulative conduct occurring *outside* the United States, by contrast, may confer specific jurisdiction *only if* it is shown that such conduct was specifically, intentionally, and expressly aimed at the United States, and was the "but for" cause of the claims. *LIBOR VI*, 2016 WL 7378980, at *8-9; *LIBOR V*, 2015 WL 6696407, at *14, *19; *LIBOR IV*, 2015 WL 6243526, at *27-28. Plaintiffs, however, allege no such facts here.[11]

Plaintiffs attempt to address this glaring deficiency by supplementing their pleadings with over 1,000 pages of exhibits. But neither Plaintiffs' conclusory allegations nor Plaintiffs' irrelevant exhibits to their opposition papers support the exercise of specific jurisdiction over the Foreign Defendants.

### A. Plaintiffs Fail to Allege that Foreign Defendants Manipulated SGD SIBOR, USD SIBOR, and SOR in New York or the United States

SGD SIBOR, USD SIBOR, and SOR were administered by the Association of Banks in Singapore, and, as set forth in Foreign Defendants' uncontroverted declarations, *see* Defs.' PJ Br. at 15 n.15, the submissions used to set those benchmarks were determined in and submitted from locations outside the United States. Apparently recognizing that those facts are fatal to a finding of jurisdiction, Plaintiffs boldly (and incorrectly) contend that this Court must ignore them because they contradict Plaintiffs' supposedly well-pleaded allegations that some of the alleged manipulation occurred in the United States. *See* Pls.' PJ Opp. Br. at 15-16 (citing *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013)). Specifically, Plaintiffs insist that the Complaint adequately pleads that (i) SGD SIBOR, USD SIBOR, and SOR were determined

[11] For example, Plaintiffs do not allege that anyone in the United States requested a submitter of SGD SIBOR, USD SIBOR, or SOR abroad to engage in manipulation. *See LIBOR V*, 2015 WL 6696407, at *8; *LIBOR IV*, 2015 WL 6243526, at *38.

by Foreign Defendants' trading, some of which occurred in the United States (Pls.' PJ Opp. Br. at 5-6), and (ii) certain Foreign Defendants' U.S.-based traders "coordinated with" SIBOR and SOR submitters or otherwise participated in the alleged manipulation. *Id.* at 5.[12]

But these assertions — which are either indisputably false or unsupported by any factual allegations — come nowhere close to meeting the requisite pleading standards. First, Plaintiffs' allegation that Foreign Defendants' trading (in the United States or otherwise) was relevant to the determination of SOR (or either SIBOR) is false: public records and judicially noticeable materials conclusively establish that, during the relevant time period, SOR and both SIBORs were set through a submission process in Singapore and were not based on trading — in the United States or otherwise. Plaintiffs do not (and cannot) dispute this fundamental fact in their Opposition. *See* Defs.' Merits Br. at Background, Part A. Second, Plaintiffs' allegations regarding trader conduct apply to only three Foreign Defendants and are bereft of factual support. The sole purported basis for Plaintiffs' claim is brief, generalized language in the CFTC Orders (concerning only Deutsche Bank, RBS, and UBS) referencing "similar misconduct" in the context of SGD SIBOR, USD SIBOR, and SOR as occurred with several other benchmarks related to entirely different currencies and products.[13] Pls.' PJ Opp. Br. at 5. But nowhere do the CFTC Orders assert that *United States-based* traders of any (let alone all) Foreign Defendants were involved in the alleged manipulation of these benchmarks. *See* Defs.' PJ Br. at 22 n.27. Indeed, the CFTC Orders do not link SGD SIBOR, USD SIBOR, or SOR to the United States at all. Nor could they, as no U.S.-based employees of any Foreign Defendant were involved in SGD

[12] Plaintiffs also assert that Defendants manipulated SGD SIBOR, USD SIBOR, and SOR in part by "entering into manipulative transactions in the swap market." Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the First Am. Class Action Compl. for Lack of Subject Matter Jurisdiction & Failure to State a Claim at 5 (citing Complaint ¶¶ 8, 16, 105, 128). But neither the Complaint, nor Plaintiffs' brief, claims that these alleged manipulative transactions, which are inadequately pleaded and demonstrably false (*see* Defs.' Merits Br. at 4-5) occurred in the United States.

SIBOR, USD SIBOR, or SOR submissions, *see* Defs. PJ Br. at 15-16 & n.15, and none of the news articles to which Plaintiffs cite implicates U.S.-based employees in any improper communications. *See* AC ¶¶ 128-33.

Thus, Plaintiffs' reliance on *Dorchester* is misplaced. *Dorchester* merely stated that a plaintiff's allegations are prioritized over declaration testimony *only* where the plaintiff makes a *prima facie* jurisdictional showing based on "legally sufficient allegations." 722 F.3d at 84-85. Plaintiffs' allegations here are nowhere near "legally sufficient." *See also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Hirsch* v. *Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (sustaining dismissal of the complaint where "attenuated allegations" supporting a claim "are contradicted . . . by facts of which [the court] may take judicial notice").

### B. Plaintiffs' Conclusory Allegations That Certain Foreign Defendants Traded in SIBOR- or SOR-Based Instruments in New York or the United States Do Not Confer Jurisdiction

In asserting that specific jurisdiction exists, Plaintiffs rely primarily on generalized allegations that certain Foreign Defendants sold manipulated SIBOR- and SOR-based instruments in the United States (but not to Plaintiffs). *See* AC ¶¶ 12-15, 113. Even if they were pleaded ade-

[13] Plaintiffs assert that Defendants' declarations do not disclaim that "U.S.-based employees had input in or influence on the [SIBOR and SOR] submissions." Pls.' PJ Opp. Br. at 22 n.23. But even if this were a fair reading of the declarations, which it is not, Plaintiffs have not pleaded that any such domestic misconduct occurred. And it is Plaintiffs' burden to set forth a *prima facie* basis for personal jurisdiction, not Defendants' burden to anticipate and then disprove every jurisdictional theory Plaintiffs might conceivably conjure up in a brief. *See Cheung Yin Sun* v. *Mashantucket Pequot Gaming Enter.*, 2016 WL 5820487, at *1 (2d Cir. Oct. 5, 2016) ("In opposing a motion to dismiss for lack of personal jurisdiction, [plaintiffs] bear[ ] the burden of establishing that the court has jurisdiction . . . ."); *Avila* v. *Lease Fin. Grp., LLC*, 2012 WL 1948777, at *3 (S.D.N.Y. May 30, 2012) (explaining that there is no burden on defendants to affirmatively prove a lack of jurisdiction and that any such argument is "simply a misstatement of the law").

quately (which they are not), these allegations of transacting in the United States with non-plaintiffs could not give rise to personal jurisdiction.

First, transacting in SIBOR- and SOR-based instruments in the United States with non-plaintiffs — even if adequately alleged — cannot support personal jurisdiction in this case because those contacts are not "suit-related." *Walden* held that a "defendant's suit-related conduct must create a substantial connection with the forum State." 134 S. Ct. at 1121. In *Waldman* v. *Palestine Liberation Organization*, the Second Circuit made clear that "suit-related conduct" refers to conduct "that could have subjected [the defendant] to liability." 835 F.3d 317, 335 (2d Cir. 2016); *see id.* at 337. In other words, a defendant's minimum contacts with the forum State must be at least a but-for cause of the defendant's liability to the plaintiff. *Id.* at 337, 341. *Waldman* thereby forecloses Plaintiffs' argument that certain Foreign Defendants' alleged transactions (if any) in the United States with parties other than Plaintiffs are relevant "suit-related" forum contacts.[14] In *7 West 57th Street Realty Co.* v. *Citigroup, Inc.*, Judge Gardephe rejected similar arguments, holding that "Plaintiff must demonstrate that the Foreign [Defendants'] *suit-related* conduct creates minimum contacts with New York . . . not simply that the Foreign [Defendants] have a presence here or conduct business activities here in general." 2015 WL

[14] As set forth in the Moving Brief, any allegations that some Foreign Defendants transacted in New York (or the United States) with absent class members or other non-parties are irrelevant. Plaintiffs attempt to distinguish just one of the two authorities Defendants cited in support of this proposition — *AM Trust* v. *UBS AG* — but that effort is unavailing. Although Plaintiffs assert that in *AM Trust*, "the *only* [alleged] connection between the defendant and the forum was that some members of the [class of plaintiffs] . . . reside[d] in California[,]" Pls.' PJ Opp. Br. at 24 n.25, the plaintiffs in *AM Trust* contended — just like Plaintiffs do here — that specific jurisdiction existed based on the foreign defendant's non-suit related contacts with non-plaintiffs in the forum — an argument the *AM Trust* court and many others have rejected. *AM Trust*, 78 F. Supp. 3d 977, 983 (N.D. Cal. 2015). Plaintiffs make no effort to distinguish the other authority Defendants cite, *Beach* v. *Citigroup Alt. Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) ("Contacts with unnamed class members may not be used as a jurisdictional basis . . . ."), which is consistent with other authorities on this issue. *See, e.g.*, *Greene* v. *Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016) ("Specific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members."); *Ambriz* v. *Coca Cola Co.*, 2014 WL 296159, at *4–6 (N.D. Cal. Jan. 27, 2014) (same). With the exception of certain transactions with Deutsche Bank (discussed below, *see* p. 26, *infra*), the Amended Complaint is devoid of any allegations that *Plaintiffs* transacted in SIBOR- and SOR-based instruments with any Foreign Defendant (or otherwise) in the United States.

1514539, at *10 (S.D.N.Y. Mar. 31, 2015); *see also LIBOR V*, 2015 WL 6696407, at *19 n.30 ("Plaintiffs' reliance on the moving defendants' various . . . United States-directed contacts and activities is misplaced, as they have failed to show that the . . . claim arises out of those defendants' United States contacts.").

Second, even if allegations that Foreign Defendants transacted in SIBOR- and SOR-based instruments in the United States could suffice to allege personal jurisdiction, except as to Deutsche Bank, the complaint does not plausibly allege such transactions. Plaintiffs rely on allegations that certain Foreign Defendants "reported to the FRBNY that they transacted interest rate and foreign exchange derivatives, including SIBOR- and SOR-based derivatives, in the United States"; "offered SIBOR- and SOR-based derivatives for sale in the United States to U.S. investors through the Bloomberg Terminal"; or "used ISDA Master Agreements." Pls.' PJ Opp. Br. at 21. As Plaintiffs concede, these arguments do not even purport to apply to many of the Foreign Defendants;[15] and as to others, Plaintiffs offer no more than deficient group pleading.[16] But even if the allegations could apply to some Foreign Defendants, they are wholly insufficient to plausibly plead that any of the Foreign Defendants transacted in SIBOR- and SOR-based instruments in the United States. The two FRBNY surveys cited in the Amended Complaint simply do not say what Plaintiffs claim: they make no reference to SIBOR- or SOR-based instruments, much

[15] Specifically, Plaintiffs make no reference to Foreign Defendants Crédit Agricole S.A., ING Groep N.V., ING Bank N.V., DBS Bank Ltd, DBS Group Holdings Ltd., United Overseas Bank Limited, Macquarie Bank Ltd., and Macquarie Group Ltd. in connection with any of their arguments concerning the Federal Reserve studies and the use of Bloomberg terminals, and no reference to these same Foreign Defendants other than Macquarie Bank Ltd. concerning ISDA agreements. *See* Pls.' PJ Opp. Br. at 3-4.

[16] Plaintiffs' broad references to corporate families in connection with these three arguments are deficient as to Foreign Defendants The Royal Bank of Scotland PLC, The Royal Bank of Scotland Group PLC, RBS Securities Japan Limited, UBS AG, UBS Securities Japan Co. Ltd., BNP Paribas, S.A., Barclays PLC, Barclays Bank PLC, Crédit Agricole S.A., Credit Suisse Group AG, Credit Suisse AG, Credit Suisse International, Standard Chartered Bank, Standard Chartered PLC, Australia and New Zealand Banking Group, Ltd., HSBC Holdings plc, and The Hongkong Shanghai Banking Corporation Limited. *See* Defs.' PJ Br. at 20.

less any statement that any Foreign Defendant was a counterparty to transactions involving such instruments. *See* Decl. of Lee J. Lefkowitz in Supp. of Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction & Venue ("Lefkowitz Decl."), Exs. 25-26. Plaintiffs allege only present-day information available via Bloomberg Terminal, which says nothing about whether any Foreign Defendants offered SIBOR- and SOR-based instruments in the United States *during the relevant time period*. *See* Defs.' PJ Br. at 20-21. Likewise, the ISDA agreements cited by Plaintiffs, into which some (but not all) Foreign Defendants entered with non-parties (Lefkowitz Decl. Exs. 4-21) make no reference to SIBOR- or SOR-based instruments. *See* p. 15, *infra*. Plaintiffs do not even try to link many of the Foreign Defendants to their conclusory allegations and rightly concede that they have made no allegations of forum-related conduct as to certain Foreign Defendants. Pls.' PJ Opp. Br. at 4 n.6.[17]

[17] Plaintiffs incorrectly argue that "23 out of 29 Moving Defendants do not dispute that they traded SIBOR- and SOR-based derivatives in the U.S. with U.S. counterparties in their declarations . . . ." Pls.' PJ Opp. Br. at 4 n.6. But as shown here, except as to Deutsche Bank, the complaints contain no well-pleaded allegations to that effect, so there was nothing to dispute. To treat the absence of denial in certain Foreign Defendants' declarations as the equivalent of a well-pleaded allegation would be to turn *Dorchester* on its head. Under *Dorchester*, Plaintiffs must make a *prima facie* showing of jurisdiction before the Foreign Defendants would have any obligation to rebut. 722 F.3d at 85. Plaintiffs' assertion also is factually incorrect, because it ignores critical language in a number of Foreign Defendants' declarations. *See, e.g.*, Decl. of P. Minor [ECF No. 153] ¶¶ 6-7 ("CASA is not licensed by the federal government to conduct banking or any other type of business in the United States. . . . CASA is not registered to do business in any state of the United States."); Decl. of D. Klay [ECF No. 155] ¶ 5 ("[CSGAG] engages in no trading of any kind in the United States."); Decl. of M. Chambers [ECF No. 160] ¶ 7 ("HSBC Holdings plc does not carry out any banking activities or operations. It does not offer, sell, buy, or trade any financial products in any jurisdiction, and has not done so in the Class Period."); Decl. of B.M. Stoelinga and W.A. Brouwer [ECF No. 162] ¶ 3 ("ING Groep . . . has no operations or employees in the United States and earns no income directly from the United States."); Decl. of M. Gummer [ECF No. 164] ¶ 3 ("MGL . . . conducts no business in the United States."); Decl. of F. Shen [ECF No. 165] ¶ 6 ("[OCBC's U.S. agencies] do not and have not engaged in futures or derivatives trading of any kind."); Decl. of W. Gougherty [ECF No. 166] ¶ 17 ("RBSSJ does not have any operations or employees in New York or anywhere else in the United States."); Decl. of M. Amey [ECF No. 168] ¶¶ 4-5 ("SCPLC does not itself operate in the U.S. and maintains no offices in the U.S. . . . SCPLC itself has no employees."); Decl. of J. Connors [ECF No. 170] ¶ 7 ("UBS Japan does not maintain branches in the United States and does not have direct or indirect subsidiaries in the United States. It has no offices, employees or representatives in the United States either."); Decl. of G. Fong [ECF No. 173] ¶ 6 ("DBS Holdings did not engage in trades of SIBOR-based derivatives or SOR-based derivatives during the relevant time period."). If the Court is inclined to place weight on the alleged absence of denials, Foreign Defendants would seek to supplement their declarations.

These allegations come nowhere near alleging specific, "suit-related" conduct that could give rise to specific jurisdiction over any Foreign Defendant. In any event, since these allegations are not well-pleaded, they should not be credited. *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673, 676 (2d Cir. 2013) (declining to "accept as true a legal conclusion couched as a factual allegation" and discrediting allegations as "conclusory and insufficient for specific personal jurisdiction purposes"); *see also 7 W. 57th St. Realty Co.*, 2015 WL 1514539, at *12-13 (declining to exercise personal jurisdiction predicated on conclusory allegations of USD LIBOR manipulation because "the Court cannot credit mere conclusory statements or [t]hreadbare recitals of the elements of a cause of action").

That some Foreign Defendants — many of which, as Plaintiffs acknowledge, are mere holding companies[18] — have domestic affiliates that conduct generally unrelated business in the United States is irrelevant. To impute a domestic affiliate's contacts to a parent for purposes of specific jurisdiction, Plaintiffs "must first show a merging [of] parent and subsidiary for jurisdictional purposes[, which] requires an inquiry comparable to the corporate law question of piercing the corporate veil." *See LIBOR VI*, 2016 WL 7378980, at *10; *see also* Defs.' PJ. Br. at 20.[19] Plaintiffs make no such allegations here.

[18] *See* AC ¶¶ 31, 40; *see also* Decl. of P. Gonsalves [ECF No. 148] ¶ 4 ("Barclays PLC is a bank holding company . . . incorporated under the laws of England and Wales."); Decl. of D. Klay [ECF No. 155] ¶ 5 ("[CSGAG] is a holding company."); Decl. of M. Chambers [ECF No. 160] ¶ 7 ("HSBC Holdings plc is a foreign bank holding company, not an operating company."); Decl. of B.M. Stoelinga and W.A. Brouwer [ECF No. 162] ¶ 3 ("ING Groep is a holding company . . . ."); Decl. of M. Gummer [ECF No. 164] ¶ 3 ("[MGL] is listed in Australia and is . . . a non-operating holding company."); Decl. of W. Gougherty [ECF No. 166] ¶ 3 ("RBS Group is a United Kingdom bank holding company . . . ."); Decl. of M. Amey [ECF No. 168] ¶ 3("SCPLC is . . . the non-operating holding company of the Standard Chartered group . . ."); Decl. of G. Fong [ECF No. 173] ¶ 2 ("DBS Holdings is a publicly traded investment holding company duly organized and existing under the laws of Singapore . . . .").

[19] Plaintiffs' claim that the "doing business" test espoused in *Wiwa* v. *Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) remains good law, Pls.' PJ Opp. Br. at 16 n.19, is without merit. *See Sonera Holding B.V.* v. *Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014) ("*Daimler* expressed doubts as to the usefulness of an agency analysis, like that espoused in *Wiwa*."). This Court has repeatedly cast doubt on the viability of *Wiwa*'s agency analysis post-*Daimler*. *See In re M/V MSC Flaminia*, 107 F. Supp. 3d 313, 320-21 (S.D.N.Y. 2015) (Scheindlin, J.); *Havlish* v. *Royal Dutch Shell PLC*, 2014 WL 4828654, at *3 (S.D.N.Y. Sept. 24, 2014) (Daniels, J.).

Nor do Plaintiffs' supplemental allegations, set forth in hundreds of pages of documents relating to various ISDAs entered into by a subset of Defendants (Lefkowitz Decl. Exs. 4-21), provide any basis for the assertion of specific jurisdiction over Foreign Defendants. First, the ISDAs make no reference to SIBOR- or SOR-based instruments and therefore have nothing to do with the instruments at issue in this litigation. Second, Plaintiffs are not parties to any of the ISDAs, and many of the ISDAs are not with any of the Foreign Defendants.[20] That some Foreign Defendants entered into agreements to trade unrelated products with unrelated parties is obviously of no aid to Plaintiffs since Plaintiffs cannot establish specific jurisdiction over their claims based on unrelated contractual relationships with non-parties. *See* Defs. PJ. Br. at 21 n.25.[21]

### C. Plaintiffs Fail to Allege a Sufficient Relationship Between the Alleged Overseas Manipulation of SGD SIBOR, USD SIBOR, and SOR and New York or the United States

Plaintiffs' jurisdictional allegations regarding purported manipulation of SGD SIBOR, USD SIBOR, and SOR focus on the type of "random, fortuitous, or attenuated [forum] contacts" that the Supreme Court found deficient in *Walden*. 134 S. Ct. at 1123. For example, Plaintiffs allege that Foreign Defendants manipulated SGD SIBOR, USD SIBOR, and SOR overseas and then published the manipulated rates and sold allegedly manipulated instruments across the world, including (albeit based only on inadequate allegations) in the United States. Plaintiffs further allege that such indiscriminate conduct across the world subjects Foreign Defendants to spe-

[20] *See* Lefkowitz Decl. Exs. 4-5 (Bank of America, N.A.), 10 (Citibank, N.A.), 12 (HSBC Bank USA), 13 (JPMorgan Chase Bank, N.A.). Plaintiffs also concede some are from outside of the relevant time period. *See* Lefkowitz Decl. ¶ 9(i) (attaching an ISDA Master Agreement "executed before the Class Period"), Ex. 12 (dated Feb. 25, 2005), and ¶ 9(k) (attaching a Schedule to an ISDA Master Agreement "executed just after the Class Period"); *see also* Ex. 14 (dated Dec. 27, 2012).

[21] *See also FX*, 2016 WL 1268267, at *3 ("[C]onsent [to the forum selection clause] is inapplicable here even if some of the transactions at issue are arguably related to the agreements. The ISDA agreements confer a contractual right to the counterparties to those agreements, and neither of the counterparties is a plaintiff in this action."); *Dale* v. *Banque SCS All. S.A.*, 2004 WL 2389894, at *5 (S.D.N.Y. Oct. 22, 2004) ("[T]he forum selection clause . . . cannot be construed reasonably as blanket consent by [defendant] to be subject to personal jurisdiction in New York in any action brought against it by a person who is not a party to the . . . agreement.").

cific jurisdiction in the United States under either a purposeful availment theory or the effects test. Neither theory confers jurisdiction here, however, because Plaintiffs have not carried their burden to demonstrate that these alleged jurisdictional contacts — even if plausibly alleged — were specifically directed toward the United States, as required.

*1. Plaintiffs fail to allege that their claims arise out of Foreign Defendants' alleged suit-related contacts with New York or the United States*

Plaintiffs have not alleged the requisite causal nexus between Foreign Defendants' alleged forum-directed conduct and Plaintiffs' claims. The controlling law in this Circuit is that purposeful availment is shown only where a plaintiff demonstrates a causal relationship between each defendant's alleged forum-directed activities and the claim actually pleaded. *Chew* v. *Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998); *see also LIBOR IV*, 2015 WL 6243526, at *28 (observing that no court in this Circuit has imposed a standard "less than a 'but for' connection between the defendant's forum-directed activities and the claim"). Plaintiffs reject this test, citing instead to a passage from *Gucci Am. Inc.* v. *Weixing Li*, 135 F. Supp. 3d 87, 93-94 (S.D.N.Y. 2015) for the proposition that "an articulable nexus or substantial relationship" rather than "a causal relationship" is all that is required. Pls.' PJ Opp. Br. at 16. But the language Plaintiffs selectively quote has no application to the due process requirements of specific jurisdiction; instead, it concerns N.Y. C.P.L.R. § 302(a)(1) — not the due process clause or the requirement that New York law must comport with due process.[22] *Compare Gucci*, 135 F. Supp. 3d at 93-94, *with id.* at 96-97.

It is unsurprising that Plaintiffs resist the "but for" standard of causation, given the allegations upon which they base their claims. The claims in this case arise *solely* from Foreign De-

[22] Moreover, the *Gucci* court — addressing whether it had jurisdiction to enforce a subpoena over a foreign entity — had no occasion to question whether the New York standard was consistent with due process as it found a "strong relationship" between the subpoenaed entity's forum contacts and the subpoena's document requests. 135 F. Supp. 3d at 94.

fendants' alleged manipulation of SGD SIBOR, USD SIBOR and SOR overseas. Under a "but for" causation standard, Plaintiffs must allege facts that show there is some causal relationship between that alleged overseas manipulation and the lone jurisdictional contact Plaintiffs can muster — certain Foreign Defendants' alleged transactions in SIBOR- and SOR-based derivatives in New York or the United States. Those transactions are not adequately pled, but even if they were, unlike the cases to which Plaintiffs cite (Pls.' PJ Opp. Br. at 21-22), Plaintiffs' claims of SIBOR and SOR manipulation do not arise out of or relate to those alleged contacts. As a result, Plaintiffs fail to meet the purposeful availment test established by other judges of this Court addressing similar allegations of overseas manipulation of similar benchmarks. *See LIBOR VI*, 2016 WL 7378980, at *8 ("[A]ny allegations of forum-related contacts that 'relate to' the antitrust conspiracy but that are not causally connected to actual LIBOR submissions are jurisdictionally insufficient."); *LIBOR V*, 2015 WL 6696407, at *8, *14, *19-20; *LIBOR IV*, 2015 WL 6243526, at *32; *7 W. 57th St. Realty Co.*, 2015 WL 1514539, at *11; *Laydon* v. *Mizuho Bank, Ltd.*, 2015 WL 1515358, at *6 (S.D.N.Y. Mar. 31, 2015).

2. *Plaintiffs fail to allege that Foreign Defendants intended to cause harm in or expressly aimed their alleged misconduct at New York or the United States*

Similarly absent from Plaintiffs' allegations is any showing that Foreign Defendants intended or expressly aimed their alleged overseas conduct at New York or the United States. In essence, Plaintiffs allege that Foreign Defendants should have known that SIBOR- and SOR-based instruments were traded across the globe, including by some counterparties in the United States, who would experience downstream effects of the supposed manipulation. Under *Walden*, however, the focus of the inquiry is not where a plaintiff suffers an injury but whether "the defendant's conduct connects him to the forum in a meaningful way." 134 S. Ct. at 1125. For that

reason, the Second Circuit has made plain that under *Walden,* "mere knowledge that a plaintiff resides in a specific jurisdiction [is] insufficient to subject a defendant to specific jurisdiction in that jurisdiction if the defendant does nothing in connection with their tort in that jurisdiction." *Waldman*, 835 F.3d at 338; *see also LIBOR VI*, 2016 WL 7378980, at *11 ("[I]t is black-letter law that harm experienced in a forum is not sufficient to establish specific personal jurisdiction[.]"). None of Plaintiffs' cases is to the contrary.[23]

Recognizing this insurmountable hurdle, Plaintiffs included new assertions in their opposition papers that one Foreign Defendant — Deutsche Bank — manipulated other benchmarks, such as LIBOR, with the purpose of causing harm in the United States. *See* Pls.' PJ Opp. Br. at 20-21; Lefkowitz Decl. Exs. 29-31. These allegations (even if properly pleaded) are irrelevant to Plaintiffs' claims of manipulation of SGD SIBOR, USD SIBOR, and SOR or to any of the other Foreign Defendants.[24] *See LIBOR VI*, 2016 WL 7378980, at *10 n.18 ("[O]nly allegations pertaining to USD LIBOR are potentially relevant to this case."); *LIBOR IV*, 2015 WL 6243526, at *45 ("We continue to reject the impermissible inference that defendants' reprehensible behavior in one product (or even many products: Yen LIBOR, TIBOR, Swiss Franc LIBOR, EURIBOR, . . .) suffices to overcome deficiencies in the pleading of actionable bad behavior in

[23] *See, e.g.*, *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (finding a defendant law firm subject to jurisdiction in New York where it "voluntarily" entered the forum to seek clients and the lawsuit arose directly from those activities); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (distinguishing the exercise of personal jurisdiction in *FX* from the lack of personal jurisdiction in USD LIBOR because – unlike in *FX* where "defendants accomplished their purported scheme by entering into FX transactions" – USD LIBOR defendants "need not engage in any market transactions at all . . . to affect the LIBOR fix").

[24] Plaintiffs' reliance on jurisdictional allegations from criminal proceedings is misplaced because the standards for jurisdiction in civil and criminal contexts are different. *See Waldman*, 835 F.3d 317, 340 ("[T]he due process test for asserting jurisdiction over extraterritorial criminal conduct . . . differs from the test applicable in this civil case, and does not require a nexus between the specific criminal conduct and harm within the United States."); *see also United States* v. *Hayes*, 99 F. Supp. 3d 409, 423 n.4 (S.D.N.Y. Mar. 20, 2015) (acknowledging that a criminal case's findings are "not relevant" to "the law of personal jurisdiction developed in civil cases" as "criminal law and civil law serve different purposes and have different sources and constraints"). And in any event, the quoted Nicholls–Curtler communication refers expressly to LIBOR, and has nothing to do with SIBOR or SOR.

USD LIBOR."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *11 (striking from a USD LIBOR complaint allegations relating to manipulation of Yen LIBOR and EURIBOR); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2014 WL 6488219, at *4 (S.D.N.Y. Nov. 18, 2014) (denying motion for leave to assert USD LIBOR claims based on settlement documents related to interactions on Yen LIBOR).

### 3. *The cases to which Plaintiffs cite are not to the contrary*

Plaintiffs assert that *Gelboim* v. *Bank of America Corp.*, 823 F.3d 759 (2d Cir. 2016), and *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204 (2d Cir. 2003), support their purposeful availment and effects-based theories, but neither case alters the analysis. *Gelboim* — a decision "of narrow scope," 823 F. 3d at 782 — did not address personal jurisdiction at all. Instead, it discussed whether plaintiffs had adequately alleged antitrust injury and a plausible antitrust conspiracy in the context of alleged USD LIBOR manipulation. In addressing the impact of the Second Circuit's ruling in *Gelboim* on remand, the district court confirmed this point by dismissing antitrust claims against all Foreign Defendants on personal jurisdiction grounds. *LIBOR VI*, 2016 WL 7378980, at *1. Judge Buchwald proceeded "on the premise that the conspiracy had an impact on price," yet still rejected the same reading of *Gelboim* that Plaintiffs here advance. *Id.* at *2-3, *5 ("We reject plaintiffs' attempt to read the Second Circuit's opinion so broadly, and we find that plaintiffs have only sufficiently alleged that the goal of the antitrust conspiracy was the projection of financial soundness. . . . [S]uch an object is not sufficiently directed to the United States such as would support the exercise of personal jurisdiction over all panel banks.").

*In re Magnetic Audiotape* is also inapposite. It involved allegations that a Korean manufacturer participated in a meeting in Korea with other co-conspirators, at which defendants alleg-

edly discussed fixing prices of the magnetic audiotape that the Korean manufacturer sold in the United States. *See In re Magnetic Audiotape Antitrust Litig.*, 171 F. Supp. 2d 179, 191 (S.D.N.Y. 2001), *vacated*, 334 F.3d 204 (2d Cir. 2003). The Court reversed a finding that there was no jurisdiction and remanded for further proceedings, concluding that the district court had failed to consider Plaintiffs' allegations that the Korean manufacturer, through an executive, had participated in the Korea meeting[25] "to discuss and agree upon pricing levels for magnetic audiotape in the United States." Br. for Pls.-Appellants and Pl.-Counter-Def.-Appellant at 12, *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003) (No. 02-7687); *see In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208. That is a far cry from what is alleged here. Plaintiffs have made no allegations that Foreign Defendants met to discuss manipulating the price of instruments that they planned to sell in the United States. At most, Plaintiffs have alleged that Foreign Defendants manipulated certain benchmark rates (SGD SIBOR, USD SIBOR, and SOR) in *Singapore* and that allegedly affected the downstream prices of certain financial instruments sold worldwide, including in the United States. That does not confer jurisdiction under *Walden* because Plaintiffs fail to allege that Foreign Defendants' "conduct connects [them] to the forum in a meaningful way." 134 S. Ct. at 1125. "In this Circuit, where the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff, . . . [i]t is not sufficient that conduct incidentally had an effect in the forum . . . ." *Wilder* v. *News Corp.*, 2015 WL 5853763, at *8 (S.D.N.Y. Oct. 7, 2015). Other judges of this Court, confronting simi-

[25] Finding that the district court had likely overlooked allegations tied to a set of meeting minutes that put an executive of the Korean manufacturer at the meeting in Korea, the Second Circuit instructed that district court further consider the jurisdictional significance of its attendance. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208.

lar allegations of manipulation, have likewise held that they do not confer jurisdiction. *See, e.g.*, *7 W. 57th St. Realty Co.*, 2015 WL 1514539, at *9; *Laydon*, 2015 WL 1515358, at *3, *6.

## III. PLAINTIFFS' CONSPIRACY ALLEGATIONS DO NOT GIVE RISE TO SPECIFIC JURISDICTION OVER FOREIGN DEFENDANTS

Plaintiffs fail to plausibly allege a conspiracy to manipulate USD SIBOR, SGD SIBOR, and SOR, *see* Defs.' Merits Br. at II.A.; Defs.' Merits Reply Br. II.A, or that the alleged conspiracy (assuming one had been alleged) had any presence in New York or the United States. *See* Section II, *supra*. Each deficiency is fatal to Plaintiffs' conspiracy-based jurisdictional allegations.[26] Even if Plaintiffs could cure these deficiencies, their conspiracy allegations are still deficient because they fail to comport with both due process and the applicable jurisdictional statutes.

### A. Plaintiffs' Conspiracy Allegations Do Not Comport with Due Process

Plaintiffs rely on a theory of vicarious conspiracy jurisdiction — whereby a plaintiff can assert jurisdiction over an out-of-forum defendant based solely on a co-conspirator's alleged in-forum contacts (Pls.' PJ Opp. Br. at 29). That is insufficient. First, as noted above, Plaintiffs have alleged no in-forum contacts by any Foreign Defendant in furtherance of the alleged conspiracy. But, even assuming such contacts were alleged, Plaintiffs do not address the critical flaw in their theory: it would subject a defendant to jurisdiction even where a plaintiff fails to allege anything that connects the defendant *itself* to the forum. *See Walden*, 134 S. Ct. at 1125 (requiring that "the defendant's conduct connects him to the forum in a meaningful way"); Defs.' PJ Br. at Part IV.A. Plaintiffs fail to cite a single case post-*Walden* that exercised jurisdiction

[26] Addressing a similar set of allegations, Judge Buchwald recently held that conspiracy jurisdiction was inapplicable because "plaintiffs ha[d] not plausibly alleged that any defendant committed an act pursuant to the pled conspiracy in the United States." *LIBOR VI*, 2016 WL 7378980, at *12.

over a defendant on the basis of vicarious conspiracy jurisdiction.[27] Indeed, some of the cases to which Plaintiffs cite reject their theory, finding that it "subvert[s] the due process principles that govern personal jurisdiction." *See, e.g.*, *Newsome* v. *Gallacher*, 722 F.3d 1257, 1265, 1268 (10th Cir. 2013) (finding jurisdiction not based on conspiracy but based on adequate allegations that each co-conspirator independently had "(1) [taken] intentional action, (2) express[ly] aim[ed] at the forum state, and (3) [had] knowledge that the brunt of the injury would be felt in the forum state").[28]

Plaintiffs argue that vicarious conspiracy jurisdiction is consistent with *Walden*'s focus on a defendant's contacts with the forum because by entering a conspiracy an out-of-forum defendant profits from the in-forum conspiratorial acts. Pls.' PJ Opp. Br. at 28. This ignores, however, the critical difference between the showing necessary for purposes of liability and that necessary to establish personal jurisdiction. *See Leasco Data Processing Equip. Corp.* v. *Maxwell*, 468 F.2d 1326, 1341 (2d Cir. 1972) (Friendly, J.), *abrogated on other grounds by Morrison* v. *Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("We believe, moreover, that attaining the rather low floor of foreseeability necessary to support a finding of tort liability is not enough to support *in personam* jurisdiction."). "Liability depends on the relationship between the plaintiff and the

---

[27] *See, e.g.*, *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 485 (S.D.N.Y. 2013) (plaintiffs had "not alleged sufficient minimum contacts to exercise personal jurisdiction over" the foreign defendants because "[t]he factual allegations that the [foreign defendants] participated in a de facto conspiracy do not demonstrate any link between the [foreign defendants] and the [in-forum conduct at issue]"); *LaChapelle* v. *Torres*, 1 F. Supp. 3d 163, 170 (S.D.N.Y. 2014) (finding that "conduct underlying the primary torts . . . was at [foreign defendant's] direction"); *Miller* v. *Holzmann*, 2007 WL 39371, at *9 (D.D.C. Jan. 8, 2007) ("Unlike contract 20A, there is no act by [foreign defendant] as to these two contracts upon which jurisdiction could be based."); *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 340 (S.D.N.Y. 2000) ("Plaintiffs have satisfied the second prong by demonstrating that [in-forum conspirator] acted in New York for the benefit of [foreign defendants], with their knowledge and consent, and under some control by [them].").

[28] *See also Miller* v. *Holzmann*, 2007 WL 778568, at *3, *6 (D.D.C. Mar. 6, 2007) (finding, as to one allegedly manipulated contract, that the "defendant affirmatively acted to create a contact with the United States by submitting a bid to receive USAID money" but, as for two other contracts alleged to be part of the conspiracy, that plaintiffs' "personal jurisdiction version of guilt by association" was not "consistent with the basic tenet of personal jurisdiction that courts must focus on the purpose of the defendant's conduct in availing itself to the forum").

defendants and between the individual defendants," while "jurisdiction depends only upon each defendant's relationship with the forum." *Sher* v. *Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).[29] Plaintiffs cannot sidestep *Walden* and due process by merely alleging that a Foreign Defendant entered a conspiracy.

Rather, to impute a co-conspirator's in-forum contacts to an out-of-forum defendant and still satisfy due process, a plaintiff must, at a minimum, allege that the out-of-forum defendant exercised direction and control over the in-forum conspiratorial acts. Defs.' PJ Br. at Part IV.B. Plaintiffs do not even attempt to make such a showing: the Amended Complaint contains no allegations that any Foreign Defendant exercised the requisite direction and control over an alleged co-conspirator's in-forum contracts.[30] In any event, Plaintiffs' theory of vicarious conspiracy jurisdiction cannot support jurisdiction over any Foreign Defendant because Plaintiffs have not adequately alleged a conspiracy by any Foreign Defendant to manipulate SGD SIBOR, USD SIBOR, or SOR in the United States, much less that such conduct occurred at the direction and control of each of the Foreign Defendants. Plaintiffs' conspiracy allegations do not confer jurisdiction.

**B. The Applicable Jurisdictional Statutes Bar Plaintiffs' Conspiracy Theory**

Plaintiffs' conspiracy allegations not only fail to satisfy due process, they also are incompatible with the relevant jurisdictional statutes and rules.

**New York Long Arm Statute**: Plaintiffs do not dispute that, to impute a co-conspirator's forum contacts under the New York long arm statute, a plaintiff must demonstrate

---

[29] *See also Brown* v. *Kerkhoff*, 504 F. Supp. 2d 464, 517 (S.D. Iowa 2007) ("[T]he mere fact that two or more individuals experienced a meeting of the minds to work in concert toward a common objective is not always a sufficient connection with the forum for constitutional purposes even if the nonresident is aware of precisely what the resident is doing and where he is doing it . . . .").

[30] Instead, Plaintiffs rely on allegations that acts in furtherance of the conspiracy supposedly occurred within the forum. Pls.' PJ Opp. Br. at 30. These allegations are deficient for the reasons set forth in Section II, *supra*.

that "(a) the defendant had an awareness of the effects in New York of [the co-conspirator's] activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control or at the request of or on behalf of the out-of-state defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005); *see also* Defs.' PJ Br. at 33-34. Nor do they even attempt to argue that their allegations satisfy each of these elements.[31] Instead, Plaintiffs argue that the Court need not rely on the New York long arm statute because there are alternative bases for jurisdiction. *See* Pls.' PJ Opp. Br. at 32 & n.32. But, as set forth below, there are no such alternative bases for jurisdiction.

**Federal Jurisdictional Rules**: Rules 4(k)(1)(C) and 4(k)(2) do not recognize vicarious conspiracy jurisdiction, as explained in Defendants' Opening Brief.[32] *See* Defs.' PJ Br. at 34 n.42 and accompanying text (citing cases).[33] Even if vicarious conspiracy jurisdiction were viable under these rules, Plaintiffs have failed to plausibly allege a conspiracy, *see* Defs.' Merits Br. at II.A; Defs.' Merits Reply Br. II.A, or that any acts in furtherance of the conspiracy occurred in New York or the United States. *See* Section II, *supra*. Plaintiffs' conspiracy allegations fail under Rules 4(k)(1)(C) and 4(k)(2).

[31] While Plaintiffs argue they have alleged an act in furtherance of the alleged conspiracy occurred in New York, Pls.' PJ Opp. Br. at 32-33, those allegations are inadequately pleaded. *See* Section II, *supra*. In any event, Plaintiffs ignore the other elements of the long arm statute.

[32] Plaintiffs are also wrong to insist that this Court should apply a nationwide contacts analysis, Pls.' PJ Opp. Br. at 32, as they fail to address the due process concerns posed by that approach. Defs.' PJ Br. at Part V.B.

[33] Plaintiffs cite one pre-*Walden* decision from the Southern District of Illinois, where defendants were found amenable to personal jurisdiction in connection with a conspiracy based on their own conduct directed at the forum and not based solely on their co-conspirators' in-forum contacts. *See Flag Co.* v. *Maynard*, 376 F. Supp. 2d 849, 855-56 (N.D. Ill. 2005). This case is no longer good law in the Seventh Circuit or elsewhere. *See, e.g.*, *Martin* v. *Eide Bailly LLP*, 2016 WL 4496570, *3 (S.D. Ind. Aug 26, 2016) ("Many courts that have considered the viability of vicarious conspiracy jurisdiction post-*Walden* have rejected it, holding that participation in a conspiracy cannot 'provide a standalone basis for jurisdiction.'").

### C. Fair Play and Substantial Justice Preclude the Exercise of Conspiracy Jurisdiction

Plaintiffs do not address the thrust of Defendants' argument that vicarious conspiracy jurisdiction offends traditional notions of fair play and substantial justice by allowing a plaintiff to drag a foreign defendant into a United States court based on nothing more than a third-party's in-forum contacts. Defs.' PJ Br. at Part VII. Plaintiffs have failed to plausibly allege that any Foreign Defendant had the requisite direction and control of any purported co-conspirator's alleged in-forum contacts. Under these circumstances, it "would be unreasonable" to exercise personal jurisdiction over a foreign defendant where "standing alone [the defendant] lacks even minimal contacts with the United States." *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 232 (S.D.N.Y. 2015).

## IV. PLAINTIFFS FAIL TO ALLEGE JURISDICTION AND VENUE UNDER THE CLAYTON ACT AS TO THE VENUE DEFENDANTS

Plaintiffs do not dispute that they have failed to plausibly allege venue as to the Venue Defendants under the Clayton Act. Instead, they argue that venue is proper under a different statute, 28 U.S.C. § 1391. Pls.' PJ Opp. Br. at 33-34. This misses the point. Plaintiffs assert personal jurisdiction in part based on the nationwide service provision of Section 12 of the Clayton Act. To avail themselves of Section 12's extraterritorial jurisdictional rule, Plaintiffs must first satisfy *that provision's* specific venue requirements — not the venue requirements of some other statute. *Daniel* v. *Am. Bd. of Emergency Med.*, 428 F.3d 408, 423-25 (2d Cir. 2005) ("[T]he extraterritorial service provision of Clayton Act Section 12 may be invoked to establish personal jurisdiction only when the requirements of the section's venue provision are satisfied."). Having failed to do so (*see* Defs.' PJ Br. at Part VI), Plaintiffs cannot rely on Section 12 of the Clayton Act to assert jurisdiction as to the Venue Defendants.

## V. DEUTSCHE BANK DID NOT CONSENT TO THIS COURT'S JURISDICTION

Plaintiffs incorrectly argue that Deutsche Bank is subject to jurisdiction in this Court because Deutsche Bank entered into an ISDA agreement that contains a forum selection clause designating this Court as an appropriate forum.[34] While FrontPoint's claims are based in relevant part on SIBOR- or SOR-based swaps it transacted with Deutsche Bank, Plaintiffs do not allege that those swaps were entered into pursuant to the ISDA. Defs.' PJ Br. at 42. Moreover, the alleged forum selection clause extends only to contract claims and not to Plaintiffs' federal or their unjust enrichment claims. *See* Defs.' PJ Br. at 43; *LIBOR VI*, 2016 WL 7378980, at *12 ("[W]e will not uphold jurisdiction over a counterparty for antitrust claims simply on the basis of a forum selection clause . . . .").

Even if the alleged forum selection clause in the ISDA agreement could have applied to FrontPoint's transactions with Deutsche Bank at issue here, it is Plaintiffs' burden to show through trade confirmations that the alleged transactions were actually executed under the agreement. Plaintiffs have the burden to identify the transactions (including the relevant documentation) that provide the basis for FrontPoint's claims, not Deutsche Bank. *See* n.13, *supra*. This is particularly true here where such documents typically would be in Plaintiffs' possession, and the Amended Complaint provides no specifics from which Deutsche Bank could identify the relevant transactions.

[34] Plaintiffs incorrectly claim that Deutsche Bank "recognizes Plaintiffs' point" on this issue, citing a motion to transfer venue that Deutsche Bank filed in *Sabal Limited LP* v. *Deutsche Bank AG*. Pls.' PJ Opp. Br. at 6 n.7. The circumstances here are not analogous. In *Sabal*, Deutsche Bank moved to transfer based on the exclusive jurisdictional provision contained in the Securities Account and Control Agreement ("SACA"), not the ISDA, and the Court granted the motion because it found the conduct at issue "clearly 'related to' the SACA." *Sabal Ltd. LP* v. *Deutsche Bank AG*, 2016 WL 5080385, at *10 (W.D. Tex. Sept. 19, 2016).

## VI. PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

Plaintiffs have not carried their burden to establish entitlement to jurisdictional discovery. *See A.W.L.I. Grp., Inc.* v. *Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 575 (E.D.N.Y. 2011) ("[A] party seeking jurisdictional discovery, like a party seeking other kinds of discovery, bears the burden of showing necessity."). Plaintiffs have not come close to making out a *prima facie* case of jurisdiction, which provides a sufficient reason standing alone to deny the request for discovery. *See* Defs.' PJ Br. at Part IX; *see also Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 255 (2d Cir. 2007) ("We conclude that the district court acted well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction."); *Jazini* v. *Nissan Motor Co.*, 148 F.3d 181, 186 (2d Cir. 1998) (same). Other judges of this Court considering allegations of manipulation of similar benchmarks have dismissed plaintiffs' claims on jurisdictional grounds without jurisdictional discovery. *See, e.g.*, *LIBOR VI*, 2016 WL 7378980, at *14 (Buchwald, J.) (USD LIBOR).[35] This Court should do the same.[36]

## VII. THIS COURT SHOULD DENY PLAINTIFFS' REQUEST FOR TRANSFER TO THE EASTERN DISTRICT OF PENNSYLVANIA

As to Barclays Bank PLC, the Royal Bank of Scotland plc, and UBS AG, Plaintiffs request that, if this Court finds that it lacks personal jurisdiction, it transfer the case against those three Defendants to the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1406(a) and 1631, rather than dismissing it. Plaintiffs argue that the Pennsylvania court would have jurisdic-

[35] *See also 7 W. 57th St. Realty Co.*, 2015 WL 1514539 (Gardephe, J.) (USD LIBOR); *Laydon*, 2015 WL 1515358 (Daniels, J.) (Yen LIBOR); *cf. Sonterra Capital Master Fund, Ltd.* v. *Credit Suisse Grp. AG*, No. 1:15-cv-00871 [ECF No. 81] (S.D.N.Y. Sept. 22, 2015) (Stein, J.) ("[T]he jurisdictional issues will be decided on a pre-discovery basis.") (CHF LIBOR).

[36] Were the Court inclined to permit jurisdictional discovery, it would be proper first to resolve Foreign Defendants' separate arguments that Plaintiffs' allegations do not state a claim. *See Chevron Corp.* v. *Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012) ("[I]n cases such as this one with multiple defendants – over some of whom the court indisputably has personal jurisdiction – in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, we may address first the facial challenge to the underlying cause of action and, if we dismiss the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants.").

tion over these Foreign Defendants based on their registration under 42 Pa. Stat. and Cons. Stat. Ann. § 5301.[37] Pls.' PJ Opp. Br. 34-36. Plaintiffs' request should be denied because transfer to the Eastern District of Pennsylvania would be futile. *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2001*, 257 F. Supp. 2d 648, 651 (S.D.N.Y. 2003) (dismissal rather than transfer appropriate where "plaintiffs [had], at best, a questionable basis for personal jurisdiction" in the proposed jurisdiction). Pennsylvania's business registration statute cannot be read to confer general jurisdiction without violating both the unconstitutional conditions doctrine and the Commerce Clause. *See* Part I, *supra*.

Nor is transfer to the Eastern District of Pennsylvania appropriate procedurally. While it is not unheard of for a Plaintiff to seek to transfer his own case, "[b]ecause a plaintiff has already had the opportunity to choose the forum when filing the action, courts in this District have historically required plaintiffs to demonstrate a 'change in circumstances' that has taken place since the filing of suit in order to prevail." *United States ex rel. Fisher* v. *Bank of America, N.A.*, 2016 WL 4543879, at *3 (S.D.N.Y. Aug. 31, 2016). Plaintiff demonstrates no such change. Indeed, circumstances that were "known or should have been known to plaintiff long before the lawsuit" will not support a plaintiff's motion to transfer. *Id.* at *4. Plaintiffs were well aware that these three Defendants were each registered to do business in Pennsylvania when they filed their initial complaint. *See* Class Action Compl. ¶ 17 [ECF No. 4]. Rather than filing in Pennsylvania where several of the statutes of limitation are shorter,[38] Plaintiffs selected New York. Having

[37] Plaintiffs no longer argue this Court has jurisdiction over these Defendants in New York based on their registration under a Pennsylvania statute.

[38] *Compare* 42 Pa. Stat. and Cons. Stat. Ann. § 5525 (four-year limitations period for breach of the implied covenant of good faith and fair dealing claims), *with* N.Y. C.P.L.R. § 213 (six-year limitations period); *compare Sevast* v. *Kakouras*, 915 A.2d 1147, 1153 (Pa. 2007) (four-year limitations period for unjust enrichment claims under Pennsylvania law), *with United Teamster Fund* v. *MagnaCare Admin. Servs., LLC*, 39 F. Supp. 3d 461, 478 (S.D.N.Y. 2014)) (three-year limitations period for unjust enrichment claims for damages under New York law).

made this choice, the Court should not now reward Plaintiffs' forum shopping by granting a transfer of these claims. *See Spar, Inc.* v. *Info. Res., Inc.*, 956 F.2d 392, 395 (2d Cir. 1992) ("[W]e believe that plaintiff's failure to shop diligently before the action's inception is no reason to allow it now to 'bargain hunt.'"). Moreover, Plaintiffs have not offered a single reason why transfer here meets the applicable test. Plaintiffs have pointed to nothing in Pennsylvania — no parties, no documents, no witnesses, no events — that would support transfer to that forum. *Accord Fisher*, 2016 WL 4543879, at *4 (setting forth "change of circumstances" test). Transfer here is simply not in the interests of justice. Plaintiffs' request to splinter these proceedings into separate lawsuits alone would be a disservice to judicial economy and encourage forum hunting of the type happening here. Plaintiffs' request for transfer should be denied.

## CONCLUSION

The Challenged Claims should be dismissed under Rule 12(b)(2) and/or (b)(3).

Dated: New York, New York
January 13, 2017

RESPECTFULLY SUBMITTED,

/s/ Penny Shane
Penny Shane
Corey Omer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
shanep@sullcrom.com
omerc@sullcrom.com

*Attorneys for Defendant Australia and New Zealand Banking Group, Ltd.*

/s/ Matthew J. Porpora
David H. Braff
Yvonne S. Quinn
Jeffrey T. Scott
Matthew J. Porpora
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
braffd@sullcrom.com
quinny@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

Jonathan D. Schiller
Leigh M. Nathanson
Amos E. Friedland
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2388
Fax: (212) 446-2350
jschiller@bsfllp.com
lnathanson@bsfllp.com
afriedland@bsfllp.com

Michael Brille
Melissa Felder Zappala
5301 Wisconsin Avenue NW
Washington, D.C. 20015
Telephone: (202) 274-9608
Fax: (202) 237-6131
mbrille@bsfllp.com
mfelder@bsfllp.com

*Attorneys for Defendants Barclays plc and Barclays Bank plc*

/s/ Stephen J. Obie
Jayant W. Tambe
Stephen J. Obie
Kelly A. Carrero
JONES DAY
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3939
jtambe@jonesday.com
sobie@jonesday.com
kacarrero@jonesday.com

*Attorneys for Defendants BNP Paribas, S.A.*

/s/ David R. Gelfand
David R. Gelfand
Mark D. Villaverde
MILBANK, TWEED, HADLEY & McCLOY LLP
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5000
dgelfand@milbank.com
mvillaverde@milbank.com

*Attorneys for Defendant Commerzbank AG*

/s/ Andrew W. Hammond
Andrew W. Hammond
Kimberly A. Haviv
WHITE & CASE
1155 Avenue of the Americas
New York, New York 10036
Telephone: (212) 819-8200
Fax: (212) 354-8113
ahammond@whitecase.com
khaviv@whitecase.com

Darryl S. Lew
701 Thirteenth Street, NW
Washington, D.C. 20005
Telephone: (202) 626-3600
Fax: (202) 639-9355
dlew@whitecase.com

*Attorneys for Defendants Crédit Agricole Corporate and Investment Bank and Crédit Agricole S.A.*

/s/ Joel Kurtzberg
Herbert S. Washer
Elai Katz
Joel Kurtzberg
Jason M. Hall
Adam S. Mintz
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000
hwasher@cahill.com
ekatz@cahill.com
jkurtzberg@cahill.com
jhall@cahill.com
amintz@cahill.com

*Attorneys for Defendants Credit Suisse Group AG, Credit Suisse AG and Credit Suisse International*

/s/ Gary W. Kubek
Gary W. Kubek
Erica S. Weisgerber
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836
gwkubek@debevoise.com
eweisgerber@debevoise.com

*Attorneys for Defendants DBS Bank Ltd. and DBS Group Holdings Ltd.*

/s/ Moses Silverman
Moses Silverman
Andrew C. Finch
Matthew J. Weiser
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Fax: (212) 757-3990
msilverman@paulweiss.com
afinch@paulweiss.com
mweiser@paulweiss.com

*Attorneys for Defendant Deutsche Bank AG*

/s/ Lewis J. Liman
Lewis J. Liman
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Fax: (212) 225-3999
lliman@cgsh.com

Nowell D. Bamberger
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2000 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 974-1500
Fax: (202)-974-1999
nbamberger@cgsh.com

*Attorneys for Defendants The Hongkong and Shanghai Banking Corporation Limited and HSBC Holdings plc*

/s/ Karen P. Seymour
Karen P. Seymour
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Fax: (212) 558-3588
seymourk@sullcrom.com

Amanda F. Davidoff
1700 New York Avenue, NW, Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Fax: (202) 293-6330
davidoffa@sullcrom.com

*Attorneys for Defendants ING Groep N.V. and ING Bank, N.V.*

/s/ Christopher M. Paparella
Christopher M. Paparella
Marc A. Weinstein
Justin Ben-Asher
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
Fax: (212) 422-4726
chris.paparella@hugheshubbard.com
marc.weinstein@hugheshubbard.com
justin.ben-asher@hugheshubbard.com

*Attorneys for Defendants Macquarie Bank Ltd. and Macquarie Group Ltd.*

/s/ Nicholas C. Adams
Nicholas C. Adams
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Fax: (212) 872-1002
nadams@akingump.com

C. Fairley Spillman
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4409
Fax: (202) 887-4288
fspillman@akingump.com

*Attorneys for Defendant Oversea-Chinese Banking Corporation Ltd.*

/s/ Fraser L. Hunter, Jr.
Fraser L. Hunter, Jr.
David S. Lesser
Jamie S. Dycus
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: (212) 230-8800
Fax: (212) 230-8888
fraser.hunter@wilmerhale.com
david.lesser@wilmerhale.com
jamie.dycus@wilmerhale.com

*Attorneys for Defendants The Royal Bank of Scotland Group plc, The Royal Bank of Scotland plc, and RBS Securities Japan Limited*

/s/ Marc J. Gottridge
Marc J. Gottridge
Lisa J. Fried
Benjamin A. Fleming
HOGAN LOVELLS US LLP
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100
marc.gottridge@hoganlovells.com
lisa.fried@hoganlovells.com
benjamin.fleming@hoganlovells.com

*Attorneys for Defendants Standard Chartered Bank and Standard Chartered PLC*

/s/ Daryl A. Libow
Daryl A. Libow
Christopher M. Viapiano
Elizabeth A. Cassady
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Telephone: (202) 956-7500
Fax: (202) 956-6330
libowd@sullcrom.com
viapianoc@sullcrom.com
cassadye@sullcrom.com

*Attorneys for Defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

/s/ Peter Sullivan
Peter Sullivan
Eric J. Stock
Jefferson E. Bell
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 351-4000
psullivan@gibsondunn.com
estock@gibsondunn.com
jbell@gibsondunn.com

Joel S. Sanders (admitted pro hac vice)
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8268
Fax: (415) 393-8268
jsanders@gibsondunn.com

*Attorneys for Defendants UBS AG and UBS Securities Japan Co. Ltd.*

/s/ Dale C. Christensen, Jr.
Dale C. Christensen, Jr.
Michael B. Weitman
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Fax: (212) 480-8421
christensen@sewkis.com
weitman@sewkis.com

*Attorneys for Defendant United Overseas Bank Limited*