CAHILL GORDON & REINDEL LLP
EIGHTY PINE STREET
NEW YORK, NY 10005-1702

| | | | | |
|---|---|---|---|---|
| ROBERT A. ALESSI | CHARLES A. GILMAN | TELEPHONE: (212) 701-3000 | JOEL H. LEVITIN | MICHAEL A. SHERMAN |
| HELENE R. BANKS | ARIEL GOLDMAN | WWW.CAHILL.COM | GEOFFREY E. LIEBMANN | DARREN SILVER |
| ANIRUDH BANSAL | JASON M. HALL | | BRIAN T. MARKLEY | JOSIAH M. SLOTNICK |
| DAVID L. BARASH | WILLIAM M. HARTNETT | 1990 K STREET, N.W. | WILLIAM J. MILLER | RICHARD A. STIEGLITZ JR. |
| LANDIS C. BEST | NOLA B. HELLER | WASHINGTON, DC 20006-1181 | NOAH B. NEWITZ | SUSANNA M. SUH |
| BRADLEY J. BONDI | CRAIG M. HOROWITZ | (202) 862-8900 | MICHAEL J. OHLER | ANTHONY K. TAMA |
| BROCKTON B. BOSSON | DOUGLAS S. HOROWITZ | | DAVID R. OWEN | JONATHAN D. THIER |
| JAMES J. CLARK | TIMOTHY B. HOWELL | | JOHN PAPACHRISTOS | SEAN P. TONOLLI* |
| CHRISTOPHER W. CLEMENT | DAVID G. JANUSZEWSKI | CAHILL GORDON & REINDEL (UK) LLP | LUIS R. PENALVER | JOHN A. TRIPODORO |
| AYANO K. CREED | ELAI KATZ | 24 MONUMENT STREET | KIMBERLY PETILLO-DÉCOSSARD | GLENN J. WALDRIP, JR. |
| SEAN M. DAVIS | BRIAN S. KELLEHER | LONDON EC3R 8AJ | SHEILA C. RAMESH | HERBERT S. WASHER |
| STUART G. DOWNING | RICHARD KELLY | +44 (0)20 7920 9800 | MICHAEL W. REDDY | MICHAEL B. WEISS |
| ADAM M. DWORKIN | CHÉRIE R. KISER* | | OLEG REZZY | S. PENNY WINDLE |
| ANASTASIA EFIMOVA | JOEL KURTZBERG | | JAMES ROBINSON | DAVID WISHENGRAD |
| JENNIFER B. EZRING | TED B. LACEY | WRITER'S DIRECT NUMBER | THORN ROSENTHAL | COREY WRIGHT |
| JOAN MURTAGH FRANKEL | MARC R. LASHBROOK | | TAMMY L. ROY | JOSHUA M. ZELIG |
| JONATHAN J. FRANKEL | ALIZA R. LEVINE | (212) 701-3120 | JONATHAN A. SCHAFFZIN | DANIEL J. ZUBKOFF |
| PIERRE M. GENTIN | | | | *ADMITTED IN DC ONLY |

March 14, 2018

Re:   *FrontPoint Asian Event Driven Fund, L.P.* v. *Citibank, N.A.*, No 16-cv-05263 (AKH) (S.D.N.Y.)

Dear Judge Hellerstein:

We represent Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse International and write on behalf of all Defendants[1] to inform the Court of controlling subsequent authority that further supports Defendants' pending motions to dismiss: the Second Circuit's February 23, 2018 decision in *Charles Schwab Corporation* v. *Bank of America Corporation*, __ F.3d __, 2018 WL 1022541 (2d Cir. Feb. 23, 2018) (*Schwab*) (attached as Exhibit A). In *Schwab*, the Second Circuit largely affirmed Judge Buchwald's jurisdictional rulings in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) (*LIBOR IV*), confirmed many of this Court's personal jurisdiction rulings in *SIBOR I*,[2] and rejected many of the same jurisdictional arguments Plaintiffs continue to advance in this action, thus further supporting Foreign Defendants' motion to dismiss for lack of personal jurisdiction. *Schwab* — which dismissed claims based on financial instruments not tied to LIBOR — also supports all Defendants' motion for dismissal on the merits because the FX forwards and FX swaps at issue in this action are not tied to SIBOR.

---

[1] Unless otherwise specified, defined terms have the same meaning as in Defendants' brief filed in support of their Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Dkt. 243) ("Defs.' Merits Br.") and Foreign Defendants' brief filed in support of their Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction and Venue (Dkt. 239) ("Defs.' PJ Br."). Only the Foreign Defendants join the portions of this letter addressing personal jurisdiction arguments. All Defendants join as to the merits argument.

[2] *FrontPoint Asian Event Driven Fund, L.P.* v. *Citibank, N.A.*, 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017) (*SIBOR I*).

CAHILL GORDON & REINDEL LLP

- 2 -

    The *Schwab* court addressed the dismissal of one complaint filed in the USD LIBOR multi-district litigation, in which plaintiffs alleged that the sixteen USD LIBOR panel banks were subject to specific jurisdiction in California. The Schwab plaintiffs ("Schwab") argued that there was jurisdiction over the foreign defendant panel banks because those banks allegedly manipulated USD LIBOR by making false submissions outside the United States and traded instruments linked to that benchmark in the United States, including "billions of dollars' worth" of instruments that plaintiffs allegedly purchased from some, but not all, defendant panel banks or their affiliates in California. *Schwab*, 2018 WL 1022541, at *1-2. Some of plaintiffs' claims were based on allegations of direct trades with defendants or their affiliates in California; other claims were not. *Id.* at *6-10. The Second Circuit analyzed specific jurisdiction on a claim-by-claim and defendant-by-defendant basis and separately examined three groups of defendants: (i) "Direct Seller Defendants," alleged to have traded directly with Schwab in California; (ii) "Indirect Seller Defendants," alleged to have traded indirectly with Schwab in California through affiliates; and (iii) "Non-Seller Defendants," which were not alleged to have traded with Schwab directly or through an affiliate. *Id.* at *6-10. The court also distinguished between (i) "Schwab's claim that Defendants committed fraud through their daily LIBOR submissions to the BBA in London," *id.* at *7, and (ii) claims that the court found arose from transactions that Schwab entered into directly with the Direct Seller Defendants in California (*e.g.*, "claims for fraud relating to *omissions* by Defendants in the course of selling floating-rate instruments, interference with prospective economic advantage, breach of the implied covenant, and unjust enrichment"). *Id.* at *6-7. The court held Schwab had failed to establish jurisdiction over the Indirect Seller Defendants and the Non-Seller Defendants for either category of claims, and that with respect to the Direct Seller Defendants, Schwab had adequately alleged facts to support jurisdiction only with respect to the second set of claims the court held to arise from alleged direct sales in California.

    Under the Second Circuit's ruling, Plaintiffs' arguments must be rejected and Plaintiffs' claims cannot survive. That ruling rejects Plaintiffs' arguments here that jurisdiction can be established over Foreign Defendants — only one of which is alleged to have traded directly or indirectly with Plaintiffs — based on (i) those Foreign Defendants' (or their affiliates'[3]) alleged trading activities in SIBOR and SOR-based instruments in the United States with third parties; (ii) the "effects test"; or (iii) a theory of conspiracy jurisdiction. Further, and of equal importance, including with respect to Plaintiffs' claims against Deutsche Bank AG ("Deutsche Bank"), *Schwab* confirms that, even if Plaintiffs had plausibly alleged trading with Foreign Defendants (which they have not, *see* Defs.' PJ Reply at Part III), such transactions would not be "suit-related" because Plaintiffs' claims all concern purported manipulation of SIBOR and SOR submissions made outside the United States. Plaintiffs neither allege any connection between the alleged manipulation and FrontPoint's purported transactions with Deutsche Bank, nor any supposed misconduct that took place in the United States.

---

[3] While the *Schwab* Court allowed Plaintiffs to amend to clarify their allegations that the Indirect Seller Defendants were subject to jurisdiction because domestic affiliates had acted as their agents (*id.* at *7-12), that distinction has no significance here, as Plaintiffs do not claim to have traded with domestic affiliates of any Foreign Defendant.

### I. *Schwab* Confirms That Plaintiffs' Purposeful Availment Theory Fails Because Plaintiffs Do Not Allege Any Suit-Related Conduct In or Specifically Directed at the Forum.

*Schwab* rejected the same argument advanced by Plaintiffs here — that they can establish jurisdiction over Foreign Defendants with which they did not trade based on alleged conduct that occurred overseas. The Second Circuit held that Schwab could rely on a defendant's trading activities in the forum only to the extent those trades were entered into with a plaintiff *and* the plaintiff's claim arose out of those trades. *Schwab*, 2018 WL 1022541, at *7-10. Plaintiffs here cannot satisfy either component of that test because (i) Plaintiffs did not trade directly with any Foreign Defendants other than Deutsche Bank (and, as to Deutsche Bank, FrontPoint's purported transactions are inadequately alleged) and (ii) Plaintiffs' claims do not arise out of any of Foreign Defendants' supposed trading activities in the United States. These separate deficiencies — both of which this Court already recognized in *SIBOR I* — each provide independent reasons for dismissal.

As a threshold matter, the Second Circuit in *Schwab* held that absent specific allegations of an agency relationship between a defendant and its affiliates or allegations properly supporting conspiracy jurisdiction (neither of which exist here), a defendant's trading activities in the forum can support jurisdiction *only* if the defendant traded directly with a plaintiff. *Id.* at *7-10. Even if Plaintiffs could plausibly allege that Foreign Defendants traded SIBOR- and SOR-based instruments in the forum (and they have not (*see* Defs.' PJ Br. at 11-12; Defs.' PJ Reply at 5-6; *SIBOR I*, 2017 WL 3600425, at *6)), with a single exception, there is no allegation in the SAC that any Foreign Defendant traded with *Plaintiffs* in the United States or anywhere else. In fact, Plaintiffs fail to adequately allege that Foreign Defendants engaged in transactions involving SIBOR- and SOR-based derivatives with *any* counterparties in the United States. *See* Defs.' PJ Br. at Part I.B; Defs.' PJ Reply at Part I.A; *see also SIBOR I*, 2017 WL 3600425, at *6 (holding that "plaintiffs have failed to allege that the Foreign Defendants actually engaged in" "transactions involving SIBOR- and SOR-based derivatives with counterparties in the United States"). That failure alone compels dismissal under *Schwab*.

*Schwab* also requires dismissal for the independent reason that the Second Circuit concluded that foreign panel bank defendants' alleged transactions with third parties in the forum did not constitute "suit-related conduct" as to claims arising out of allegations of overseas benchmark manipulation. The *Schwab* court squarely held that "sales in California do not alone create personal jurisdiction for claims premised solely on Defendants' false LIBOR submissions in London." 2018 WL 1022541, at *7. Relying on its decision in *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317 (2d Cir. 2016), the court held that to establish a "substantial connection," plaintiffs must "show some sort of causal relationship between a defendant's U.S. contacts and the episode in suit," and the plaintiffs' claim must additionally "arise from the defendants' purposeful contacts with the forum." *Schwab*, 2018 WL 1022541, at *7. Because the alleged domestic transactions at issue "did not cause Defendants' false LIBOR submissions to the BBA in London [or] in some other way give rise to claims seeking to hold Defendants liable for those submissions," the court held they were not suit-related and could not be used to establish specific jurisdiction. *Id.* That is the exact conclusion this Court reached in *SIBOR I*. 2017 WL 3600425, at *7 (rejecting allegations similar to those in

*Schwab* because Plaintiffs failed to "allege specific facts . . . that those transactions had a nexus to the benchmark interest rate manipulation at issue").

This Court should adhere to its prior conclusion. Each of Plaintiffs' claims alleges misconduct that took place overseas, not misconduct tied to any transaction entered into in the United States.[4] *Schwab* confirms that the Foreign Defendants' alleged trading activities in the United States are not "causally connected" to the alleged manipulation of SIBOR and SOR in Singapore.[5] *See* Defs.' PJ Br. at Part I.C; Defs.' PJ Reply Br. at Part I.C; *see also Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (where there is no connection "between the forum and the underlying controversy . . . specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State"). While *Schwab* dealt with common law fraud claims involving the alleged persistent suppression of USD LIBOR, its rationale compels dismissal of Plaintiffs' claims here based on alleged episodic, "trader-based" manipulation of SIBOR and SOR. As recognized by this Court in *SIBOR I*, Plaintiffs have not plausibly alleged a "nexus" between the alleged overseas benchmark manipulation and the trading activity in the United States. 2017 WL 3600425, at *7. The alleged trading activity in the United States is not plausibly alleged to have contributed to the alleged manipulation. Defs.' PJ Br. at 10-11; Defs.' PJ Reply Br. at 12 n.16; *SIBOR I*, 2017 WL 3600425, at *5-6. Nor do Plaintiffs plausibly allege that trading in the United States was the intended target of any alleged overseas manipulation. Defs.' PJ Reply Br. at 8. Indeed, *Schwab* held that such transactions would not be "acts in furtherance of" the alleged conspiracy even if defendants had "also [conspired] 'to earn profits' from that manipulation." 2018 WL 1022541, at *9-10 ("[F]inancial self-interest is not the same as furthering a conspiracy[.]"). As in *Schwab*, that Plaintiffs' theory of liability does not depend on whether a Foreign Defendant traded with them only bolsters the conclusion the U.S.-based trading activities are not "suit-related." *Id.* at *7. Plaintiffs allege liability even when manipulation allegedly occurred without any intent to influence U.S.-based trading activity — as evidenced by the fact that their claims are not necessarily linked to any such trades by Foreign Defendants. When the SAC is stripped of its conclusory allegations, there is no link between the alleged overseas manipulation and Foreign Defendants' supposed U.S.-based trading, and it is clear that Plaintiffs' claims do not in any way "arise from the defendants' purposeful contacts with the forum." *Id.* at *7. *Schwab* thus precludes the exercise of jurisdiction. *Id.* ("[T]he California transactions did not cause Defendants false LIBOR submissions to the BBA in London, nor did the transactions in some other way give rise to claims seeking to hold Defendants liable for those submissions.").

---

[4] Plaintiffs' claim of breach of the implied covenant of good faith and fair dealing against Deutsche Bank is no different. Unlike the Schwab plaintiffs, who alleged that they entered into all transactions in California, *see Schwab*, 2018 WL 1022541, at *2, here Plaintiffs are not New York residents, rendering any contracts to which they were a party irrelevant to the jurisdictional analysis in New York. SAC ¶ 81. Moreover, Plaintiffs' claim is based on Deutsche Bank's foreign activity related to the submission of SIBOR and SOR rates, not, as was the case in *Schwab*, alleged misconduct that took place in or was directed at the United States. SAC ¶ 288.

[5] *Schwab* held that, as to certain state law claims concerning misrepresentations about USD LIBOR in connection with the purchase or sale of USD LIBOR-based instruments, direct transactions with Plaintiffs in the forum can serve as suit-related contacts for jurisdictional purposes. 2018 WL 1022541, at *6. Plaintiffs make no such claim here.

In short, Plaintiffs fail to allege that any Foreign Defendant's trading *with third-parties* in the forum caused their alleged injury in any way. Plaintiffs' failure to set forth any plausible, non-conclusory allegations linking the alleged manipulation outside the United States to any alleged domestic trading activities by Foreign Defendants requires dismissal of their claims.

## II.   *Schwab* Confirms That Plaintiffs Have Failed to Satisfy the Effects Test.

The *Schwab* court also rejected Plaintiffs' alternative theory that jurisdiction can be established over Foreign Defendants through the "effects test." The court held that, if the conduct at issue "occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff . . . [e]xercise of jurisdiction . . . may be constitutionally permissible if the defendant *expressly aimed its conduct at the forum*." *Schwab*, 2018 WL 1022541, at *10 (emphasis added). The Schwab plaintiffs' allegations that harmful effects in the forum were "merely foreseeable" did not satisfy this standard. *Id.* Their contention that "defendants surely knew that the brunt of th[e] injury would be felt by plaintiffs like Schwab in California" was insufficient, because the assertion that "the effects of LIBOR manipulation were likely to reach an economy as large as California's d[id] not mean that Defendants' conduct in London was 'expressly aimed' at the state." *Id. SIBOR I* held the same, rejecting Plaintiffs' nearly identical arguments. 2017 WL 3600425, at *7 ("The FAC contains no non-conclusory allegations that the Foreign Defendants purposefully directed their activities at residents of the United States."). Now, as before, the core of Plaintiffs' claim is that Defendants in Singapore allegedly manipulated a Singapore benchmark rate intended to reflect the cost of borrowing funds in the Singapore interbank market, and this manipulation affected SIBOR and SOR-based instruments worldwide. At most, Plaintiffs have alleged that the supposed manipulation caused foreseeable harm in the United States, among other places, which is not enough to establish jurisdiction under *Schwab*. *See* Defs.' PJ Br. at Part I.D; Defs.' PJ Reply Br. at Part I.C.2.

## III.   *Schwab* Confirms That Plaintiffs' Allegations Are Insufficient for Purposes of Conspiracy Jurisdiction.

*Schwab* also makes clear that Plaintiffs' conspiracy jurisdiction theory fails. In *Schwab*, the court ruled that, at a minimum, "the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." 2018 WL 1022541, at *9. Again, this holding is consistent with the Court's reasoning in *SIBOR I*. 2017 WL 3600425, at *8 (holding that Plaintiffs "failed to allege facts sufficient to support their conspiracy jurisdiction theory" because "they have not alleged that any defendant — including those who do not contest jurisdiction — committed any act in furtherance of the conspiracy from within the United States or purposefully directed its misconduct at the United States"). Plaintiffs cannot establish jurisdiction based on the supposed conspiracy because they still

fail to plausibly allege either a conspiracy, Defs.' Merits Br. at Part III.B, or an act in furtherance of the conspiracy that occurred in or was expressly aimed at the United States, *see supra* Part II.[6]

### IV. *Schwab's* Causation Analysis Supports Dismissal on the Merits of Claims Based on FX Instruments.

*Schwab* further confirms that Plaintiffs' claims regarding FX forwards and FX swaps should be dismissed because SIBOR and SOR were not directly incorporated into the terms of these instruments. In *Schwab*, the court held that common law fraud claims based on fixed-rate instruments — i.e., "financial instruments that do not reference LIBOR at all" — were properly dismissed on the pleadings, even though the Schwab plaintiffs asserted that market participants commonly valued such instruments by reference to USD LIBOR. 2018 WL 1022541, at *13. The court recognized that the relationship between defendants' alleged conduct and the Schwab plaintiffs' alleged injuries was too attenuated and that permitting the Schwab plaintiffs to pursue claims pertaining to financial instruments not expressly linked to USD LIBOR would lead to "boundless liability" of the sort that the law "does not provide for." *Id.* The same is true here regarding Plaintiffs' claims based on FX forwards and FX swaps. As this Court previously held, "defendants' alleged manipulation of SIBOR and SOR had no impact on the currency exchange forwards that Sonterra traded in" because Plaintiffs did not plausibly allege that those forwards "incorporated SIBOR and SOR as a component of price." *SIBOR I*, 2017 WL 3600425, at *12. *Schwab* reinforces this Court's prior conclusion, and nothing in Plaintiffs' amended pleadings alters it. Defs.' Merits Br. at Part III.A.2.a.i.

\*              \*              \*

Foreign Defendants respectfully submit that *Schwab* provides further support for their pending motion to dismiss for lack of personal jurisdiction, and all Defendants respectfully submit that *Schwab* supports their motion to dismiss on the merits.

Respectfully submitted,

*/s/ Joel Kurtzberg*

Joel Kurtzberg

---

[6] *Schwab*'s brief discussion of conspiracy jurisdiction did not address whether conspiracy jurisdiction also requires a plaintiff to set forth plausible agency allegations to satisfy due process, 2018 WL 1022541, *9-10, as Foreign Defendants have argued. Defs.' PJ Br. at 25-28; Defs.' PJ Reply Br. at 16-19. Rather, *Schwab* rejected the position advocated by the Schwab plaintiffs that conspiracy jurisdiction can be established even if no act in furtherance of the conspiracy occurred in or was specifically directed at the forum. *Schwab* also did not address the requirements for conspiracy jurisdiction under the New York Long Arm Statute or Rules 4(k)(1) and 4(k)(2), each of which requires Plaintiffs to adequately plead direction, control, and knowledge. Defs.' PJ Br. at 25-28; Defs.' PJ Reply Br. at 16-19. These are additional reasons for finding in Foreign Defendants' favor.


CAHILL GORDON & REINDEL LLP

- 7 -

The Honorable Alvin K. Hellerstein
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

<u>BY ECF</u>

cc:     Counsel of Record