


March 30, 2018

**VIA ECF**
The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** ***FrontPoint Asian Event Driven Fund, L.P., et al v. Citibank, N.A. et al,* No. 16-cv-05263-AKH**

Dear Judge Hellerstein:

We write in response to Defendants' March 26, 2018 letter submitting *7 West 57th Street Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2018 WL 1415209 (S.D.N.Y. Mar. 20, 2018) ("7 *West 57th*"), as supplemental authority in support of their pending motion to dismiss Plaintiffs' Second Amended Class Action Complaint. *See* ECF No. 237 ("Complaint" or "¶ __").

*7 West 57th* does not support Defendants' motion to dismiss Sonterra's claims for lack of antitrust standing.[1] *7 West 57th* concerned Sherman Act claims relating to the manipulation of USD LIBOR. However, the plaintiff only transacted in "high-grade municipal bonds" that did not incorporate UBS LIBOR as a component of price and "were not specifically LIBOR-indexed." 2018 WL 1415209 at *3, 11. Accordingly, the court found there was no plausible chain of causation between defendants' manipulation of USD LIBOR and plaintiff's alleged injury. *See id.* at *10-13.

In contrast, Plaintiffs here transacted in derivatives that incorporated SIBOR and/or SOR as a price component. ¶¶ 176-98 (describing SIBOR- and SOR-based derivatives). As this Court previously recognized in *SIBOR I*, antitrust standing "is essentially a proximate cause analysis that hinges upon 'whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits.'" *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 civ. 5263 (AKH), 2017 WL 3600425, at *12 (*citing In re London Silver Fixing, Ltd. Antitrust Litig.*, 213 F. Supp. 3d 530, 552 (S.D.N.Y. 2016) ("*Silver Fixing*")) (internal quotations and citations omitted). The "detailed and non-conclusory theory of the [pricing] relationship" set forth in the Complaint (¶¶ 230-34) establishes a sufficiently close connection between Defendants' manipulation of SIBOR and SOR and the harm suffered by Sonterra, which was forced to pay more or receive less than it should have on its FX forward transactions as a direct result of Defendants' conspiracy. *See Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, 277 F. Supp. 3d 521, 548 (S.D.N.Y. 2017).

Privity is not required for antitrust standing and Plaintiffs do not need to transact directly with a Defendant to suffer an antitrust injury. *See e.g. Silver Fixing,* 213 F. Supp. 3d at 553-55. Here,

[1] *See also* Pls.' Mem. of Law in Opp. to Defs.' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim, ECF No. 249, at 16-26.






Plaintiffs allege not merely that that Defendants "conspired to alter prices within a particular segment or region of the market" but rather, that Defendants "manipulated the benchmark price, upon which all market participants [including Sonterra] relied [in trading SIBOR- and SOR-based derivatives] across a variety of markets." *See id.* at 555. Sonterra was directly injured in the same manner and to the same extent as those who traded directly with Defendants, *i.e.*, there are no "more direct" victims of Defendants' conspiracy. *Id.*

Sonterra's damages are also not "highly speculative" (or speculative at all) because they can be calculated using transaction data and the standard pricing formulas set forth in the Complaint, which incorporate SIBOR and SOR. ¶¶ 77-8, 180-93, 231-34 (alleging loss of $40,000 in foreign exchange forward transactions). These allegations are sufficient to establish antitrust standing based on FX forward transactions at the pleading stage. *See, e.g.*, *Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300 (LGS), 2017 WL 3309759, at *6 (S.D.N.Y. Aug. 3, 2017) (holding "damages are not highly speculative because [ ] they are based on a mathematical relationship between the FX benchmark rates and the prices Plaintiffs paid, and arise from identifiable transactions in which Plaintiffs paid inflated prices due to Defendants' manipulation."); *Sullivan v. Barclays* PLC, No. 13-CV-2811 (PKC), 2017 WL 685570, at *19 (S.D.N.Y. Feb. 21, 2017) (finding damages arising from Euribor manipulation were not "highly speculative" for Euro FX forward transactions).

Defendants' attack on the direct relationship alleged between SIBOR, SOR, and the prices of Singapore dollar FX forwards is simply a denial of the allegations in the Complaint. At least three other courts in this district have already rejected identical causation arguments (made by many of the same Defendants) regarding FX futures, forwards, and swaps.[2] This Court should reach the same conclusion here.

Respectfully submitted,

/s/ Vincent Briganti

[2] *See e.g. Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300 (LGS), 2018 WL 1472506 at *6 (S.D.N.Y. Mar. 22, 2018) (holding that the plaintiff established an antitrust injury by alleging that "the manipulated benchmark FX rates were the primary component of the prices Plaintiffs paid for foreign currency"); *Sullivan*, 2017 WL 685570 at *9-10 (holding that allegations of a formulaic relationship between Euribor and the prices of FX forwards plausibly established that plaintiffs were "consequently injured by the Euribor's manipulation"); *Sonterra*, 277 F. Supp. 3d at 546-47 (finding antitrust injury where "the Complaint offers a detailed non-conclusory theory of the relationship between CHF LIBOR and the price of [ ] FX forwards").