# CAHILL GORDON & REINDEL LLP
EIGHTY PINE STREET
NEW YORK, NY 10005-1702

| | | | | |
|---|---|---|---|---|
| ROBERT A. ALESSI | CHARLES A. GILMAN | TELEPHONE: (212) 701-3000 | JOEL H. LEVITIN | MICHAEL A. SHERMAN |
| HELENE R. BANKS | ARIEL GOLDMAN | WWW.CAHILL.COM | GEOFFREY E. LIEBMANN | DARREN SILVER |
| ANIRUDH BANSAL | JASON M. HALL | | BRIAN T. MARKLEY | JOSIAH M. SLOTNICK |
| DAVID L. BARASH | WILLIAM M. HARTNETT | 1990 K STREET, N.W. | WILLIAM J. MILLER | RICHARD A. STIEGLITZ JR. |
| LANDIS C. BEST | NOLA B. HELLER | WASHINGTON, DC 20006-1181 | NOAH B. NEWITZ | SUSANNA M. SUH |
| BRADLEY J. BONDI | CRAIG M. HOROWITZ | (202) 862-8900 | MICHAEL J. OHLER | ANTHONY K. TAMA |
| BROCKTON B. BOSSON | DOUGLAS S. HOROWITZ | | DAVID R. OWEN | JONATHAN D. THIER |
| JAMES J. CLARK | TIMOTHY B. HOWELL | | JOHN PAPACHRISTOS | SEAN P. TONOLLI* |
| CHRISTOPHER W. CLEMENT | DAVID G. JANUSZEWSKI | CAHILL GORDON & REINDEL (UK) LLP | LUIS R. PENALVER | JOHN A. TRIPODORO |
| AYANO K. CREED | ELAI KATZ | 24 MONUMENT STREET | KIMBERLY PETILLO-DÉCOSSARD | GLENN J. WALDRIP, JR. |
| SEAN M. DAVIS | BRIAN S. KELLEHER | LONDON EC3R 8AJ | SHEILA C. RAMESH | HERBERT S. WASHER |
| STUART G. DOWNING | RICHARD KELLY | +44 (0)20 7920 9800 | MICHAEL W. REDDY | MICHAEL B. WEISS |
| ADAM M. DWORKIN | CHÉRIE R. KISER* | | OLEG REZZY | S. PENNY WINDLE |
| ANASTASIA EFIMOVA | JOEL KURTZBERG | | JAMES ROBINSON | DAVID WISHENGRAD |
| JENNIFER B. EZRING | TED B. LACEY | WRITER'S DIRECT NUMBER | THORN ROSENTHAL | COREY WRIGHT |
| JOAN MURTAGH FRANKEL | MARC R. LASHBROOK | | TAMMY L. ROY | JOSHUA M. ZELIG |
| JONATHAN J. FRANKEL | ALIZA R. LEVINE | | JONATHAN A. SCHAFFZIN | DANIEL J. ZUBKOFF |
| PIERRE M. GENTIN | | | | |

(212) 701-3120

*ADMITTED IN DC ONLY

April 6, 2018

Re: *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No 16-cv-05263 (AKH) (S.D.N.Y.)

Dear Judge Hellerstein:

We represent Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse International and write on behalf of Defendants[1] in response to Plaintiffs' March 27, 2018 letter (Dkt. 276) ("Pls.' Ltr."), submitting as supplemental authority in support of their personal jurisdiction (and merits) arguments Judge Schofield's recent decision in *Nypl* v. *JPMorgan Chase & Co.*, 2018 WL 1472506 (S.D.N.Y. Mar. 22, 2018) ("*Nypl*"), a case relating to the alleged manipulation of certain foreign exchange ("FX") benchmark rates. Plaintiffs' reliance on *Nypl* is misplaced because it adds nothing new. In *Nypl*, Judge Schofield addresses jurisdictional arguments premised on the same allegations of FX manipulation and reaches the same conclusions as she reached in her earlier decision in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ("*FX*"), which the parties briefed in connection with the previous motion to dismiss and which this Court has already found does not support personal jurisdiction here.[2] *Nypl*, like *FX* before it, does nothing to change the conclusion that Plaintiffs' claims must be dismissed on personal jurisdiction and merits grounds.

---

[1] Unless otherwise specified, defined terms have the same meaning as in Defendants' Brief in Support of their Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Dkt. 243) ("Defs.' Merits Br.") and Foreign Defendants' Brief in Support of their Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction and Venue (Dkt. 239) ("Defs.' PJ Br."). Only the Foreign Defendants join the portions of this letter addressing personal jurisdiction arguments. All Defendants join as to the merits argument.

[2] Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and Venue at 10, 16, 22, 24, 25, 29 (Dkt. 176); Foreign Defendants' Reply Brief in Support of Their Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and Venue at 3 n.2, 5, 15 n.21, 18 n.23 (Dkt.

*First*, *Nypl* rejected the argument, which Plaintiffs also advance here, that a court can assert personal jurisdiction over Foreign Defendants that are merely foreign holding companies or otherwise do not operate in the United States. *Nypl* dismissed all claims against HSBC Holdings plc and The Royal Bank of Scotland Group plc, each a Foreign Defendant here, because they are "foreign parent holding companies, not banks or dealers in any foreign currency exchange market [who] . . . do not have operations in the United States" and plaintiffs failed to set forth any "allegations of suit-related conduct specific" to them. 2018 WL 1472506, at *6. Plaintiffs do not even attempt to address this holding, which only confirms the insufficiency of their assertion of personal jurisdiction over the Foreign Defendants that are holding companies or otherwise do not operate or trade SIBOR- or SOR-based derivatives in the United States.[3] Plaintiffs here fail to allege that any of these Foreign Defendants, like those two holding company defendants in *Nypl*, had any relevant operations in or directed at the United States. Defs.' PJ Br. at 11 n.13; Defs.' PJ Reply Br. at 6 n.9. *Nypl* confirms that the claims against these Foreign Defendants must be dismissed.

*Second*, *Nypl* rejected the argument, similar to the one Plaintiffs make here, that defendants and their subsidiaries should be treated as "single economic units" for jurisdictional purposes because plaintiffs had not "provide[d] sufficient facts or argument in support of a veil-piercing or alter ego analysis." 2018 WL 1472506, at *7. Plaintiffs again do not even mention this holding, which applies with equal force to this case. Like the plaintiffs in *Nypl*, Plaintiffs here have failed to adequately allege any basis for attributing any affiliate's jurisdictional contacts to any Foreign Defendant. Defs.' PJ Br. at 10, 12, 19 n.27; Defs.' PJ Reply Br. at 5; *see also FrontPoint Asian Event Driven Fund, L.P.* v. *Citibank, N.A.*, 2017 WL 3600425, at *6 (S.D.N.Y. Aug. 18, 2017) ("*SIBOR I*") ("[P]laintiffs may not refer to affiliated defendants by a conclusory collective name unless plaintiffs adequately allege that the conduct of one affiliate is attributable to another.").

*Third*, under the reasoning of *Nypl*, Plaintiffs' allegations that Foreign Defendants manipulated SIBOR and SOR outside the United States and traded SIBOR- and SOR-based instruments in the United States are insufficient to support a finding of specific jurisdiction. Even if Plaintiffs included sufficient facts in their complaint to support such allegations (and they do not[4]), under *Charles Schwab Corp.* v. *Bank of America Corp.*, 883 F.3d 68 (2d Cir. Feb. 23, 2018) ("*Schwab*") and *SIBOR I*, these allegations still fail to establish the requisite substantial connection between the alleged misconduct, Plaintiffs' claims, and the forum. The requisite substantial

---

185); *see also* Foreign Defendants' Brief in Support of Their Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and Venue at 9-11 (Dkt. 145).

[3] These Foreign Defendants are Barclays PLC, DBS Bank, DBS Holdings Ltd., The Hongkong and Shanghai Banking Corporation Limited, HSBC Holdings plc, The Royal Bank of Scotland Group plc, United Overseas Bank Limited, Credit Agricole SA, Credit Suisse Group AG, ING Groep N.V., Macquarie Group Ltd., Oversea-Chinese Banking Corporation Ltd., Standard Chartered PLC, and UBS Securities Japan Co. Ltd. *See* Defs.' PJ Br. at 11 n.13; Foreign Defendants' Reply Brief in Support of Their Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction and Venue (Dkt. 253) at 6 n.9 ("Defs.' PJ Reply Br.").

[4] For example, as this court recognized in *SIBOR I*, Plaintiffs do not even adequately allege that Foreign Defendants traded SIBOR- and SOR-based instruments in the forum. 2017 WL 3600425, at *6; *see also* Defs.' PJ Br. at 11-12; Defs.' PJ Reply Br. at 5-6.

connection is lacking because, among other reasons, Plaintiffs did not trade directly with any Foreign Defendants other than Deutsche Bank[5] and their claims do not arise out of Foreign Defendants' supposed U.S.-based trading activities. Defs.' PJ Br. at 14-22; Defs.' PJ Reply Br. at 9-15; *SIBOR I*, 2017 WL 3600425, at *6-7; Defs.' Mar. 14, 2018 Ltr. at 3-5 (Dkt. 271).

Ignoring the ways in which *Nypl* supports Foreign Defendants' jurisdictional arguments, Plaintiffs mischaracterize *Nypl's* specific jurisdiction rulings.[6] *Nypl*, like *FX*, concluded that certain defendants were subject to specific jurisdiction because, unlike here, plaintiffs alleged that defendants' collusive conduct either occurred in or was specifically directed at the United States. Judge Schofield's decisions recognize that the process for determining FX benchmarks differs in critically important ways from foreign submission-based benchmarks like SIBOR and SOR. *See, e.g., In re Foreign Exchange Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 596 (S.D.N.Y. 2015) (distinguishing manipulation alleged in USD LIBOR and FX). Specifically, the pertinent FX benchmarks were allegedly set, at least in part, based on *actual* trades conducted in the United States. *See FX*, 2016 WL 1268267, at *5 ("Defendants executed concerted trading strategies designed to manipulate, and which actually did manipulate, the Fixes. . . . Each Defendant has continuously and systematically entered into FX transactions . . . in this District[.]"). By contrast, during the relevant time period, SIBOR and SOR were set through the submission of *hypothetical* borrowing rates outside the United States. *See SIBOR I*, 2017 WL 3600425, at *1; SAC ¶¶ 163-65; Defs.' Merits Br. at 3-5. As Judge Buchwald put it in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 1558504, at *7 (S.D.N.Y. Apr. 15, 2016):

> In [*FX*], defendants allegedly manipulated the WM/Reuters Closing Spot Rates, an important benchmark in the FX market, by discussing and engaging in coordinated trading strategies. Therefore, substantial FX business, including billions of dollars of FX transactions, in the United States provides a basis to find that defendants engaged in suit-related conduct here, because defendants accomplished their purported scheme *by entering into FX transactions*. Here, by contrast, defendants need not engage in any market transactions at all, much less in Eurodollar futures contracts, to affect the LIBOR fix, and we have already held that plaintiffs have failed to show that

---

[5] As to Deutsche Bank, FrontPoint's purported transactions are inadequately alleged. Defs.' PJ Br. at 19 n.26; Defs.' PJ Reply Br. at 19-20.

[6] Plaintiffs grossly mischaracterize *Nypl* in multiple respects. In addition to their assertion that the manipulation alleged in *Nypl* occurred in London (Judge Schofield found it did not, as addressed below), Plaintiffs' contention that the *Nypl* Court upheld jurisdiction based on more "generalized jurisdictional allegations" than those made here is also wrong. Judge Schofield relied on plea agreements involving certain defendants that the Court deemed to have added "specificity and plausibility" to the plaintiffs' more generalized allegations. *Nypl*, 2018 WL 1472506, at *5 (quoting a plea agreement that states "business activities of the defendant and its co-conspirators in connection with the purchase and sale of the EUR/USD currency pair, were the subject of this conspiracy and were within the flow of, and substantially affected, interstate and U.S. import trade and commerce . . . [and the conspiracy] was carried out, in part, within the United States"). Plaintiffs have alleged nothing of that sort here. Plaintiffs' allegations, including each of the regulatory reports and settlements, do not indicate that any of the relevant misconduct took place in or was directed at the United States, and these allegations were already rejected as insufficient to support jurisdiction in *SIBOR I*. Defs.' PJ Br. at 15-16; Defs.' PJ Reply Br. at 13; *SIBOR I*, 2017 WL 3600425, at *5.

CAHILL GORDON & REINDEL LLP

- 4 -

defendants engaged in their purported suppression of LIBOR in order to benefit their Eurodollar trading position.

(internal citations omitted). Under very similar reasoning, the Second Circuit in *Schwab* held that no personal jurisdiction existed over Foreign Defendants accused solely of manipulating foreign LIBOR submissions. *See* Defs.' Mar. 14, 2018 Ltr. at 3-5 (Dkt. 271). For the same reason, *Nypl*'s specific jurisdiction rulings have no applicability to this case.

*Finally*, notwithstanding that *Nypl* addresses only personal jurisdiction, Plaintiffs contend that the decision supports their claims of antitrust standing. Pls.' Ltr. at 3. Not only did *Nypl* say nothing about antitrust standing, but the *Nypl* defendants did not contest the injury-in-fact component of antitrust injury. Here, Defendants have raised that issue, and Plaintiffs have failed to plausibly allege injury-in-fact sufficient to establish antitrust standing. Defs.' Merits Br. at 20-22. And, contrary to Plaintiffs' suggestion, nothing in *Nypl* lends any support to Sonterra's spurious claim that USD SIBOR or SOR are linked to the FX forwards it allegedly traded. That in *Nypl* the prices of *FX consumer retail transactions* were allegedly impacted by *FX benchmark rates* says nothing about whether the prices of the FX forwards that Sonterra alleges it purchased here were impacted by the alleged manipulation of two *interest rate benchmarks*, USD SIBOR and SOR. Indeed, Sonterra makes no non-conclusory allegations to support its contention that USD SIBOR or SOR were used to price its FX forwards — let alone that they were the "primary component." Nothing in *Nypl* can salvage Sonterra's claims.

Respectfully submitted,

Joel Kurtzberg

The Honorable Alvin K. Hellerstein
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

BY ECF

cc: Counsel of Record