LOWEY DANNENBERG

June 7, 2018

**BY ECF**
The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

   Re: *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-cv-05263 (AKH)

Dear Judge Hellerstein:

  We write on behalf of Plaintiffs in response to Defendants' June 1, 2018 letter ("Defs. Ltr.") (ECF No. 291) submitting *Harry v. Total Gas & Power N.A., Inc.*, 889 F.3d 104 (2d Cir. 2018) ("*Total Gas*") as supplemental authority in support of their pending motion to dismiss Plaintiffs' Corrected Second Amended Complaint ("SAC" or "¶ __") (ECF No. 237). *Total Gas* is a fact-specific decision that, contrary to Defendants' letter, requires the Court to deny their motion to dismiss for at least the following reasons:

  *First*, the plaintiffs in *Total Gas* did *not* allege either that defendants manipulated the prices of the derivatives they traded or that they "suffered injury from . . . direct reliance on a manipulated financial rate." 889 F.3d at 113. Rather, the *Total Gas* plaintiffs alleged that "shockwaves" created by defendants' allegedly manipulative transactions at four regional natural gas delivery hubs caused them to lose money in unrelated transactions in a completely different market. *Id.* at 108-09 (explaining that defendants' scheme was focused on manipulating natural gas prices at four specific regional delivery hubs where plaintiffs did not trade).[1] Significantly, the *Total Gas* plaintiffs conceded that defendants' transactions at those regional hubs did not affect the prices of the derivatives they traded. *Id.* at 113. In fact, statistical analyses in plaintiffs' own complaint confirmed the lack of any direct relationship between prices at the regional hubs and the market where plaintiffs traded. *Id.* at 115. The Second Circuit accordingly found that plaintiffs failed to state an antitrust claim because they could not plausibly connect defendants' misconduct to the prices they paid. *Id.* at 114-15.

  The opposite is true here. Plaintiffs allege a direct injury because they transacted derivatives that were "linked in a rule-based manner" to the same Singapore Interbank Offered Rate ("SIBOR") and Singapore Swap Offer Rate ("SOR") that Defendants manipulated. *Total Gas*, 889 F.3d at 113; *see also* ¶¶ 10-11, 200-16 (detailing regulatory findings and trader firings related to SIBOR and SOR manipulation). Specifically, Plaintiff FrontPoint "traded in [swap] derivatives whose price was directly impacted by the SIBOR rate" with Defendants Deutsche Bank and Citibank. *FrontPoint*

---

[1] As the Second Circuit explained, natural gas trades in a collection of discrete hub-based markets. *Total Gas*, 889 F.3d at 107. Because the different hubs are animated by regional fundamentals of supply and demand, the prices quoted at each hub bear little relationship to prices elsewhere. The derivatives market is similarly divided, with the futures contracts the *Total Gas* plaintiffs traded reflecting only the price of natural gas at one specific hub (*i.e.*, the Henry Hub in Louisiana) and not the regional hubs the defendants allegedly manipulated. *Id.* at 108.



*Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-cv-05263 (AKH), 2017 WL 3600425, at *12 (S.D.N.Y. Aug. 18, 2017); *see also* ¶ 81. Plaintiff Sonterra likewise transacted Singapore dollar foreign exchange ("FX") forwards (¶ 82) that were priced based on SIBOR and SOR using an industry standard formula. ¶¶ 185-87. The SAC alleges in detail how Defendants' concerted misconduct caused SIBOR and SOR to be artificial during the Class Period. ¶¶ 217-28. This resulted in harm to Plaintiffs and other Class members that transacted SIBOR- and SOR-based derivatives at artificial prices directly determined by those manipulated rates. ¶¶ 229-34.

Defendants' argument that Plaintiffs fail to plead actual injury is meritless. *See* Defs. Ltr. at 2. The Second Circuit has already determined that plaintiffs who transact financial instruments priced based on an allegedly manipulated benchmark rate like SIBOR or SOR suffer an antitrust injury. *See Gelboim v. Bank of America Corp.*, 823 F.3d 759, 775 (2d Cir. 2016) (finding that plaintiffs sufficiently pleaded antitrust injury where they alleged that they purchased derivatives whose prices incorporated a manipulated LIBOR rate); *see also Nypl v. JPMorgan Chase & Co.*, No. 15 Civ. 9300, 2018 WL 1472506, at *6 (S.D.N.Y. Mar. 22, 2018) ("The TAC alleges that the manipulated FX benchmark rates were the primary component of the prices Plaintiffs paid for foreign currency in the consumer retail market, thus sufficiently alleging antitrust injury resulting from Foreign Defendants' conduct in the spot market."). Defendants' attempt to analogize this case to *Total Gas*, where plaintiffs did not transact financial instruments that incorporated a manipulated benchmark, must be rejected.

*Second*, antitrust claims are not subject to a heightened pleading standard. *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (explaining that Sherman Act claims are evaluated under Rule 8 notice pleading standards). Accordingly, Plaintiffs only need to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (*id.*), that is, the "anticompetitive tendency" at issue in the case. *See Gelboim*, 823 F.3d at 776 ("Appellants have alleged an anticompetitive tendency: the warping of market factors affecting the prices for LIBOR-based financial instruments. No further showing of actual adverse effect in the marketplace is necessary."); *see also* April 12, 2018, Hr.'g Tr. at 30-31, ECF No. 282.

Plaintiffs here easily meet that standard by alleging that they transacted SIBOR- and SOR-based derivatives during the period in which multiple government regulators found that Defendants' conspiracy manipulated SIBOR and SOR. *See* ¶¶ 200-04 (MAS' findings as to all Defendants); ¶¶ 205-06 (CFTC's findings as to Deutsche Bank, RBS, and UBS); ¶ 207 (FSA's findings as to RBS). The wave of trader firings for SIBOR- and SOR-related misconduct following these investigations confirms the SAC's allegations of wide-spread price-fixing (¶¶ 210-14) and further validates the economic evidence of price artificiality in the SAC. ¶¶ 217-28. These allegations plausibly establish that Plaintiffs transacted at artificial prices resulting from Defendants' conspiracy. *See Total Gas*, 889 F.3d at 112 n.3 ("A plaintiff and defendant need not have been trading simultaneously so long as a plaintiff pleads facts indicating that the defendant's actions caused price artificiality during the time in which plaintiff was trading.").[2] Nothing more is required at the pleading stage.

---

[2] The Second Circuit addressed the possibility that the *Total Gas* plaintiffs benefitted from natural gas price movements only because those plaintiffs failed to demonstrate "some reason to believe that any damage has occurred at all." *Total Gas*, 889 F.3d at 115. Plaintiffs here, in contrast, allege that they were actually injured in their SIBOR- and SOR-based derivatives transactions and suffered monetary losses. ¶¶ 229-34.



Letter to the Honorable Alvin K. Hellerstein
June 7, 2018
Page 3

*Total Gas* expressly rejected Defendants' argument that Plaintiffs must plead specific instances of manipulation resulting in losses on specific transactions to state a plausible antitrust claim. *Compare* 889 F.3d at 113 n.4 ("In articulating this standard, we do not impose a loss causation requirement, which would mandate demonstrating losses in specific trades.") *with* Defs. Ltr. at 2. Accordingly, Defendants' motion to dismiss on these grounds must be denied.

*Lastly*, Defendants' counterfactual attack on Plaintiffs' detailed allegations regarding the formulaic relationship between SIBOR, SOR, and the Singapore dollar FX forwards that Sonterra traded fails. Defs. Ltr. at 2. This same argument (made by many of the same Defendants) has been rejected by at least three judges in this district. *See Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp.*, 277 F.Supp.3d 521, 546-47, 572-73 (S.D.N.Y. 2017) (Stein, J.) (crediting plaintiffs' allegation of an industry standard price formula for Swiss franc futures that incorporates Swiss franc LIBOR); *Sullivan v. Barclays PLC*, No. 13-cv-2811 (PKC), 2017 WL 685570, at *28 (S.D.N.Y. Feb. 21, 2017) (Castel, J.) (crediting plaintiffs' allegation of the identical pricing formula linking CME Euro futures with Euribor); *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789 (LGS), 2016 WL 5108131, at *5 (S.D.N.Y. Sept. 20, 2016) (Schofield, J.) (crediting plaintiffs' allegation that "FX spot market prices, including benchmark rates, directly impact the prices of exchange-traded FX futures and options contracts."). This Court should reach the same conclusion here.

As set forth above, *Total Gas* confirms that Plaintiffs have plausibly alleged a direct injury resulting from Defendants' conspiratorial manipulation of SIBOR and SOR. Defendants' motion must therefore be denied.

Respectfully,

/s/ Vincent Briganti
Vincent Briganti