UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FUND LIQUIDATION HOLDINGS LLC, as assignee and successor-in-interest to FrontPoint Asian Event Driven Fund L.P., on behalf of itself and all others similarly situated,<br><br>                                                          Plaintiff,<br><br>                            -against-<br><br>CITIBANK, N.A., BANK OF AMERICA, N.A., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, UBS AG, BNP PARIBAS, S.A., OVERSEA-CHINESE BANKING CORPORATION LTD., DEUTSCHE BANK AG, CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, CREDIT SUISSE AG, STANDARD CHARTERED BANK, DBS BANK LTD., UNITED OVERSEAS BANK LIMITED, AUSTRALIA AND NEW ZEALAND BANKING GROUP, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, AND JOHN DOES NOS. 1-50<br>                                                          Defendants. | Docket No. 16-cv-05263 (AKH)<br>ECF Case |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE SINGAPORE BANKS' MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, <u>CERTIFICATION FOR INTERLOCUTORY APPEAL</u>**

Plaintiff Fund Liquidation Holdings LLC ("Plaintiff")[1] respectfully submits this memorandum of law in opposition to Defendants DBS Bank Ltd.'s ("DBS"), Overseas-Chinese Banking Corporation Limited's ("OCBC"), and United Overseas Bank Limited's ("UOB") (collectively, "the Singapore Banks") October 18, 2018 Motion for Reconsideration or, Alternatively, for Certification for Interlocutory Appeal (ECF No. 306, the "Singapore Banks' Motion"). Plaintiff incorporates by reference its memorandum of law (filed concurrently herewith) in opposition to Defendant The Hongkong and Shanghai Banking Corporation Limited ("HBAP")'s October 18, 2018 Motion for Reconsideration or, Alternatively, for Certification for Interlocutory Appeal (ECF No. 304). The Singapore Banks' Motion has even less merit than HBAP's, and should be summarily denied.

*First*, the Court correctly found that the exercise of personal jurisdiction over three wealthy multinational banks, all of which maintain at least one office and at least 30 employees in the United States (*see* Motion at 1-2), would "comport with fair play and substantial justice." *SIBOR II*, 2018 WL 4830087, at *9. The Singapore Banks quibble with the Court's statement that Defendants are "alleged to have substantial presence in the U.S.," arguing that the Court overlooked that "[e]ach of the Singapore Banks has a very limited presence." Motion at 1. But as set forth in Plaintiff's response to HBAP's Motion, the point is irrelevant. The exercise of personal jurisdiction over the Singapore Banks—participants in a conspiracy directed at the manipulation of derivative prices in the United States—would be perfectly proper even if they had no physical presence in the United States whatsoever. *See Burger King v. Rudzewicz*, 471 U.S. 462, 476 (1985). The only possible relevance of their "presence" is to evaluate the burden imposed on them by defending a lawsuit here. And in that respect, the Singapore Banks' protests that their U.S. offices account for only a small percentage of their

---

[1] In *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 16 Civ. 5263 (AKH), 2018 WL 4830087 (S.D.N.Y. Oct. 4, 2018) ("*SIBOR II*") this Court granted leave to substitute Fund Liquidation Holdings LLC as Plaintiff. Accordingly, this brief refers to "Plaintiff" in the singular while *SIBOR II*, the Singapore Banks' Motion, and the Second Amended Complaint all refer to "Plaintiffs" in the plural.

1

employees and revenues do little to advance their cause. UOB, for instance, argues that its two U.S. offices and 52 employees account for "approximately 3%" of its total global assets—which, according to the Federal Reserve Resolution Plan UOB cites,[2] amounts to over 7.4 billion dollars. DBS, with the smallest presence of the three, attributes "less than 1% of its total revenues in 2015" to its U.S. office. Motion at 1. Its 2015 annual report lists its income as 10,923,000,000 Singapore dollars—USD $7,9371419,686.90 at today's exchange rates, 1% of which is over $79 million.[3] The idea that the Court missed something or made a mistake in concluding that such entities would have the resources to defend a lawsuit in the United States is almost laughable.

*Second*, like HBAP (but unlike the Court), the Singapore Banks misunderstand the nature of the conspiracy Plaintiff has alleged. The Court did not "overlook[] the implausibility of the Singapore Banks' alleged participation in a conspiracy to manipulate financial products in the United States." Motion at 3. Instead, the Court expressly found that Plaintiff had plausibly alleged that all Panel Members conspired to manipulate financial products in the United States, "***whether or not they themselves traded derivatives in the U.S.***" *SIBOR II*, 2018 WL 4830087, at *8 (emphasis added). The reason for this, as Plaintiff explained in response to HBAP's Motion, is that by helping some Panel Members profit from manipulated trades in the United States, they obtained insider knowledge of the rates and the chance to be assisted in turn on their own trades in future. *See id.* (describing alleged conspiracy). For the same reason, the Court did not err in stating that "[t]here is little burden in requiring [the Singapore Banks] to answer the allegations that they entered into collusive

---

[2] *See* Declaration of Beh Ean Lim (ECF No. 171) ¶ 5 n.1 (citing UOB U.S. Resolution Plan, Public Section, UNITED OVERSEAS BANK LIMITED (Dec. 31, 2015) ("UOB 2015 U.S. Resolution Plan") at 2, *available at* https://www.federalreserve.gov/bankinforeg/resolution-plans/united-overseas-bk-3g-20151231.pdf)) The Resolution Plan states "As of 31 December 2014, UOB New York and Los Angeles agency offices held US$5.5 billion and US$1.8 billion in assets (which consisted primarily of interests in commercial loans) respectively. The remaining U.S.-based subsidiaries1 collectively held US$129 million in assets."

[3] *See* DBS 2015 Annual Report at 115, available at https://www.dbs.com/annualreports/2015/pdfs/dbs-annual-report-2015.pdf.

transactions in the U.S." Motion at 2 (quoting *SIBOR II*, 2018 WL 4830087, at *9). The Court was well aware that not all Panel Members entered into such collusive transactions directly, but found that they conspired to do so. *See SIBOR II*, 2018 WL 4830087, at *8.

In short, the Singapore Banks' Motion entirely fails to identify any facts or law that the Court "overlooked," any "clear error," or any "manifest injustice" that could justify granting their motion for reconsideration, or, in the alternative, for certification for interlocutory appeal. Their Motion should therefore be denied.

Dated:  November 1, 2018                                   Respectfully submitted,

                                                                                   LOWEY DANNENBERG, P.C.

                                                                                   /s/ Vincent Briganti
Geoffrey M. Horn
Vincent Briganti
Peter St. Phillip
Margaret C. MacLean
Christian P. Levis
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
Email: ghorn@lowey.com
          vbriganti@lowey.com
          pstphillip@lowey.com
          mmaclean@lowey.com
          clevis@lowey.com