UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FUND LIQUIDATION HOLDINGS LLC, as assignee and successor-in-interest to FrontPoint Asian Event Driven Fund L.P., on behalf of itself and all others similarly situated,<br><br>        Plaintiff<br><br>  v.<br><br>CITIBANK, N.A., CITIGROUP INC., BANK OF AMERICA CORPORATION, BANK OF AMERICA, N.A., JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, THE ROYAL BANK OF SCOTLAND GROUP PLC, RBS SECURITIES JAPAN LIMITED, UBS AG, UBS SECURITIES JAPAN CO. LTD., ING GROEP N.V., ING BANK N.V., ING CAPITAL MARKETS LLC, BNP PARIBAS, S.A., BNP PARIBAS NORTH AMERICA, INC., BNP PARIBAS SECURITIES CORP., BNP PARIBAS PRIME BROKERAGE, INC., OVERSEA-CHINESE BANKING CORPORATION LTD., BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., DEUTSCHE BANK AG, CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, CREDIT AGRICOLE S.A., CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, CREDIT SUISSE INTERNATIONAL, STANDARD CHARTERED BANK, STANDARD CHARTERED PLC, DBS BANK LTD., DBS GROUP HOLDINGS LTD., DBS VICKERS SECURITIES (USA) INC., UNITED OVERSEAS BANK LIMITED, UOB GLOBAL CAPITAL, LLC, AUSTRALIA AND NEW ZEALAND BANKING GROUP, LTD., ANZ SECURITIES, INC., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, HSBC BANK USA, N.A., HSBC HOLDINGS PLC, HSBC NORTH AMERICA HOLDINGS INC., HSBC USA INC., MACQUARIE BANK LTD., MACQUARIE GROUP LTD., COMMERZBANK AG, AND JOHN DOES NOS.1-50,<br><br>        Defendants. | Case No. 1:16-cv-05263-AKH<br><br>ECF Case<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE HONGKONG AND SHANGHAI BANKING CORPORATION LTD.'S MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, CERTIFICATION FOR INTERLOCUTORY APPEAL**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

                                                                                                     **Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .................................................................................................................................3

I.      PLAINTIFF CONCEDES THAT THE COURT'S HOLDING THAT ALL PANEL MEMBERS HAVE A SUBSTANTIAL PRESENCE IN THE UNITED STATES OVERLOOKED THE LACK OF SUCH ALLEGATIONS AGAINST HBAP..............3

II.     PLAINTIFF'S OPPOSITION CONFIRMS THAT THE SAC DID NOT ACTUALLY PLEAD THAT HBAP PURPOSEFULLY AVAILED ITSELF OF A U.S. FORUM AND THAT, IN LIGHT OF THE COURT'S OTHER RULINGS, SUCH AN ALLEGATION WOULD BE IMPLAUSIBLE. ............................................3

III.    ASSERTION OF PERSONAL JURSIDICTION OVER HBAP WOULD BE UNREASONABLE. ......................................................................................................10

IV.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY SIBOR II FOR IMMEDIATE APPEAL......................................................................................................12

CONCLUSION................................................................................................................14

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                                           Page(s)

*Asahi Metal Industry Co. v. Superior Court of California, Solano Cty.*,
480 U.S. 102 (1987) .................................................................................................... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 4-5

*Charles Schwab Corp. v. Bank of America Corp.*,
883 F.3d 68 (2d Cir. 2018) ......................................................................................... 6, 7, 8

*Glazer Steel Corp. v. Toyomenka, Inc.*,
392 F. Supp. 500 (S.D.N.Y. 1974) ............................................................................. 9

*Grove Press, Inc. v. Angleton*,
649 F.2d 121 (2d Cir. 1981) ....................................................................................... 8

*In re Aluminum Warehousing Antitrust Litig.*,
90 F. Supp. 3d 219 (S.D.N.Y. 2015) .......................................................................... 7, 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11-md-2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016),
*appeal docketed*, No. 17-2413 (2d Cir. Aug. 3, 2017) ............................................... 12

*In re Magnetic Audiotape Antitrust Litig.*,
334 F.3d 204 (2d Cir. 2003) ....................................................................................... 6-7

*In re Terrorist Attacks on Sept. 11, 2001*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005) ........................................................................ 8

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013) ....................................................................................... 6

*Kleinman v. Elan Corp., plc*,
706 F.3d 145 (2d Cir. 2013) ....................................................................................... 4

*Klinghoffer v. S.N.C. Achille Luaro Ed Altri-Gestione Monotave Achille Lauro in
Amministrazione Straordinaria*,
921 F.2d 21 (2d Cir. 1990) ......................................................................................... 13

*Laydon v. Mizuho Bank, Ltd.*,
183 F.3d 409 (S.D.N.Y. 2016) ................................................................................... 10

*Leasco Data Processing Equip. Corp. v. Maxwell*,
468 F.2d 1326 (2d Cir. 1972) .................................................................................... 7, 8

*Licci ex rel. Licci v. Lebanese Canadian Bank SAL*,
732 F.3d 161 (2d Cir. 2013) ...................................................................................... 7

*Qatar Nat'l Navigation & Transp. Co., v. Citibank, N.A.*,
1991 WL 210923 (S.D.N.Y. Oct. 8, 1991) ............................................................... 13

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) ........................................................................................ 3

*Smith v. United States*,
568 U.S. 106 (2013) .................................................................................................. 9

*United States v. Culoso*,
461 F. Supp. 128 (S.D.N.Y. 1978), *aff'd* 607 F.2d 999 (2d Cir. 1979) .................... 9

*United States v. Peoni*,
100 F.2d 401 (2d Cir. 1938) ...................................................................................... 8

*United States v. Roshko*,
969 F.2d 1 (2d Cir. 1992) .......................................................................................... 9

*Walden v. Fiore*,
571 U.S. 277 (2014) .................................................................................................. 8

*Waldman v. Palestine Liberation Org.*,
835 F.3d 317 (2d Cir. 2016) ...................................................................................... 10

**Federal Statutes**

28 U.S.C. § 1292(b) ............................................................................................. 1, 2, 14

F.R.E. 801(d)(2)(E) ................................................................................................. 9

HBAP[1] respectfully submits this reply memorandum in further support of its motion seeking reconsideration of the Court's October 4, 2018 Opinion and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, ECF No. 302 ("*SIBOR II*") as it applies to HBAP or, in the alternative, certification for immediate appeal pursuant to 28 U.S.C. § 1292(b).

## PRELIMINARY STATEMENT

Plaintiff's[2] Opposition concedes the crux of HBAP's motion for reconsideration:

*First*, Plaintiff does not dispute that while *SIBOR II* bases its personal jurisdiction holding on the conclusion that all Panel Members have a "substantial presence" in the United States, HBAP has *no* such presence.

*Second*, Plaintiff concedes that HBAP itself is alleged to have committed no act in or directed at the United States.

*Third*, Plaintiff cannot identify any allegations in the SAC connecting HBAP to the trading of SIBOR derivatives in the United States of SIBOR derivatives by other Panel Members, including any allegation that HBAP stood to profit – directly or indirectly – from such trading.

A generation of controlling precedent establishes that specific personal jurisdiction exists over a foreign defendant only where that defendant has purposefully – *i.e.*, deliberately – availed itself of the U.S. forum. That showing can be satisfied by factual

---

[1] Unless otherwise specified, defined terms have the same meaning as in HBAP's Opening Brief, ECF No. 304.

[2] Because plaintiff Fund Liquidation Holdings LLC ("FLH") submitted Plaintiff's Memorandum of Law in Opposition to Defendant The Hongkong and Shanghai Banking Corporation Limited's Motion for Reconsideration or, Alternatively, Certification for Interlocutory Appeal, ECF No. 310 ("Opposition" or "Opp. Br."), HBAP will refer to FLH as plaintiff rather than FrontPoint Asian Event Driven Fund, L.P. or Sonterra Capital Master Fund, Ltd. However, HBAP does not concede or waive any arguments regarding whether FLH is the appropriate plaintiff in this action.

allegations that a foreign defendant acted in furtherance of a shared objective to engage in illegal conduct in the United States. It cannot be satisfied by allegations that the defendant joined a foreign conspiracy with effects in the United States, even if those effects are foreseeable. Plaintiff did not and could not make the necessary allegations.

Instead, the Opposition focuses on straw men. Plaintiff argues that other courts have sustained a so-called "trader-based" conspiracy. *See* Opp. Br. at 7. That is true, but beside the point. The Court would be alone in exercising jurisdiction over a foreign defendant without relevant contacts in the United States simply on the basis that the defendant joined a conspiracy outside the United States and that some alleged conspirators (*i.e.*, Citibank and Deutsche Bank) traded in the United States. Likewise, Plaintiff argues that it is not necessary the "sole objective" of a conspiracy be to cause harm in the United States. *See* Opp. Br. at 6. But due process *does* require that the foreign defendant has subscribed to an objective of causing harm in the United States. That is what is missing here.

While Plaintiff argues that it is plausible that a Panel Member like HBAP might conspire to benefit other Panel Members' trading in the United States, hoping to profit in other countries on other days, it ignores that such a conspiracy was nowhere alleged in the SAC (or even in the recently-filed Third Amended Complaint), and Plaintiff lacks a plausible basis for making such allegations. As pled, U.S. trading by other Panel Members was at best a matter of indifference to HBAP.

Reconsideration is therefore appropriate. In the alternative, *SIBOR II* should be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

**ARGUMENT**

I.   **PLAINTIFF CONCEDES THAT THE COURT'S HOLDING THAT ALL PANEL MEMBERS HAVE A SUBSTANTIAL PRESENCE IN THE UNITED STATES OVERLOOKED THE LACK OF SUCH ALLEGATIONS AGAINST HBAP.**

Plaintiff implicitly concedes that the Court's assertion that all Panel Members have a "substantial presence," *SIBOR II* at 19, in the United States was incorrect with respect to HBAP, and that it was a basis for the Court's conclusion that personal jurisdiction existed. Opp. Br. at 2. Accordingly, the standard for reconsideration under Local Rule 6.3 is satisfied. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (finding reconsideration appropriate where "moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."). *SIBOR II* makes clear that the Court has not yet addressed whether personal jurisdiction lies against a foreign bank that conducts no business in the United States and that lacked any expectation of profiting in the United States from the scheme pled. HBAP's Motion is therefore well founded. *See* Memorandum of Law In Support of the Hongkong and Shanghai Banking Corporation Ltd.'s Motion for Reconsideration or, Alternatively, Certification for Interlocutory Appeal ("Opening Brief") at 8-9, ECF No. 304.

II.  **PLAINTIFF'S OPPOSITION CONFIRMS THAT THE SAC DID NOT ACTUALLY PLEAD THAT HBAP PURPOSEFULLY AVAILED ITSELF OF A U.S. FORUM AND THAT, IN LIGHT OF THE COURT'S OTHER RULINGS, SUCH AN ALLEGATION WOULD BE IMPLAUSIBLE.**

Plaintiff's Opposition appears to acknowledge that it would be implausible to allege, and that the SAC did not allege, that HBAP joined a conspiracy directed at the United States without any expectation of profiting from such a scheme. *See* Opp. Br. at 4-6. Plaintiff thus seeks to recast the SAC to support a new theory of liability that was nowhere pled. In its Opposition, Plaintiff asserts that "the Court found it plausible that . . . Panel Members

3

might conspire to benefit other Panel Members' trades in a location where they had no trades themselves, in anticipation of receiving the same assistance from other Panel Members on their own trades elsewhere in the future." Opp. Br. at 5. Notably, however, Plaintiff cites neither *SIBOR II* nor the SAC to support that proposition, and with good reason, since such a cross-geographic theory of liability is neither pled nor reflected in the Court's analysis.

The actual allegations of the SAC matter. The Court held in *SIBOR II* that "[t]he conduct forming the basis of Plaintiffs' claims . . . occurred in two locations, in Singapore where Panel Members allegedly conspired and submitted manipulated rates, and in the United States where Plaintiffs allegedly traded U.S.-based SIBOR- and SOR-based derivatives that were priced on the manipulated rates." *SIBOR II* at 5. Not once in the SAC's sixty paragraphs of jurisdictional allegations did Plaintiff allege that HBAP, which had no trading in the United States, agreed to the U.S. trading of their competitors in the hopes of benefitting later in other jurisdictions.[3] *See* SAC ¶¶ 20-80. Tellingly, that allegation also is not in the recently-filed Third Amended Complaint, which was filed after the date of the Motion and with knowledge of its contents. To the extent it is now advanced in Plaintiff's Opposition as a post-hoc justification of how *SIBOR II*'s substantive holdings could be twisted to apply to HBAP, it is both improper and falls well "short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see also Kleinman v. Elan Corp., plc*, 706 F.3d 145, 153 (2d Cir. 2013) ("[A] party may not amend pleadings through a brief.") (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

Before the Court can take the extraordinary step of exercising jurisdiction over a foreign defendant with no relevant conduct in the United States, Plaintiff is required to "allege

---

[3] Rather, Plaintiff's allegations are actually to the contrary: that "[a]ll of the damages at issue in this case occurred within the United States." SAC ¶ 62.

4

facts" that are "suggestive of illegal conduct" and that would support a finding of jurisdiction. *See Twombly*, 550 U.S. at 563 n.8.  Plaintiff did not plead that HBAP intentionally conspired to fix prices in the United States as a means to facilitate price fixing abroad because it had no basis to do so.  *First*, such allegations would find no support in any of the regulatory settlements Plaintiff relied on to plead its case.  The MAS certainly did not find such a cross-geographic conspiracy (or a conspiracy at all).  Nor did either the CFTC or the U.K. FCA in their respective resolutions with RBS, UBS and Deutsche Bank.  *See SIBOR II* at 7.  *Second*, while the Panel Members that traded in the United States would naturally have been aware of their trading positions here, there is no allegation that *HBAP* would have been aware of other banks' U.S. trading books or how those banks might benefit (or not) from SGD SIBOR, USD SIBOR, or SOR manipulation such that it could help them.  *Third*, even were it assumed that HBAP helped other banks profit from SGD SIBOR, USD SIBOR, or SOR manipulation on some days in hopes of itself profiting on other days, Plaintiff identified no reason to believe that HBAP agreed with those other banks to direct their trading activity at the United States.  *Finally*, Plaintiff alleged no conspiracy with respect to the marketing of SGD SIBOR, USD SIBOR, or SOR derivatives here or anywhere else, nor could it have done so.  Trading in the United States by other Panel Members was irrelevant to HBAP; taking the allegations as true, it was at most unilateral conduct by other banks for which HBAP was not responsible.  *See* Opening Br. at 13-14.

        That leaves the Plaintiff, as it implicitly acknowledges, with only allegations that HBAP joined a Singapore-based conspiracy, and that the effects of that conspiracy were felt in the United States through derivatives transactions that certain banks (not including HBAP) conducted here of their own volition and with their own customers.  *See* Opp. Br. at 3-4.  To that end, Plaintiff repeatedly cites to generalized allegations of effects realized in various locations

5

"including in the United States." Opp. Br. at 4. That is not sufficient with respect to a foreign defendant like HBAP that otherwise engaged in no conduct here.

These pleading deficiencies matter. For decades, the law has been clear that a plaintiff cannot base personal jurisdiction on allegations of an effect of localized conduct on a worldwide market. In *Asahi Metal Industry Co. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 112 (1987), the Supreme Court held that mere "placement of a product into the stream of commerce" even where the defendant had an "awareness that the stream of commerce may or will sweep the product into the forum State" was insufficient for personal jurisdiction. In *Charles Schwab Corp. v. Bank of America Corp.*, the Second Circuit held that foreign benchmark rate fixing did not establish personal jurisdiction, even when the U.S. impact was inevitable. 883 F.3d 68, 88 (2d Cir. 2018) ("That the effects of LIBOR manipulation were likely to reach an economy as large as California's does not mean that Defendants' conduct in London was 'expressly aimed' at that state."). In *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013), the Second Circuit explained that "the fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." And in *SIBOR I*, this Court held that "it is bedrock law that merely foreseeable effects of defendants' conduct do not support personal jurisdiction." *SIBOR I* at *7 ("The FAC contains no non-conclusory allegations that the Foreign Defendants purposefully directed their activities at residents of the United States. The consequences of the Foreign Defendants' conduct were global, and the FAC contains no allegations that the Foreign Defendants singled out the United States as their target.").[4]

---

[4] *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003), which Plaintiff cites as its principal authority, *see* Opp. Br. at 6, illustrates just how far Plaintiff's allegations against HBAP fall short of establishing personal jurisdiction. In *Magnetic Audiotape*, the plaintiff alleged an antitrust conspiracy to fix the price of

6

Thus, as the Court correctly recognized, in cases where a foreign defendant committed no relevant action in the United States, due process requires that the plaintiff show that the foreign defendant nonetheless purposefully availed itself of the U.S. forum such that it could foresee being haled into court here. *See SIBOR II* at 16 (citing *Licci ex rel. Licci v. Lebanese Canadian Bank SAL*, 732 F.3d 161, 170 (2d Cir. 2013)); *see also Schwab*, 883 F.3d at 82 (2d Cir. 2018). Allegations of conspiracy are not, themselves, a basis for establishing personal jurisdiction. *See Schwab*, 883 F.3d at 86 ("[M]ere existence of a conspiracy is not enough"). Rather, courts have required well-pled allegations that the foreign conspirators agreed to and advanced – through knowledge, direction and control – a conspiratorial object directed at the United States specifically. *See Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir. 1972) (requiring allegations of direction, control, and supervision before imputing co-conspirator's forum contacts to an absent defendant); *Schwab*, 883 F.3d at 88 (no prima facie showing of personal jurisdiction where plaintiff argued "effects of LIBOR manipulation were likely to reach" California but did not demonstrate that the "actions to manipulate U.S. Dollar LIBOR . . . were aimed at California"); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (rejecting suggestion "that the assertion of participation in a conspiracy generally can provide a standalone basis for jurisdiction"); *see also Licci ex rel. Licci*, 732 F.3d at 170 (finding minimum contacts where "defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there"). This requirement is essential to the due process mandate that any defendant "has clear notice that it is subject to suit" in the forum and can "act to alleviate the risk

---

magnetic audiotape "purposefully directed at the United States" where the Korean defendant participated in the conspiracy by, *inter alia*, directing the activities of its U.S. subsidiary. 334 F.3d at 207-08.

7

of burdensome litigation" or even "sever[] its connection with the State" to avoid jurisdiction. *Asahi*, 480 U.S. at 110.

Acts by co-conspirators, by themselves, are not sufficient to subject a foreign defendant to jurisdiction here unless those acts were in furtherance of a common conspiratorial objective that the parties agreed to "direct[] toward the forum State." *Id.* at 112; *see also Walden v. Fiore*, 571 U.S. 277, 286 (2014) (noting due process requires plaintiff satisfy the minimum contacts requirement "as to *each defendant* over whom a state court exercises jurisdiction.") (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)) (emphasis added); *Schwab*, 883 F.3d at 83, 87; *see also United States v. Peoni*, 100 F.2d 401, 403 (2d Cir. 1938) ("Nobody is liable in conspiracy except for the fair import of the concerted purpose or agreement as he understands it; if later comers change that, he is not liable for the change; his liability is limited to the common purposes while he remains in it."). The concept of conspiracy jurisdiction finds its roots in the law of agency, and proceeds from the premise that the co-conspirator acting within the United States does so as an agent for co-conspirators abroad. *See Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981) ("[A] showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal."); *Leasco*, 468 F.2d at 1341 n.11, 1343 (holding plaintiff must allege out-of-forum defendant directed and controlled co-conspirator's tortious conduct in the forum and knew and benefited from those contacts); *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005); *see also Schwab*, 883 F.3d at 87 ("To allow jurisdiction absent a showing that a co-conspirator's minimum contacts were in furtherance of the conspiracy would be inconsistent with the 'purposeful availment' requirement."). Due process demands much more than mere foreseeability of effects; rather, the conduct in the United States must be

8

intended by the foreign defendant and brought about in the United States by a co-conspirator on that foreign defendant's behalf.[5]  *See* Opening Br. at 13-14.

Plaintiff's Opposition fails to explain how derivatives trading by Citibank or Deutsche Bank in the United States for the benefit of those banks alone could have been in furtherance of any conspiratorial objective to which HBAP subscribed, or to identify a single allegation in the SAC that ties HBAP to that trading.  To be in furtherance of the conspiracy, an act must be known to the conspirators, directed by them, and intended to advance the conspiratorial objective.  *See Smith v. United States*, 568 U.S. 106, 111 (2013) (defendant responsible for "acts of his co-conspirators in pursuit of their common plot"); *United States v. Roshko*, 969 F.2d 1, 8 (2d Cir. 1992) (holding that certain acts were not in furtherance of the conspiracy because they were not in furtherance of the pleaded purpose).  The allegation that certain members of an alleged Singapore-based conspiracy came to the United States and traded derivatives with various U.S. counterparties for their own profits does not establish that they did so in furtherance of the alleged conspiracy or on behalf of other Panel Members.  And Plaintiff did not plead in any way how trading by Citibank or Deutsche Bank facilitated any objective other than those banks' own profits.[6]  Without allegations in the SAC that plausibly establish that

---

[5]  This is the same basis on which adverse statements of co-conspirators may be treated as admissions, *see* F.R.E. 801(d)(2)(E) (a statement "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay), or that statutes of limitation do not begin to run until the last relevant act by a member of the criminal conspiracy, *see United States v. Culoso*, 461 F. Supp. 128, 131 (S.D.N.Y. 1978) (noting the statute of limitations, in criminal conspiracy charges, begins to run "from the date of the last overt act"), *aff'd* 607 F.2d 999 (2d Cir. 1979); *cf. Glazer Steel Corp. v. Toyomenka, Inc.*, 392 F. Supp. 500, 501–02 (S.D.N.Y. 1974) ("In the context of a continuing conspiracy to violate the antitrust laws, . . . each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act.") (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)).

[6]  Plaintiff relies heavily on the Court's reference to jurisdiction over members of a conspiracy "whether or not they themselves traded derivatives in the U.S.," *SIBOR II* at 18, but ignores the preceding sentence in which the Court explained that the basis for its ruling was the expectation that all Panel Members would "collectively . . . profit from the manipulation of SIBOR," *id.*  HBAP's Opening Brief explains why it is implausible to assume that HBAP subscribed to a conspiracy directed at the United States considering it has no business dealings here whatsoever, much less any related to SGD SIBOR, USD SIBOR, or SOR derivatives.

HBAP directed its conduct at the United States such that it should have expected to be sued here, the claims against it should have been dismissed.[7]  *See In re Aluminum Warehouse Antitrust Litig.*, 90 F. Supp. at 227 (the entity must engage "in some affirmative act directed at the forum" in order to be subject to personal jurisdiction there); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 340 (2d Cir. 2016) (holding the forum must be the "focal point" or "nucleus of the harm" of plaintiffs' claims).

### III.  ASSERTION OF PERSONAL JURSIDICTION OVER HBAP WOULD BE UNREASONABLE.

Plaintiff brushes aside HBAP's arguments that the exercise of jurisdiction over HBAP would be inconsistent with fair play and substantial justice, arguing that "HBAP imagines a variety of discovery-related horribles . . . [and] does not know that any *one* of these events would actually transpire, much less all of them." Opp. Br. at 11.[8]  But HBAP is not required (or even permitted) to wait until it has experienced the burdens of United States litigation to raise jurisdictional objections.  The prejudice that continuation of this case threatens to HBAP is neither imaginary nor exaggerated.  It is not limited to document production and depositions, although those are burdensome enough when there is a basis for jurisdiction.  It also includes being required to engage in such discovery that may conflict with Singaporean law, the jurisdiction in which HBAP resides and where the alleged conduct at issue occurred.  *See generally Laydon v. Mizuho Bank, Ltd.*, 183 F.3d 409, 419 (S.D.N.Y. 2016) (Yen LIBOR litigation).  The documents are in Singapore and the burden of bringing them here is not a physical challenge, it is a legal one as HBAP's Opening Brief outlined.  *See* Opening Br. at 17-

---

[7]  Notably, dismissal of HBAP does not leave Plaintiff without a remedy – as it is entitled to claim against the banks with which it traded derivatives products in the United States (and any others that happen to be subject to personal jurisdiction here).

[8]  Because Plaintiff has not alleged the requisite purposeful availment by HBAP, it is unnecessary for the Court to reach the question of whether the exercise of jurisdiction would be reasonable.

10

18. Thus, HBAP would be subject to the potential catch-22 of competing legal requirements here and in Singapore.[9]

It is not a sufficient answer to say that HBAP engages in various arms-length transactions with its U.S. affiliate, has business operations in other foreign countries, and has hired a New York law firm. *See* Opp. Br. at 9-10. These are all red herrings. *See Asahi*, 480 U.S. at 107 (rejecting the argument that a multi-national corporation's "business on an international scale" subjects it to jurisdiction in the United States). None of the transactions involve actual operations in the United States, the foreign countries in which HBAP has business operations do not include the United States, and who else was HBAP to hire to make a personal jurisdiction objection to a New York lawsuit than a New York law firm.

The U.S. Supreme Court instructed over half a century ago in *United States v. First National City Bank* and reiterated more recently in *Asahi*, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field" such that courts should be unwilling "to find the serious burdens on an alien defendant [are] outweighed by [the] minimal interests on the part of the plaintiff or the forum State." *Asahi*, 480 U.S. at 115 (citing *United States v. First National City Bank*, 379 U.S. 378, 404 (1965)). Here, Plaintiff seeks to rely on the thinnest of jurisdictional reeds – an unpled and implausible conspiracy concocted solely to manufacture a U.S. forum for their claims. Against that, the burden on HBAP of being subjected to these claims here weighs heavily against finding

---

[9]   Plaintiff's observation that the Court referred to another defendant's declaration in *SIBOR II* does not answer the fact that the decision overlooked the unique burdens that the exercise of jurisdiction would impose on HBAP. *See* Opp. Br. at 8. For one, the Court referenced that other defendant's declaration solely with respect to whether it was on the SGD SIBOR, USD SIBOR, or SOR panel, *see SIBOR II* at 3 n.2, not in considering the burden of defending this case in New York. HBAP does not contend that the Court "failed to review" the declarations, Opp. at Br. 8, but rather that it mistakenly believed that all Panel Members have a "substantial presence in the U.S.," *SIBOR II* at 19, and overlooked the implications of requiring a foreign defendant with no presence or connections to the United States to defend a suit here. *See* Opening Br. at 9–15.

11

jurisdiction to be constitutionally sound. *See* Opening Br. at 17-19. If there is a claim to be had against HBAP, HBAP respectfully submits that it was for Singapore to discover and not a U.S. court. *See Asahi*, 480 U.S. at 114.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY SIBOR II FOR IMMEDIATE APPEAL.

Plaintiff's argument that the Court should deny certification for interlocutory appeal fails to address HBAP's arguments; instead, it again justifies itself by rebuffing arguments that HBAP never made.

*First*, contrary to Plaintiff's assertion, *see* Opp. Br. at 11-12, HBAP is not challenging the Court's holding that a Singapore-based conspiracy is plausibly pled. Rather, this Court's decision in *SIBOR II* appears to be the first anywhere to find personal jurisdiction based on foreign benchmark fixing in the absence of any conduct by the defendant in the forum. *See* Opening Br. at 15. Given that no court has permitted the exercise of jurisdiction in such circumstances, and given the burden and prejudice that would attend to permitting the case to proceed through discovery if the Court's ruling were found to be in error, that holding merits interlocutory review.

*Second*, Plaintiff argues that "the same (or at least closely related) issue", Opp. Br. at 12, is already before the Second Circuit in *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016), *appeal docketed*, No. 17-2413 (2d Cir. Aug. 3, 2017) ("*LIBOR*"). But while both cases involve allegations of a foreign-based conspiracy to fix foreign benchmark rates, *LIBOR* will not necessarily resolve the questions presented by the Court's jurisdictional ruling here.

*Finally*, Plaintiff argues certification would not materially advance the litigation because "litigation would continue unchanged as between the remainder of the parties" other

12

than HBAP. Opp. Br. at 12. Under the law, however, that the litigation might go forward against other parties does not deprive HBAP of the ability to have an appellate court consider whether it should go forward against it. *See, e.g.*, *Qatar Nat'l Navigation & Transp. Co., v. Citibank, N.A.*, 1991 WL 210923, at *1 (S.D.N.Y. Oct. 8, 1991) (granting certification for interlocutory appeal, even though the tort and RICO claims against defendant would remain, because resolution of even one claim will "greatly facilitate the structuring and conduct of the trial."). As the Second Circuit held in *Klinghoffer v. S.N.C. Achille Luaro Ed Altri-Gestione Monotave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990), "resolution of an issue need not necessarily terminate an action [in its entirety] in order to be 'controlling.'" Here, accepting Plaintiff's position, an appeal would not interfere with the case proceeding against the other parties. It would, however, clarify HBAP's position and permit HBAP and Plaintiff to more efficiently resolve their dispute without burdening the parties and the Court with further proceedings on issues relevant to the claims against HBAP – including all of the issues of foreign law that would attend to discovery in this case – only to find out later that jurisdiction should never have been exercised over HBAP in the first place.

**CONCLUSION**

For the foregoing reasons, HBAP respectfully requests that the Court grant its motion for reconsideration and dismiss Plaintiff's antitrust claim against HBAP or, in the alternative, certify *SIBOR II* for immediate appeal pursuant to 28 U.S.C. § 1292(b).

Dated: November 8, 2018
      Washington, D.C.

                Respectfully submitted,

                CLEARY GOTTLIEB STEEN & HAMILTON LLP

                /s/ Nowell D. Bamberger

                Lewis J. Liman
                      A Member of the Firm
                Charity E. Lee
                One Liberty Plaza
                New York, NY 10006
                Telephone: (212) 225-2000
                Fax: (212) 225-3999
                lliman@cgsh.com
                charitylee@cgsh.com

                Nowell D. Bamberger
                      A Member of the Firm
                2000 Pennsylvania Avenue, NW
                Washington, D.C. 20006
                Telephone: (202) 974-1500
                Fax: (202)-974-1999
                nbamberger@cgsh.com

                *Attorneys for The Hongkong and Shanghai Banking Corporation Limited*