IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

FRONTPOINT ASIAN EVENT DRIVEN FUND, L.P. et al.,

                Plaintiffs,

    -against-

CITIBANK, N.A. et al.,

                Defendants.

Docket No. 16-cv-05263 (AKH)

**DECLARATION OF VINCENT BRIGANTI, ESQ.**

I, Vincent Briganti, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a shareholder with the law firm Lowey Dannenberg, P.C. ("Lowey Dannenberg"). I submit this Declaration in connection with Plaintiffs' Motion for Preliminary Approval of Class Action Settlements with Defendants Citibank, N.A. and Citigroup Inc. (collectively, "Citi") and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan").

2. A true and correct copy of the Stipulation and Agreement of Settlement as to Defendants Citibank, N.A. and Citigroup Inc. dated May 22, 2018 ("Citi Agreement"), in which Citi agrees to settle this action for $9,990,000 and provide certain cooperation to Representative Plaintiffs, is attached as Exhibit 1.

3. A true and correct copy of the Stipulation and Agreement of Settlement as to Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. dated November 14, 2018 ("JPMorgan Agreement"), in which JPMorgan agrees to settle this action for $10,989,000 and provide certain cooperation to Representative Plaintiffs, is attached as Exhibit 2.

4. Attached hereto as Exhibit 3 is a true and correct copy of Lowey Dannenberg's firm Resume.

5. **Experience**. At the time these Settlements[1] were being negotiated, my firm and I were experienced in prosecuting class action lawsuits brought under the Sherman Antitrust Act, 15 U.S.C. §§ 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1 *et seq.*, and the common law. We have obtained landmark settlements on behalf of some of the nation's largest pension funds and institutional investors.

---

[1] Unless otherwise indicated, capitalized terms herein have the same meaning as in the Citi Agreement and JPMorgan Agreement (collectively, the "Settlement Agreements").

6. Many of these settlements arose from similar benchmark manipulation cases, including recent cases alleging manipulation of Yen-LIBOR, Euroyen TIBOR, Euribor, and Swiss franc LIBOR, respectively. Most recently, Judge P. Kevin Castel finally approved settlements negotiated by Lowey Dannenberg totaling $309 million, relating to alleged manipulation of the Euro Interbank Offered Rate ("Euribor") and prices of Euribor-based derivatives. *See* Final Approval Order of Settlements with Barclays plc, Barclays Bank plc, Barclays Capital Inc., Deutsche Bank AG and DB Group Services (UK) Ltd., HSBC Holdings plc and HSBC Bank plc, *Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC) (S.D.N.Y. May 18, 2018), ECF No. 424. Lowey Dannenberg negotiated settlements totaling $236 million on behalf of class members relating to manipulation of the London Interbank Offered Rate for Japanese Yen ("Yen-LIBOR) and the Tokyo Interbank Offered Rate ("Euroyen TIBOR"), including a $30 million settlement that received final approval in July 2018. *See Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y.) ECF Nos. 891 (Jul. 12, 2018), 838 (Dec. 7, 2017), 720 (Nov. 10, 2016) & *Sonterra Capital Master Fund Ltd. et al v. UBS AG et al*, No. 15-cv-5844 (S.D.N.Y.), ECF Nos. 423 (Jul. 12, 2018), 389 (Dec. 7, 2017), 298 (Nov. 10, 2016). Lowey Dannenberg also obtained preliminary approval for a $22 million settlement in a class action alleging manipulation of Swiss franc LIBOR. *See Sonterra Capital Master Fund Ltd., et al. v. Credit Suisse AG, et al.*, No. 15-cv-00871(SHS), (August 16, 2017 S.D.N.Y.), ECF No. 159. Lowey Dannenberg has unparalleled experience in marshalling resources to manage the complex tasks of noticing Class Members of settlements and building plans of allocation for complex financial products. The plans of allocation Lowey Dannenberg developed in the Euribor, Yen-LIBOR, and Euroyen TIBOR litigation have been approved as fair, reasonable and adequate. *See, e.g., Sullivan v. Barclays plc*, No. 13-cv-2811 (PKC), ECF No. 424, ¶ 21; *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y.), ECF No. 891, ¶ 20.

7. I have nearly twenty years of experience in successfully developing and leading the prosecution of commodity manipulation, antitrust, and federal securities litigation matters. This experience includes cases in which my firm and I have successfully prosecuted, as court-appointed lead or co-lead counsel or individual plaintiff's counsel, what were at the time the first, second, third, and fourth largest class action recoveries under the Commodity Exchange Act.[2]

8. The attached Resume further describes Lowey Dannenberg's expertise in complex class action cases.

9. **Well-Informed**. Before reaching the Settlements, Plaintiffs' Counsel was well-informed regarding the strengths and weaknesses of Plaintiffs' claims. Lowey Dannenberg extensively reviewed and analyzed the following documents and information: (i) government settlements or proposed regulatory frameworks involving Defendants and the Monetary Authority of Singapore ("MAS"), the U.S. Commodity Futures Trading Commission ("CFTC"), and the U.K. Financial Services Authority ("FSA") as they may relate to SIBOR, SOR, or other benchmarks; (ii) publicly-available information relating to the conduct alleged in Plaintiffs' complaints; (iii) expert and industry research regarding SIBOR, SOR, and the SIBOR- and/or SOR-Based Derivatives in the futures and over-the-counter markets; and (iv) prior decisions of courts deciding similar issues, including this Court's decision in *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 CIV. 5263 (AKH), 2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017).

10. In addition, Lowey Dannenberg: (a) conducted an extensive investigation into the facts and legal issues in this action; (b) engaged in hard-fought and principled negotiations with Citi and JPMorgan; and (c) took many other steps to research and analyze the strengths and weaknesses

---

[2] *See In re Sumitomo Copper Litigation*, Master File No. 96 CV 4854 (S.D.N.Y.) (Pollack, J.) ($149 million settlement); *Hershey v. Pacific Investment Management Corp.*, Case No. 05-C-4681 (RAG) (N.D. Ill.) ($118.75 million settlement); *In re Natural Gas Commodity Litigation*, Master File No. 03 CV 6186 (S.D.N.Y.) (Marrero, J.) ($101 million settlement); and *In re Amaranth Natural Gas Commodities Litigation*, Master File No. 07 Civ. 6377 (S.D.N.Y) (Scheindlin, J.) ($77.1 million settlement).

of the claims, including ongoing consultations with a leading commodity manipulation consulting expert.

11. **Procedural History**. On July 5, 2016, Plaintiffs FrontPoint and Sonterra filed the initial Complaint. ECF No. 4. Plaintiffs filed their First Amended Class Action Complaint on October 31, 2016. ECF No. 119.

12. On November 18, 2016, Defendants filed their motions to dismiss, including two memoranda of law and 28 declarations. ECF Nos. 144-74. On December 16, 2016, Plaintiffs submitted their opposition briefs and a supporting declaration. ECF Nos. 176-78. Four weeks later, on January 13, 2017, Defendants filed their replies. ECF Nos. 184-85. After the motions were fully briefed, but prior to oral argument, the parties filed letters advising the Court of newly-decided supplemental authority that may have a bearing on the motions. *See* ECF Nos. 187, 189, 193, 195, 199, 209.

13. On April 27, 2017, the Court held oral argument on Defendants' motions to dismiss. On August 18, 2017, the Court entered an order denying in part and granting in part Defendants' motion to dismiss and granting Plaintiffs leave to file a Second Amended Complaint. ECF No. 225.

14. One month later, on September 18, 2017, Plaintiffs filed their Second Amended Class Action Complaint. ECF No. 230.[3] On October 18, 2017, Defendants again filed two briefs, two appendices and three declarations in support of their motions to dismiss. ECF Nos. 238-44. Plaintiffs filed two opposition briefs and a declaration on November 27, 2018 (*see* ECF Nos. 248-50) as well as a motion to seal certain documents. *See* ECF No. 251-252. Defendants filed their reply memoranda, a supporting declaration, and a corresponding motion to seal certain documents on December 21, 2017. ECF Nos. 253-57. Plaintiffs sought leave to file a sur-reply on December 28,

---

[3] Plaintiffs corrected the Second Amended Complaint ("SAC") with leave of the Court on October 12, 2017. *See* ECF Nos. 236 (memo endorsement granting leave to file corrected pleading), 237 (corrected SAC).

2017 (ECF Nos. 258-59), which Defendants opposed. ECF No. 262. The Court denied Plaintiffs request to file a sur-reply on January 8, 2018. ECF No. 264.

15. On April 12, 2018, the Court held oral argument on Defendants' second motion to dismiss. The Court ruled from the bench that Plaintiffs would be permitted to file a Third Amended Class Action Complaint to substitute Fund Liquidation Holdings, LLC, the assignee for FrontPoint and Sonterra, as the named Plaintiff. *See* ECF No. 282 (Tr. of April 12, 2018 Oral Arg.) at 11. The Court entered an order on denying in part and granting in part Defendants' second motion to dismiss on October 4, 2018. *See* ECF No. 302. In the order, the Court granted Plaintiffs leave to file a Third Amended Complaint and substitute the real party in interest, and ordered Defendants remaining in the action to file answers or otherwise respond to the Third Amended Complaint. *Id.* Plaintiffs filed the Third Amended Complaint on October 25, 2018.[4]

16. **Arm's-Length**. Negotiations leading to the Settlements were entirely non-collusive and strictly arm's-length. During the course of negotiations, Representative Plaintiffs had the benefit of developing information from various sources, including government settlements and orders, other public accounts of manipulation involving SIBOR, SOR and the prices of SIBOR- and/or SOR-Based Derivatives, Lowey Dannenberg's investigation into Plaintiffs' claims, industry and expert analysis, and information shared by Citi and JPMorgan during the settlement negotiations. I was involved in all aspects of the settlement negotiations on behalf of Plaintiffs.

17. **Citi Settlement Negotiations**. The negotiations with Citi took place over several months starting in January 2018 and continuing until the Agreement was executed on May 22, 2018.

18. Following initial phone calls with Citi's counsel in January 2018, Lowey Dannenberg engaged in lengthy negotiations with Citi's counsel over the material terms of the settlement,

---

[4] *See* ECF No. 307. Because of a ministerial filing error, the same amended complaint was refiled as ECF No. 308.

including the amount of the settlement consideration, the scope of the cooperation to be provided by Citi, the scope of the releases, and the circumstances under which the Parties would have the right to terminate the settlement.

19. During the course of the negotiations, Lowey Dannenberg presented its view on the strengths and weaknesses of the claims and defenses, as well as Citi's litigation exposure.

20. In April 2018, Representative Plaintiffs reached an agreement with Citi on the amount of the settlement, subject to the negotiation of other material terms of the deal. For example, as this was the first settlement in the case, Plaintiffs' Counsel viewed the cooperation provisions of the deal as extremely important to maximizing the overall recovery for the Class against the Non-Settling Defendants.

21. On April 9, 2018, counsel for Citi and Plaintiffs' Counsel signed a binding Settlement Term Sheet ("Term Sheet"). The Term Sheet set forth the terms on which the Parties agreed to negotiate the Agreement in good faith and to settle Representative Plaintiffs' claims against Citi. At the time the Term Sheet was executed, Plaintiffs' Counsel was well-informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses of the claims and defenses asserted.

22. By letter dated April 9, 2018, the Parties reported to the Court that the binding Term Sheet had been executed, and advised the Court that the Term Sheet would be superseded by a formal Agreement.

23. On May 22, 2018, several months of negotiations culminated with the Parties executing the Citi Agreement. Among the various terms negotiated, the Representative Plaintiffs and Citi agreed that Citi's obligation to provide cooperation would be triggered by the entry of an order preliminarily approving the Settlement.

24. The Settlement with Citi was not the product of collusion. Before any financial numbers were discussed in the settlement negotiations and before any demand or counter-offer was ever made, I was well-informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses of Representative Plaintiffs' claims against Citi.

25. **JPMorgan Settlement Negotiations**. The negotiations with JPMorgan took more than one year, starting in April 2017 and continuing until the Agreement was executed on November 14, 2018.

26. Following initial phone calls with JPMorgan's counsel in April 2017, Lowey Dannenberg engaged in multiple negotiation sessions over the next year with JPMorgan's counsel during which the parties discussed the strengths and weakness of Plaintiffs' liability and damages claim and JPMorgan's litigation exposure.

27. During these negotiations, Lowey Dannenberg and counsel for JPMorgan discussed the material terms of the settlement, including the amount of the settlement consideration, the scope of the cooperation to be provided by JPMorgan, the scope of the releases, and the circumstances under which the Parties would have the right to terminate the settlement.

28. In May 2018, Representative Plaintiffs reached an agreement with JPMorgan on the amount of the settlement, subject to the negotiation of other material terms of the deal. As with the Citi Agreement, Plaintiffs' Counsel viewed the cooperation provisions of the JPMorgan Agreement as extremely important to maximizing the overall recovery for the Class against the Non-Settling Defendants.

29. On June 5, 2018, counsel for JPMorgan and Plaintiffs' Counsel signed a Settlement Term Sheet setting forth the terms on which the Parties agreed to negotiate the JPMorgan Agreement in good faith and to settle Representative Plaintiffs' claims against JPMorgan. At the time the Term Sheet was executed, Plaintiffs' Counsel was well-informed about the legal risks, factual

uncertainties, potential damages, and other aspects of the strengths and weaknesses of the claims and defenses asserted.

30. By letter dated June 5, 2018, the Parties reported to the Court that the binding Settlement Term Sheet had been executed and advised the Court that the Term Sheet would be superseded by a formal Agreement.

31. On November 14, 2018, several months of negotiations culminated with Lowey Dannenberg and counsel for JPMorgan executing the JPMorgan Agreement. *See* Ex. 2 (JPMorgan Agreement). Among the various terms negotiated, the Representative Plaintiffs and JPMorgan agreed that JPMorgan's obligation to provide cooperation would be triggered by the entry of an order preliminarily approving the Settlement. JPMorgan Agreement § 4(K).

32. The Settlement with JPMorgan was not the product of collusion. Before any financial numbers were discussed in the settlement negotiations with JPMorgan and before any demand or counter-offer was ever made, I was well-informed about the legal risks, factual uncertainties, potential damages, and other aspects of the strengths and weaknesses of Representative Plaintiffs' claims against JPMorgan.

33. The Settlements with Citi and JPMorgan involve a structure and terms that are common in class action settlements in this District. The consideration that Citi and JPMorgan have agreed to pay is within the range of that which may be found to be fair, reasonable, and adequate at final approval.

34. Lowey Dannenberg believes that there are at least hundreds of geographically dispersed persons and entities that fall within the Settlement Class definition. This belief is based on data from the Federal Reserve Bank of New York, which shows that hundreds of billions of dollars in notional value of SIBOR- and SOR-Based Derivatives were traded within the United States from

2007 through 2011. *See* Third Amended Complaint, ECF No. 308, ¶¶ 70-72 (citing, *inter alia*, 2007 and 2010 surveys by the Federal Reserve Bank of New York).

35. Lowey Dannenberg has diligently represented the interests of the Class in the Action. The firm investigated and brought the Action. Lowey Dannenberg preserved the statute of limitations. Lowey Dannenberg negotiated the Settlements with Citi and JPMorgan. The firm has performed all of the necessary work to prosecute this litigation for nearly two years. Lowey Dannenberg will continue to zealously represent the Class to prosecute the Class's claims against the remaining Defendants.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 15, 2018
White Plains, New York

/s/Vincent Briganti
Vincent Briganti