# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FUND LIQUIDATION HOLDINGS LLC, as assignee and successor-in-interest to FrontPoint Asian Event Driven Fund L.P., on behalf of itself and all others similarly situated,<br><br>            Plaintiff,<br><br>-against-<br><br>CITIBANK, N.A., BANK OF AMERICA, N.A., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, UBS AG, BNP PARIBAS, S.A., OVERSEA-CHINESE BANKING CORPORATION LTD., DEUTSCHE BANK AG, CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, CREDIT SUISSE AG, STANDARD CHARTERED BANK, DBS BANK LTD., UNITED OVERSEAS BANK LIMITED, AUSTRALIA AND NEW ZEALAND BANKING GROUP, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, AND JOHN DOES NOS. 1-50<br>            Defendants. | Docket No. 16-cv-05263 (AKH)<br>ECF Case |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND FILE THE PROPOSED FOURTH AMENDED CLASS <u>ACTION COMPLAINT</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    The proposed amendments in the PFAC are not futile. ............................................... 4

        A. The Moon Plaintiffs are "efficient enforcers" under *SIBOR II* because they transacted SGD FX forwards directly with UBS AG. ................................................................................ 5

        B. The PFAC alleges a direct relationship between USD SIBOR, SOR, and the prices of SGD FX forwards. ................................................................................................................. 6

    II.    Plaintiff did not delay in filing this motion and is acting in good faith. ..................... 7

    III.    Defendants will not suffer undue prejudice if this Court grants leave to amend. ....... 9

CONCLUSION ............................................................................................................................. 10

Plaintiff Fund Liquidation Holdings LLC ("Plaintiff") respectfully submits this memorandum of law in support of its Motion for Leave to Amend the Third Amended Class Action Complaint ("TAC"). A copy of Plaintiff's Proposed Fourth Amended Class Action Complaint ("PFAC") is attached as Exhibit A and a redline, comparing the PFAC to the TAC as Exhibit B.

**PRELIMINARY STATEMENT**

Plaintiff seeks leave to amend the TAC for the limited purpose of: (1) changing the caption to add Moon Capital Partners Master Fund, Ltd. ("Moon Capital Partners") and Moon Capital Master Fund, Ltd. ("Moon Capital Master") (collectively the "Moon Plaintiffs") as Plaintiffs; (2) alleging the Moon Plaintiffs' transactions in SGD FX forwards directly with Defendant UBS AG, a member of both the USD SIBOR and SOR panels; (3) reasserting paragraphs from the SAC relating to SOR and USD SIBOR that were removed from the TAC; and (4) reasserting Sherman Act claims against SOR Panel Defendants Barclays Bank PLC, ING Bank, N.V., and Commerzbank, AG and a claim for breach of implied covenant of good faith and fair dealing against defendant UBS AG.[1]

The Moon Plaintiffs' transactions cure the antitrust standing deficiencies that this Court identified in *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 CIV. 5263 (AKH), 2018 WL 4830087 (S.D.N.Y. Oct. 4, 2018) ("*SIBOR II*") regarding claims against USD SIBOR and SOR panel members. Immediately following *SIBOR II*, class counsel began diligently working with class members that transacted in USD SIBOR and SOR-based derivatives to identify transactions that would satisfy the Court's "efficient enforcer" analysis. *See id.* at *5-6. On December 17, 2018, Plaintiff's counsel was retained by two New York-based investment funds that met these criteria: Moon Capital Partners and Moon Capital Master. Plaintiff made this motion for leave to amend

---

[1] While the Moon Plaintiffs could bring claims against the SOR Panel Defendants by filing a separate related action, Plaintiff's counsel believes this motion is the most efficient avenue for the Moon Plaintiffs to assert their claims.

1

without delay. Plaintiff's counsel was retained by the Moon Plaintiffs on December 17 and received authority to file this motion on December 24. Because this Court was closed on December 24 and 25 for the Christmas holiday, this motion came before the Court on the first possible day -- and less than three months after the Court decided *SIBOR II* on October 4, 2018.

The Moon Plaintiffs each transacted SGD FX forwards directly with Defendant UBS AG, a member of both the USD SIBOR and SOR panels. UBS was sanctioned by the Monetary Authority of Singapore ("MAS") for conspiring to manipulate both rates during the Class Period. *See* PFAC ¶¶ 87-88. The Moon Plaintiffs' FX forward transactions were priced based on USD SIBOR and SOR according to an industry standard formula that incorporated those rates. *Id.* at ¶¶ 8, 187-200. As this Court has recognized, multiple courts in this District have found identical allegations, based on the same pricing formula, sufficient to establish antitrust standing for FX forward investors. *See SIBOR II*, 2018 WL 4830087 at *5 n.7.[2] The result should be no different here, where the PFAC alleges a direct contractual and mathematical relationship between the Moon Plaintiffs and the antitrust injury caused by Defendants' cartel, sufficient to make the Moon Plaintiffs "efficient enforcers" of the antitrust laws.

The PFAC demonstrates that the Moon Plaintiffs have antitrust standing under *SIBOR II*, and this Court should grant Plaintiff's motion so that the Moon Plaintiffs may pursue Sherman Act claims against the USD SIBOR and SOR Panel Members.[3] This Court has already found that

---

[2] *See also Dennis v JPMorgan Chase & Co.*, No. 16-cv-6496 (LAK), 2018 WL 6169313, at *12 (S.D.N.Y. Nov. 26, 2018) (holding that plaintiffs' allegations that Australian Dollar FX forwards incorporates BBSW "are sufficient to make out a causal connection between defendants' alleged manipulation of BBSW and Dennis' and Sonterra's diminished returns on their BBSW-Based Derivatives."); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, 277 F. Supp. 3d 521, 548 (S.D.N.Y. 2017) ("at the pleading stage, plaintiffs have adequately alleged injury from the alleged manipulation of CHF LIBOR with respect to . . . FX forwards."); *Sullivan v. Barclays PLC*, No. 13-cv-2811 (PKC), 2017 WL 685570, at *9–10 (S.D.N.Y. Feb. 21, 2017) (finding that the Complaint plausibly alleged that Euribor was incorporated into FX exchange forwards and "that plaintiffs were consequently injured by the Euribor's manipulation").

[3] The "SOR Panel Members" are: Bank of America N.A.; Citibank N.A.; JPMorgan Chase Bank, N.A.; Barclays Bank PLC; The Royal Bank of Scotland PLC; The Bank of Tokyo-Mitsubishi UFJ, Ltd.; Commerzbank; Credit Agricole CIB; Credit Suisse AG; Deutsche Bank AG; The Hongkong and Shanghai Banking Corporation Ltd.; Oversea-Chinese Banking Corporation Ltd.; Standard Chartered Bank; UBS AG; and DBS Bank Ltd. *See* PFAC ¶ 169.

Plaintiff's allegations of a profit-motivated, trader-based conspiracy to manipulate those rates are plausible. *See SIBOR II*, 2018 WL 4830087 at *5. Leave to amend should be granted so that the Sherman Act claims regarding these rates may be tested, consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted). There is no evidence of bad faith, delay, or undue prejudice to support finding otherwise. Plaintiff acted swiftly, filing this motion days after the Moon Plaintiffs retained counsel, and Defendants have been on notice of the claims asserted in the PFAC for the manipulation of USD SIBOR and SOR since the outset of this case. *See* Complaint, ECF 4, at ¶¶ 1-9. Allowing the Moon Plaintiffs' claims to proceed here will also significantly conserve judicial resources and avoid inconsistent rulings by addressing all claims, against the actors in the SIBOR and SOR conspiracy that MAS identified, in a single action. The proposed amendments would also moot several arguments Defendants make in their pending motion to dismiss the TAC, including that the removal of certain allegations about the manipulation of SOR that Plaintiff made pursuant to the Court's directive in the October 4, 2018 Order, rendered the alleged conspiracy implausible. *See* ECF No. 319 at 24-26. The Court should grant Plaintiff's motion for each of the above reasons.

## ARGUMENT

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). This permissive standard is consistent with the Second Circuit's "strong preference for resolving disputes on the merits." *Williams*, 659 F.3d at 212–13 (internal citations and quotation marks omitted); Fed. R. Civ. P. 15(a)(2). Unless the proposed amendment is "futile"—*i.e.*, it "fails to state a legally cognizable claim or fails to raise triable issues of fact"—"[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *AEP*

3

*Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725-26 (2d Cir. 2010) (citation omitted). Examples of prejudice include amendments which would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial" or "significantly delay the resolution of the dispute." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (citation omitted). As demonstrated below, the PFAC satisfies each requirement for leave to amend and there is no evidence of bad faith or prejudice to support denying Plaintiff's motion.

**I.      The proposed amendments in the PFAC are not futile.**

Amending a pleading is futile if the proposed claim could not withstand a motion to dismiss. *Lucente v. International Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). "In assessing whether the proposed complaint states a claim, we consider the proposed amendment[s] . . . along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012) (citations omitted) (alteration and ellipsis in original); *see also Ouedraogo v. A-1 Int'l Courier Serv., Inc.*, No. 12 CIV. 5651 AJN, 2013 WL 3466810, at *6 (S.D.N.Y. July 8, 2013) ("It is axiomatic that the party opposing an amendment has the burden of establishing that leave to amend would be futile.") (citation omitted).

Plaintiff's proposed amendment, to include the Moon Plaintiffs that transacted SGD FX forwards directly with Defendant UBS AG, will cure the specific antitrust standing deficiency that this Court identified in *SIBOR II* as to Plaintiff's claims against USD SIBOR and SOR Panel Members. *See* 2018 WL 4830087 at *6 (holding that "transactions with third-parties are insufficient to give [plaintiff] antitrust standing to sue the defendant Panel Members"). The PFAC also includes allegations demonstrating that both USD SIBOR and SOR are incorporated into the price of the Moon Plaintiffs' FX forward transactions. *See* PFAC ¶¶ 187-200. These allegations, which were first

included in the Second Amended Class Action Complaint (ECF No. 230, ¶¶ 180-93), establish the necessary "connection between defendants' conduct and [Plaintiffs'] alleged injury" that this Court previously found lacking in *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 CIV. 5263 (AKH), 2017 WL 3600425, *12 (S.D.N.Y. Aug. 18, 2017) ("*SIBOR I*"). The Court's decision to sustain Plaintiff's Sherman Act claims against the SGD SIBOR Panel Members, based on direct transactions in SGD SIBOR swaps, demonstrates that the amendment would withstand a motion to dismiss and is not futile. *Id.* at *5.

### A. The Moon Plaintiffs are "efficient enforcers" under *SIBOR II* because they transacted SGD FX forwards directly with UBS AG.

In *SIBOR II*, the Court found that Plaintiff plausibly alleged a profit-motivated, trader-based conspiracy to manipulate SGD SIBOR, USD SIBOR, and SOR. *See* 2018 WL 4830087 at *3-4. The Court applied the Second Circuit's opinion in *Gelboim v. Bank of Am. Corp.* 823 F.3d 752, 772 (2d Cir. 2016) to evaluate whether Plaintiff had antitrust standing to bring claims for each rate separately. *See SIBOR II*, 2018 WL 4830087, at *5–6. The Court held that with regard to SGD SIBOR, Plaintiff plausibly alleged antitrust standing by pleading that its predecessor, FrontPoint Asian Event Driven Fund, L.P.("FrontPoint"), transacted in SGD SIBOR-based swaps directly with SIBOR Panel Members[4] Deutsche Bank AG and Citibank, N.A. during the Class Period. *Id.*[5] These transactions satisfied both elements of antirust standing as articulated in *Gelboim* because they plausibly established: (a) that FrontPoint suffered an "antitrust injury" when Defendants manipulated SGD SIBOR, the rate that was incorporated into its swap transactions; and (b) that FrontPoint was an

---

[4] The "SIBOR Panel Members" are Defendants: Australia and New Zealand Banking Group, Bank of America N.A., The Bank of Tokyo-Mitsubishi UFJ, Ltd., BNP Paribas, Citibank N.A., Credit Suisse AG, DBS Bank Ltd., Deutsche Bank AG, The Hongkong and Shanghai Banking Corporation Ltd., ING Bank N.V., JPMorgan Chase Bank N.A., Oversea-Chinese Banking Corporation Ltd., The Royal Bank of Scotland PLC, Standard Chartered Bank, UBS AG, United Overseas Bank Ltd., and Credit Agricole CIB. *SIBOR II*, 2018 WL 4830087, at *1 n.2.

[5] Plaintiff is the "real party in interest" and proper party to assert FrontPoint's and Sonterra's claims because it acquired "all rights, title, and ownership associated with" those claims prior to pursuant to a valid Asset Purchase Agreement ("APA"). *See* PFAC ¶¶ 83–84; *see also SIBOR II*, 2018 WL 4830087, at *11 (finding that the APA "appear[s] to show a full assigned of rights to FLH, which therefore has the capacity to sue here.").

"efficient enforcer" because its claims arose from transactions directly with Defendants, that were SIBOR Panel Members, alleged to have manipulated SGD SIBOR for the purpose of unlawfully fixing derivatives prices. *See id.* at *5.

The Court found that Plaintiff failed to meet these requirements with regard to its Sherman Act claims for the manipulation of USD SIBOR and SOR. *Id.* at *6. Plaintiff's claims relating to these benchmarks were based on SGD foreign exchange ("FX") forward transactions entered by Sonterra Capital Master Fund Ltd. ("Sonterra"). *Id.* at *5. The Court reasoned that while Plaintiff sufficiently alleged an antitrust injury by pleading that Sonterra's SGD FX forwards "incorporate[d] USD SIBOR and SOR rates into their pricing," (*id.* at *5–6), it was not an "efficient enforcer" under *Gelboim* because it did not allege that any transactions occurred directly with a member of either the USD SIBOR or SOR panel. *Id.* at *6.

Unlike Sonterra, each Moon Plaintiff alleges that it transacted SGD FX forwards that incorporated USD SIBOR and SOR as components of price *directly* with Defendant UBS AG, a SIBOR and SOR Panel Member. *See* PFAC ¶¶ 87-88. Specifically, the PFAC alleges that, on February 16, 2009, Plaintiff Moon Capital Partners agreed to sell SGD 3,155,878 to UBS AG on August 19, 2009 in exchange for $2,073,642. *Id.* at ¶¶ 87, 191. Likewise, Plaintiff Moon Capital Master agreed to sell SGD 12,063,122 to UBS AG on August 19, 2009 for $7,962,352. *Id.* at ¶¶ 88, 191. Each of these transactions were priced based on USD SIBOR and SOR, according to the same industry standard pricing formula accepted by other Judges in this District. *See supra* fn. 2. Such allegations "are sufficient to make [Plaintiff] an efficient enforcer with respect to its antitrust claims." *See SIBOR II*, 2018 WL 4830087, at *5; *see also SIBOR I*, 2017 WL 3600425, at *12.

  **B.** **The PFAC alleges a direct relationship between USD SIBOR, SOR, and the prices of SGD FX forwards**.

The PFAC also addresses the Court's concerns in *SIBOR I* by establishing a direct, mathematical "connection" between Defendants' manipulation of USD SIBOR and SOR and the

6

Moon Plaintiffs' injuries. *See SIBOR I*, 2017 WL 3600425, at *12. In *SIBOR I,* this Court dismissed Sherman Act claims based on transactions in SGD FX forwards because it found that Plaintiff's First Amended Class Action Complaint, ECF No. 119 ("FAC"), failed to sufficiently allege that those derivatives incorporated USD SIBOR and SOR as a component of price. *Id.* Since the FAC, Plaintiff has added multiple allegations demonstrating exactly how both rates are used to determine prices of SGD FX forwards using an industry standard formula. *See* PFAC ¶¶ 192-98 (explaining that "the cost of buying or selling currency pursuant to a foreign exchange forward is derived from the current spot price of the relevant currency pair using an industry standard formula" and applying the formula to a USD/SGD currency pair for the price of a one-month SGD FX forward). As this Court recognized in *SIBOR II*, other courts in this District have found identical allegations, based on the exact same industry standard pricing formula, sufficient to survive a motion to dismiss. *See SIBOR II*, 2018 WL 4830087, at n.7; *see also supra* fn. 2. This demonstrates that the proposed amendment is not futile and Plaintiff's motion should be granted.

## II.     Plaintiff did not delay in filing this motion and is acting in good faith.

Plaintiff made this motion for leave to amend without delay. *See supra* at pp.1-2.  As such, the interests of judicial economy favor granting leave to amend, so that the Moon Plaintiffs can pursue their claims, which arise from the same conspiracy Plaintiff has plausibly alleged, *see SIBOR II*, 2018 WL 4830087, at *5, against the SIBOR and SOR Panel Members in this case. *See Bridgeport Music, Inc. v. Universal Music Grp., Inc.,* 248 F.R.D. 408, 415 (S.D.N.Y. 2008) (finding judicial economy supported granting leave to amend to add a new defendant where plaintiff's claims against that defendant were "identical to those already in the case"); *see also Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 101 (S.D.N.Y. 2010) ( "denying plaintiffs' motion will not cause [plaintiff's] claims to evaporate. If [plaintiff] is not permitted to assert her claims in this action, she will, in all probability, simply assert them in an independent action. The inefficiencies that would result from two independent actions is

7

far greater than any inefficiency that would result from permitting the amendment."). This will avoid the risk of disparate rulings that would arise if the Moon Plaintiffs pursued their claims in a separate action. *See Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y. 1987) ("Considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event.").

Additionally, because the Moon Plaintiffs seek to join the PFAC at such an early stage of the litigation—before discovery has even started—the proposed amendment will not delay ultimate adjudication of this case. *Gracia v. City of New York*, No. 16-CV-7329 (VEC), 2017 WL 4286319, at *2 (S.D.N.Y. Sept. 26, 2017) (holding that a party "did not unduly delay their request for leave to amend because they filed their motion before discovery began"). This is not a situation where Plaintiff seeks leave to amend on the eve of trial for some nefarious purpose. *See Azkour v. Haouzi*, No. 11-cv-5780 RJS KNF, 2012 WL 3667439, at *2 (S.D.N.Y. Aug. 27, 2012) ("[b]ad faith exists when a party attempts to amend its pleading for an improper purpose"); *see, e.g.*, *Grace v. Rosenstock*, 228 F.3d 40, 54 (2d Cir. 2000) ("the court also has discretion to deny leave to amend . . . where the belated motion would unduly delay the course of proceedings, by for example, introducing new issues for discovery."). Defendants have known about the claims alleged in the PFAC since Plaintiff filed its initial complaint, which relied on the same government investigations, settlements, and news reports cited today. *Compare, e.g.*, Compl., ¶¶ 109–23 (alleging the CFTC's, FSA's, and MAS's findings), *with* PFAC ¶¶ 206–23 (alleging the CFTC's, FSA's, and MAS's findings). Courts in this District regularly grant motions to amend in situations where, as here, the new claims are "closely related to the original claim and are foreshadowed in earlier pleadings." *See Bridgeport*, 248 F.R.D. at 415; *see also* Exhibit B ("Comparing PFAC to TAC"). This Court should do the same.

### III. Defendants will not suffer undue prejudice if this Court grants leave to amend.

To establish undue prejudice, Defendants bear the burden of demonstrating that amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute." *In re Pfizer Inc. Secs. Litig.*, No. 04 CIV. 9866 LTS HBP, 2012 WL 983548, at *3 (S.D.N.Y. Mar. 22, 2012) (alteration in original) (citation omitted); *see also Blagman v. Apple, Inc.*, No. 12 Civ. 5453, 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) ("prior notice of a claim and whether the new claim arises from the same transaction as the claims in the original pleading are central to th[e analysis of prejudice]"). "Although [p]rejudice to the opposing party ... has been described as the most important reason for denying a motion to amend, . . . only <u>undue</u> prejudice warrants denial of leave to amend." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (internal citations and quotation marks omitted) (alteration and emphasis in original). Where the moving party provides explanation for delay, the opposing party must make greater showing of prejudice. *Id.* No such prejudice exists here. All Defendants are and have been on notice of the nature of the claims against them stemming from the events at issue since Plaintiff's original complaint was filed; to suggest otherwise ignores reality. *See supra* p. 7.

Additionally, given the early stage of this litigation, Defendants will have a full and fair opportunity to develop defenses to the claims asserted against them. As mentioned above, this case is not in discovery yet. Defendants will have ample opportunity to investigate the factual bases underlying Plaintiffs' allegations and prepare a defense. In fact, both the existing and new defendants were subject to the claims advanced in the PFAC until the Court's decision in *SIBOR II*, less than three months ago, and have likely already conducted thorough investigations of these claims. As a result, granting Plaintiff's motion to amend will not significantly delay the resolution of this dispute. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 273-74 (S.D.N.Y. 2012)

(finding no prejudice where the impact would not affect the scope of discovery and no depositions had been scheduled and therefore granting leave to amend); *see also JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-cv-9116 PGG, 2009 WL 1357946, at *4–5 (S.D.N.Y. May 12, 2009) (granting motion to amend in the absence of pending dispositive motions or trial date).

## CONCLUSION

For all the above reasons, Plaintiff respectfully requests that Plaintiff's motion for leave to amend and file the fourth amended complaint be granted.

Dated:  December 26, 2018　　　　　　　　　Respectfully submitted,
White Plains, New York

　　　　　　　　　　　　　　　　　　　　　LOWEY DANNENBERG, P.C.

　　　　　　　　　　　　　　　　　　　　　/s/ Vincent Briganti
　　　　　　　　　　　　　　　　　　　　　Vincent Briganti
　　　　　　　　　　　　　　　　　　　　　Geoffrey M. Horn
　　　　　　　　　　　　　　　　　　　　　Peter St. Phillip
　　　　　　　　　　　　　　　　　　　　　Christian P. Levis
　　　　　　　　　　　　　　　　　　　　　44 South Broadway, Suite 1100
　　　　　　　　　　　　　　　　　　　　　White Plains, NY 10601
　　　　　　　　　　　　　　　　　　　　　Tel.: (914) 997-0500
　　　　　　　　　　　　　　　　　　　　　Fax: (914) 997-0035
　　　　　　　　　　　　　　　　　　　　　Email:  vbriganti@lowey.com
　　　　　　　　　　　　　　　　　　　　　　　　　　ghorn@lowey.com
　　　　　　　　　　　　　　　　　　　　　　　　　　pstphillip@lowey.com
　　　　　　　　　　　　　　　　　　　　　　　　　　clevis@lowey.com

　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*