UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

FUND LIQUIDATION HOLDINGS LLC, as assignee and successor-in-interest to FrontPoint Asian Event Driven Fund L.P., on behalf of itself and all others similarly situated,

                              Plaintiff,

-against-

CITIBANK, N.A., BANK OF AMERICA, N.A., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, UBS AG, BNP PARIBAS, S.A., OVERSEA-CHINESE BANKING CORPORATION LTD., DEUTSCHE BANK AG, CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, CREDIT SUISSE AG, STANDARD CHARTERED BANK, DBS BANK LTD., UNITED OVERSEAS BANK LIMITED, AUSTRALIA AND NEW ZEALAND BANKING GROUP, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, AND JOHN DOES NOS. 1-50,

                              Defendants.

------------------------------------------------------------- X

**OPINION AND ORDER DISMISSING CASE**

16 Civ. 5263 (AKH)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/26/19

ALVIN K. HELLERSTEIN, U.S.D.J.:

       There are two primary issues raised by defendants' motion to dismiss this antitrust action charging defendants with conspiring to fix interbank rates in the Singapore market, thus affecting prices of derivative securities in New York and other cities in the United States: 1) whether the new plaintiff, Fund Liquidation Holdings LLC ("FLH" or "plaintiff"), has capacity to sue and, if not, whether the court has subject matter jurisdiction, and 2) whether, if

there is no subject matter jurisdiction, the court may grant plaintiff's motion to preliminarily approve a settlement with two defendants, or allow a Fourth Amended Complaint.

In a previous October 4, 2018 decision, I found that the original plaintiffs, FrontPoint Asian Event Driven Fund, Ltd. ("FrontPoint") and Sonterra Capital Master Fund, LTD ("Sonterra") had been dissolved prior to filing suit, and dismissed their case, for they had no capacity to sue and, thus, there was no real party in interest. *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-cv-5263 (AKH), 2018 WL 4830087, at *11 (S.D.N.Y. Oct. 4, 2018) ("*SIBOR II*"). Plaintiffs then filed, with my permission, a Third Amended Complaint ("TAC") alleging that the two companies had assigned their claims to FLH pursuant to an Asset Purchase Agreement ("APA") executed July 13, 2011. The issue posed by defendants' motion to dismiss is whether the assignment embraces the claims in Plaintiff's complaint for, if the assignment does not, FLH, as well as Frontpoint and Sonterra, is not a real party in interest, lacking capacity to sue, and the TAC must be dismissed.

The TAC alleges a conspiracy to manipulate two interest rate benchmarks, the Singapore Interbank Offered Rate ("SIBOR") and the Singapore Swap Offer Rate ("SOR"). FLH asserts claims of conspiracy to restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 *et seq.*, against financial institutions participating in the rate setting process. Plaintiff also alleges a state law claim against two defendants, Deutsche Bank AG and Citibank N.A., for breach of implied covenant of good faith and fair dealing.

The defendants who have not entered into settlement agreements[1] move to dismiss the Third Amended Complaint ("TAC"), pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6), for lack of subject matter jurisdiction, for lack of personal jurisdiction as to certain defendants,[2] and for failure to state a claim on which relief can be granted. I grant defendants' motions because I conclude that the Court lacks subject matter jurisdiction.

Plaintiff also moves for preliminary approval of their two settlements and to file a Fourth Amended Complaint. Plaintiff's motions are denied.

Plaintiff's allegations and the procedural background are described in my earlier Opinion and Order, *SIBOR II*, 2018 WL 4830087, at *1–*3, and will not be repeated except as necessary to the issues now at hand.

Basically, the complaint alleges a Sherman Act conspiracy to fix two benchmark interest rates, SIBOR and SOR. The rates reflect daily averages in the Singapore market. Plaintiff alleges that defendants, by agreeing to manipulate SIBOR and SOR, intended to fix prices of derivatives traded in New York.

---

[1] Bank of America, N.A., The Royal Bank of Scotland plc, UBS AG, BNP Paribas, S.A., Oversea-Chinese Banking Corporation Ltd., Deutsche Bank AG, Credit Agricole Corporate and Investment Bank, Credit Suisse AG, Standard Chartered Bank, DBS Bank Ltd., United Overseas Bank Limited, Australia and New Zealand Banking Group, Ltd., The Bank of Tokyo-Mitsubishi UFJ, Ltd., and The Hongkong and Shanghai Banking Corporation Limited.

Citibank, N.A. and JPMorgan Chase Bank, N.A., having entered into settlement agreements with plaintiff, do not join the motion.

[2] The Royal Bank of Scotland plc, UBS AG, BNP Paribas, S.A., Oversea-Chinese Banking Corporation Ltd., Credit Agricole Corporate and Investment Bank, Credit Suisse AG, Standard Chartered Bank, DBS Bank Ltd., United Overseas Bank Limited, Australia and New Zealand Banking Group, Ltd., The Bank of Tokyo-Mitsubishi UFJ, Ltd., and The Hongkong and Shanghai Banking Corporation Limited.

In *SIBOR II*, I granted in part and denied in part claims raised in plaintiffs' Second Amended Complaint (SAC) and granted leave to file the TAC at issue here. In particular, I dismissed the antitrust claims alleged against non-SIBOR Panel Members and all of the claims alleged by Sonterra Capital Master Fund, Ltd. ("Sonterra"). I dismissed all the RICO and RICO conspiracy claims, and I dismissed the claims against foreign defendants not serving on the SIBOR Panel for lack of personal jurisdiction.[3]

The capacity to sue by FrontPoint and Sonterra was addressed in my previous decision. I dismissed the plaintiffs' claims, because they were dissolved entities when the action began, on July 1, 2016. In response, plaintiffs asserted that Sonterra and FrontPoint's claims were assigned to FLH under FrontPoint's Asset Purchase Agreement ("APA"), executed July 13, 2011. ECF 320-1. I granted plaintiff leave to amend and to substitute FLH as the real party in interest, and instructed plaintiffs to "show how they got their assignment and give me an interpretation of the contract to show that they have the ability to sue. That should be in [the] pleading." *SIBOR II*, 2018 WL 4830087, at *12; Tr., ECF 282, at 48:2–5. The TAC now alleges the assignment and substitutes FLH as a party plaintiff. Defendants' motion challenges the adequacy of the assignment.

---

[3] Having allowed plaintiff to file the TAC, and having found the issues raised by defendants' present motion to be the same, I denied as academic motions for reconsideration by The Hongkong and Shanghai Banking Corporation Limited, DBS Bank Ltd, Oversea-Chinese Banking Corporation Limited, and United Overseas Bank Limited. ECF 385–86.

4

## Discussion

### A. Legal Standard

"The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt*, 790 F.3d 411, 416–17. "'The party invoking federal jurisdiction bears the burden of establishing' prudential and constitutional standing . . . ." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (quoting *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014)). "In assessing the plaintiff's assertion of standing, 'we accept as true all material allegations of the complaint[] and . . . construe the complaint in favor of the complaining party' [and] may also rely on evidence outside the complaint." *Cortlandt*, 790 F.3d at 417 (internal citations omitted).

"In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Cortlandt*, 790 F.3d at 417 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "[L]awsuits by assignees . . . are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Cortlandt*, 790 F.3d at 418 (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008)). "Although federal antitrust laws do not expressly permit assignment, it has been long acknowledged by federal courts that these claims may be assigned." *DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075,

at *3 (citing *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1090 (3d Cir. 1980)); *see also Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 100 (2d Cir. 2007).

"To effect a transfer of the right to bring an antitrust claim, the transferee must expressly assign the right to bring that cause of action, either by making specific reference to the antitrust claim or by making an unambiguous assignment of causes of action in a manner that would clearly encompass the antitrust claim." *DNAML Pty, Ltd. v. Apple Inc.*, No. 13-cv-6516 (DLC), 2015 WL 9077075, at *3 (S.D.N.Y. Dec. 16, 2015).

"In determining whether the Agreement has effectively made an assignment of the right to bring an antitrust claim, ordinary principles of contract law will be applied." *DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075, at *4. "A contract is unambiguous when the contractual language has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 69 (2d Cir. 2014). "By contrast, ambiguity exists where a contract's term could objectively suggest more than one meaning to one familiar with the customs and terminology of the particular trade or business." *Id.* "A fundamental precept of contract law is that agreements are to be construed in accordance with the parties' intent," and "[t]he best evidence of what the parties intended is what they say in their writing." *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 122 (2d Cir. 2014) (internal quotation marks removed). "The existence of an ambiguity is to be ascertained from the face of an agreement without regard to extrinsic evidence." *Id.*

### B. Terms of the APA

In determining whether the APA is effective in assigning the claims from FrontPoint to FLH, I begin with the language of the contract. Section 1.1 of the APA provides

that FLH purchases "all of [FrontPoint's] right, title and interest in all of the Assets, including, without limitation, all of [FrontPoint's] right, title and interest in all of the Assets, now or hereafter payable pursuant to any Recovery Rights . . . ."

This initial, general assignment does not end the inquiry, because this general assignment is limited by its very terms: assets are defined as "all of [FrontPoint's] right, title, and interest in and to any and all Recovery Rights and any and all amounts payable in connection with any of the Existing Claims and the Future Claims . . . ." APA Art. II. Recovery Rights are "all monetary, legal and other rights held by or accruing to [FrontPoint] in respect of such Claim, including without limitation, the aggregate amount which [FrontPoint] is, or may become, entitled to receive pursuant to any Settlement and/or Judgment in connection with such Claim." *Id.*

Claims, in turn, are defined as "the Existing Claims and the Future Claims." APA Art. II. Relevant here are Future Claims, which the APA defines as:

> [A]ny and all claims of [Frontpoint] to Recovery Rights related to the ownership of, or any transaction in, any Included Securities, in each case, as to which no Case has been filed as of the date hereof arising out of: (i) any future securities class action lawsuit or any Judgment thereon to the extent related to Seller's ownership of, or any transaction in, any Included Securities; and (ii) any future holdbacks or reserves under any settled securities class action lawsuits or any Judgment thereon, to the extent related to [FrontPoint's] ownership of, or any transaction in, any Included Securities.
>
> Future Claims do not include Recovery Rights in respect of causes of action and interests in any state or federal common law claim, any non-securities related claim, or any claim related to the bankruptcy of Lehman Brothers.

APA Art. II.

7

"Included Securities" is defined as "all Securities in the Trade Data that were owned, held, acquired, sold or otherwise disposed of by such Seller during the Trade Period." APA Art. II. "Securities" means "any debt and/or equity securities of any kind, type, or nature, including, without limitation, stock, bonds, options, puts, calls, swaps and similar instruments or rights." APA Art. II. The APA refers to both a defined term "Securities" and an undefined "securities," used in the definition of Securities and in other sections, including the definition of Future Claims. "Trade Data" is defined to mean "all of the relevant information to be provided by each Seller to Buyer pursuant hereto and relating to purchases, sales, ownership and other transactions in all Included Securities by the Sellers during the Trade Period. APA Art. II. Trade Period, in turn, is "the period from and including the date of [FrontPoint's] formation or incorporation to and including the present." APA Art. II.

Exhibit B of the APA, a notice of assignment to "Relevant Filing Agents, Claims Administrators, Brokers, Prime Brokers, [and] Vendors" purports to disclose the transfer and assignment of "all rights, title and interest of in and to or associated with, or any manner to, any and all recovery rights and amounts payable in connection with any securities related claims related to or arising out of the Transferor's ownership of, or any transaction in, any debt and/or equity securities of any kind, type, or nature (including, without limitation, stocks, bonds, options, puts, calls, swaps and similar instruments or rights) . . . ."

C. **Motion to Dismiss**

1. <u>The APA Does Not Effect an Assignment of Claims from FrontPoint to FLH</u>

First, plaintiff argues that the law of the case doctrine precludes consideration of standing and the propriety of the claims' assignment. As discussed, plaintiff alleged the assignment of claims by FrontPoint to it for the first time in the TAC. The issue was not previously decided and is properly before me now.

Next, plaintiff disputes defendants' standing to challenge the assignment of claims under the APA. Although defendants are not parties to the APA, such a challenge is clearly appropriate, where, as here, defendants face legal liability based on claims asserted pursuant to the assignment. *See, e.g., DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075, at *5 (after analyzing terms of purported assignment agreement, granting summary judgment for defendants based on a lack of standing).

Plaintiff's claim of breach of the implied covenant of good faith and fair dealing is a "cause[] of action . . . in [a] state . . . common law claim" and thus explicitly excluded from the definition of Future Claims. *See FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16-cv-5263 (AKH), 2017 WL 3600425, at *1 (S.D.N.Y. Aug. 18, 2017) ("*SIBOR I*"). This claim is dismissed for lack of standing.

In order for the contract to have assigned FrontPoint's antitrust claims arising under the Sherman Act, to FLH, the antitrust claims must be, within the meaning of the contract, "claims . . . arising out of . . . [a] securities class action lawsuit," so as to constitute "unambiguous assignment of causes of action in a manner that would clearly encompass the

9

antitrust claim," *DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075, at *3, and those claims must not be excepted from transfer as "non-securities related claim[s]." APA Art. II.

The APA lacks express language transferring either "antitrust claims" or "all causes of action." *DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075, at *5. As the APA's terms and definitions make clear, assets and causes of action to be transferred were not total but subject to important limitations. The APA distinguishes between "security class action[s]," which were subject to transfer, and "any non-security related claim[s]," which were not.

Plaintiff urges a broad, generic reading of the term "security" as employed in the contract. This interpretation of the contract is inconsistent with the contract's terms. By invoking claims arising out of "securities class actions," the parties showed an intention to name and transfer a specific category of causes of action, to the exclusion of others. *See DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075, at *5 ("Applying the principle *expressio unius est exclusio[] alterius*, the inclusion of these specific transfer provisions confirms that the parties to the Agreement were aware of how to transfer legal claims, chose to transfer specific rights that they delineated, and did not intend a general transfer of all legal claims."). Even if "securities class actions" could be understood to include antitrust actions such as this one, it hardly constitutes an "unambiguous assignment" required by federal law. *DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075, at *3. This understanding is further enforced by the parties' explicit exception of any "causes of action and interests in . . . any non-securities related claim." APA Art. II.

Securities and antitrust claims are distinct. *See, e.g., Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (distinguishing "antitrust class actions" from "securities class actions"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11

MDL 2262 (NRB), 2015 WL 6243526, at *150 (S.D.N.Y. Oct. 20, 2015) (distinguishing "Securities Act claims" from "antitrust . . . claims"). Absent some explicit definition in the APA, a securities class action lawsuit is understood as a suit arising out of the securities laws, mirroring its use by other courts. *See, e.g.*, *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (discussing, *inter alia*, the operation of "securities class actions" in the context of the U.S. securities laws).

As plaintiff points out, the APA defines "Securities" broadly, to encompass a wide array of financial instruments, but the wide scope of securities and securities-adjacent instruments nowhere suggests that "securities class action lawsuit" should also encompass antitrust claims. APA Art. II. While the broadly delimited term "Securities" is explicitly defined by the APA, the lowercase-s "securities class action" and "non-securities related claim" used to define Future Claims are not, making "security" suitable for interpretation in light of common understanding.

In further support of its interpretation of the APA, plaintiff cites the declaration of T. A. McKinney, a former general counsel of FrontPoint. ECF 345. Because I conclude that the terms of the APA are unambiguous on their face, it is unnecessary and inappropriate to apply extrinsic evidence here. *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 31 (2d Cir. 2015) ("[c]onsideration of extrinsic evidence is only permissible where the contract at issue is ambiguous"); *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d at 122; *DNAML Pty, Ltd. v. Apple Inc.*, 2015 WL 9077075, at *6. The APA does not assign the claims at issue in this case, and plaintiff lacks standing to assert them.

11

2.  Plaintiff's Substitution Under Rule 17(a)(3) Is Improper and its Claims are Untimely

There is another reason for dismissing the TAC. Because FrontPoint and Sonterra lacked capacity to sue, there was no real "case or controversy" before the court and, consequently, no subject matter jurisdiction. *See* U.S. Const. Art III; *Cortlandt*, 790 F.3d at 417. The substitution of FLH under Fed. R. Civ. P. 17(a)(3) could not repair the basic deficiency of Frontpoint's and Sonterra's pleading, since Rule 17 allows substitutions to cure mistakes, not repair an absent substance. *Cortland,* 790 F.3d at 424 (substitution of parties allowed where it can cure "a mistake . . . as to the person entitled to bring such suit and such substitution will not alter the substance of the action."). As the Second Circuit observed in dictum, "'[I]n the absence of a plaintiff with standing . . . there [is] no lawsuit for the real party in interest to ratify, join, or be substituted into under Rule 17(a)(3) or otherwise.' Whether the real party in interest [that is, Fund] made a mistake [by not suing originally] does not even enter into consideration." *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 227 n.7 (2d Cir. 2018) (internal citation omitted) (quoting *Cortlandt*, 790 F.3d at 423); *see Dennis v. JPMorgan Chase & Co.,* 342 F. Supp. 3d 404, 416 (S.D.N.Y. 2018). Although I gave leave to Frontpoint and Sonterra to substitute Fund, my order could not confer jurisdiction where it did not originally exist.

FLH, if it were a proper assignee, could file a claim of its own that mirrored the complaint filed by Frontpoint and Sierra. However, its complaint would be a new filing, not capable of relating back in time to Frontpoint's and Sonterra's filing. The four-year statute of limitations, running from no later than June 2013, would bar Fund from now filing such suit (or at the time it filed the TAC, October 26, 2019). 15 U.S.C. § 15b.

12

D.  **Motion for Preliminary Settlement Approval**

Plaintiff moves, with Citibank, N.A. and JPMorgan Chase Bank, N.A., for preliminary approval of their respective settlement agreements. These motions are denied, for the Court lacks subject matter jurisdiction.

A court's approval of a settlement requires a finding by the court that there is subject matter jurisdiction. *See Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) ("A court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing."); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing."); *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 305 (W.D.N.Y. 2016) ("[U]ncertainty as to subject matter jurisdiction cannot be treated merely as a factor to be weighed in the settlement equation. Unless subject matter jurisdiction is established, I cannot even consider the Uncontested Motion, much less approve it.").

At the May 2, 2019 hearing, plaintiff raised the argument that, even if the Court lacks subject matter jurisdiction over the case because of the infirm assignment of rights from FrontPoint to FLH, it may have jurisdiction based on the somewhat broader language of the assignment of claims from Sonterra to FLH. However, Sonterra's were dismissed because it was not an efficient enforcer. *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2018 WL 4830087, at *6. FLH, as assignee, has no greater capacity than its assignor.

E.  **Motion to File a Fourth Amended Complaint**

Plaintiff also moves to file a Fourth Amended Complaint and amend the Third Amended Complaint, adding an additional plaintiff in an attempt to cure the antitrust standing

issues identified by the Court in *SIBOR II*, where I found that FrontPoint, was not an efficient enforcer for USD SIBOR or SOR, because it transacted in derivatives incorporating only SGD SIBOR. *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2018 WL 4830087, at *5. The Fourth Amended Complaint purports to cure the deficiency by adding new plaintiffs, Moon Capital Partners Master Fund, Ltd. and Moon Capital Master Fund, Ltd (collectively, the "Moon plaintiffs"). Plaintiff alleges that both transacted in SGD FX forwards that incorporated both USD SIBOR and SOR benchmarks.

This motion is denied for the same reasons that the TAC is dismissed: the inadequate assignment of claims to FLH from FrontPoint has deprived the Court of subject matter jurisdiction. In addition, the new claims of the Moon plaintiffs correspond to events that occurred more than eight years ago and are time-barred. Class action tolling under *American Pipe* applies only to the extent that new plaintiffs can join the class individually or file individual claims if the class fails. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018). The Moon plaintiffs cannot bring a new class action or otherwise revive an otherwise infirm action. The alternative reading "would allow the statute of limitations to be extended time and again; as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation." *Id.* at 1808.

## Conclusion

Because the APA does not effect the assignment of claims from FrontPoint to FLH, plaintiff lacks standing to bring its antitrust and breach of the implied covenant of good faith and fair dealing claims. Defendants' motion to dismiss the case is granted. Pursuant to my oral order at the May 2, 2019 hearing, Tr. at 5:11–16, plaintiff shall file an unredacted copy of the APA on the docket. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). The motions for preliminary approval of the class settlements and to file a Fourth Amended Complaint are also denied.

The clerk is instructed to terminate the motions (ECF 318, 314, 347), grant judgment to defendants, and close the case.

SO ORDERED.

Dated: July 25, 2019
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

15