# EXHIBIT 6

**EXECUTION VERSION**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FUND LIQUIDATION HOLDINGS LLC, as assignee and successor-in-interest to FrontPoint Asian Event Driven Fund L.P., MOON CAPITAL PARTNERS MASTER FUND LTD., and MOON CAPITAL MASTER FUND LTD., on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>      v.<br><br>CITIBANK, N.A., BANK OF AMERICA, N.A., JPMORGAN CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND PLC, UBS AG, BNP PARIBAS, S.A., OVERSEA-CHINESE BANKING CORPORATION LTD., BARCLAYS BANK PLC, DEUTSCHE BANK AG, CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK, CREDIT SUISSE AG, STANDARD CHARTERED BANK, DBS BANK LTD., ING BANK, N.V., UNITED OVERSEAS BANK LIMITED, AUSTRALIA AND NEW ZEALAND BANKING GROUP, LTD., THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE HONGKONG AND SHANGHAI BANKING CORPORATION LIMITED, COMMERZBANK AG, AND JOHN DOES NOS. 1-50,<br><br>                Defendants. | Docket No. 16-cv-05263 (AKH)<br><br><br>**STIPULATION AND AGREEMENT OF SETTLEMENT AS TO DEFENDANT ING BANK N.V.** |

## TABLE OF CONTENTS

1.    TERMS USED IN THIS AGREEMENT .......................................................................... 3

2.    SETTLEMENT CLASS ............................................................................................. 11

3.    SETTLEMENT PAYMENT ........................................................................................ 12

4.    ING'S COOPERATION ............................................................................................. 13

5.    PAYMENT OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES,
      AND APPLICATION FOR INCENTIVE AWARD ....................................................... 21

6.    APPLICATION FOR APPROVAL OF FEES, EXPENSES, AND COSTS OF
      SETTLEMENT FUND ADMINISTRATION .................................................................. 23

7.    NO LIABILITY FOR FEES AND EXPENSES OF PLAINTIFFS' COUNSEL ........... 23

8.    DISTRIBUTION OF AND/OR DISBURSEMENTS FROM SETTLEMENT FUND ... 24

9.    DISBURSEMENTS PRIOR TO EFFECTIVE DATE .................................................... 25

10.   DISTRIBUTION OF BALANCES REMAINING IN NET SETTLEMENT FUND TO
      AUTHORIZED CLAIMANTS .................................................................................... 26

11.   ADMINISTRATION/MAINTENANCE OF SETTLEMENT FUND ............................ 26

12.   RELEASE AND COVENANT NOT TO SUE ............................................................ 28

13.   MOTION FOR PRELIMINARY APPROVAL ............................................................ 30

14.   CLASS NOTICE .................................................................................................... 30

15.   PUBLICATION ...................................................................................................... 32

16.   MOTION FOR FINAL APPROVAL AND ENTRY OF FINAL JUDGMENT ............. 32

17.   BEST EFFORTS TO EFFECTUATE THIS SETTLEMENT ........................................ 34

18.   EFFECTIVE DATE .................................................................................................. 34

19.   OCCURRENCE OF EFFECTIVE DATE ..................................................................... 35

20.   FAILURE OF EFFECTIVE DATE TO OCCUR ........................................................... 35

21.   TERMINATION ...................................................................................................... 35

22.   EFFECT OF TERMINATION ................................................................................... 38

23.   SUPPLEMENTAL AGREEMENT ............................................................................. 39

24.   IMPACT OF ANY OTHER SETTLEMENT ............................................................... 39

25.   CONFIDENTIALITY PROTECTION ......................................................................... 40

26.   BINDING EFFECT .................................................................................................. 41

27.   INTEGRATED AGREEMENT ................................................................................... 41

28.   NO CONFLICT INTENDED ..................................................................................... 42

29.   NO PARTY IS THE DRAFTER ................................................................................ 42

30. CHOICE OF LAW ................................................................................................ 42

31. EXECUTION IN COUNTERPARTS .................................................................... 42

32. SUBMISSION TO AND RETENTION OF JURISDICTION........................................ 42

33. CONTRIBUTION AND INDEMNIFICATION .................................................. 43

34. RESERVATION OF RIGHTS ............................................................................. 43

35. NOTICES............................................................................................................. 44

36. AUTHORITY ...................................................................................................... 44

37. DISPUTES OR CONTROVERSIES.................................................................... 44

38. STAY .................................................................................................................... 46

THIS STIPULATION AND AGREEMENT OF SETTLEMENT (the **"Settlement Agreement"**) is made and entered into on March 17, 2022. This Settlement Agreement is entered into on behalf of Moon Capital Partners Master Fund Ltd., Moon Capital Master Fund Ltd., Fund Liquidation Holdings, LLC, and any subsequently named plaintiff(s) (collectively, the "Representative Plaintiffs"), and the Settlement Class, by and through Plaintiffs' Counsel, and on behalf of Defendant ING Bank N.V. ("ING"), by and through its undersigned counsel of record in the Action.

WHEREAS, Representative Plaintiffs have filed a civil class action, *Fund Liquidation Holdings LLC, et al. v. Citibank, N.A., et al.*, No. 16-cv-05263 (AKH) (S.D.N.Y.), and have alleged, among other things, that Defendants, including ING, from January 1, 2007, through at least December 31, 2011, acted unlawfully by, *inter alia*, manipulating, aiding and abetting the manipulation of, and conspiring, colluding or engaging in racketeering activities to manipulate the Singapore Interbank Offered Rate ("SIBOR"), the Singapore Swap Offer Rate ("SOR"), and the prices of SIBOR- and/or SOR-Based Derivatives, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and the common law;

WHEREAS, Representative Plaintiffs further contend that they and the Settlement Class suffered monetary damages as a result of ING's and other Defendants' conduct;

WHEREAS, ING denies the allegations of the Representative Plaintiffs and maintains that it has good and meritorious defenses to the claims of liability and damages made by Representative Plaintiffs;

WHEREAS, neither party hereby makes any admission as to the merits of the Action or the strength of the opposing parties' positions;

WHEREAS, arm's-length settlement negotiations have taken place between Representative Plaintiffs, Plaintiffs' Counsel, ING, and ING's counsel, and this Settlement Agreement has been reached, subject to the final approval of the Court;

WHEREAS, ING agrees to cooperate with Representative Plaintiffs and Plaintiffs' Counsel as set forth below in this Settlement Agreement;

WHEREAS, Plaintiffs' Counsel conducted an investigation of the facts and the law regarding the Action, considered the Settlement set forth herein to be fair, reasonable, adequate and in the best interests of Representative Plaintiffs and the Settlement Class, and determined that it is in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of complex litigation and to assure a benefit to the Settlement Class;

WHEREAS, ING, while continuing to deny that it is liable for the claims asserted against it in the Action and maintaining that it has good and meritorious defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and distraction of burdensome and protracted litigation, thereby putting this controversy to rest and avoiding the risks inherent in complex litigation and to obtain complete dismissal of the Action as to ING and a release of claims as set forth herein;

WHEREAS, Representative Plaintiffs, for themselves individually and on behalf of each Settling Class Member, and ING agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by ING or of the truth of any of the claims or allegations in the Action;

NOW, THEREFORE, Representative Plaintiffs, on behalf of themselves and the Settlement Class by and through Plaintiffs' Counsel, and ING, by and through the undersigned counsel, agree that the Action and Released Claims be settled, compromised, and dismissed on the merits and with prejudice as to ING and without costs as to Representative Plaintiffs, the Settlement Class, or ING, subject to the approval of the Court, on the following terms and conditions:

## 1.  Terms Used In This Agreement

The words and terms used in this Stipulation and Settlement Agreement that are expressly defined below shall have the meaning ascribed to them.

(A)  **"Action"** means *Fund Liquidation Holdings LLC, et al. v. Citibank, N.A., et al.*, No. 16-cv-05263 (AKH) (S.D.N.Y.) and any actions that may be consolidated thereunder in the future.

(B)  **"Agreement"** or **"Settlement Agreement"** means this Stipulation and Agreement of Settlement, together with any exhibits attached hereto, which are incorporated herein by reference.

(C)  **"Any"** means one or more.

(D)  **"Authorized Claimant"** means any Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution from the Net Settlement Fund pursuant to any Distribution Plan or order of the Court.

(E)  **"Business Days"** means any days from Monday through Friday, inclusive, that are not holidays in the United States.

(F)  **"Class"** or **"Settlement Class"** means all Persons (including both natural persons and entities) who purchased, sold, held, traded, or otherwise had any interest in

SIBOR- and/or SOR-Based Derivatives during the Class Period, provided that, if Representative Plaintiffs expand the Class in any subsequent amended complaint, class motion, or settlement, the defined Class in this Agreement shall be expanded so as to be coterminous with such expansion.   Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

(G)     **"Class Member"** means a Person who is a member of the Class.

(H)     **"Class Period"** means the period of January 1, 2007 through December 31, 2011.

(I)     **"Class Notice"** means the form of notice of the proposed Settlement to be distributed to the Settlement Class as provided in this Agreement.

(J)     **"Cooperation Materials"** means those materials described in Section 4 of this Settlement Agreement.

(K)     **"Court"** means the United States District Court for the Southern District of New York.

(L)     **"Defendants"** means the defendants currently named in the Action and any parties that may be added to the Action as defendants through amended or supplemental pleadings.

(M)     **"Distribution Plan"** means the plan of allocation of the Net Settlement Fund developed by Representative Plaintiffs and Plaintiffs' Counsel and submitted to the Court for approval, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

(N)     **"Effective Date"** means the date when this Settlement Agreement becomes final as set forth in Section 18 of this Settlement Agreement.

(O)    **"Escrow Agent"** means any Person designated by Plaintiffs' Counsel with the consent of ING (which consent shall not be unreasonably withheld) and approved by the Court to act as escrow agent for the Settlement Fund, who Plaintiffs' Counsel anticipates will be Citibank, N.A.

(P)    **"Execution Date"** means the date on which this Agreement is executed by the last Party to do so.

(Q)    **"Fairness Hearing"** means a hearing scheduled by the Court following the issuance of the Preliminary Approval Order to consider the fairness, adequacy and reasonableness of the proposed Settlement and Settlement Agreement.

(R)    **"Final"** means, with respect to any court order, including, without limitation, the Final Approval Order and Final Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. An order becomes "Final" when: (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. Any appeal or other proceeding pertaining solely to any order adopting or approving the Distribution Plan, and/or any order issued in respect of an application for attorneys' fees and expenses pursuant to Sections 5 and 6 below, shall not in any way delay or prevent the Final Judgment from becoming Final.

(S)    **"Final Approval Order"** means an order from the Court, the form of which shall be mutually agreed upon by the Parties and submitted to the Court, approving of the

Settlement following (i) preliminary approval of the Settlement Agreement, (ii) the issuance of the Class Notice pursuant to the Preliminary Approval Order, and (iii) the Fairness Hearing.

(T)  **"Final Judgment"** means the order of judgment and dismissal of the Action with prejudice as to ING, the form of which shall be mutually agreed upon by the Parties and submitted to the Court for approval thereof.

(U)  **"Incentive Award"** means any award by the Court to Representative Plaintiffs as described in Section 5.

(V)  **"ING"** means ING Bank N.V.

(W)  **"Investment Vehicles"** means any investment company, separately managed account or pooled investment fund, including, but not limited to: (i) mutual fund families, exchange-traded funds, fund of funds and hedge funds; and (ii) employee benefit plans.

(X)  **"Net Settlement Fund"** means the Settlement Fund less Court-approved disbursements, including: (i) notice, claims administration and escrow costs; (ii) any attorneys' fees and/or expenses awarded by the Court; (iii) any Incentive Award(s) awarded by the Court; and (iv) all other expenses, costs, taxes and other charges approved by the Court.

(Y)  **"Other Settlement"** means any settlement Representative Plaintiffs reach with any other Defendant involving the Action that will be submitted to the Court for notice and approval purposes at the same time as this Settlement.

(Z)  **"Parties"** means ING and Representative Plaintiffs collectively, and "**Party**" applies to each individually.

(AA)   **"Person"** means a natural person, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint-stock company, estate, legal representative, trust, unincorporated association, proprietorship, municipality, state, state agency, entity that is a creature of any state, any government, governmental or quasi-governmental body or political subdivision, authority, office, bureau, agency or instrumentality of the government, any business or legal entity, or any other entity or organization; and any spouses, heirs, predecessors, successors, representatives or assigns of any of the foregoing.

(BB)   **"Plaintiffs' Counsel"** means Lowey Dannenberg, P.C.

(CC)   **"Preliminary Approval Order"** means an order by the Court, the form of which shall be mutually agreed upon by the Parties and submitted to the Court, issued in response to the Motion for Preliminary Approval in Section 13 providing for, *inter alia*, preliminary approval of the Settlement, including certification of the Settlement Class for purposes of the Settlement only, and for a stay of all proceedings in the Action against ING until the Court renders a final decision on approval of the Settlement.

(DD)   **"Proof of Claim and Release"** means the form to be sent to Class Members, upon further order(s) of the Court, by which any Class Member may make a claim against the Net Settlement Fund.

(EE)   **"Released Claims"** means those claims described in Section 12 of this Settlement Agreement.

(FF)   **"Released Parties"** means ING, ING Groep N.V., and ING Capital Markets LLC and their predecessors, successors and assigns, their past, present, and future direct and indirect parents, subsidiaries, and affiliates, and each of their respective current and

7

former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of ING, ING Groep N.V., or ING Capital Markets LLC), shareholders (in their capacity as shareholders of ING, ING Groep N.V., or ING Capital Markets LLC), attorneys, insurers, or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Released Party.  For the avoidance of doubt, "Released Parties" shall not include any named Defendants other than those listed in this paragraph.

(GG)   **"Releasing Parties"** means each and every Representative Plaintiff, FrontPoint Asian Event Driven Fund, L.P., and Sonterra Capital Master Fund, Ltd., and each and every Settling Class Member (as defined in Section 1(MM) herein) on their own behalf and on behalf of their respective predecessors, successors and assigns, direct and indirect parents, subsidiaries and affiliates, and on behalf of their current and former officers, directors, employees, agents, principals, members, trustees, participants, representatives, fiduciaries, beneficiaries or legal representatives in their capacity as such, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing in their capacity as such, whether or not they object to the Settlement or make a claim for payment under the Net Settlement Fund.  Notwithstanding that the U.S. Government is excluded from the Settlement Class, with respect to any Settling Class Member that is a government entity, Releasing Parties include any Settling Class Member as to which the government entity has the legal right to release such claims.  As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasing Party.  For the avoidance of doubt, the "Releasing

Parties" include all Persons entitled to bring or release claims on behalf of Settling Class Members, relating to their transactions in SIBOR- and/or SOR-Based Derivatives or any similar financial instruments priced, benchmarked, or settled to SIBOR and/or SOR held by Representative Plaintiffs, FrontPoint Asian Event Driven Fund, L.P., and Sonterra Capital Master Fund, Ltd., or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.).

(HH)   **"Representative Plaintiffs"** means Moon Capital Partners Master Fund Ltd., Moon Capital Master Fund Ltd., Fund Liquidation Holdings LLC, and any other Person named as a plaintiff in the Action who was not subsequently withdrawn as a named plaintiff, and any named plaintiff who may be added to the Action through amended or supplemental pleadings.  This Settlement Agreement is entered into with each and every Representative Plaintiff.  In the event that one or more Representative Plaintiff(s) fails to secure Court approval to act as a Representative Plaintiff, the validity of this Settlement Agreement as to the remaining Representative Plaintiffs, the Settlement Class, and Plaintiffs' Counsel shall be unaffected.

(II)   **"Settlement"** means the settlement of the Released Claims set forth herein.

(JJ)   **"Settlement Administrator"** means any Person that the Court approves to perform the tasks necessary to provide notice of the Settlement to the Class and to otherwise administer the Settlement Fund, as described further herein.

(KK)   **"Settlement Amount"** means ten million four hundred ninety thousand U.S. dollars ($10,490,000.00).

(LL)   **"Settlement Fund"** means the Settlement Amount plus any interest that may accrue.

(MM)   **"Settling Class Members"** means Representative Plaintiffs and other members of the Settlement Class who do not timely and validly exclude themselves from the Settlement pursuant to FED. R. CIV. P. 23(c) and in accordance with the procedure to be established by the Court.

(NN)   **"SIBOR"** means the Singapore Interbank Offered Rate.

(OO)   **"SIBOR- and/or SOR-Based Derivatives"** means (i) a SIBOR- and/or SOR-based interest rate swap entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (ii) an option on a SIBOR- and/or a SOR-based interest rate swap ("swaption") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (iii) a Singapore Dollar currency forward agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (iv) a SIBOR- and/or SOR-based forward rate agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S; and/or (v) a SIBOR- and/or SOR-based foreign exchange swap entered into by a U.S. Person, or by a Person from or through a location within the U.S.

(PP)   **"SOR"** means the Singapore Swap Offered Rate.

(QQ)   **"U.S. Person"** means a citizen, resident, or domiciliary of the United States or its territories; a corporation, including a limited liability company, either incorporated or headquartered in the United States or its territories; a partnership created or resident in the United States or its territories; any other Person or entity created and/or formed under

the laws of the United States, including any state or territory thereof; or any other Person or entity residing or domiciled in the United States or its territories.

## 2.      Settlement Class

(A)      Representative Plaintiffs will file an application seeking the certification of the Settlement Class as described herein pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. Notwithstanding the sentence in Section 1(F) above that "[e]xcluded from the Settlement Class are the Defendants (as defined in Section 1(L) herein) and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, the Parties agree that Investment Vehicles are not excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates or subsidiaries of Defendants. However, to the extent that any Defendant or any entity that might be deemed to be an affiliate or subsidiary thereof (i) managed or advised, and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.  Under no circumstances may any Defendant (or any of their direct or indirect parents, subsidiaries, affiliates, or divisions) receive a distribution for its own account from the Settlement Fund through an Investment Vehicle.

(B)      The Parties' agreement as to certification of the Class is solely for purposes of effectuating the Settlement and for no other purpose. ING retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if the Settlement set forth in this Settlement Agreement does not receive the Court's Final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement

Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective.  The Parties acknowledge that there has been no stipulation to any classes or certification of any classes for any purpose other than effectuating the Settlement, and that if the Settlement set forth in this Settlement Agreement does not receive the Court's Final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective, this agreement as to certification of the Settlement Class becomes null and void *ab initio*.  This Settlement Agreement or any other settlement-related statement may not be cited regarding certification of the Class, or in support of an argument for certifying any class for any purpose related to this Action or any other proceeding.

(C)     Unless the Settlement is terminated, ING shall take no position with respect to any motion for class certification that Representative Plaintiffs anticipate filing and/or file in connection with their claims against other Defendants in the Action.  Nothing in this Settlement Agreement shall preclude ING from opposing motions for class certification or from taking positions in actions other than the Action.

### 3.        Settlement Payment

ING shall pay by wire transfer to the Escrow Agent two million U.S. dollars ($2,000,000.00) of the Settlement Amount within ten (10) Business Days after the Court grants the Preliminary Approval Order, and the balance of the Settlement Amount within ten (10) Business Days after entry of the Final Approval Order and Final Judgment.  This ten (10) Business Day time period shall not begin to run unless and until Plaintiffs' Counsel have provided appropriate wire instructions and a Form W-9 to ING's counsel.  All interest earned by

any portion of the Settlement Amount paid into the Settlement Fund shall be added to and become part of the Settlement Fund.  Upon occurrence of the Effective Date, no funds may be returned to ING through a reversion or other means.  The Escrow Agent shall only act in accordance with instructions by Plaintiffs' Counsel with notice to ING's counsel, except as otherwise provided in this Agreement.  Other than the payment of the Settlement Amount as set forth in this Section 3, ING shall have no responsibility for any interest, costs, or other monetary payment, including any attorneys' fees and expenses, taxes, or costs of notice or claims administration, except that ING shall be responsible for notice as required by 28 U.S.C. § 1715, as set forth in Section 14(C).

### 4.        ING's Cooperation

(A)    ING has agreed to provide Representative Plaintiffs with Cooperation Materials as enumerated below.  Any dispute concerning whether ING has performed its obligations to provide Representative Plaintiffs with such Cooperation Materials that the Parties cannot themselves resolve by meeting and conferring shall be decided in accordance with the alternative dispute resolution process set forth in Section 37 below.

(B)    ING shall provide reasonable cooperation in the Action, including discovery cooperation, requested by Plaintiffs' Counsel, to benefit the Settlement Class, as provided herein. All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.  Plaintiffs' Counsel shall tailor its requests for the production of documents with a view toward minimizing unnecessary burdens and costs to ING in connection with collecting, reviewing and producing materials that have not already been collected in the course of the Action, related settlements, reports and/or investigations by governmental authorities.

(C)     Notwithstanding any other provision in this Agreement, ING shall have no obligation to produce any document or provide any information that is privileged under the attorney-client privilege, work-product doctrine, joint-defense privilege, common-interest doctrine, bank examination privilege, and/or other applicable privilege or immunity from disclosure.   None of the cooperation provisions set forth herein are intended to, nor do they waive any such privileges or immunities.   ING agrees that its counsel will meet with Plaintiffs' Counsel as is reasonably necessary to discuss any applicable privilege.   Any disputes regarding privilege that cannot be resolved amongst the Parties shall be reserved for resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 below.   At a reasonable time to be negotiated in good faith, ING agrees to provide Representative Plaintiffs, through Plaintiffs' Counsel, with (a) privilege logs for any relevant documents reasonably requested by Representative Plaintiffs as cooperation discovery in accordance with this Settlement Agreement that ING withholds on the basis of any privilege, doctrine, immunity or regulatory objection, if and to the extent such privilege logs are reasonably necessary to establish the basis for ING's withholding of the documents; and (b) any existing privilege logs for documents that ING withheld from governmental authorities, as applicable, as part of any investigation into ING's alleged manipulation of SIBOR and/or SOR, to the extent such privilege logs relate to documents reasonably requested by Representative Plaintiffs as Cooperation Materials herein if and to the extent such privilege logs are reasonably necessary.   ING's production of existing privilege logs, if any, will be made in such a way so as not to identify the governmental authority or authorities to which ING provided the logged documents.   The Parties agree that their counsel shall meet and confer with each other regarding any dispute as to the privileges and protections described in this Section.   To the extent the Parties cannot resolve any such disputes, they shall

14

be reserved for resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 below.  If any document protected by the attorney-client privilege, work-product doctrine, the common interest doctrine, the joint defense privilege, the bank examination privilege, and/or any other applicable privilege or protection is accidentally or inadvertently produced, Representative Plaintiffs shall, upon notice from ING, promptly cease reviewing the document and shall return the document and all copies of it to ING's counsel within five (5) Business Days.  Representative Plaintiffs and Plaintiffs' Counsel shall also delete or destroy the portions of any other documents or work product which refer to or summarize the document. The document shall not be used or referred to in any way by Representative Plaintiffs or Plaintiffs' Counsel, and its production shall in no way be construed to have waived any privilege, protection or restriction attached to such document or information.

(D)     Notwithstanding any other provision in this Agreement, ING shall have no obligation to produce any document or provide any information that is restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, state secrets, or other law. In the event that Plaintiffs' Counsel reasonably request documents or information otherwise within the scope of the Cooperation Materials to be provided under this Section that ING reasonably believes in good faith to be restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, state secret, or other law and the restriction can be avoided without undue burden to ING through a reasonable workaround, such as by removing or anonymizing identifying information, ING shall cooperate in good faith with Representative Plaintiffs to implement such a workaround.

(E)     Notwithstanding any other provision of this Agreement, in the event that ING believes that Plaintiffs' Counsel has requested cooperation of a kind or to an extent that is not

15

reasonable or not within the scope of ING's obligations as set forth herein, ING's counsel and Plaintiffs' Counsel agree to meet and confer with each other regarding such disagreement and to seek resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 below.

(F)     Plaintiffs' Counsel agree to use any and all of the information and documents obtained from ING only for the purpose of the Action and agree to be bound by the terms of the Stipulation and protective order entered in the Action.  If no protective order is in effect as of the execution date of the Stipulation, the Parties agree that ING will have no obligation to produce any documents until either (a) the Court enters a mutually acceptable protective order; or (b) ING and Representative Plaintiffs enter into a separate confidentiality agreement.  For the avoidance of doubt, Plaintiffs' Counsel expressly agrees that the documents, materials and/or information provided by ING, including without limitation oral presentations, may be used directly or indirectly by Plaintiffs' Counsel solely in connection with the prosecution of the Action against the non-settling Defendants, but not used directly or indirectly by any Person for the institution or prosecution of any other action or proceeding against any Released Party or for any other purpose whatsoever, including, but not limited to, actions or proceedings in jurisdictions outside the United States.

(G)     **Document Production.**  Subject to the restrictions set forth above, ING will provide cooperation to Representative Plaintiffs by producing to Plaintiffs' Counsel the following categories of documents, to the extent that any such documents exists, in an equivalent format to that in which they were produced to governmental authorities, including any metadata included in such production or, with respect to any documents not previously produced to governmental authorities, in a format to be agreed, to the extent that such documents are reasonably available and accessible to ING and have not already been produced to

16

Representative Plaintiffs in the Action.  Unless otherwise indicated, the time period of the documents subject to production shall be January 1, 2007 – December 31, 2011.

(i)     All documents and data produced by ING to any governmental authorities in connection with any investigation by such entities of conduct related to SIBOR and/or SOR, together with information sufficient to show the search parameters that were utilized in connection with such productions (*e.g.*, custodians, time frames, and search terms), as well as information sufficient to identify ING personnel who worked on the relevant trading and treasury desks.  ING also agrees to consider, in good faith, requests from Plaintiffs' Counsel to identify additional ING personnel whom Plaintiffs' Counsel believe may have relevant information concerning the Action.

(ii)    To the extent previously collected by ING in connection with any SIBOR and/or SOR-related investigation by any governmental authorities, reasonably available risk/position reports, measuring the level of exposure or sensitivity to interest rates for Singapore Dollar (measured per basis point, also known as "DV01", or "BP01", which is the aggregated profit and loss risk for a 1 basis point move in the relevant interest rate), delineated by tenor, trading book, location and/or trader, for various intervals (*i.e.*, daily, weekly, monthly, etc.), and reset risk reports using the same risk measure (DV01), pertaining to ING's transactions conducted in SIBOR- and/or SOR-Based Derivatives for the years 2007 through 2011.

(iii)   To the extent previously collected by ING in connection with any SIBOR and/or SOR-related investigation by any governmental authorities, documents that meet

17

the search parameters, if any, to be negotiated and agreed upon by ING and Plaintiffs' Counsel.

(iv)　　To the extent not included within the documents and data produced pursuant to the above paragraphs, and to the extent any such documents exist, ING shall produce to Plaintiffs' Counsel:

(a)　Reasonably available trade data pertaining to ING's transactions in Singapore Dollar-denominated inter-bank money market instruments for the years 2006 through 2011, that meet the parameters to be agreed upon by ING and Plaintiffs' Counsel.

(b)　Reasonably available trade data pertaining to ING's transactions conducted in SIBOR- and/or SOR-Based Derivatives for the years 2007 through 2011, that meet the parameters to be agreed upon by ING and Plaintiffs' Counsel.

(c)　Reasonably available documents sufficient to show SIBOR and SOR reporting rules or standards; and

(d)　Reasonably available documents sufficient to show SIBOR and SOR submissions made by ING.

(v)　　Documents reflecting substantially the same information as that reflected in ING's submissions to the Federal Reserve Bank of New York, Bank of International Settlements, and OTC Derivatives Supervisors Group relating to their surveys on turnover in foreign exchange and interest rate derivatives markets for SIBOR- and/or SOR-Based Derivatives, to the extent such information exists and is reasonably available and accessible, and to the extent such disclosure is

18

permitted by relevant authorities and under applicable banking or other laws and regulations, for the years 2000, 2004, 2007, 2010, and 2013.

(vi)    Non-privileged declarations, affidavits, or other sworn or unsworn written statements of former and/or current ING directors, officers or employees concerning the allegations set forth in the Action with respect to SIBOR, SOR, and SIBOR- and/or SOR-Based Derivatives to the extent such documents exist, are reasonably available and accessible to ING, and may be disclosed under applicable confidentiality or regulatory restrictions.

(H)    Subject to Section 4(E) above, and subject to Section 37 of this Settlement Agreement, Representative Plaintiffs may request as Cooperation Materials such further documents and information as Plaintiffs' Counsel may reasonably request that are relevant to the claims or defenses in the Action and are reasonably available and accessible to ING and not unduly burdensome to produce, including but not limited to risk reports, and communications (i) among ING employees, and communications between ING employees and employees of other financial institutions, including SIBOR and/or SOR panel banks and other entities, concerning (1) possible requests to or among other panel banks for SIBOR and SOR submissions to be made at a certain level or in a certain direction; and (2) requests to engage in other conduct to attempt to cause SIBOR and SOR to be set at a certain level or to move in a certain direction.  ING will consider such requests in good faith but ING need not agree to any such requests.  In the event that ING believes Plaintiffs' Counsel has unreasonably requested cooperation, or Plaintiffs' Counsel believes ING has unreasonably withheld cooperation, ING and Plaintiffs' Counsel agree to meet and confer regarding such disagreement and seek resolution if necessary pursuant to the alternative dispute resolution procedures set forth in Section 37 below.  If such alternative

dispute resolution is sought, the disputed aspect of cooperation shall be held in abeyance until such resolution by the procedures set forth in Section 37, and such abeyance shall not constitute a breach of the Settlement Agreement.

(I)     **Other Information.**   ING will cooperate to provide reasonably available information necessary for Representative Plaintiffs to authenticate or otherwise make usable at trial the aforementioned documents or other documents as Representative Plaintiffs may request. ING also will provide Representative Plaintiffs with an attorney proffer concerning ING's knowledge of the SIBOR- and SOR-related conduct alleged in Representative Plaintiffs' complaints.  ING will also provide Representative Plaintiffs with a description of the data fields included in any trade data produced by ING to the extent reasonably requested by Representative Plaintiffs to the extent reasonably necessary.

(J)     **Witnesses.**   ING shall designate witness(es) to serve as ING's corporate representative pursuant to the framework of Rule 30(b)(6) of the Federal Rules of Civil Procedure in connection with any depositions, hearing or trial of the Defendants without issuance of a subpoena. ING will work in good faith with Representative Plaintiffs to designate such witness(es) to the extent reasonably necessary and only to the extent that the information sought by Representative Plaintiffs cannot be otherwise obtained, such as through written statements. With respect to any production of documents arising from ING's obligations under this settlement, ING will cooperate in providing declarations to authenticate documents Plaintiffs may seek to introduce as evidence at proceedings in this Action to the extent necessary.

(K)     **Timing of Production.** ING agrees to begin a rolling production of documents and data pursuant to this Section 4 within ten (10) Business Days of the Court entering the Preliminary Approval Order.  Notwithstanding the prior sentence and except as otherwise

provided in Section 21, ING agrees to begin rolling production of reasonably available documents and data pursuant to Section 4(G)(iv) within sixty (60) days after the parties reach agreement as to the parameters of such production, which shall not be prior to the date which is fifteen (15) Business Days after the Preliminary Approval Order is entered.

(L)     **Continuation, Scope, and Termination of ING's Obligation.**     ING's obligations to cooperate are continuing until and shall terminate upon the earlier of: (i) the date when final judgment has been rendered with no remaining rights of appeal, in the Action against all defendants; or (ii) four (4) years after the Court enters the Preliminary Approval Order.

### 5.     Payment of Attorneys' Fees and Reimbursement of Expenses, and Application for Incentive Award

(A)     Subject to Court approval, Representative Plaintiffs and Plaintiffs' Counsel shall be reimbursed and paid solely out of the Settlement Fund for all fees and expenses including, but not limited to, attorneys' fees, and past, current or future litigation expenses, and any Incentive Award approved by the Court.  ING shall have no responsibility for any costs, fees, or expenses incurred for or by Representative Plaintiffs' or Class Members' respective attorneys, experts, advisors, agents, or representatives.  Nothing in this provision shall expedite the date(s) for ING's payment as set forth in Section 3.

(B)     Plaintiffs' Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees, plus interest.  Plaintiffs' Counsel also may apply to the Court for reimbursement from the Settlement Fund of Plaintiffs' Counsel's litigation expenses, plus interest.  ING shall take no position with respect to Plaintiffs' Counsel's motion for attorneys' fees and expenses. Representative Plaintiffs may make an application to the Court for an award in connection with their representation of the Settlement Class in this litigation, which amount constitutes the Incentive Award.

(C)     The Released Parties shall have no responsibility for, and no liability with respect to, the attorneys' fees, litigation expenses, or Incentive Awards that the Court may award in the Action.

(D)     The procedures for, and the allowance or disallowance by the Court of, any application for approval of fees, expenses and costs or an Incentive Award (collectively, "Fee and Expense Application") are not part of the Settlement set forth in this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement.  Any order or proceeding relating to a Fee and Expense Application, or the reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Judgment and the Settlement of the Action as set forth herein.  No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Application or the Distribution Plan shall constitute grounds for termination of this Agreement.

(E)     Prior to the Fairness Hearing, Plaintiffs' Counsel and Representative Plaintiffs shall file any motions seeking awards from the Settlement Fund for payment of attorneys' fees and reimbursement of costs and expenses, and for the payment of an Incentive Award as follows:

     (i)     Plaintiffs' Counsel shall seek attorneys' fees of no more than one-third of the Settlement Fund;

     (ii)     Plaintiffs' Counsel shall seek reimbursement for their costs and expenses incurred as of the date the Motion for Final Approval and Entry of Final Judgment is filed pursuant to Section 16; and

     (iii)     Representative Plaintiffs may make an application to the Court for an award in connection with their representation of the

Settlement Class in this litigation, which amount constitutes the Incentive Award.

(F)     Upon the Court's approval of an award of attorneys' fees, costs and expenses, such approved amount from Subsections (E)(i) and (E)(ii), above, shall be paid from the Escrow Account within ten (10) Business Days after their approval by the Court.  If an event occurs that will cause the Settlement Agreement not to become Final pursuant to Section 18 or if Representative Plaintiffs or ING terminates the Settlement Agreement pursuant to Sections 21 through 23, then within ten (10) Business Days after receiving written notice of such an event from counsel for ING or from a court of appropriate jurisdiction, Plaintiffs' Counsel shall refund to the Settlement Fund any attorneys' fees, costs and expenses (not including any non-refundable expenses as described in Section 9(B)) that were withdrawn plus interest thereon at the same rate at which interest is accruing for the Settlement Fund.

## 6.        Application for Approval of Fees, Expenses, and Costs of Settlement Fund Administration

Plaintiffs' Counsel may apply to the Court, at the time of any application for distribution to Authorized Claimants, for an award from the Settlement Fund of attorneys' fees for services performed and reimbursement of expenses incurred in connection with the administration of the Settlement after the date of the Fairness Hearing.  Plaintiffs' Counsel reserves the right to make additional applications to the Court for payment from the Settlement Fund for attorneys' fees for services performed and reimbursement of expenses incurred.  Any such applications are subject to Court approval.

## 7.        No Liability for Fees and Expenses of Plaintiffs' Counsel

The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Plaintiffs' Counsel for attorneys' fees, costs and expenses and/or to

any other Person who may assert some claim thereto, or any fee and expense award the Court may make in the Action.

## 8.        Distribution of and/or Disbursements from Settlement Fund

The Settlement Administrator, subject to such supervision and direction by the Court and/or Plaintiffs' Counsel as may be necessary, shall administer the Proof of Claim and Release forms submitted by the Settling Class Members and shall oversee the distribution of the Settlement Fund pursuant to the Distribution Plan.  Upon the Effective Date (or earlier if provided in Section 9 herein), the Settlement Fund shall be applied in the order and as follows:

(i)        to pay costs and expenses associated with the distribution of the Class Notice and administration of the Settlement as provided in this Section and Section 6, including all costs and expenses reasonably and actually incurred in assisting Class Members with the filing and processing of claims against the Net Settlement Fund at any time after ING makes payments described in Section 3;

(ii)       to pay Escrow Agent costs;

(iii)      to pay taxes assessed on the Settlement Fund, and tax preparation fees in connection with such taxes;

(iv)      to pay any attorneys' fees, costs and expenses approved by the Court upon submission of a Fee and Expense Application, as provided in Section 5;

(v)       to pay the amount of any Incentive Award for Representative Plaintiffs, as provided in Section 5; and

24

(vi)    to pay the Net Settlement Fund to Authorized Claimants as allowed by the Agreement, any Distribution Plan, or order of the Court.

## 9.    Disbursements Prior to Effective Date

(A)    Except as provided in Subsection (B) herein or by Court order, no distribution to any Class Member or disbursement of fees, costs and expenses of any kind may be made from the Settlement Fund until the Effective Date.   As of the Effective Date, all fees, costs and expenses and Incentive Awards as approved by the Court may be paid out of the Settlement Fund.

(B)    Upon written notice to the Escrow Agent by Plaintiffs' Counsel with a copy to ING, the following may be disbursed prior to the Effective Date: (i) reasonable costs of Class Notice and administration may be paid from the Settlement Fund as they become due (up to a maximum of $500,000); (ii) reasonable costs of the Escrow Agent may be paid from the Settlement Fund as they become due; (iii) taxes and tax expenses may be paid from the Settlement Fund as they become due; and (iv) Plaintiffs' Counsel's attorneys' fees and costs and expenses as approved by the Court (in accordance with Section 5(F)). In the event the Settlement is terminated or does not become final for any reason, ING shall be entitled to return of all such funds, plus all interest accrued thereon, except for up to $500,000 for reasonable costs of Class Notice and administration that have been actually incurred and/or disbursed prior to the date the Settlement was terminated or otherwise does not become final for any reason, on the terms specified in Section 22.

(C)    Plaintiffs' Counsel will attempt in good faith to minimize the costs of the Escrow Agent, Class Notice and administration.

10.        **Distribution of Balances Remaining in Net Settlement Fund to Authorized Claimants**

This is not a claims-made settlement.  The Net Settlement Fund shall be distributed to Authorized Claimants and, except as provided in Section 9(B), there shall be no reversion to ING.  The distribution to Authorized Claimants shall be in accordance with the Distribution Plan that has been or hereafter is to be approved by the Court upon such notice to the Class as may be required.  Plaintiffs' Counsel will develop the Distribution Plan that will be submitted to the Court.  ING shall take no position with respect to the Distribution Plan or any revisions to the Distribution Plan.  The Distribution Plan is not a part of this Agreement.  No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the later of (i) the Effective Date; or (ii) the date by which the Distribution Plan has received final approval and the time for any further appeals with respect to the Distribution Plan has expired.   Should there be any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Plaintiffs' Counsel shall submit an additional plan of allocation to the Court for its approval.

11.        **Administration/Maintenance of Settlement Fund**

The Settlement Fund shall be maintained by Plaintiffs' Counsel under supervision of the Court and shall be distributed solely at such times, in such manner, and to such Persons as shall be directed by subsequent orders of the Court (except as provided for in this Agreement) consistent with the terms of this Settlement Agreement.  The Parties intend that the Settlement Fund be treated as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  Plaintiffs' Counsel shall ensure that the Settlement Fund at all times complies with Treasury Regulation § 1.468B-1 in order to maintain its treatment as a qualified settlement fund. To this end, Plaintiffs' Counsel shall ensure that the Settlement Fund is approved by the Court as

26

a qualified settlement fund and that any Escrow Agent, Settlement Administrator or other administrator of the Settlement Fund complies with all requirements of Treasury Regulation § 1.468B-2. Any failure to ensure that the Settlement Fund complies with Treasury Regulation § 1.468B-2, and the consequences thereof, shall be the sole responsibility of Plaintiffs' Counsel, and ING and its counsel shall have no responsibility or liability for any act, omission, or determination of the Escrow Agent or the payment or withholding of any Taxes, expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund and bank accounts that are either: (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC"); or (b) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

Any Class Member who does not submit a valid proof of claim and release form will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Settlement Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims.

## 12.   Release and Covenant Not To Sue

(A)   The Releasing Parties finally and forever release and discharge from and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties concerning any SIBOR- and/or SOR-Based Derivatives or any similar financial instruments priced, benchmarked, or settled to SIBOR or SOR purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, Class Members, and/or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), or in which any of the foregoing otherwise had any interest, including, but not limited to, any alleged manipulation of SIBOR and/or SOR under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to SIBOR and/or SOR (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 et seq., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968,

and any other federal or state statute, regulation, or common law).  The following claims shall not be released by this Settlement: (i) any claims against former ING employees arising solely from those former employees' conduct that occurred while not employed by ING; (ii) any claims against the named Defendants in this Action other than the Released Parties; or (iii) any claims against any Defendant not affiliated with ING who may be subsequently added in this Action. For the avoidance of doubt, Released Claims does not include claims arising under foreign law based solely on transactions executed entirely outside the United States by Settling Class Members domiciled outside the United States.

Although the foregoing release is not a general release, such release constitutes a waiver of any and all rights arising under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code. Releasing Parties shall be deemed to acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Agreement, the Parties assume the risk

of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

Upon the Effective Date, each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Party.

### 13.        Motion for Preliminary Approval

As soon as practicable after the Execution Date, at a time to be mutually agreed by ING and Plaintiffs' Counsel, Plaintiffs' Counsel shall submit this Settlement Agreement to the Court and shall file a motion for entry of the Preliminary Approval Order.

### 14.        Class Notice

(A)      Plaintiffs' Counsel shall be responsible for selecting a Settlement Administrator to be approved by the Court, and ING shall not object to Plaintiffs' Counsel's selection.  Subject to approval by the Court, in accordance with FED. R. CIV. P. 23(e), Plaintiffs' Counsel shall provide reasonable notice of the Settlement (the "Class Notice") to the Class Members whose identities can be determined after reasonable efforts, with notice of the date of the Fairness Hearing.  The Class Notice may be sent solely for this Settlement or combined with notice of Other Settlements.  The Class Notice shall explain the general terms of the Settlement Agreement, the general terms of the proposed Distribution Plan, the general terms of the Fee and Expense Application, and a description of Class Members' rights to object to the Settlement, request exclusion from the Class and appear at the Fairness Hearing.  The text of the Class Notice shall be agreed upon by the Parties before its submission to the Court for approval thereof.  The cost of providing the Notice to Class Members in the manner set forth above shall be paid out of the

30

Settlement Fund, meaning the Settlement Amount plus any interest that may accrue, and the Settlement Administrator, as directed by Plaintiffs' Counsel, shall administer dissemination of the Notice.

(B)     ING agrees to provide Plaintiffs' Counsel with reasonably available contact information for counterparties to SIBOR- and/or SOR-Based Derivatives ING transacted with during the Class Period, to the extent not prevented from doing so by any court order or any law, regulation, policy, or other rule of any regulatory agency or governmental body restricting disclosure of such information.  If necessary as a result of data protection, privacy, or bank secrecy law requirements or any other law, rule, or regulation, Representative Plaintiffs agree that ING may, at its sole discretion, opt to provide, or have a third-party agent provide, the Class Notice to any counterparties to SIBOR- and/or SOR-Based Derivatives ING transacted with during the Class Period who cannot be included in the general class-wide notice process. Alternatively, ING may, at its sole discretion, directly provide counterparty information only to the Settlement Administrator for purposes of distributing the Class Notice, to the extent that ING reasonably concludes in good faith that such steps are required or advisable based on such counterparty information being subject to any applicable domestic or foreign data protection, privacy, or bank secrecy law requirements, or any other law, rule, or regulation.  If ING exercises its discretion to provide Class Notice pursuant to this Section, ING shall complete such notice no later than the date set by the Court.

(C)     In the event that the Court preliminarily approves the Settlement, ING shall bear the costs and responsibility for timely serving notice of the Settlement as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  ING shall also cause a copy of such CAFA notice and proof of service of such notice to be provided to Plaintiffs' Counsel.

(D) In the event that the Settlement is not approved, Representative Plaintiffs will not be required to return to ING any sums actually paid from the Settlement Fund for the reasonable costs of Class Notice, up to a maximum of $500,000.

### 15.      Publication

Plaintiffs' Counsel shall cause to be published a summary in accord with the Class Notice submitted to the Court by the Parties and approved by the Court.   ING shall have no responsibility for providing publication or distribution of the Settlement or any notice of the Settlement to Class Members or for paying for the cost of providing notice of the Settlement to Class Members except as provided for in Section 9(B).  The Parties shall mutually agree on any content relating to ING that will be used by Plaintiffs' Counsel and/or the Settlement Administrator in any Settlement-related press release or other media publication, including on websites.

### 16.      Motion for Final Approval and Entry of Final Judgment

(A)      After Class Notice is issued, and prior to the Fairness Hearing, Plaintiffs' Counsel shall move for entry of a Final Approval Order and Final Judgment:

(i)      finally certifying solely for settlement purposes the Settlement Class;

(ii)      finding that the Class Notice constituted the best notice practicable under the circumstances and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

(iii)     finally approving this Settlement Agreement and its terms as being a fair, reasonable and adequate settlement of the Settlement Class' claims under Rule 23 of the Federal Rules of Civil Procedure;

(iv)     directing that, as to the Released Parties, the Action be dismissed with prejudice and without costs as against the Settling Class Members;

(v)     discharging and releasing the Released Claims as to the Released Parties;

(vi)     barring claims by any Person against the Released Parties for contribution, indemnification, or similar claims (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise;

(vii)     determining pursuant to FED. R. CIV. P. 54(b) that there is no just reason for delay and directing that the judgment of dismissal shall be final and appealable;

(viii)     reserving the Court's continuing and exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Agreement; and

(ix)     containing such other and further provisions consistent with the terms of this Agreement to which ING and Representative Plaintiffs expressly consent in writing.

(B)     Prior to the Fairness Hearing, as provided in Section 5, Plaintiffs' Counsel will timely request by separate motion that the Court approve its Fee and Expense Application.  The

Fee and Expense Application and the Distribution Plan are matters separate and apart from the Settlement between the Parties.  If the Fee and Expense Application or the Distribution Plan are not approved, in whole or in part, it will have no effect on the finality of the Final Approval Order approving the Settlement and the Final Judgment dismissing the Action with prejudice as to the Released Parties.

### 17.        Best Efforts to Effectuate This Settlement

The Parties agree to cooperate with one another to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Agreement.

### 18.        Effective Date

Unless terminated earlier as provided in this Settlement Agreement, this Settlement Agreement shall become effective and final as of the date upon which all of the following conditions have been satisfied:

(A)     The Settlement Agreement has been fully executed by ING and Representative Plaintiffs through their counsel;

(B)     The Court has certified a Settlement Class, and entered the Preliminary Approval Order, substantially in the form to be agreed to by the Parties, approving this Settlement Agreement, and approving the program and form for the Class Notice;

(C)     Class Notice has been issued as ordered by the Court;

(D)     The Court has entered the Final Approval Order finally approving the Settlement Agreement in all respects as required by Rule 23(e) of the Federal Rules of Civil Procedure; however, this required approval does not include the approval of the Fee and Expense Application and the Distribution Plan;

(E)     The Court has entered its Final Judgment of dismissal with prejudice as to the Released Parties with respect to Representative Plaintiffs and Settling Class Members; and

(F)     Upon the occurrence of the later of the following: (i) the resolution of any and all appeals regarding the Settlement (subject to Section 21 below) or (ii) the time to appeal or seek permission to appeal from the approval of the Settlement has expired.

### 19.        Occurrence of Effective Date

Upon the occurrence of all of the events in Section 18, any and all remaining interest or right of ING in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Net Settlement Fund shall be transferred from the Escrow Agent to the Settlement Administrator at the written direction of Plaintiffs' Counsel.

### 20.        Failure of Effective Date to Occur

If any of the conditions specified in Section 18 are not satisfied, then this Agreement shall be terminated, subject to and in accordance with Section 21, unless the Parties mutually agree in writing to continue with it for a specified period of time.

### 21.        Termination

(A)     ING shall have the right, but not the obligation, in its sole discretion, to terminate this Settlement Agreement by providing written notice to Plaintiffs' Counsel within twenty-five (25) Business Days of any of the following events:

(i)        the Court enters an order declining to enter the Preliminary Approval Order or the Final Approval Order in any material respect;

(ii)        the Court enters an order refusing to approve the Settlement Agreement or any material part of it;

(iii)      the Court enters an order declining to enter the Final Judgment and order of dismissal in any material respect;

(iv)      the Court enters an alternative judgment;

(v)      the Final Judgment and order of dismissal is modified or reversed by a court of appeal or any higher court in any material respect; or

(vi)      an alternative judgment is modified or reversed by a court of appeal or any higher court in any material respect.

(B)    Plaintiffs' Counsel, acting on behalf of the Representative Plaintiffs, shall also have the right, but not the obligation, in their sole discretion, to terminate this Settlement Agreement by providing written notice to ING's counsel within twenty-five (25) Business Days of any of the following events, provided that the occurrence of the event substantially deprives Plaintiffs of the benefit of the Settlement:

(i)      the Court enters an order declining to grant Representative Plaintiffs' Motion for Preliminary Approval pursuant to Section 13 or the Motion for Final Approval pursuant to Section 16 in any material respect;

(ii)      the Court enters an order refusing to approve the Settlement Agreement or any material part of it;

(iii)      the Court enters an order declining to enter the Final Judgment and order of dismissal in any material respect;

(iv)      the Court enters an alternative judgment;

(v)      the Final Judgment and order of dismissal is modified or reversed by a court of appeal or any higher court in any material respect;

36

(vi)        an alternative judgment is modified or reversed by a court of appeal or any higher court in any material respect; or

(vii)       ING, for any reason, fails to comply with Section 3 and fails to cure such non-compliance as contemplated by Section 21(D) below.

(C)      Notwithstanding the Parties' respective termination rights under paragraphs (A) and (B) of this Section, if the Court declines to approve Plaintiffs' Motion for Preliminary Approval under Section 13 because the Settlement Agreement does not contain a plan for providing Class Notice to the Settlement Class or because the Court identifies a reason or basis that can be remedied by providing additional information to the Court, the Parties agree to meet and confer within ten (10) Business Days after such an order is issued to use their best efforts to effectuate the terms of the Settlement and to facilitate the renewed filing of Plaintiffs' Motion for Preliminary Approval, including, if necessary, through the rolling production of reasonably available documents and data pursuant to subsections 4(G)(ii), 4(G)(iv)(a), 4(G)(iv)(b), and 4(G)(iv)(d) of this Settlement Agreement that are necessary to provide notice of the Settlement to Class Members or to provide additional information to the Court, based upon an agreed scope and timing. ING will consider Plaintiffs' requests for production of reasonably available documents and data pursuant to subsections 4(G)(ii), 4(G)(iv)(a), 4(G)(iv)(b), and 4(G)(iv)(d) of this Settlement Agreement in good faith.  In the above case, a Court order declining to enter the Preliminary Approval Order prior to Plaintiffs' receipt of any cooperation materials will not trigger either Party's termination rights.

(D)      In the event that ING, for any reason, fails to comply with Section 3, then on ten (10) Business Days' written notice to ING's counsel, during which ten-day period ING shall have the opportunity to cure the default without penalty, Representative Plaintiffs, by and

through Plaintiffs' Counsel, may terminate this Settlement Agreement or elect to enforce it as provided by the Federal Rules of Civil Procedure.

### 22.      Effect of Termination

Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement as described herein is not finally approved by the Court or the Final Judgment is reversed or vacated following any appeal, then:

(A)     Within ten (10) Business Days after written notification of such event is sent by counsel for ING or Plaintiffs' Counsel to all Parties and the Escrow Agent, the Settlement Amount, and all interest earned in the Settlement Fund, will be refunded, reimbursed, and repaid by the Escrow Agent to ING, except as provided in Section 9(B).

(B)     The Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds to ING, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

(C)     The Parties shall be returned, to the maximum extent possible, to their respective positions in the Action as of immediately prior to the execution of the Settlement Term Sheet dated August 13, 2021, with all of their respective legal claims and defenses preserved as they existed at that time; and

(D)     Upon termination of this Settlement Agreement, then:

(i)      this Agreement shall be null and void and of no further effect, and none of ING, the Representative Plaintiffs, or members of the Settlement Class shall be bound by any of its terms;

38

(ii)     any and all releases shall be of no further force and effect;

(iii)     the Parties shall be restored to their respective positions in the Action as of August 13, 2021, with all of their respective legal claims and defenses preserved as they existed on that date; and

(iv)     any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

### 23.     Supplemental Agreement

In addition to the provisions contained in Section 21(A) herein, ING shall have the right, but not the obligation, in its sole discretion, to terminate this Agreement pursuant to the Supplemental Agreement as to Defendant ING Bank N.V. ("Supplemental Agreement") to be executed by the parties contemporaneously with the execution of this Agreement.    The Supplemental Agreement shall not be submitted to the Court except in the event of a dispute thereunder, in which case the Parties shall seek to file it only under seal.

### 24.     Impact of Any Other Settlement

(A)     If any Other Settlement (as defined in Section 1(Y)) is reached prior to the Fairness Hearing, the "Settlement Class" definition in Section 1(F), as well as the terms contained within the "Release and Covenant Not to Sue," and "Termination" provisions herein (as described in Sections 12 and 21 respectively) shall be no less favorable to ING than the corresponding term or provision applicable to any Other Settlement.

(B)     If ING believes one or more terms or provisions referenced in subsection (A) is less favorable than a corresponding term or provision in any Other Settlement, ING will provide written notice of such belief to Plaintiffs' Counsel as prescribed in this Settlement Agreement

within ten (10) Business Days of the filing of such Other Settlement with the Court.  Following receipt of the written notice, ING and Plaintiffs' Counsel will confer as to whether the relevant term or provision in this Settlement Agreement is less favorable as compared to the Other Settlement.  If there is agreement between ING and Plaintiffs' Counsel that the provision at issue is less favorable, ING and Plaintiffs' Counsel will execute an amendment to the Settlement Agreement, adopting and incorporating the provision as drafted in the Other Settlement into the Settlement Agreement, and will submit the amendment to the Court for its approval.  If ING and Plaintiffs' Counsel are unable to reach an agreement on the relevant provision, ING or Plaintiffs' Counsel may move the Court to resolve the dispute.

## 25.        Confidentiality Protection

Representative Plaintiffs, Plaintiffs' Counsel, and ING agree to keep private and confidential the terms of this Settlement Agreement, except for disclosure at the Court's direction or disclosure *in camera* to the Court, until this document is filed with the Court, provided, however, that nothing in this Section shall prevent ING from making any disclosures it deems necessary to comply with any relevant laws, subpoena or other form of judicial process. Nothing in this provision shall preclude ING from disclosing, without notice to Plaintiffs' Counsel, the fact, amount, or terms of the Settlement as a result of a good faith determination that such disclosure is required or advisable pursuant to bank regulatory requirements, SEC requirements (or the requirements of comparable authorities in other jurisdictions), listing or exchange requirements, or other legal or regulatory requirements, or from disclosing the fact, amount, or terms of the Settlement to its regulators, insurers, or external auditors.

### 26.        Binding Effect

(A)      The Parties intend this Settlement Agreement to be binding upon, and inure to the benefit of, the successors and assigns of ING, the Released Parties, the Representative Plaintiffs, and Settling Class Members.   The Parties enter into this Settlement Agreement with full knowledge that adverse or favorable court decisions and/or other events, including those pertaining to any of the Representative Plaintiffs' capacity to serve as litigants or class representatives, may take place in the future that might affect the positions of either or both parties, including prior to Final Approval of the Settlement.   The Parties intend to be bound by this Settlement Agreement notwithstanding the possibility or occurrence of any such future events or changes in position.

(B)      The waiver by any Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

### 27.        Integrated Agreement

This Settlement Agreement, including any exhibits hereto and agreements referenced herein, contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and is not subject to any condition not provided for or referenced herein.   This Settlement Agreement supersedes all prior or contemporaneous discussions, agreements, and understandings among the Parties to this Settlement Agreement with respect hereto, including the Term Sheet executed on August 13, 2021.   This Settlement Agreement may not be modified in any respect except by a writing that is executed by all the Parties hereto.

### 28.        No Conflict Intended

The headings used in this Settlement Agreement are for the convenience of the reader only and shall not have any substantive effect on the meaning and/or interpretation of this Settlement Agreement.

### 29.        No Party is the Drafter

None of the Parties shall be considered to be the drafter of this Settlement Agreement or any provision herein for the purpose of any statute, case law, or rule of interpretation or construction that might cause any provision to be construed against the drafter.

### 30.        Choice of Law

All terms within the Settlement Agreement and its exhibits hereto shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law principles, including N.Y. General Obligations Law § 15-108.

### 31.        Execution in Counterparts

This Settlement Agreement may be executed in one or more counterparts.  Facsimile and scanned/PDF signatures shall be considered valid signatures.  All executed counterparts shall be deemed to be one and the same instrument.  There shall be no agreement until the fully signed counterparts have been exchanged and delivered on behalf of all Parties.

### 32.        Submission to and Retention of Jurisdiction

The Parties, Released Parties, and the Settlement Class irrevocably submit, to the fullest extent permitted by law, to the exclusive jurisdiction of the United States District Court for the Southern District of New York for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement, or the exhibits hereto.  For the purpose of such suit, action, or proceeding, to the fullest extent permitted by law, the Parties, Released Parties and the

Settlement Class irrevocably waive and agree not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the jurisdiction of such Court, or that such Court is, in any way, an improper venue or an inconvenient forum or that the Court lacked power to approve this Settlement Agreement or enter any of the orders contemplated hereby.

### 33.      Contribution and Indemnification

This Settlement Agreement is expressly intended to absolve the Released Parties of any claims for contribution, indemnification, or similar claims from other Defendants in the Action, arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the law of New York or any other jurisdiction that might be construed or deemed to apply for claims of contribution, indemnification, or similar claims against any Released Party. Notwithstanding the foregoing, should any court determine that any Defendant is or was legally entitled to any kind of contribution or indemnification from ING arising out of or related to the Released Claims, the Releasing Parties agree that any money judgment subsequently obtained by the Releasing Parties against any such Defendant shall be reduced to an amount such that, upon paying the entire amount, the Defendant would have no claim for contribution, indemnification, or similar claims against ING.

### 34.      Reservation of Rights

This Settlement Agreement does not settle or compromise any claims by Representative Plaintiffs or any Class Member asserted against any Defendant or any potential defendant other than ING and the Released Parties.  The rights of any Class Member against any other Person other than the Released Parties are specifically reserved by Representative Plaintiffs and the Class Members, subject to Section 33.

### 35. Notices

All notices and other communications under this Settlement Agreement shall be sent to the Parties to this Settlement Agreement at their address set forth on the signature page herein, *viz*, if to Representative Plaintiffs, then to: Vincent Briganti & Geoffrey M. Horn, Lowey Dannenberg, P.C., 44 South Broadway, Suite 1100, White Plains, New York 10601 and if to ING, then to Amanda F. Davidoff, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, or such other address as each party may designate for itself, in writing, in accordance with this Settlement Agreement.

### 36. Authority

In executing this Settlement Agreement, Plaintiffs' Counsel represent and warrant that they have been fully authorized to execute this Settlement Agreement on behalf of the Representative Plaintiffs and the Settlement Class (subject to final approval by the Court after notice to all Class Members), and that all actions necessary for the execution of this Settlement Agreement have been taken.   ING represents and warrants that the undersigned is fully empowered to execute the Settlement Agreement on behalf of ING, and that all actions necessary for the execution of this Settlement Agreement have been taken.

### 37. Disputes or Controversies

(A)   Any dispute or controversy arising out of or relating to the cooperation or termination provisions of this Settlement Agreement shall be resolved first by discussion among counsel for the Parties and, failing that, by confidential mediation, or, if mediation fails to resolve the dispute, by arbitration, in each case administered by a sole neutral agreed upon by all Parties at JAMS, Inc., formerly known as Judicial Arbitration and Mediation Services ("JAMS"), in accordance with its procedures and Comprehensive Arbitration Rules & Procedures then in

effect ("Rules") and in accordance with the Expedited Procedures in those Rules (or such other alternative dispute resolution organization as all parties shall agree), except as modified herein. If the Parties are unable to agree on the sole neutral within thirty (30) calendar days from the date on which the alternative dispute resolution process is commenced, JAMS shall appoint the sole neutral.

(B)     The arbitration shall be conducted on a strictly confidential basis, and the Parties shall not disclose the existence or nature of any claim; any documents, correspondence, briefing, exhibits, or information exchanged or presented in connection with any claim; or any rulings, decisions, or results in the context of arbitration (collectively, "Arbitration Materials") to any third party, with the sole exception of the Parties' respective legal counsel (who shall also be bound by these confidentiality terms) or to the extent that such disclosure is required or advisable pursuant to bank regulatory requirements, SEC requirements, or other legal or regulatory requirements.

(C)     The arbitral decision shall be final and binding upon the parties hereto.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction. Except as the Rules may provide, the Parties shall share JAMS's administrative fees and the mediator's or arbitrator's fees and expenses.  Each Party shall be responsible for such Party's attorneys' fees and costs except as otherwise provided by any applicable statute or other law. Either Party may commence litigation in any state or federal court of competent jurisdiction located in New York County, New York to obtain injunctive relief in aid of arbitration, to compel arbitration, or to confirm or vacate an arbitrator's award.  The Parties agree to take all steps necessary to protect the confidentiality of the Arbitration Materials in connection with any such proceeding, agree to use their best efforts to file all confidential information (and

documents containing confidential information) under seal, and agree to the entry of an appropriate protective order encompassing the confidentiality terms of any settlement agreement. The seat of arbitration shall be New York, New York.

### 38.      Stay

The Parties stipulate and agree that all proceedings and deadlines in the Action (including with respect to discovery, except with respect to ING's cooperation obligations as provided in Section 4 above) between Representative Plaintiffs and ING shall be stayed pending the Court's entry of the Preliminary Approval Order.  The stay will automatically be dissolved if (a) the Court does not enter the Preliminary Approval Order, the Final Approval Order, or the Final Judgment, or (b) the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Final Judgment is finally vacated, modified, or reversed, unless the Parties, in their sole discretion within thirty (30) calendar days from the date of the mailing of such ruling to such Parties, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Preliminary Approval Order, the Final Approval Order, or the Final Judgment, as modified by the Court or on appeal.

[*remainder of page intentionally left blank*]

Dated:  March 17, 2022                By: _____

Vincent Briganti
Geoffrey M. Horn
LOWEY DANNENBERG, P.C.
44 South Broadway
White Plains, New York 10601
Telephone: (914) 997-0500
vbriganti@lowey.com

*Counsel for Representative Plaintiffs and the Proposed Class*

Dated:  March 17, 2022                By: _____

Karen P. Seymour
Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
seymourk@sullcrom.com
davidoffa@sullcrom.com

*Counsel for Defendant ING Bank N.V.*

Dated:  March 17, 2022          By: _____
                                    Vincent Briganti
                                    Geoffrey M. Horn
                                    LOWEY DANNENBERG, P.C.
                                    44 South Broadway
                                    White Plains, New York 10601
                                    Telephone: (914) 997-0500
                                    vbriganti@lowey.com

                                    *Counsel for Representative Plaintiffs and the Proposed
                                    Class*

Dated:  March 17, 2022          By: _____
                                    Karen P. Seymour
                                    Amanda F. Davidoff
                                    SULLIVAN & CROMWELL LLP
                                    125 Broad Street
                                    New York, New York 10004
                                    Telephone: (212) 558-4000
                                    seymourk@sullcrom.com
                                    davidoffa@sullcrom.com

                                    *Counsel for Defendant ING Bank N.V.*