**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

FUND LIQUIDATION HOLDINGS LLC, as assignee
and successor-in-interest to FrontPoint Asian Event
Driven Fund L.P., MOON CAPITAL PARTNERS
MASTER FUND LTD., and MOON CAPITAL
MASTER FUND LTD., on behalf of themselves and
all others similarly situated,

                Plaintiffs,

     v.

CITIBANK, N.A., BANK OF AMERICA, N.A., JPMORGAN
CHASE BANK, N.A., THE ROYAL BANK OF SCOTLAND
PLC, UBS AG, BNP PARIBAS, S.A., OVERSEA-CHINESE
BANKING CORPORATION LTD., BARCLAYS BANK
PLC, DEUTSCHE BANK AG, CREDIT AGRICOLE
CORPORATE AND INVESTMENT BANK, CREDIT
SUISSE AG, STANDARD CHARTERED BANK, DBS
BANK LTD., ING BANK, N.V., UNITED OVERSEAS
BANK LIMITED, AUSTRALIA AND NEW ZEALAND
BANKING GROUP, LTD., THE BANK OF TOKYO-
MITSUBISHI UFJ, LTD., THE HONGKONG AND
SHANGHAI BANKING CORPORATION LIMITED,
COMMERZBANK AG, AND JOHN DOES NOS. 1-50,

                Defendants.

Docket No. 16-cv-05263 (AKH)

---

**REPRESENTATIVE PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH AUSTRALIA AND NEW ZEALAND BANKING GROUP, LTD., BANK OF
AMERICA, N.A., BARCLAYS BANK PLC, BNP PARIBAS, S.A., COMMERZBANK
AG, CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK, DBS BANK
LTD., MUFG BANK, LTD. (F/K/A THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.),
OVERSEA-CHINESE BANKING CORPORATION LIMITED, THE ROYAL BANK OF
SCOTLAND PLC (N/K/A NATWEST MARKETS PLC), STANDARD CHARTERED
BANK, UBS AG, AND UNITED OVERSEAS BANK LIMITED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

OVERVIEW OF THE SETTLEMENT ............................................................................. 3

ARGUMENT ...................................................................................................................... 5

I.      THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2) ............ 5

  A.   The Preliminary Approval Standard ................................................................... 5

  B.   The Settlement Is Procedurally Fair ................................................................... 6

     1.   The Class Has Been Adequately Represented ............................................. 7

     2.   The Settlement is the Product of Arm's Length Negotiations ...................... 7

  C.   The Settlement Is Substantively Fair ................................................................. 7

     1.   The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement .................................. 9

     2.   The Grinnell Factors Not Expressly Addressed Above Also Support Approval of the Settlement ..................................................................................................... 9

     3.   The Distribution Plan Provides an Effective Method for Distributing Relief, Satisfying Rule 23(e)(2)(c)(ii) ................................................................................. 10

     4.   The Requested Attorneys' Fees and Other Awards are Limited to Ensure that the Settlement Class Receives Adequate Relief ............................................................ 10

     5.   There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class .................................................................................................. 11

     6.   The Settlement Treats the Settlement Class Equitably and Do Not Provide Any Preferences ..................................................................................................... 12

II.    THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS ..... 12

III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR ...................................... 13

IV.   THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT. ............. 14

V.    PROPOSED SCHEDULE OF EVENTS ......................................................... 14

CONCLUSION ................................................................................................................. 15

APPENDIX A .................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beckman v. KeyBank, N.A.*,
 293 F.R.D. 467 (S.D.N.Y. 2013)............................................................................................... 5

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974) ...................................................................................................... 9

*Dial Corp. v. News Corp.*,
 317 F.R.D. 426 (S.D.N.Y. 2016)............................................................................................. 11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
 No. 02CV1152, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018).................................................. 12

*Guerrero v. Wells Fargo Bank, N.A.*,
 No. C 12-04026 WHA, 2014 WL 1365462 (N.D. Cal. Apr. 7, 2014) ........................................ 8

*In re "Agent Orange" Prod. Liab. Litig.*,
 818 F.2d 216 (2d Cir. 1987) .................................................................................................... 10

*In re Austrian and German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................................................... 6

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
 No. 12-md-2330, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................................ 12

*In re Currency Conversion Fee Antitrust Litig.*,
 264 F.R.D. 100 (S.D.N.Y. 2010)............................................................................................... 7

*In re Currency Conversion Fee Antitrust Litig.*,
 No. 01MDL1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006).................................................. 6

*In re Flonase Antitrust Litig.*,
 951 F. Supp. 2d 739 (E.D. Pa. 2013)........................................................................................ 10

*In re GSE Bonds Antitrust Litig.*,
 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................................................ 7

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
 176 F.R.D. 99 (S.D.N.Y. 1997)................................................................................................. 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 330 F.R.D. 11 (E.D.N.Y. 2019)......................................................................................... 6, 7, 9

*In re Platinum & Palladium Commodities Litig.*,
 No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) .................................................. 6

*In re Stock Exchanges Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ...................................... 6

*In re Sumitomo Copper Litig.*,
   182 F.R.D. 85 (S.D.N.Y. 1998) ...................................................................................... 2

*In re Titanium Dioxide Antitrust Litig.*,
   No. 10-CV-00318 (RDB), 2013 WL 6577029 (D. Md. Dec. 13, 2013) ...................... 11

*Meredith v. SESAC, LLC,*
   87 F. Supp. 3d  650 (S.D.N.Y. 2015) ......................................................................... 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ..................................................................................................... 13

*Resnick v. Frank*,
   Nos. 12-15705, 12-15889, 12-15957, 12-15996, 12-16010, 12-16038, 2012 WL 4845923 (9th
   Cir. Oct. 9, 2012) ......................................................................................................... 12

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983) .......................................................................................... 13

*Spann v. J.C. Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016)................................................................................. 12

*Velez v. Novartis Pharms. Corp.*,
   No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................. 5, 7, 13

*Weigner v. City of New York*,
   852 F.2d 646 (2d Cir. 1988) ........................................................................................ 13

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004) ...................................... 12

**Rules**

FED. R. CIV. P. 23(e)(1) ..................................................................................................... 6

FED. R. CIV. P. 23(e)(2) .................................................................................................. 6, 8

### INTRODUCTION

Representative Plaintiffs[1] move under Rule 23 of the Federal Rules of Civil Procedure for preliminary approval of the proposed $91,000,000 settlement ("Settlement") with remaining Defendants Australia and New Zealand Banking Group, Ltd. ("ANZ"), Bank of America, N.A. ("BOA"), Barclays Bank PLC ("Barclays"), BNP Paribas, S.A. ("BNPP"), Commerzbank AG ("Commerzbank"), Crédit Agricole Corporate and Investment Bank ("CACIB"), DBS Bank Ltd. ("DBS"), MUFG Bank, Ltd. (f/k/a The Bank of Tokyo-Mitsubishi UFJ, Ltd.) ("MUFG"), Oversea-Chinese Banking Corporation Limited ("OCBC"), The Royal Bank of Scotland plc (n/k/a NatWest Markets plc) ("RBS"), Standard Chartered Bank ("SCB"), UBS AG ("UBS"), and United Overseas Bank Limited ("UOB") (collectively, the "Settling Defendants").  If this Settlement[2] is approved with the six prior settlements that were recently proposed for preliminary approval in the motion filed on May 13, 2022 (the "May 13 Motion"),[3] a total of **$155,458,000** will have been recovered for the Settlement Class (the "Settlement Funds") and this Action will be fully resolved.

As discussed below and for the same reasons detailed in Plaintiffs' brief in support of their May 13 Motion (ECF No. 472) (the "May 13 Brief"), as well as those set forth in Plaintiffs' Supplemental Brief in Further Support of All Settlements (the "Supplemental Brief"), the

---

[1] Representative Plaintiffs are Fund Liquidation Holdings, LLC, individually and as assignee and successor-in-interest to FrontPoint Asian Event Driven Fund, L.P. and Sonterra Capital Master Fund, Ltd., Moon Capital Partners Master Fund Ltd., and Moon Capital Master Fund Ltd. Unless otherwise noted, ECF citations are to the docket in *Fund Liquidation Holdings LLC, et al. v. Citibank, N.A., et al.*, No. 16-cv-05263 (AKH) (S.D.N.Y.) and internal citations and quotation marks are omitted.

[2] Attached as Exhibit 1 to the Declaration of Vincent Briganti dated May 27, 2022 ("Briganti Decl.") is the Stipulation and Agreement of Settlement with ANZ, BOA, Barclays, BNPP, Commerzbank, CACIB, DBS, MUFG, OCBC, RBS, SCB, UBS, and UOB dated May 27, 2022 (the "Settlement Agreement").  Unless otherwise defined, capitalized terms in this memorandum of law have the same meaning as in the Settlement Agreement.

[3] *See* ECF Nos. 471-479.  The May 13 Motion sought preliminary approval of the class settlements with: (a) Citibank, N.A. and Citigroup Inc. ("Citi"), (b) JPMorgan Chase & Co. ("JPMorgan"), (c) The Hongkong and Shanghai Banking Corporation Limited ("HSBC"), (d) Credit Suisse AG ("Credit Suisse"), (e) Deutsche Bank AG ("Deutsche Bank"), and (f) ING Bank N.V. ("ING") (hereinafter, the "Prior Settlements").

Settlement fully satisfies the requirements for preliminary approval.  First, the Settlement is procedurally fair, as Representative Plaintiffs and Plaintiffs' Counsel are adequate representatives for the Settlement Class, and the Settlement itself resulted from hard-fought arm's length negotiations with Settling Defendants. The terms of the Settlement are substantively fair, providing considerable relief to eligible Class Members in exchange for the complete resolution of the Action.

Further, as described herein and in the May 13 Motion, the Court may certify the Settlement Class under Rule 23(a) and (b)(3).  The trading patterns of individual class members, including any "[f]actual differences in the amount of damages, date, size or manner of purchase, the type of purchaser . . . and other such concerns will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class." *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998).  Irrespective of the net impact of Defendants' alleged manipulation of SIBOR and SOR on their individual trading, the members of the proposed Settlement Class were harmed by trading in a manipulated market, such that their claims are typical of each other, and they share common questions of law and fact that predominate over individual ones. Accordingly, the proposed settlement class satisfies the requirements for certification under Fed. R. Civ. P. 23(a) and (b)(3).

Finally, as previously described, Plaintiffs' Counsel have prepared a robust notice program that will fully apprise Class Members of their rights and options.  The long form and short form notices attached to the Briganti Decl. will advise Class Members of this Settlement and the Prior Settlements, and supersede the versions attached to the May 13 Motion.[4]

---

[4] In connection with this motion, Representative Plaintiffs have also filed amended proposed Preliminary Approval Orders for the Prior Settlements that reference the updated notice documents attached to the Briganti Decl.

The Court should therefore grant Representative Plaintiffs' motion and enter the order filed herewith (the "Preliminary Approval Order") that:

(a) preliminarily approves Representative Plaintiffs' proposed Settlement with the Settling Defendants, subject to later, final approval;

(b) conditionally certifies a Settlement Class on the claims against Settling Defendants, subject to later, final approval of such Settlement Class;

(c) preliminarily approves the proposed Distribution Plan in connection with this Settlement, *see* Declaration of Vincent Briganti dated May 13, 2022 (the "May 13 Briganti Decl.") Ex. 11 (ECF No. 473-11);

(d) appoints Representative Plaintiffs as representatives of the Settlement Class;

(e) appoints Lowey Dannenberg, P.C. ("Lowey") as Class Counsel;

(f) appoints Citibank, N.A. ("Citibank") as the Escrow Agent for the Settlement;

(g) appoints A.B. Data as the Settlement Administrator for the Settlement;

(h) approves the proposed forms of Class Notice to the Settlement Class (Briganti Decl., Exs. 2-4) and the proposed Class Notice plan, *see* May 13 Briganti Decl., Ex. 7 (ECF No. 473-7);

(i) sets a schedule leading to the Court's evaluation of whether to finally approve the Settlement, including the date, time, and place of the Fairness Hearing; and

(j) stays all proceedings in the Action related to each Settling Defendant except those proceedings relating to approval of the Settlement.

The Court should enter the amended proposed Preliminary Approval Orders with respect to the May 13 Motion in support of preliminary approval of the Prior Settlements.

## **OVERVIEW OF THE SETTLEMENT**[5]

The settlement negotiations with the Settling Defendants took place over several months beginning in Fall 2021.  Plaintiffs' Counsel engaged in lengthy negotiations with the Settling Defendants' counsel over the material terms of the settlement, including the amount of the

---

[5] The procedural history of this Action is set forth in the May 13 Briganti Decl. ¶¶ 4-23 .

settlement consideration, the scope of the cooperation to be provided by the Settling Defendants, the scope of the releases, and the circumstances under which the Parties would have the right to terminate the settlement.  After several months of discussions in which the parties exchanged competing views on liability and damages, Plaintiffs and the Settling Defendants executed the Settling Defendants' Agreement on May 27, 2022.

As with the Prior Settlements, the proposed Settlement Class under the Settlement is defined as:

> All Persons (including both natural persons and entities) who purchased, sold, held, traded, or otherwise had any interest in SIBOR- and/or SOR-Based Derivatives during the Class Period.  Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Briganti Decl., Ex. 1 § 1(F).  In total, the Settling Defendants have agreed to pay $91,000,000 to settle the claims of Representative Plaintiffs and the Settlement Class as *See* Briganti Decl., Ex. 1 § 1(JJ).  In addition, the Settling Defendants have agreed to provide Cooperation Materials that will be used to advance the litigation (should any of the Prior Settlements not be approved), identify potential Class Members, confirm Plaintiffs' evaluation of the potential damages. and (if necessary) adjust the Distribution Plan proposed by Representative Plaintiffs to distribute the Net Settlement Funds.  Briganti Decl., Ex. 1 § 4.

In exchange, the Settlement provides that the Releasing Parties will:

> finally and forever release and discharge from and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively

or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties concerning any SIBOR- and/or SOR-Based Derivatives or any similar financial instruments priced, benchmarked, or settled to SIBOR or SOR purchased, sold, held, traded, and/or transacted by the Representative Plaintiffs, Class Members, and/or Settling Class Members (to the extent such similar financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), or in which any of the foregoing otherwise had any interest, including, but not limited to, any alleged manipulation of SIBOR and/or SOR under any statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to SIBOR and/or SOR (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq*., the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or common law).

*See* Briganti Decl., Ex. 1 § 12(A).  In light of the uncompensated work Plaintiffs' Counsel has performed for the benefit of the Settlement Class since 2016, Plaintiffs' Counsel intends to seek an attorneys' fee award of no more than one-third of the Settlement Funds resulting from the seven proposed settlements with 19 Defendants and no more than $750,000 as payment for costs and expenses incurred in litigating this action.  Representative Plaintiffs will also seek Incentive Awards in an amount to be determined, but not exceeding $500,000 in the aggregate.

## ARGUMENT

I.    **THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)**

A.    **The Preliminary Approval Standard**

"The compromise of complex litigation is encouraged by the courts and favored by public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) ("*Wal-Mart Stores*").  The Second Circuit, therefore, acknowledges the "strong judicial policy in favor of settlements," particularly in the class action context.  *Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013).

Rule 23 requires that courts approve settlements of class action litigation.  *See In re Currency Conversion Fee Antitrust Litig*., No. 01MDL1409, 2006 WL 3247396, at *5 (S.D.N.Y.

Nov. 8, 2006). As noted in the May 13 Brief, this Court is empowered to approve this Settlement because it has subject matter jurisdiction over this Action, as the Second Circuit determined in its decision of March 17, 2021. *See* May 13 Brief at 9 n. 6. "Preliminary approval is generally the first step in a two-step process before a class action settlement is [finally] approved." *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). The Court may preliminarily approve and direct notice of the proposed Settlement if it is likely that the Court, after a hearing, will find the Settlement satisfies FED. R. CIV. P. 23(e)(2) and the proposed Class may be certified. FED. R. CIV. P. 23(e)(1); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("*Payment Card*") (analyzing the Rule 23(e)(2) standards to be applied at preliminary approval).

In conducting a preliminary approval inquiry under Rule 23, a court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014); *see also Payment Card*, 330 F.R.D. at 30 n.25. The proposed Settlement in this Action merits preliminary approval, having satisfied these considerations.

### B.      The Settlement Is Procedurally Fair

The Settlement is entitled to a presumption of procedural fairness and adequacy. To assess procedural fairness, Rule 23(e)(2) requires the Court to find that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(A)-(B). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*,

80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

### 1.    The Class Has Been Adequately Represented

Adequate representation under Rule 23(e)(2)(A) (and 23(a)(4))[6] requires that the "interests . . . served by the Settlement [are] compatible with" those of settlement class members. *Wal-Mart Stores*, 396 F.3d at 110. This requirement is met when the class representatives do not have interests that are antagonistic to those of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010); *see also Wal-Mart Stores*, 396 F.3d at 106-07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

For the same reasons detailed in the May 13 Brief, Representative Plaintiffs' interests are aligned with those of the Settlement Class and Plaintiffs' Counsel's adequacy to serve as representatives of the Class was demonstrable. *See* May 13 Brief at 10-13.

### 2.    The Settlement is the Product of Arm's Length Negotiations

Representative Plaintiffs incorporate by reference the arguments set forth in the Supplemental Brief at 8-9.

### C.    The Settlement Is Substantively Fair

If the Settlement receives final approval, $91,000,000 will be recovered from the Settling Defendants on behalf of the Settlement Class.  Representative Plaintiffs successfully negotiated with the Settling Defendants that none of the Settlement Amount will revert, regardless of how

---

[6] Courts analyze the adequacy of representation requirement of Rule 23(e)(2)(A) using the same considerations for representative adequacy under Rule 23(a)(4).  *See Payment Card*, 330 F.R.D. at 30 n.25 ("This adequate representation factor [under Rule 23(e)(2)(A)] is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context.  As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor."); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019).

many Class Members submit proofs of claim.  *See* Settlement Agreement § 3.  Because claim rates typically fall below 100%, the non-reversion term will substantially enhance Authorized Claimants' recovery.[7]

The Settlement (together with the Prior Settlements) provides one of the few (if not the only) means for Class Members to obtain any recovery for the alleged manipulation of SIBOR and/or SOR-Based Derivatives.  Under the Settlement Agreement, the Settling Defendants will provide cooperation that can be used to facilitate the issuance of notice, further validate the Distribution Plan (should Plaintiffs' Counsel consider it necessary) and, in the event the litigation continues against any Defendant, inform Representative Plaintiffs' litigation strategy going forward.  In exchange, the Settling Defendants will receive a release from claims based on the alleged manipulation of SIBOR and/or SOR-Based Derivatives, and the Action will be dismissed with respect to each Settling Defendant on the merits and with prejudice.  These terms are substantively fair and easily fall within "the range of possible approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").

Under Rule 23(e), the substantive fairness of a settlement is assessed by considering whether "the relief provided for the class is adequate," in light of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under FED. R. CIV. P. 23 (e)(2)(C).  The Court is also required to confirm that the Settlement "treats class members equitably relative to each other."  FED. R. CIV. P. 23(e)(2)(D).  In the Second Circuit,

---

[7] *See Guerrero v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2014 WL 1365462, at *2 (N.D. Cal. Apr. 7, 2014) (finding the lack of reversion to defendant of remaining portions of the net settlement an important benefit to the class).

courts also consider the factors provided in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"),[8] which overlap with the consideration of Rule 23(e)(2)(C)-(D).  *See Payment Card*, 330 F.R.D. at 29.  Both the Rule 23(e)(2)(C)-(D) and *Grinnell* factors support preliminary approval of the Settlement.

### 1.    The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement

Representative Plaintiffs incorporate by reference their argument set forth in the May 13 Brief.  *See* May 13 Brief at 17-21.

### 2.    The Grinnell Factors Not Expressly Addressed Above Also Support Approval of the Settlement

The Second Circuit *Grinnell* factors not expressly encompassed in Rule 23(e)(2)(C)(i) also guide the Court in assessing whether the relief provided to the Class is adequate; they include: "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; . . . (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation."  *Grinnell*, 495 F.2d at 463.  Each factor supports approval of the Settlement.

### a.    The Reaction of the Settlement Class to the Settlement

Representative Plaintiffs incorporate by reference their argument set forth in the May 13 Brief.  *See* May 13 Brief at 21-22.

---

[8] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See Grinnell*, 495 F.2d at 463.

####     b.       The Stage of the Proceedings

Representative  Plaintiffs  incorporate  by  reference  the  arguments  set  forth  in  the

Supplemental Brief at 4-9.

####     c.       The Ability of Settling Defendants to Withstand Greater Judgment

Representative Plaintiffs incorporate by reference their argument set forth in the May 13

Brief.  *See* May 13 Brief at 23.

####     d.       Reasonableness of the Settlement in Light of the Best Possible Recovery
####              and Attendant Litigation Risks

Representative  Plaintiffs  incorporate  by  reference  the  arguments  set  forth  in  the

Supplemental Brief at 4-9.

###     3.       The Distribution Plan Provides an Effective Method for Distributing
###              Relief, Satisfying Rule 23(e)(2)(c)(ii)

Representative  Plaintiffs  incorporate  by  reference  the  arguments  set  forth  in  the

Supplemental Brief at 14-19.

###     4.       The Requested Attorneys' Fees and Other Awards are Limited to Ensure
###              that the Settlement Class Receives Adequate Relief

Plaintiffs' Counsel will limit their attorneys' fee request with respect to the Settlement and

the Prior Settlements to no more than one-third of the Settlement Funds (or $51,819,333.33), which

may be paid upon final approval. Briganti Decl., Ex. 1 § 5; Ex. 2, at 29; *see In re "Agent Orange"*

*Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987). This fee request is comparable to the fees

awarded in other cases of similar size and complexity. *See, e.g.*, Order (as Modified) at 4, *In re*

*Lidoderm Antitrust Litig.*, No. 3:14-md-02521-WHO (N.D. Cal. Sept. 20, 2018), ECF No. 1055

(End Payor Plaintiffs) (awarding one-third of $104.75 million common fund in attorneys' fees); *In*

*re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 749 (E.D. Pa. 2013) (awarding attorneys' fees of

33.33% on a $150 million settlement); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318

(RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding 33.33% of a $163.5 million settlement as attorneys' fees); Memorandum at 39, *In re Domestic Drywall Antitrust Litig.*, No. 2:13-MD-2437,  (E.D. Pa. July 17, 2018), ECF No. 767 (Direct Purchaser Plaintiffs) (granting attorneys' fee award of 33.33% of $190.06 million settlement); Order and Final Judgment at 5, *In re Buspirone Antitrust Litig.*, No. 1:01-cv-07951 (JGK),  (S.D.N.Y. Apr. 17, 2003), ECF No. 22; *see also Velez v. Novartis Pharms. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater." (collecting cases)).  In addition to attorneys' fees, Plaintiffs' Counsel will seek payment for litigation costs and expenses not to exceed $750,000 and Incentive Awards for Representative Plaintiffs not to exceed a total of $500,000. *See Meredith v. SESAC, LLC,* 87 F. Supp. 3d  650, 671 (S.D.N.Y. 2015) (reasonable expenses may be reimbursed from the settlement); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (class representatives may be awarded an incentive award for their efforts); *see also* Briganti Decl., Ex. 1 § 5(B); Ex. 2, at 29. Plaintiffs' Counsel will separately file their Fee and Expense Application seeking approval of the requested awards. That application and all supporting papers will be posted on a website (the "Settlement Website") promptly after filing for Class Members to review prior to the objection deadline.

### 5.    There Are No Unidentified Agreements That Impact the Adequacy of the Relief for the Settlement Class

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Here, the Settlement Agreement sets forth all such terms or specifically identify all other agreements that relate to the Settlement (namely, the Supplemental Agreement). *See* Briganti Decl., ¶ 11; Ex. 1, § 23. The Supplemental Agreement provides Settling Defendants a qualified right to terminate the Settlement Agreement under certain

circumstances before final approval. *Id.* This type of agreement is standard in complex class action settlements and does not impact the fairness of the Settlement.[9]

> **6.      The Settlement Treats the Settlement Class Equitably and Do Not Provide Any Preferences**

Representative Plaintiffs incorporate by reference their argument set forth in the May 13 Brief. *See* May 13 Brief at 30.

## II.      THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS

The proposed Settlement Class to be certified for settlement purposes is:

> All Persons (including both natural persons and entities) who purchased, sold, held, traded, or otherwise had any interest in SIBOR and/or SOR-Based Derivatives during the Class Period.[10] Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

This is the same Settlement Class proposed in connection with the Prior Settlements, and Representative Plaintiffs incorporate by reference their argument set forth in the May 13 Brief and in the Supplemental Brief. *See* May 13 Brief at 30-37; Supplemental Brief at 9-14.[11]

---

[9] *See, e.g., Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y. June. 22, 2016), ECF No. 659 ¶¶ 10-11; *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02CV1152, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329-330 (C.D. Cal. 2016); *Resnick v. Frank*, Nos. 12-15705, 12-15889, 12-15957, 12-15996, 12-16010, 12-16038, 2012 WL 4845923, at *41 (9th Cir. Oct. 9, 2012); *In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. 12-md-2330, 2016 WL 4474366, at *5, 7 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement); *accord* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004) (explaining that "[k]nowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out."). These types of qualified rights to terminate, however, are common in class action settlements and are generally included based on the defendant's desire to quiet the litigation through a class-wide settlement, without leaving open any material exposure.

[10] "Class Period" means the period of January 1, 2007 through December 31, 2011.

[11] Settling Defendants each consent to preliminary certification of the Settlement Class solely for the purpose of the Settlement and without prejudice to any position they may take with respect to class certification in any other action or in the event that the Settlement is terminated. *See* Settlement Agreement § 2(B)-(C).

III.   **THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA, LTD. AS SETTLEMENT ADMINISTRATOR**

Due process and Rule 23 require that the Class receive adequate notice of the Settlement. *Wal-Mart Stores*, 396 F.3d at 114. To be adequate, the method(s) used to issue notice must be reasonable. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983); *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988) (due process only requires that counsel "acted reasonably in selecting means likely to inform persons affected").

The proposed Class Notice plan (*see* May 13 Briganti Decl. Ex. 7) and related forms of notice (*see* Briganti Decl. Exs. 2-4) are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The direct-mailing notice component of the notice program will involve sending the updated Long-Form Notice (Briganti Decl. Ex. 2) and the Proof of Claim and Release form (*id*. Ex. 4), reflecting the addition of the Settling Defendants' Settlement, via First-Class Mail, postage prepaid to potential Class Members. *See* ECF No. 473-7 (Declaration of Linda V. Young). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g., Mullane*, 339 U.S. at 319. The Settlement Administrator also will publish the updated Short-Form Notice in various periodicals, in industry publications, and through a digital campaign on websites. *See* Briganti Decl. Ex. 3. Any Class Members that do not receive the Class Notice via direct mail likely will receive the Class Notice through the foregoing publications or word of mouth. The Settlement Website, www.siborsettlement.com, will serve as an information source regarding the Settlement. Class Members can review and obtain: (i) a blank Proof of Claim and Release form for the Settlement; (ii) the Long-Form and Short-Form Notices; (iii) the proposed Distribution Plan; (iv) the Settlement Agreement; and (v) key pleadings and Court orders. The Settlement Administrator

13

will also operate a toll-free telephone number to answer Class Members' questions and facilitate claims filing.

As with the Previous Settlements, Plaintiffs' Counsel recommend that A.B. Data, Ltd. ("A.B. Data") be appointed as Settlement Administrator. A.B. Data developed the Class Notice plan in coordination with Plaintiffs' Counsel and has experience in administering class action settlements involving financial instrument in over-the-counter and exchange markets, including in complex cases involving benchmarks and complex financial products.[12]

## IV.    THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT.

The Settlement Agreement requires Plaintiffs' Counsel, with Settling Defendants' consent, to designate an Escrow Agent to maintain the Settlement Funds.   Plaintiffs' Counsel have designated Citibank, N.A. to serve as Escrow Agent for the Group Settlement. Citibank has served as escrow agent in a number of settlements, including *Boutchard v. Gandhi et al.*, No. 18-cv-7041 (N.D. Ill.); *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD) (S.D.N.Y), and *Sonterra Capital Master Fund, Ltd. v. UBS AG*, No. 15-cv-5844 (GBD) (S.D.N.Y.), and has agreed to provide its services at market rates.

## V.    PROPOSED SCHEDULE OF EVENTS

In Appendix A, Representative Plaintiffs propose a schedule for issuance of Class Notice, objection and opt-out opportunities for Settlement Class Members, and Representative Plaintiffs' motions for final approval, attorneys' fees, expense reimbursements, and Incentive Awards. If the Court agrees, Representative Plaintiffs request that the Court schedule the Fairness Hearing on or

---

[12] *See, e.g.*, *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262 (NRB) (S.D.N.Y.); *Sullivan v. Barclays plc,* No. 13-cv-2811 (PKC) (S.D.N.Y.); *Laydon v. Mizuho Bank Ltd., et al.*, No. 12-cv-3419 (GBD) (S.D.N.Y.) and *Sonterra Capital Master Fund, Ltd., et al. v. UBS AG, et al.,* No. 15-cv-5844 (GBD) (S.D.N.Y.); *In re London Silver Fixing, Ltd., Antitrust Litig.,* 14-md-2573, 14-mc-2573  (VEC) (S.D.N.Y.); *In re GSE Bonds Antitrust Litig.,* 19-cv-1704 (S.D.N.Y.) (JSR); *In re JPMorgan Precious Metals Spoofing Litig.,* No. 18-cv-10356 (GHW) (S.D.N.Y.)

about November 21, 2022, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval as requested, the only date that would require scheduling by the Court is the date for the Fairness Hearing. The remaining dates will be determined as specified in the Preliminary Approval Order.

## <u>CONCLUSION</u>

For the foregoing reasons, Representative Plaintiffs respectfully request that the Court grant Representative Plaintiffs' Motion for Preliminary Approval of Settlement Agreement with Settling Defendants and enter the accompanying Preliminary Approval Order.  Representative Plaintiffs further respectfully request that the Court enter the amended Preliminary Approval Orders as to the Prior Settlements.

Dated: May 27, 2022
White Plains, New York

**LOWEY DANNENBERG, P.C.**

By: */s/ Vincent Briganti*
Vincent Briganti
Geoffrey M. Horn
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com

*Counsel for Representative Plaintiffs and the Proposed Class*

**APPENDIX A**

| PROPOSED SCHEDULE OF SETTLEMENT EVENTS | |
|---|---|
| **Event** | **Timing** |
| Deadline to begin mailing of Class Notice to Class Members and post the Notice and Claim Form on the Settlement Website (Preliminary Approval Order ("PAO") | 30 days after entry of the Preliminary Approval Order |
| Substantial completion of initial distribution of mailed notices | September 19, 2022 |
| Deadline for Representative Plaintiffs to file papers in support of final approval and application for fees and expenses | October 3, 2022 |
| Deadline for requesting exclusion and submitting objections | October 17, 2022 |
| Deadline for filing reply papers | 7 days prior to the Fairness Hearing |
| Fairness Hearing | On or about November 21, 2022 |
| Deadline for submitting Claim Forms | 30 days after the Fairness Hearing |